# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| JOHN H. MUPRHY, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | 3:15-CV-92-TCB |
| | ) | |
| v. | ) | |
| | ) | **KING DEFENDANTS'** |
| MILLARD C. FARMER, JR., et al., | ) | **MOTION TO DISMISS** |

Plaintiff brings RICO claims against the lawyers who opposed him in a bitterly contested child custody battle. The Court should dismiss all claims against Defendant Larry King and his professional corporation for these reasons:

- Plaintiff cannot show the pattern necessary to establish his RICO claims. Plaintiff alleges wrongdoing in only one lawsuit. That is not enough.

- Code section § 51-7-85 provides the exclusive state law remedy for abusive litigation, and Plaintiff's state law RICO claims fail for this reason also.

- Plaintiff's emotional distress claims fail because Plaintiff accuses Defendant King only of frivolous court filings, and the preparation of court filings cannot support emotional distress claims. Also, Plaintiff

has not pleaded severe emotional distress.

- Res judicata bars any claims addressed in the state court's contempt order. Plaintiff cannot seek a contempt citation against opposing counsel and then go back and file a RICO suit on top of that. If any claims remain at all, the Court should decline jurisdiction.

## I.  Allegations of Complaint

Plaintiff's Complaint is long, but the gist of it is simple. Plaintiff claims Defendants illegitimately litigated a child custody dispute in state court.

Plaintiff divorced his wife in 2006. (Compl. ¶ 34.) They shared custody of their two children. (Id. ¶  36.) In April 2012, Plaintiff filed a state court action to modify the child custody arrangement. (Id. ¶ 47.) Defendants Millard Farmer and Larry King represented Plaintiff's ex-wife in the child custody litigation. (Id. ¶ 48.) Defendant King was second chair, and Defendant Farmer was lead counsel. (Ex. 3 to Compl.) Defendant King withdrew in September 2014. (Compl. ¶ 48.) Plaintiff's ex-wife sought an upward modification of child support. (Id. ¶ 50.) She also filed a third-party complaint against Plaintiff's current wife. (Id. ¶ 50.)

## A. Defendant King Proposed an Early Resolution.

According to the Complaint, Defendant King contacted Plaintiff's current wife early on in the litigation to resolve the dispute raised in the third-party

complaint. (Id. ¶¶ 52-53.) Defendant King proposed to "privately discuss the core dispute and resolve this matter outside the courtroom." (Id. ¶ 52; Ex. 3 to Compl.) Defendant King wrote, "My plan is simple, I have [Defendant Farmer's] ear and he has the ability to develop a plan acceptable to Michelle." (Ex. 3 to Compl.) Plaintiff alleges that Defendant King again reached out to Plaintiff's current wife about a week later. (Compl. ¶ 53.) Defendant King wrote, "My role in this litigation is a lot different from Mr. Farmer's. Mr. Farmer is a litigator. **He only knows excessive litigation.**" (Id. ¶ 53) (emphasis in Complaint). Plaintiff's current wife declined Defendant King's offers to discuss a resolution. (Id. ¶ 55.) Plaintiff complains that Defendants made embarrassing allegations about Plaintiff's and his current wife's wealth. (Id. ¶¶ 56-61.) The state court dismissed the third-party complaint in January 2013. (Id. ¶ 62.)

## B. Defendants Challenged the Appointed Guardians.

The state court appointed a guardian ad litem for the children. According to Plaintiff, Defendant Farmer objected to a guardian ad litem and specifically objected to his client having to pay a lawyer to serve as a guardian ad litem—she works as a hairdresser and could ill-afford additional legal fees. (Id. ¶ 67.) After the first guardian withdrew, Defendants moved to disqualify her replacement. (Id.

¶ 69.) The state court denied that disqualification motion, and the Georgia Court of Appeals affirmed. (Id. ¶ 70.)

