IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| JOHN H. MUPRHY, | ) | CIVIL ACTION NO. |
| | ) | 3:15-CV-92-TCB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MILLARD C. FARMER, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

COME NOW (i) Defendant Deborah Beacham and Defendant My Advocate Center, Inc. (the "Beacham Defendants"), (ii) Defendant Alfred L. King, Jr. and Defendant Larry King, P.C. (the "King Defendants"), and (iii) Plaintiff and file the Joint Preliminary Report and Discovery Plan required by LR 16.2, NDGa. Defendant Millard Farmer says he will file a separate report.

**1.     Description of Case:**

   **(a)     Describe briefly the nature of this action.**

Plaintiff contends that Defendants have engaged and continue to engage in an association-in-fact racketeering enterprise (the "Conflictineering Enterprise") by and through a pattern of racketeering activity involving various acts of criminal conduct in an around Coweta County, as well as in the State of Tennessee and the

U.S. Territory of the Virgin Islands, in an effort unlawfully to influence the Child Custody Litigation pending in the Superior Court of Coweta County and to secure an extortionate pay-out from Plaintiff. Plaintiff also contends that Defendants Farmer, Beacham, and My Advocate Center defamed him on social media, in alleged "town hall" meetings in Newnan, in articles published in the *Newnan Times-Herald* and other media outlets, on My Advocate Center's website, and on the Pro Advocate Radio program broadcast over a traditional radio station and the Internet. Defendants deny that there is an enterprise and deny wrongdoing.

**(b)   Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

**By Plaintiff:**

The Complaint alleges the pattern of racketeering activity was conducted by the "Conflictineering Enterprise," an association-in-fact enterprise comprised of individuals and entities led by Defendant Farmer. "Conflictineering" is a term Mr. Farmer has coined to describe his style of terroristic lawyering. The Conflictineering Enterprise operated and operates by illegally expanding and prolonging the Child Custody Litigation to an exponential degree, as well as bringing public and other "extra-litigation" pressure on Mr. Murphy, all through a pattern of racketeering activity. These illegal acts caused extensive harm to Mr. Murphy in an effort to force him to relinquish valid claims in the Child Custody

Litigation and to extort the payment of monies from him and his wife through excessive attorney's fees. In fact, according to Mr. Farmer's Conflictineering playbook, after creating personal and psychological chaos, he will end the assault by "restoring order in exchange for a fair disposition."

Members of the Conflictineering Enterprise have, among other criminal acts:

- attempted extortion and theft by extortion by publicly disseminating information regarding Mr. Murphy, his wife, and others connected to the Child Custody Litigation (a) accusing them of criminal offenses, (b) subjecting them to hatred, contempt, and ridicule, or (c) impairing their credit or professional reputations, in an attempt to obtain money and litigation concessions from Mr. Murphy (O.C.G.A. § 16-8-16);

- attempted to bribe a state court judge, the Hon. Quillian Baldwin, Superior Court of Coweta County (O.C.G.A. § 16-10-2);

- intimidated or attempted to intimidate judges, parties, witnesses, experts, court officials, professionals appointed by the Court, and others (O.C.G.A. §§ 16-10-93 & 16-10-97);

- coordinated and executed an interstate conspiracy, including interstate travel from Georgia to the United States Virgin Islands, to kidnap the Children and film them without informing or obtaining permission

> from their custodial parent (Mr. Murphy), in furtherance of an extortion scheme (18 U.S.C. § 1201, 18 U.S.C. § 1952, 14 V.I.C. § 1052);
> 
> - deliberately interfered with the legal custody of the Children who are the subject of the Child Custody Litigation (O.C.G.A. § 16-5-45);
> 
> - generated and transmitted, over interstate wires, false reports of child abuse to public authorities in Tennessee, the USVI, and perhaps other states (T.C.A. § 37-1-413, 14 V.I.C. § 2146(c), 18 U.S.C. § 1343);
> 
> - operated Defendant My Advocate Center as a scheme or artifice to defraud and, in furtherance of that scheme, transmitted interstate wire communications, in violation of 18 U.S.C. § 1343; and
> 
> - engaged in other acts of mail and wire fraud to further the objectives of the Conflictineering Enterprise (18 U.S.C. §§ 1341, 1343).

Defendants Farmer, Beacham, and My Advocate Center also have published numerous defamatory statements regarding Mr. Murphy, his wife, his attorneys, and other participants in the Child Custody Litigation.

**By King Defendants and Beacham Defendants:**

Plaintiff divorced his wife in 2006. They shared custody of their two children. In April 2012, Plaintiff filed a state court action to modify the child

custody arrangement. Defendants Millard Farmer and Larry King represented Plaintiff's ex-wife in the child custody litigation. Defendant King withdrew in September 2014. After Defendant King withdrew, Defendants Deborah Beacham and My Advocate Center, Inc. ("Advocate Defendants") allegedly consulted with Plaintiff's ex-wife in her efforts to have custody of the children restored to her.