## C. Plaintiff Claims Defendant Farmer Tried to Influence Witnesses.

The state court involved a psychologist to decide whether a professional custody evaluation was necessary. (Id. ¶ 72.) According to Plaintiff, Defendant Farmer wanted the boys' treating psychiatrist, Dr. Patricia Nice, to be involved. (Id. ¶¶ 72-73.) Plaintiff alleges that Dr. Nice was a former client of Defendant Farmer's and that Defendant Farmer hoped to extract favorable testimony from her. (Id. ¶¶ 73, 75.) In the past, Dr. Nice had her license suspended over allegations of prescription drug abuse, and Plaintiff claims Defendant Farmer threatened to disclose that embarrassing information. (Id. ¶¶ 73-74, 79, 104.) Plaintiff also alleges that Defendant Farmer threatened to file a professional complaint against another treating psychologist. (Id. ¶ 96-98.) Although Plaintiff claims Defendant Farmer attempted to influence her testimony, Dr. Nice testified against Defendants' client. Dr. Nice recommended a full custody evaluation over Defendant Farmer's objections and expressed concerns about Plaintiff's ex-wife's parenting. (Id. ¶¶ 84, 105.) Plaintiff does not allege that Defendant King played any role in the alleged efforts to influence the psychiatrists' testimony. (See id. ¶¶ 72-88, 95-105.)

The state court appointed Dr. Nancy McGarrah to conduct a full custody evaluation. (Id. ¶¶ 108-09.) Plaintiff alleges that Defendant Farmer unfairly threatened to file an ethics complaint against Dr. McGarrah when she disclosed his ex parte correspondence with her. (Id. ¶ 119; Ex. 9 to Compl.) Again, Plaintiff does not allege that Defendant King inappropriately tried to influence Dr. McGarrah. (Id. ¶¶ 116-20.)

**D. The State Court Entered a Contempt Order.**

When Plaintiff's ex-wife did not cooperate with the custody evaluation, Plaintiff filed a contempt motion. (Id. ¶ 120.) Defendant King appeared at the hearing. (Id. ¶ 122.) There the state court denied various disqualification motions. (Id. ¶ 131.) In a November 2013 order, the state court held Defendant Farmer, Defendant King, and their client in contempt. (Id. ¶ 123; Ex. 10 to Compl.) The state court found that Plaintiff's ex-wife had refused to co-operate with the custody evaluation and that she and Defendant Farmer violated a gag order. (Compl. ¶ 124.) The state court also held that Defendant Farmer and Defendant King told their client not to appear at the hearing. (Id. ¶ 125.) Defendants appealed the contempt order. (Id. ¶ 126.) On appeal, the Georgia Court of Appeals excused Plaintiff's ex-wife's absence from the hearing but otherwise affirmed the contempt order. (Id. ¶ 126.)

The state court also ordered Plaintiff's ex-wife to undergo a Rule 35 mental health examination with Dr. McGarrah. (Id. ¶ 135.) Defendant Farmer sent Dr. McGarrah a letter objecting to participating in an examination where Dr. McGarrah claimed immunity from liability. (Id. ¶ 139; Ex. 13 to Compl.) Plaintiff does not claim Defendant King had anything to do with this letter. Dr. McGarrah withdrew, and the state court appointed a new custody evaluator and set a compliance hearing for May 27, 2014. (Compl. ¶¶ 140-142.) At the hearing, the state court awarded temporary custody to Plaintiff. (Id. ¶ 143.) The Georgia Supreme Court denied an emergency motion to overturn the custody ruling. (Id. ¶ 145.)

### E. Plaintiff Claims Other Defendants Interfered with His Custody Rights.

Plaintiff alleges that his ex-wife violated the custody order by contacting the children. (Id. ¶ 146.) According to the Complaint, she told the children not to surrender their cell phones. (Id. ¶ 147.) When one of the children refused to surrender his cell phone, an altercation took place where he scraped one his lips against his braces. (Id. ¶ 149.) Defendants supplemented their Supreme Court filing with information about the altercation. (Id. ¶ 151.) Plaintiff insists this filing was false. (Id. ¶ 151.) Plaintiff alleges that his ex-wife and Defendant Farmer contacted the children. (Id. ¶ 153.) Plaintiff claims his ex-wife and Defendant

Farmer encouraged one of the boys to run away and extracted a promise from Plaintiff to return the boys to their mother. (Id. ¶¶ 155-160.) Plaintiff does not allege that Defendant King had anything to do with this. (Id. ¶¶ 146-60.)