In the state court litigation, Defendants Farmer and King challenged the appointment of a guardian ad litem. Plaintiff contends that they illegitimately attempted to influence witnesses and the professionals engaged to evaluate the custody question. On Plaintiff's motion, the state court entered a contempt order over Plaintiff's wife's failure to cooperate with a custody evaluation and violation of a gag order. The state court ordered Plaintiff's wife to undergo a mental health examination and awarded temporary custody of the children to Plaintiff.

According to Plaintiff, Defendants have interfered with his custody of the children. Defendants allegedly (1) planned a kidnapping of the children, (2) wrongfully communicated with them, and (3) filed false reports of child abuse, among other things. Defendants Farmer, Beacham, and My Advocate Center allegedly engineered a defamatory social media campaign. The state court custody dispute is still ongoing.

**(c)    The legal issues to be tried are as follows:**

(i)    whether Defendants violated state and federal racketeering laws; and

(ii)    whether Defendants Farmer, Beacham, and My Advocate Center defamed Plaintiff.

**(d)    The cases listed below (include both style and action number) are:**

**(1)    Pending Related Cases:**

<u>Murphy v. Murphy</u>
Civil Action No. 2012-V-413
Superior Court of Coweta County, Georgia

<u>Murphy v. Freeman</u>
Civil Action No. 15-CV-109
Superior Court of Troup County, Georgia

<u>Beacham v. Federal Nat'l Mortgage Corporation, et al.</u>
Civil Action No. 1:15-cv-01608-WSD
U.S. District Court, Northern District of Georgia

**(2)    Previously Adjudicated Related Cases:**

<u>Murphy v. Crouch</u>
Civil Action No. 08-V-2137
Superior Court of Coweta County, Georgia

**2.    This case is complex because it possesses one (1) or more of the features listed below (please check):**

|   |   |   |
|---|---|---|
| _____ | (1) | Unusually large number of parties |
| __x__ | (2) | Unusually large number of claims or defenses |
| __x__ | (3) | Factual issues are exceptionally complex |

|   x   | (4)  | Greater than normal volume of evidence |
|-------|------|----------------------------------------|
|       | (5)  | Extended discovery period is needed |
|       | (6)  | Problems locating or preserving evidence |
|       | (7)  | Pending parallel investigations or action by government |
|       | (8)  | Multiple use of experts |
|   x   | (9)  | Need for discovery outside United States boundaries |
|       | (10) | Existence of highly technical issues and proof |

**3.    Counsel:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

For Plaintiff:      Wilmer Parker
                    Maloy Jenkins Parker
                    75 Fourteenth Street, 25th Floor
                    Atlanta, GA  30309
                    (404) 875-2700
                    *parker@mjplawyers.com*

For Millard Farmer:  Millard Farmer
                    P.O. Box 1728
                    Atlanta, GA 30301
                    (404) 688-8116
                    *millardfarmer@millardfarmer.com*

For King Defendants: Johannes S. Kingma
                    John C. Rogers
                    Carlock, Copeland & Stair, LLP
                    191 Peachtree Street, Suite 3600
                    Atlanta, GA  30303
                    (404) 522-8220
                    *jkingma@carlockcopeland.com*
                    *jrogers@carlockcokpeland.com*

For Beacham and My Advocate Center, Inc.:         Mary Helen Moses
                                                  Mary Helen Moses, Esq., LLC
                                                  P.O. Box 20673
                                                  St. Simon's Island, GA 31522
                                                  (912) 634-8550
                                                  *maryhelenmoses@yahoo.com*

**4.     Jurisdiction:**

**Is there any question regarding this court's jurisdiction?**

    X    Yes                      _____ No

If "yes," attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

The King Defendants argue that the prior action pending doctrine calls for the Court to decline jurisdiction and cite Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536, 540-41 (D. Mass. 2014). These arguments might also call for the Court to decline jurisdiction over the state law defamation claims against Defendants Farmer, Beacham, and My Advocate Center in Count V of the Amended Complaint. The King Defendants withdraw their argument that the Court lacks supplemental jurisdiction.

Defendant Farmer argues that the Court lacks subject matter jurisdiction for two additional reasons. First, Defendant Farmer argues that the Rooker-Feldman doctrine blocks jurisdiction, contending that Plaintiff is attempting to add federal

punishment to the final judgment of the state court in the child custody litigation. Defendant Farmer cites cases like Exxon Mobil Corp. v. Saudi Basic Inds., 544 U.S. 280 (2005), and Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2000). Second, Defendant Farmer argues that the Younger abstention doctrine also bars jurisdiction, citing cases like Middlesex County Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982), and Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003). Defendant Farmer also asserts that the amount in controversy is less than $75,000.