**F. Plaintiff Claims he was Falsely Accused of Child Abuse.**

Plaintiff next alleges that Defendant Farmer falsely accused him of child abuse. According to the Complaint, Defendant Farmer filed a false report of child abuse to authorities in the U.S. Virgin Islands. (Id. ¶ 163.) The Complaint does not charge Defendant King of complicity in the filing of the allegedly false child abuse report.

**G. A Dispute Ensued with the Court Reporter.**

Defendant Farmer reportedly threatened to sue the state court judge's court reporter. (Id. ¶ 164.) Defendant Farmer allegedly asked for audio tapes of the hearings. (Id. ¶ 165.) The state court granted the requests and ordered the production of audio tapes for both sides. (Id. ¶ 167.) The Complaint says Defendants filed a lawsuit against the court reporter. (Id. ¶ 168.) Plaintiff asserts that Defendant Farmer offered to dismiss the lawsuit if the state court judge would recuse himself and vacate the custody order. (Id. ¶ 169.) Plaintiff does not allege Defendant King played any role in this (aside from filing the lawsuit). (See id. ¶¶ 164-70.)

## H. Defendant King Retired from the Practice of Law.

Plaintiff's ex-wife allegedly tried to get one of the boys' friends to contribute to their delinquency. The Complaint alleges that this friend provided alcohol, tobacco, and marijuana to the boys. (Id. ¶ 177.) Defendants filed a motion to put a stop to this and, according to the Complaint, said Plaintiff provided the boys with alcohol. (Id. ¶ 179.) Defendant Farmer submitted an affidavit. (Id. ¶ 182.) Plaintiff insists these allegations are false, but he does not accuse Defendant King of any wrongdoing other than appearing on the court filings. (See id. ¶¶ 178-86.) Defendant King then withdrew in August 2014 because he was retiring from the practice of law. (Id. ¶ 187.)

## I. The Dispute Spilled Over into Social Media.

After Defendant King withdrew in August 2014, Plaintiff alleges that Defendant Deborah Beacham and Defendant My Advocate Center, Inc. went on a campaign of libel and slander on social media. Defendant Beacham is the executive director of My Advocate Center, Inc. (Id. ¶ 25.) They allegedly smuggled cell phones and a purported "runaway kit" to the boys, engineered a kidnapping, and surreptitiously taped a scripted and misleading interview that became part of a media campaign. (Id. ¶¶ 188, 192-96, 198-202, 210-28, 235-40, 248-54.) Defendant Farmer and Plaintiff's ex-wife allegedly filed a false report of

child abuse. (Id. ¶¶ 229-31.) The Complaint does not accuse Defendant King of having anything to do with the claimed kidnapping, the social media campaign, or the alleged child abuse report. (See id. ¶¶ 188-231.)

With Defendant King having retired from the practice of law, Defendant Farmer continued to represent Plaintiff's ex-wife in the ongoing custody litigation. Plaintiff claims Defendant Farmer filed numerous motions to recuse the state court trial judge and other judges. (Id. ¶¶ 255, 259.) Plaintiff accuses his ex-wife of demanding $500,000 to pay her attorney's fees. (Id. ¶¶ 247.) Again, the Complaint does not charge Defendant King with participating in any of this alleged misconduct. (See id. ¶¶ 241-63.)

The charges specifically leveled against Defendant King are these:

- contacting Plaintiff's current wife to negotiate an early resolution (Compl. ¶¶ 51-54);

- wrongfully instructing his client not to attend a court hearing (Id. ¶ 125); and

- appearing on false pleadings and motions filed with the state court.

In fact, the laundry list of racketeering acts in paragraphs 269 through 435 mentions Defendant King only twice—once in a generalized allegation of extortion and again in an allegation that Defendants tried to bribe the state court judge by

suing his court reporter. (Compl. ¶¶ 269, 282.) Defendants Larry King and Larry King, P.C. now move the Court to dismiss all claims against them.