Mr. Murphy disputes the King Defendants' invocation of the "prior pending action" doctrine, for the reasons stated in his Opposition to the King Defendants' Motion to Dismiss.  *See* Dkt. 45, at 22-23.  Not only does this doctrine appear to be inconsistent with this federal court's "unflagging obligation" to exercise jurisdiction even where parallel litigation is before a state court (*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)), none of the factors required to apply this doctrine have been met here.

Mr. Murphy also disputes the jurisdictional arguments raised by Defendant Farmer.  The Supreme Court recently confirmed *Younger* abstention only applies in three "exceptional circumstances" inapplicable here.  *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 588, 592-94 (2013).  The *Rooker-Feldman* doctrine only

applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Here, Mr. Murphy has not "lost" the Child Custody Litigation and does not seek the "review and rejection" of any rulings in that state-court case.  Finally, Mr. Murphy alleges that, in addition to the hundreds of thousands of dollars in attorney's fees he incurred as a result of the racketeering conduct, he also incurred $200,000 to secure necessary treatment for the Children to address the harm to them directly inflicted by the Conflictineering Enterprise.  Am. Compl. ¶¶ 5, 16, 231-234.  This is more than sufficient to satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332.

5.     **Parties to This Action:**

     (a)     **The following persons are necessary parties who have not been joined:**     None

     (b)     **The following persons are improperly joined as parties:**     None

     (c)     **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**     None

     (d)     **The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.      Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15.  Further instructions regarding amendments are contained in LR 15.**

**(a)     List separately any amendments to the pleadings which the parties anticipate will be necessary:**

None

**(b)     Amendments to the joint pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed will not be accepted for filing, unless otherwise permitted by law.**

**7.      Filing Times for Motions:**

All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).

(a)     *Motions to Compel:*  before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.

(b)     *Summary Judgment Motions:*  within twenty (20) days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.

(c)     *Other Limited Motions:*  Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d)     *Motions Objecting to Expert Testimony:*  Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.

**8.      Initial Disclosures:**

**The parties must exchange the initial disclosures required by Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information.**

The parties do not object to serving initial disclosures.

**9.      Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

No party requests a scheduling conference with the Court at this time.

**10.     Discovery Period:**

The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this court are assigned to one of the following three (3) discovery tracks:  (a) zero (0) months discovery period, (b) four (4) months discovery period, and (c) eight (8) months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

The parties will need discovery on liability and damages. Because the

pleadings are not complete—the Defendants have not yet filed answers or

counterclaims—there may be additional subjects on which the parties require discovery.

The parties may choose to seek discovery of attorney-client communications. In particular, Plaintiff may choose to argue that communications between Michelle Murphy and her attorneys are not privileged, either because Michelle Murphy has waived that privilege or because the crime-fraud exception applies. No Defendant has thus far agreed that communications with Michelle Murphy are discoverable.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery, or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties believe an 8-month discovery period will be sufficient.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

(a)   What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

None at this time, but the parties reserve the right to request such changes from the Court.

(b)   Is any party seeking discovery of electronically stored information?

  X   Yes             _____ No

If "yes,"

      (1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

Because the parties have not yet ascertained the full scope of discovery, the parties are not in a position to propose specific limitations on electronic discovery. The parties will address this issue in greater detail when discovery begins in earnest.

      (2)    The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native, method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

Plaintiff, the King Defendants, and the Beacham Defendants agree that electronically stored information may be produced in native format, in .pdf format, or in paper format—at the option of the producing party.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.   Other orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

Defendants have moved to stay discovery until the Court rules on their motions to dismiss.

**13.   Settlement Potential:**

(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on September 4, 2015, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.

For Plaintiff:
        Lead counsel:   s/ Wilmer Parker

For King Defendants:
        Lead counsel:   s/ John C. Rogers

For Beacham Defendants:
        Lead counsel:   s/ Mary Helen Moses

Other Participants:   Kimellen Tunkle
                          Millard Farmer

**(b)     All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(___)  A possibility of settlement before discovery.
( X )  A possibility of settlement after discovery.
(___)  A possibility of settlement, but a conference with the judge is needed.
(___)  No possibility of settlement.

(c)     Counsel (___) do or ( X ) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.

(d)     The following specific problems have created a hindrance to settlement of this case.

Without a ruling from the Court on the pending motions to dismiss and without answers (and potential counterclaims) from the Defendants, it is too early for the parties to seriously discuss the possibility of settlement.

## 14.    Trial by Magistrate Judge:

Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)     The parties (____) do consent to having this case tried before a magistrate judge of this court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ____ day of _____, 20____.

(b)     The parties ( X ) do not consent to having this case tried before a magistrate judge of this court.

| | |
|---|---|
| Counsel for Plaintiff: | s/ Wilmer Parker |
| Counsel for King Defendants: | s/ John C. Rogers |
| Counsel for Beacham Defendants: | s/ Mary Helen Moses |

*********************

**SCHEDULING ORDER**

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as modified herein:

_____

_____

_____

IT IS SO ORDERED, this _____ day of _____, 2015.

_____
UNITED STATES DISTRICT JUDGE