## II.  Pleading Standards

Under the Supreme Court's relatively new pleading standard, a complaint must plead sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "[A] formulaic recitation of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 1950 (internal quotation marks omitted).

## III.  Argument and Citation of Authority

The Court should dismiss all claims against the King Defendants. Those

claims fail for various reasons, but the common problem underlying them is that Plaintiff is complaining about Defendant's conduct in state court litigation.

- Plaintiff's RICO claims fail because Plaintiff has alleged wrongdoing in only one lawsuit and therefore cannot show a pattern of racketeering.

- Code section § 51-7-85 fixes an exclusive remedy for abusive litigation and thus bars Plaintiff's state law claims for racketeering and emotional distress.

- Plaintiff's emotional distress claims also fail because emotional distress claims cannot arise from court filings and because has not pleaded severe emotional distress with any specificity.

- Res judicata bars any complaints already adjudicated in the state court, and this Court should decline jurisdiction over anything that lingers.

## A.  Plaintiff's Federal RICO Claims Fail.

"In order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a 'pattern of racketeering activity' by alleging that the defendants committed two qualifying predicate acts." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087 (11th Cir. 2004) (per curiam). If the Complaint fails to allege at least

two predicate criminal acts, then Plaintiff's federal RICO claims fail. E.g., Humphrey v. United Parcel Serv., 200 F. App'x 950, 952 (11th Cir. 2006) (per curiam).

To successfully allege a "pattern of racketeering activity," a plaintiff must also charge that: (1) the defendants committed two or more predicate acts within a ten-year span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. Jackson v. BellSouth Tel., 372 F.3d 1250, 1264 (11th Cir. 2004). The purpose of RICO is to target ongoing criminal activity, rather than sporadic, isolated criminal acts. Id. Accordingly, the Supreme Court has explained that the pattern must "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." H.J., Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 240, 109 S. Ct. 2893, 2901 (1989). In this case, Plaintiff cannot satisfy the two predicate acts requirement or the continuity requirement.

### 1. Plaintiff Cannot Satisfy the Predicate Acts Requirement.

Two predicate acts are the statutory minimum. But the Supreme Court has specifically cautioned that while two predicates acts are necessary, they may not be sufficient. H.J. Inc., 492 U.S. at 239, 109 S. Ct. at 2900. In particular, where multiple predicate acts are simply constituent parts of the same scheme, there is no

pattern of racketeering. This makes sense—almost any wrongful conduct could be broken down into two or more constituent parts, and if that was enough to allege racketeering activity, then the pattern requirement would be meaningless. Thus, where the alleged fraudulent acts all related to the settlement negotiations of a single lawsuit, instead of a series of cases, the Eleventh Circuit found no pattern of racketeering activity. Jackson, 372 F.3d at 1267.

Courts have been particularly unwilling to find a pattern of racketeering activity in allegations of abusive litigation. For example, even where plaintiffs brought ten lawsuits over a real estate financing dispute, the court found no pattern of racketeering activity because all the lawsuits made up a single scheme with a single injury and a single victim. Eastern Savings Bank, FSB v. Papageorge, 31 F. Supp. 3d 1, 12 (D.D.C. 2014). Or where the defendant filed multiple lawsuits against a physician and complaints with the state board of medical examiners, there was no pattern because there were no other schemes alleged. Manax v. McNamara, 660 F. Supp. 657, 663 (W.D. Tex. 1987). The Eleventh Circuit has cautioned that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system." U.S. v. Pendergraft, 297 F.3d 1198, 1208 (11th Cir. 2002). There are appropriate means of redressing abusive litigation in the underlying case. Id.

Plaintiff in this case has alleged multiple predicate acts, but they all concern one lawsuit and one dispute. This simply is not enough. <u>Jackson</u>, 372 F.3d at 1267; <u>Papageorge</u>, 31 F. Supp. 3d at 12; <u>Manax</u>, 660 F. Supp. at 663. What Plaintiff really needs to do is to show that these Defendants conspired with the same non-party co-conspirators in some unrelated dispute. However, Plaintiff alleges misconduct in only one civil dispute. That cannot constitute a pattern of racketeering activity, no matter how many separate acts of wrongdoing Plaintiff may claim.

## 2. Plaintiff Cannot Show Continuity.

The continuity requirement serves a crucial gate-keeping function by ensuring that the "crime alleged is the sort of offense that RICO is designed to address." <u>Jackson</u>, 372 F.3d at 1265. There are two types of continuity: "closed-ended" and "open-ended." <u>Id.</u> at 1265-66.

Closed-ended continuity is established by "proving a series of related predicates extending over a substantial period of time." <u>Id.</u> at 1265. A substantial period of time cannot be met with allegations of schemes lasting less than a year. <u>Id.</u> at 1266. Furthermore, in cases like this one, where the RICO allegations concern one scheme, one goal, and limited victims, the Eleventh Circuit refuses to find closed-ended patterns over a period of even several years.  <u>Id.</u>

Plaintiff's Complaint here alleges misconduct in only one lawsuit. The Complaint does not allege Defendant King has litigated other cases with this same purpose. Plaintiff has not identified any alleged victims other than the people involved in the custody dispute. Thus, Plaintiff's Complaint fails to allege the closed-ended continuity required to showing a pattern. See Ferrell v. Durbin, 311 F. App'x 253, 256 (11th Cir. 2009) (per curiam) (finding a two-year period insufficient based on the limited time frame, the single scheme, and the existence of only two victims).

Open-ended continuity is established by showing the predicate acts were part of the regular way of doing business or threaten repetition in the future. Jackson, 372 F.3d at 1265. Notably, "single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity." Ferrell, 311 F. App'x at 258 (finding no threat of repetition based on a single scheme to drive plaintiff away from management of company); see also J.G. Williams, Inc. v. Regency Props., Ltd., 672 F. Supp. 1436, 1442 (N.D. Ga. 1987) (dismissing RICO claims for lack of a "threat of continuing activity" where plaintiff failed to allege similar conduct towards other victims and involved only one deal with one individual).

Plaintiff must show the pattern is likely to recur in other unrelated disputes.

Plaintiff offers nothing more than a conclusory assertion that the "racketeering activity will continue into the future with a threat of repetition, especially given that the activity is Mr. Farmer's regular way of doing business and 'practicing' law." (Compl. ¶ 371.) So conclusory an assertion is insufficient. <u>Jackson</u>, 372 F.3d at 1268 (rejecting a conclusory allegation of continued criminal conduct). Defendant King has retired from the practice of law. (Compl. ¶ 187.) Most of the alleged co-conspirators are family members or friends of Plaintiff's ex-wife. (<u>See</u> Compl. ¶¶ 27, 187.) Plaintiff pleads no facts to support the counter-intuitive notion that a retired lawyer will likely enlist the aid of a former client's friends and family members to litigate an unrelated dispute with people who are complete strangers. Because Plaintiff has failed to satisfy the continuity requirement, his federal RICO claims fail and should be dismissed.

## B.  Plaintiff's State RICO Claims Fail.

Plaintiff's state law claims fail for similar but slightly different reasons. First of all, the remedies for abusive litigation under O.C.G.A. § 51-7-81 are exclusive and bar Plaintiff's state law racketeering claims. Second, Plaintiff's allegations fail to establish a pattern of racketeering activity.

### 1. Title 51 is an Exclusive Remedy.

After the General Assembly enacted Georgia's RICO statute, it passed a

1989 abusive litigation statute codified at O.C.G.A. §§ 51-7-80 through – 85. That statutory scheme (often referred to as "Title 51") provides that anyone who acts with malice and without substantial justification is liable for abusive litigation. O.C.G.A. § 51-7-81. This fairly comprehensive scheme lays out definitions, a notice procedure, a statute of limitation, grounds of defense, and a measure of damage. It also excludes other remedies. Code section 51-7-85 provides that

> no claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation. . . . This article is the exclusive remedy for abusive litigation.

The Georgia Court of Appeals has relied on section 51-7-85 to block rogue claims unauthorized by the statutory scheme. In Phillips v. MacDougald, 219 Ga. App. 152, 156-57, 464 S.E.2d 390, 395-96 (1995), the court held that a tortious interference claim cannot be based on an alleged improper filing of a lawsuit. The court explained that Title 51 gives claimants ample remedies for abusive litigation. Phillips, 219 Ga. App. at 156, 464 S.E.2d at 395. The court also noted that "proliferation of unnecessary causes of action for the alleged improper filing of lawsuits would have a chilling effect on the exercise by citizens of their right of access to the courts." Phillips, 219 Ga. App. at 157, 464 S.E.2d at 395. For all these reasons, the court held that claimants cannot make an end-run around Title

51 by asserting tortious interference claims.

For the same reasons, Plaintiff in this case cannot make an end-run around the abusive litigation statute by filing RICO claims. Though cast in the language of criminal conduct, Plaintiff is essentially and indisputably claiming that Defendants engaged in abusive litigation tactics. The list of predicate acts consists exclusively of purportedly illegitimate court filings and alleged crimes designed to influence the custody proceedings. (See Compl. ¶¶ 269-435.)

All these allegations center around litigation. Plaintiff alleges no wrongdoing unrelated to the custody dispute and nothing outside the reach of Title 51 and O.C.G.A. § 9-15-14. If Plaintiff's allegations are true and if Defendants filed extortionate pleadings and motions, then O.C.G.A. §§ 9-15-14(b) and 51-7-81 would provide a remedy. Under O.C.G.A. § 51-7-85, this remedy is exclusive. Allowing Plaintiff to avoid these statutes by re-labeling his claims as RICO claims would effectively write those statutes off the book. Because O.C.G.A. § 51-7-85 excludes all other remedies, the Georgia RICO statute is unavailable to Plaintiff, and his RICO claims fail. For this same reason, Plaintiff's emotional distress claims fail as well.

## 2. Plaintiff Cannot Show a Pattern of Racketeering Activity.

Plaintiff's state RICO claims likewise require pleading and proof of at least

two criminal acts. O.C.G.A. § 16-4-3(8); <u>Ali v. Fleet Fin. of Ga., Inc.</u>, 232 Ga. App. 13, 14, 500 S.E.2d 914, 915 (1998). If the Complaint fails to allege at least two predicate criminal acts, then Plaintiff's state RICO claims fail. <u>Smith v. Chemtura Corp.</u>, 297 Ga. App. 287, 292-93, 676 S.E.2d 756, 762 (2009).

Georgia's RICO statute likewise does not give a cause of action to conduct that arises from just one transaction. "A single transaction does not constitute a pattern of racketeering activity." <u>Perimeter Realty v. GAPI, Inc.</u>, 243 Ga. App. 584, 591, 533 S.E.2d 136, 144 (2000). One transaction cannot be broken down into multiple predicate acts in order to make out a RICO claim—even though the defendant might be chargeable with more than one crime. <u>Raines v. State</u>, 219 Ga. App. 893, 894, 467 S.E.2d 217, 219 (1996). Thus, Georgia courts have dismissed RICO claims over one transaction or series of occurrences—even though the plaintiffs charged more than one predicate act in the transaction. <u>Id.</u>; <u>Waldschmidt v. Crosa</u>, 177 Ga. App. 707, 709-10, 340 S.E.2d 664, 666-67 (1986) (finding that salting receipts on several occasion was still part of one transaction and therefore cannot support RICO claims).

As explained above, Plaintiff is complaining about Defendants' conduct in one protracted, complex child custody dispute. Although Plaintiff has alleged that Defendants committed multiple predicate acts in representing their clients, still

Plaintiff is ultimately complaining about just one lawsuit. Plaintiff cannot break that lawsuit into multiple instances of conduct in order to manufacture a pattern. Raines, 219 Ga. App. at 894; 467 S.E.2d at 219. The Complaint does not establish a pattern of racketeering activity for state law purposes, and Plaintiff's state law racketeering claims fail for the same reason that his federal claims fail.

## C.  Plaintiff's Emotional Distress Claims Fail.

The only other claims against the King Defendants are claims for intentional infliction of emotional distress in Count VII. (See Compl. ¶¶ 473-77.) Plaintiff must show (1) intentional or reckless conduct; (2) that was extreme and outrageous; (3) and that caused severe emotional distress. Frank v. Fleet Fin., Inc. of Ga., 238 Ga. App. 316, 318, 518 S.E.2d 717, 720 (1999). The emotional distress claims fail for three reasons. First, the King Defendants engaged in no outrageous conduct. Second, Plaintiff has not pleaded any "severe emotional distress" with the specificity required by Twombly pleading standards. And third, Title 51 is an exclusive remedy.

### 1. The King Defendants Engaged in no Outrageous Conduct.

Plaintiff attributes no outrageous conduct to the King Defendants. Paragraph 475 says Defendants attempted to bribe the state court judge, intimidated witnesses, encouraged the children to run away, extracted misleading statements,

and then published them. The King Defendants had nothing to do with any of this. (See Compl. ¶¶ 72-88, 95-105, 116-20, 139, 146-60, 188-231.) Plaintiff merely accuses the King Defendants of frivolous court filings. Behavior confined to the preparation and filing of legal pleadings cannot support emotional distress claims. Ga. Power Co. v. Johnson, 155 Ga. App. 862, 863, 274 S.E.2d 17, 18 (1980) (physical precedent); see also Rolleston v. Huie, 198 Ga. App. 49, 51, 400 S.E.2d 349, 351-52 (1990). Because the Complaint alleges no outrageous conduct in which the King Defendants engaged, the Court should dismiss the emotional distress claims against them. See Justice v. SCI Ga. Funeral Servs., Inc., 329 Ga. App. 635, 639, 765 S.E.2d 778, 782 (2014) (affirming dismissal where the plaintiffs showed no outrageous conduct).

## 2. Plaintiff Does not Sufficiently Allege Severe Emotional Distress.

Second, Plaintiff has not shown the required "severe emotional distress." Paragraph 476 alleges generally that Defendants "caused [Plaintiff] (as well as [his] wife and the Children) severe emotional distress." This is nothing more than a threadbare recital of the damage element, which does not satisfy the pleading requirements of Twombly. Fareed v. Cobb Cnty. Sch. Dist., Inc., No. 1:13-CV-03160-RWS, 2014 WL 2808221, at *3 (N.D. Ga. June 20, 2014) (dismissing claims that alleged severe distress without any specifics); Smith v. Nat'l Credit

<u>Sys., Inc.</u>, No. 1:14-CV-4219-WSD, 2014 WL 2003025, at *8 (N.D. Ga. May 15, 2014) . Plaintiff claims his children had to undergo psychological treatment, but Plaintiff has no standing to sue for their alleged emotional distress. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (noting the general standing requirement that a plaintiff suffer an injury in fact); <u>see</u> <u>also</u> <u>Bhan v. NME Hosps., Inc.</u>, 669 F. Supp. 998, 1013 (E.D. Cal. 1987) (holding a husband has no constitutional standing to pursue actions for injuries suffered by his wife and children).

### 3. Title 51 is an Exclusive Remedy.

Title 51 allows Plaintiff to recover for any consequential damages resulting from the King Defendants' allegedly frivolous court filings. O.C.G.A. § 51-7-83(a). A Title 51 claim is Plaintiff's exclusive remedy, as explained earlier. O.C.G.A. §51-7-85. Plaintiff therefore cannot bring common law emotional distress claims over the King Defendants' allegedly frivolous court filings. <u>See generally</u> <u>Phillips</u>, 219 Ga. App. at 156-57, 464 S.E.2d at 395-96.

### D.  Res Judicata Bars Plaintiff's Claims.

"Res judicata bars the filing of claims which were or could have been raised in an earlier proceeding." <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1238 (11th Cir. 1999). There must be (1) a final judgment on the merits, (2) rendered by

a court of competent jurisdiction, (3) identical parties (or privies), and (4) the same cause of action. Id. "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, then the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Id. at 1239.

   All four elements are met here. The Superior Court of Coweta County had subject matter jurisdiction to hear the child custody case.  When that court found Defendants in contempt, it entered final judgments on the merits of Defendants' conduct (at least up to that point). Langermann v. Dubbin, No. 14-151136, 2015 WL 3478028, at * 3 (11th Cir. June 3, 2015) (per curiam). In fact, Defendants appealed the contempt order, and the Georgia Court of Appeals affirmed. (Compl. ¶ 126.) The parties are the same because Plaintiff is now suing the same lawyers against whom he obtained a contempt finding in the state court case. And finally, the cause of action is the same because this case concerns Defendants' conduct of the litigation and thus arises from the same nucleus of operative fact. Langermann, 2015 WL 3478028, at *3-4. Because Plaintiff received relief on his state court contempt motion, he cannot now seek additional relief here. The Court should dismiss any claims grounded on conduct adjudicated in the state court contempt proceeding.

The custody litigation remains pending. Apparently there are additional requests for sanctions outstanding; in its order allowing the King Defendants' withdrawal, the state court stipulated that they must remain answerable for any further sanctions claims. (Ex. 19 to Compl.) If any state law claims remain, the Court should decline jurisdiction. See 28 U.S.C. § 1367(c)(3) (noting a district court may decline supplemental jurisdiction after it has dismissed all claims over which it has original jurisdiction); Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (noting state court should be final arbiters of state law, especially where the federal claims are dismissed prior to trial).  Finally, the prior-pending-action doctrine might also apply and require this Court to stay or even dismiss this action pending a resolution of the state court litigation. See Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536, 540-41 (D. Mass. 2014) (noting a court may dismiss or stay a later-filed action under the doctrine, which arises out of concerns about judicial efficiency and avoiding inconsistent judgments).

## IV.  Conclusion

This is nothing but litigation about litigation. The defense of one lawsuit does not a racketeering enterprise make. Federal racketeering claims are not the remedy for Plaintiff's complaints. He certainly cannot seek relief from the state

court and then assert racketeering claims in this Court. The Court should grant the King Defendants' motion (Doc. No. 11), dismiss the claims against Larry King and Larry King, P.C., and drop them as parties from this case.

This 18th day of June, 2015.

/s John C. Rogers
JOHANNES S. KINGMA
Georgia State Bar No. 421650
*jkingma@carlockcopeland.com*
JOHN C. ROGERS
Georgia State Bar No. 612741
*jrogers@carlockcopeland.com*

*Attorneys for Alfred L. King, Jr. and Larry King, P.C.*

**CARLOCK, COPELAND & STAIR, LLP**
191 Peachtree Street, 36th Floor
Atlanta, Georgia 30303
(404) 522-8220
(404) 222-9482 (Facsimile)

Counsel certifies that this brief has been prepared with Times New Roman 14 point type, one of the font and point selections approved by the Court in LR 5.1.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the King Defendants' Motion to Dismiss on all parties by filing it with the Court's electronic filing system and by mailing copies to:

Wilmer Parker
Maloy Jenkins Parker
75 Fourteenth Street, 25th Floor
Atlanta, GA 30309

Millard C. Farmer, Jr.
P.O. Box 1728
Atlanta, GA 30301

Deborah Beacham
3025 Bluffton Way
Roswell, GA 30076

My Advocate Center, Inc.
880 Marietta Highway, Suite 630-166
Roswell, GA 30075

This 18th day of June, 2015.

By:  /s John C. Rogers
JOHN C. ROGERS
Georgia State Bar No. 612741

*Counsel for Defendants Larry King, P.C. and Alfred L. King, Jr.*

Carlock, Copeland & Stair, LLP
191 Peachtree Street, 36 Floor
Atlanta, GA 30303
(404) 522-8220

5130180v.1