## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA NEWNAN DIVISION

**John H. Murphy,**
    **Plaintiff**,

       vs.                 Civil Action No.  3:15-cv-92-TCB

Millard C. Farmer, Jr.
Alfred L. King, Jr.,  Larry King, P.C.
Deborah L. Beacham and
My Advocate Center, Inc.
   **Defendants.**


### Millard Farmer's PRELIMINARY REPORT AND DISCOVERY PLAN

### Objections of Millard Farmer to the "Joint" Preliminary Report

Millard Farmer files his portion of the LR 16.2, NDGa required Joint Preliminary Report and Discovery Plan separately from the Report of the other parties, as  LR 16 provides that *pro se*  litigants are permitted to file separate statements.

Counsel for Plaintiff, John Harold Murphy, the King Defendants and the Advocate Defendants provided Millard Farmer with a copy of their portion of the 16.2, NDGa Joint Preliminary Report and Discovery Plan.

Millard Farmer files separately, for a stronger reason than the *pro se* exemption that he exercises.

Millard Farmer is unwilling to sign the Report's certificate of counsel, certifying that "the parties participated in settlement discussions," as this statement is false. Millard Farmer has other reasons for not signing the "Joint" Report.

Millard Farmer only certifies that he and others attended the conference.

Millard Farmer objects to counsel for John Harold Murphy's inflamatory, augumentative phrase that . . ."Farmer has coined **to describe his style of terroristic lawyering.**"

This former federal prosecutor, counsel for John Harold Murphy, knows that the use of the phrase **"terroristic lawyering"** in a LR16 Report at this point in our country's history, is, as it was intended, name calling, using an incendiary remark unsuitable for use in a Report that the accused party to the case is required to sign, or to which the accused party is required file an objection, as is filed here.

Such name calling in a Report of counsel for the parties to the Court by an experienced former Northern District prosecutor who knows the standards of the Court is a violation of the spirit and purpose of the Reporting obligation of LR 16.2.

The term **"terroristic lawyering"** as used in the Report is not innocent hyperbole. Frankly, counsel for Larry King, representing his interest should not have signed off on such an attack upon Millard Farmer, while failing to identify to the Court that his clients, the King Defendants, have been provided the protection of a release and

indemnity agreement through the effort of an attorney that his clients know is not engaging in **terroristic lawyering**, and who certainly should not be asked to endure such name calling in this litigation.

Instead of being the **"terroristic lawyer"** - - - this defendant is the lawyer, who with Larry King, changed the illegal conduct of the judges in the Coweta Judicial Circuit who were habitually violating the Uniform Superior Court Rule 3.1 mandated Case Management plan that now prevents the judge-shopping that allowed John Harold Murphy's counsel to select Judge A. Quillian Baldwin, Jr. with a false affidavit asserting that Nancy Michelle Murphy (or, "Michelle Murphy") was threatening to move to South Carolina with the children, when such move, even if though to be true was prohibited by the Standing Order of the Coweta Judicial Circuit upon filing of any domestic relations action.

The then mandated Uniform Superior Court Rule 3.1 that the Clerks of Court are ordered to enforce, Uniform Superior Court Rule 3.1 would have prevented the six different judges who served in the divorce case, involving the malpractice that allowed, the false affidavits of John Harold Murphy and the negligent execution of the QDRO that was the main issue in the malpractice case against Michelle Murphy's lawyer in the divorce case.

**Uniform Superior Court 3.1. Method of assignment**

In multi-judge circuits, unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. The clerk shall have no power or discretion in determining the judge to whom any case is assigned; the clerk's duties are ministerial only in this respect and the clerk's responsibility is to carry out the method of assignment established by the judges. The assignment system is designed to prevent any persons choosing the judge to whom an action is to be assigned; all persons are directed to refrain from attempting to affect such assignment in any way. If the order or the timing of filing is a factor in determining case assignment, neither the clerk nor any member of the clerk's staff shall disclose to any person the judge to whom a case is or will be assigned until such time as the case is in fact filed and assigned.

The enforcement of this right in the court was of great public concern and included well pled state and federal constitutional issues with the Judge Baldwin disqualifying motions that included other disqualifying issues.

Counsel for John Harold Murphy, at the LR 16.1 meeting of counsel at his offfice, instead of attempting to disfuse the unfriendly atmosphere of his office, chose, as his primary communication while standing as the others sat, to issue a threat only to Millard Farmer about the amount of discovery that John Harold Murphy was going to obtain in disregard of the attorney-client priviledge, as there was a crime exception

that would allow him to prevail in obtaining everything. John Harold Murphy's counsel warned that he was putting Millard Farmer on notice to retain all documents.

John Harold Murphy's counsel made no such threats to other counsel participating at the meeting, nor did he mention the all-inclusive release and indemnity agreement that provided protection to Millard Farmer, the King defendants and others attacked in the litigation.

The atmosphere at the meeting created by counsel for John Harold Murphy was not such that any discussion occurred about the "I, [the RICO Complaint], fall to pieces" issues. Some of these issues will be identified, as they strongly relate to the pending motions to dismiss.

The Local Rule 16.1 meeting ended with Millard Farmer wondering if the lawyer for John Harold Murphy was recording the meeting for John Harold Murphy to hear, or if counsel was justifiably insecure about sponsoring the false sworn statements that John Harold Murphy made in support of the corresponding grievance that he filed with the State Bar of Georgia against Millard Farmer.

In dealing with the now approximately twenty lawyers who have been employed by John Harold Murphy and Renee L. Haugerud, it is easy to observe each of this couple's new lawyers, more than five investigators, a public relations expert, Patrick Crosby, and over ten other experts beginning their assigned tasks by accepting John

Harold Murphy's representations to them as being accurate rather than carefully reviewing the public records.

John Harold Murphy has a serious problem, a symptom of which is that John Harold Murphy provides untruthful information to others, whether John Harold Murphy is under oath or not. Renee L. Haugerud also makes false statements relating to judicial issues and official documents, but not as a symptom of problems such as the problems of John Harold Murphy.

Another of the easily detectable indicators of John Harold Murphy's embedded, apparently incurable problem is his uncontrollable need to engage in numerous types of abusive conduct, which, since he has access to the financial resources of Renee L. Haugerud, includes litigation abusive conduct.

John Harold Murphy's attempt to become an active part of Renee L. Haugerud's hedge fund businesses, that is outside of his skill set, has apparently only worsened his problems.

Identifying these issues to opposing counsel could be beneficial in approaching a resolution of this case before John Harold Murphy and Renee L. Haugerud create problems for themselves that they seek for the Court to resolve by bringing litigation against persons who expose their conduct, including the illegal, abusive aspect of their conduct.

Frankly, there is not a legal solution for the problems of John Harold Murphy, while there is a legal solution for those whom John Harold Murphy wishes to abuse with litigation once John Harold Murphy no longer has access to members of the judiciary not politically dependent upon counsel engaged by John Harold Murphy.

## 1. Description of Case:

### (a)   Describe briefly the nature of this action.

John Harold Murphy and his counsel also filed a Complaint against Millard Farmer with the State Bar of Georgia. That Bar Complaint without its attachments, is **Exhibit 1**.

Millard Farmer responded to the Bar Complaint. That Response to the Bar Complaint, without its attachments, is **Exhibit 2**.

The State Bar dismissed the Complaint for the reason of the pending Superior Court of Coweta County litigation. That dismissal is **Exhibit 3**.

It is relevant to identify the history of the litigation involving John H. Murphy and Nancy Michelle Murphy, first, for the various abstention limitations, but also of equal importance, for the other reasons that follow; the Complaint of John Harold Murphy fails to comply with the RICO particularity pleading requirement, as the

following consideration eliminates the available predicate acts for the "enterprise" conduct that are necessary to sustains the Complaint.

### John H. Murphy's All-Inclusive Release and Indemnity Agreement of Parties

John Harold Murphy executed an all-inclusive, notarized contractual release and indemnification that includes Millard Farmer, his independent contractors, etc., including Alfred Lawrence King, Jr., (or, "Larry King") and a large universe of others who are covered by the release and indemnification.

John H. Murphy, while represented by counsel, received acknowledged valuable consideration for execution of the release and future indemnification to a very broad class of persons who were deserving of protection from the consequences of the problems that John Harold Murphy creates with litigation that were becoming obvious at the time of the required release and indemnification, as Renee L. Haugerud was attempting to address his problem.

The RICO asserted enterprise falls apart, as the predicate acts required to state this RICO cause of action are subject to the following immunities and restrictions, albeit that the predicate acts are falsely asserted, in spite of the two chances that John Murphy had to put together a Complaint; this failure and his other pleadings eliminate this Court's jurisdiction.

**OCGA § 9-3-33 The Statute of Limitations** provides, in part, that injuries to the reputation, which shall be brought within one year after the right of action accrues . . .

**OCGA § 51-5-8**. **Absolute privilege of allegations in pleadings**, as follows, with the Georgia courts' expansion of the following statutory privilege.

> All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. **However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous. [emphasis added]**

**OCGA § 51-5-7. Privileged communications.**

The following communications are deemed privileged:

> (1)  Statements made in good faith in the performance of a public duty;
>
> (2)  Statements made in good faith in the performance of a legal, or moral private duty;
>
> (3)  Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned;
>
> (4)  Statements made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue

of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1;

(5)   Fair and honest reports of the proceedings of legislative or judicial bodies;

(6)  Fair and honest reports of court proceedings;

(7)   Comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith;

(8)   Truthful reports of information received from any arresting officer or police authorities; and

(9)  Comments upon the acts of public men or public women in their public capacity and with reference thereto.

**OCGA § 9-12-40.** Judgment conclusive between which persons and on what issues.

### Res Judicata, Collateral estoppel, Estoppel by judgment

The above identified, privileged communications, statute of limitations, absolute privilege, of allegations in pleadings, and the all inclusive release and indemnity agreement of a broad universe of parties, are applicable in defense of the conduct designated as predicate acts or the continuity necessary to show a pattern of racketeering.

**The Publicity Expert of John Harold Murphy**

John Harold Murphy employed **Patrick Crosby**, a former United States District Court public relations consultant, to act as his publicity person.

As a part of this expert publicity program that was intended to be detrimental to Michelle Murphy and her lawyers and supporters, on one ocassion, a group of persons were hired to distribute large packets of material relating to the pending case labeled, "The Truth."

The packets were also placed on the windshields of cars parked outside the meeting area of community persons supporting Michelle Murphy, as Patrick Crosby stood in the doorway observing the conduct of the hired meeting disruping packet distributors.

This expert also established a webpage with information about the case depicting John Harold Murphy's and his spin on the facts. The problem with this expert's publicity campaign was that Michelle Murphy, with no money to employ such a sophisticated expert, had more community supporters than did John Harold Murphy and Renee L. Haugerud, some of whom John Harold Murphy now attacks in the litigation in this Court.

The Amended Complaint of John Harold Murphy and the Bar Complaint against Millard Farmer read much the same as the publicity material of John Harold

Murphy's expert publicity consultant, Patrick Crosby. Michelle Murphy and persons seeking to protect her from the abuse of John Harold Murphy and Renee L.Haugerud were entitled to as much of the First Amendment's protections as John Harold Murphy and Renee L. Haugerud purchased, just as persons against whom John Harold Murphy brings actions in this Court, the Superior Court of Coweta County, the Magistrate Court of Coweta County and the State Bar of Georgia are entitled to the due process protection of not having to litigate before every tribunal the consequences of John Harold Murphy's embedded problem.

For example, the RICO allegations strongly berates Millard Farmer for filing some "21" motions to disqualify Judge Baldwin. Similar to the defective allegations in his RICO complaint, John Harold Murphy does not explain the necessity of avoiding the *Hargis* waiver doctrine that is as follows,

> The idea that a party could allow a judge whom the party believes to be disqualified to continue to preside over the case without objection, only later to urge the disqualification, is inconsistent with the principles of fair play and judicial economy that are embodied in the requirement that a motion to recuse be filed promptly. Accordingly, the claim of disqualification in this case was not properly preserved for appellate review, and the Court of Appeals ought not have reached the merits of that claim.
> *State v. Hargis*, 294 Ga. 818, 822-823 (Ga. 2014)

If the motions had not been continually filed, the judges in the Circuit would not have begun following the law and would not have recused themselves.

On one occasion, when Millard Farmer was engaged in a specially set case in Mississippi, and only Larry King appeared as counsel at a hearing at which he filed a plea to the jurisdiction that comported with the obligations under the *Hargis* doctrine, Judge Baldwin yelled at Larry King as if he were some wild vicious dog chasing a child, and at the end of the day cited both him and Millard Farmer, with contempt of court, albeit that Millard Farmer, as one of Michelle Murphy's two lawyers was not in Court, or ever provided an hearing before, or after the contempt. It was necessary for Millard Farmer to obtain the audio recording of this and other loud outbursts by Judge Baldwin from the court reporter to preserve the rights of Larry King and Michelle Murphy.

Counsel opposing John Harold Murphy have paid an unjustifiable price for following the law and making an absolutely necessary challenge to the judicial misconduct in the Coweta Judicial Circuit, that resulted in the self-imposed recusal of the all Coweta Judicial Circuit judges and an Order that the Clerks of Court enforce the mandated Uniform Superior Rule 3.1.

### The History of the Pleadings

The history and the content of the pleadings is relevant, as to time, *i.e.*, the Statute of Limitations, immunity, *i.e.*, absolute privilege of allegations in pleadings, privileged communications, *res judicata, collateral estoppel* and relevance of the use of information contained in the pleadings to explain the necessity of the conduct. It is with the following action that the Court determines just when and where the asserted predicate acts will fall to pieces, as Patsy Cline so well explains in the first two lines of her "truth," just as the defendants' motions to dismiss have attempted to explain.

*I fall to pieces*

*Each time I see you again,*

*I fall to pieces*

*[Like the alleged RICO enterprise, they don't have continuity]*

John Harold Murphy has run out of venues to serve as his abusive forums.  Listed below are a few.

**May 19, 2004 Divorce action filed,  *John Harold Murphy v. Nancy Michelle Murphy*, Superior Court of Troup County, Civil Action File No. 04-CV-494**

This action involved the false affidavit of John Harold Murphy about his stock options that he exercised within days of obtaining a contract of settlement with Michelle Murphy, without good faith and fair dealing.

14

**December 20, 2006 Divorce Decree**

**December 16, 2008 Malpractice Complaint filed,** *Nancy Michelle Murphy v. Delia Tedder Crouch*, **Superior Court of Coweta County,**
**Civil Action File No. 08V2137**   John Harold Murphy and Renee L. Haugerud

employed numerous lawyers to prevent Judge William F. Lee, Jr. from expanding

the action to include the misconduct of John Harold Murphy in attempting to retain

money that he had received from a combination of the malpractice of Michelle

Murphy's lawyer, an error of Judge Lee in signing an Order and the deception and

illegal conduct of John Harold Murphy


**February 1, 2011,   Mutual Release and Settlement Agreement between**
**John Harold Murphy and Nancy Michelle Murphy, in which Larry King first**
**appeared as an expert witness serving as an independent contractor of Millard**
**Farmer.**

   This Mutual Release provides for the indemnification of Millard Farmer, *et al*.,

Dee Crouch / Michelle Murphy, independent contractors and a broad universe of

others who, willing, or not were brought into that litigation by the Court in an attempt

to resolve his error in not preventing the malpractice.

**Renee L. Haugerud Trust check dated February 2, 2011 in the amount of**
**$150,000.00 was provided in full to Michelle Murphy**

**Crouch Insurance Carrier's  $65,000 payable to Millard Farmer was for the**
**disputed issues related to the malpractice Settlement contract**

**February 14, 2011  Dismissal with Prejudice**

**April 11, 2012    Complaint for Modification**

**June 25, 2014 Complaint, Superior Court of Fulton County**
**Nancy Michelle Murphy v. Nan Freeman,** *et al.*

   **(b)Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

   This case attempts to re-litigate state court issues, and therefore the state court issues are relevant to this court.

   John Harold Murphy divorced Michelle Murphy in 2006.

   On March 8, 2008, John Harold Murphy and Renee L. Haugerud were married in Walker County, Georgia by a Coweta Judicial Circuit Judge based an application for Marriage License made to the Probate Court of Troup County with false statements by John Harold Murphy and Renee L. Haugerud.  Coweta Judicial Circuit Judge Louis Jack Kirby, a personal friend of John Harold Murphy, used this false application to perform the marriage ceremony in Walker County, Georgia, in violation of Georgia law.

   In April, 2012, Michelle Murphy refused to move to the Chattanooga area to live with the children to accommodate John Harold Murphy and Renee L. Haugerud who had a residence at Lookout Mountain, Tennessee.

   In April 2012, John Harold Murphy filed a state court action to modify the child custody arrangement. Millard Farmer and Larry King represented Plaintiff's

ex-spouse in the child custody litigation. Defendant King withdrew to retire from the practice of law in September 2014.

In April 2012, John Harold Murphy, with a false statement, obtained an immediate in-chambers conference with Judge A. Quillian Baldwin, Jr. in violation of the Uniform Superior Court Rule 3.1 mandated case management plan.

**(c)   The legal issues to be tried are as follows:**

(i)      Whether Defendants violated state and federal racketeering laws and are liable for any other causes of action raised in the Amended Complaint or elsewhere,

(ii) Whether Millard Farmer, the King Defendants and others are protected by the Mutual Release and Settlement Agreement between John Harold Murphy and Michelle Murphy, and, if they are protected, the amount of damages Millard Farmer, the King Defendants and others are entitled to receive under the indemnification provisions; and other damages related to abusive litigation.,

 (iii)  Whether, if the case proceeds, Millard Farmer and others are entitled to recover for their damages incurred by John Harold Murphy, Renee L. Haugerud, Michael Williams Warner, Taylor Drake, Glover & Davis, P.C., and others who wish to damage those who have exposed the illegal conduct that has damaged them.

**(d)      The cases listed below (include both style and action number) are:**

17

**(1)   Pending Related Cases:**

*John Harold Murphy v. Nancy Michelle Murphy*
Civil Action No. 2012-V-413
Superior Court of Coweta County, Georgia

*Nancy Michelle Murphy v. Nan Freeman, et al.*
Civil Action No. 15-CV-109
Superior Court of Troup County, Georgia

*Beacham v. Federal Nat'l Mortgage Corporation, et al.*
Civil Action No. 1:15-cv-01608-WSD
U.S. District Court, Northern District of Georgia

**(2)   Previously Adjudicated Related Cases:**

*Nancy Michelle Murphy v. Delia Tedder Crouch*
Civil Action No. 08-V-2137
Superior Court of Coweta County, Georgia

**2. This case is complex because it possesses one (1) or more of the features listed below (please check):**

      _____ (1)   Unusually large number of parties
      ___x___ (2)   Unusually large number of claims or defenses
      ___x___ (3)   Factual issues are exceptionally complex
      ___x___ (4)   Greater than normal volume of evidence
      _____ (5)   Extended discovery period is needed
      _____ (6)   Problems locating or preserving evidence
      _____    (7) Pending parallel investigations or action by government
      _____ (8)   Multiple use of experts
      ___x___ (9)   Need for discovery outside United States boundaries
      _____ (10) Existence of highly technical issues and proof

**3. Counsel:**

   The following individually-named attorneys are hereby designated as lead counsel for the parties:

For Plaintiff:
        Wilmer Parker
        Maloy Jenkins Parker
        75 Fourteenth Street, 25th Floor
        Atlanta, GA  30309
        (404) 875-2700
        *parker@mjplawyers.com*

For Millard Farmer:
        Millard Farmer
        P.O. Box 1728
        Atlanta, GA 30301
        (404) 688-8116
        *millardfarmer@millardfarmer.com*

For King Defendants:
        Johannes S. Kingma
        John C. Rogers
        Carlock, Copeland & Stair, LLP
        191 Peachtree Street, Suite 3600
        Atlanta, GA  30303
        (404) 522-8220
        *jkingma@carlockcopeland.com*
        *jrogers@carlockcokpeland.com*

For Beacham and My Advocate Center, Inc.:
        Mary Helen Moses
        Mary Helen Moses, Esq., LLC
        P.O. Box 20673
        St. Simon's Island, GA 31522
        (912) 634-8550
        *maryhelenmoses@yahoo.com*

**4. Jurisdiction:**

**Is there any question regarding this Court's jurisdiction?**

__X__  Yes        __ No

If "yes," attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

The prior action pending doctrine and the issues raised in the defendants' Motion to dismiss calls for the Court to decline jurisdiction. Some of the cases that support this are contained in the motions to dismiss. There are state law immunity and other protections that justify this Court declining jurisdiction. The amount in controversy is less than $75,000 and the venue is improper.

**5. Parties to this Action:**

**(a)**  The following persons are necessary parties who have not been joined:

Renee L. Haugerud, Elizabeth F. Harwell, Taylor Drake and Judge A. Quillian Baldwin, Jr.

**(b)  The following persons are improperly joined as parties:**   None

**(c)  The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**  None

**(d)  The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6. Amendments to the Pleadings:**

Millard Farmer does not know if the Court will grant the motions to dismiss and therefore has not filed an Answer and other defenses that will dictate the response to this inquiry.

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.**

**(a) List separately any amendments to the pleadings which the parties anticipate will be necessary:**

The response to the following inquiries are premature, as the issues subject to litigation in the case depend upon pending state court matters and the decision of this Court on the pending motions to dismiss.

Millard Farmer objects to the time and conditional restriction imposed until there is a determination made by the Court concerning the Motions to Dismiss.

**(b) Amendments to the joint pleadings submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed will not be accepted for filing, unless otherwise permitted by law.**

**7. Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)   *Motions to Compel:*   before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.

(b) *Summary Judgment Motions:*   within twenty (20) days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.

(c) *Other Limited Motions:*   Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony:*   Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

## 8. Initial Disclosures:

**The parties must exchange the initial disclosures required by Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information.**

Millard Farmer objects to serving initial disclosures before the Court rules on the Motions to Dismiss and the right of the minor children to have a guardian ad litem for this litigation, which control the universe of documents that are subject to disclosure.

## 9. Request for Scheduling Conference:

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

Millard Farmer does not seek a scheduling conference with the Court at this time.

## 10.   Discovery Period:

The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this court are assigned to one of the following three (3) discovery tracks: (a) zero (0) months discovery period, (b) four (4) months discovery period, and (c) eight (8) months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

**Please state below the subjects on which discovery may be needed:**

The parties will need discovery on liability and damages. Because the pleadings

are not complete—the Defendants have not yet filed answers or counterclaims—

there may be additional subjects on which the parties require discovery.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery, or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

Millard Farmer believes an 8-month discovery period will be sufficient.

## 11.   Discovery Limitation and Discovery of Electronically Stored Information:

**(a)   What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

None at this time, but Millard Farmer reserves the right to request such

changes from the Court.

**(b) Is any party seeking discovery of electronically stored information?**

  __X__   Yes           __ No

**(1)   The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

Millard Farmer agrees that because the parties have not yet ascertained the full scope of discovery, the parties are not in a position to propose specific limitations on electronic discovery. The parties will address this issue in greater detail when discovery begins in earnest.

(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native, method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

Millard Farmer agrees with Plaintiff, the King Defendants, and the Beacham

Defendants that electronically stored information may be produced in native format,

in .pdf format, or in paper format—at the option of the producing party.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.  Other orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

Millard Farmer and other Defendants have moved to stay discovery until the Court rules on their motions to dismiss.

**13.  Settlement Potential:**

**(a)  Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on September 4, 2015, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.**

**(b)All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(___)  A possibility of settlement before discovery.
(__)  A possibility of settlement after discovery.
(___)  A possibility of settlement, but a conference with the judge is needed.
(__x)  No possibility of settlement.

**(c)  Counsel (___) do or (_X_) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.**

**(d)  The following specific problems have created a hindrance to settlement of this case.**

Millard Farmer asserts, without reservation, that this litigation and the Bar Complaint were brought by John Harold Murphy to disrupt the representation of Michelle Murphy in the state court litigation brought by John Harold Murphy, and

to improperly retaliate against Millard Farmer for exposing the case related illegal

conduct of John Harold Murphy and Renee L. Haugerud.

**14.   Trial by Magistrate Judge:**

Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)   The parties (_____) do consent to having this case tried before a magistrate judge of this court.   A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day of _____, 20_____.

(b)   The parties (_X_) do not consent to having this case tried before a magistrate judge of this court. Millard Farmer does not consent to having the case tried before a magistrate and requests a trial by a jury, if the case is not dismissed.

Respectfully submitted,

/s/ Millard Farmer
Millard Farmer
Georgia Bar No. 255300
P.O. Box 1728
Atlanta, GA  30301-1728
(404) 688-8116
*millardfarmer@millardfarmer.com*
**Counsel for Millard Farmer**

## CERTIFICATE OF COUNSEL

I certify that this pleading meets all requirements of the Local Rules of the United States District Court for the Northern District of Georgia, regarding margins, line spacing and that a 14 point, Times New Roman Font was used.

This 23rd day of September, 2015.

/s/Millard Farmer
Millard Farmer

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SCHEDULING ORDER

Upon review of the information contained in the Preliminary Report and Discovery Plan forms completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as modified herein:

_____

_____

_____

IT IS SO ORDERED, this ___ day of _____, 2015.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

## May 18, 2015 Bar Complaint

## Filed by John Harold Murphy

## (without Exhibits to Complaint)



### OFFICE OF THE GENERAL COUNSEL

To: **Millard C. Farmer** _____ (Attorney)

Re: **John Harold Murphy** _____

Date: **May 19, 2015** _____

**PLEASE NOTE THAT OUR OFFICE IS BEGINNING THE PROCESS OF GOING PAPERLESS.**

**SINCE MANY GRIEVANTS DO NOT HAVE ACCESS TO A COMPUTER, YOU MUST STILL SEND US AN ORIGINAL AND ONE COPY OF YOUR ANSWER. IN ADDITION, PLEASE E-MAIL A .PDF VERSION OF YOUR ANSWER TO OGCGRIEVANCE@GABAR.ORG. IF YOUR .PDF IS OVER 3 MBS PLEASE SEND IT IN SEPARATE EMAILS.**

The following Georgia Rules of Professional Conduct may apply to this grievance. Please respond to the identified potential ethical rule(s) violation(s). This preliminary form does not limit the Office of the General Counsel from investigating other potential ethical rule violations as the informal investigation proceeds.

☐ Rule 1.2 ☐ Rule 1.3 ☐ Rule 1.4 ☐ Rule 1.5

☑ Rule 1.6 ☑ Rule 1.7 ☐ Rule 1.15(I) ☐ Rule 1.15(II)

☐ Rule 1.16 ☑ Rule 3.2 ☑ Rule 3.3 ☑ Rule 3.4

☑ Rule 8.4 ☑ Other Rules: 3.1, 3.5, 3.6, 4.1

Additional Comments:

**Exhibit 1, Page 1 of 18**



# STATE BAR OF GEORGIA
# GRIEVANCE
# CONFIDENTIAL

MAY 18 2015

STATE

**PLEASE TYPE OR PRINT LEGIBLY IN BLACK INK ONLY**
**DO NOT ALTER THIS FORM**

**YOUR NAME:** (Mr./Mrs./Ms.)  Mr. John Harold Murphy

**MAILING ADDRESS:**  6501 Red Hook Plaza Suite 201       St. Thomas, USVI 00802
<div style="font-size:smaller">Street or P. O. Box                    City            State       Zip</div>

**YOUR PHONE NUMBERS:** (W) _____ (H) _____

**NAME OF THE ATTORNEY:**  Millard C. Farmer    GA Bar# 255300
<div style="font-size:smaller">Fill out a separate form for each attorney. Do not list law firms.</div>

**ADDRESS OF THE ATTORNEY:** P.O. Box 1728, Atlanta, GA 30301-1728

DATE OF FIRST CONTACT WITH ATTORNEY: Nov. 2010      DATE OF LAST CONTACT WITH ATTORNEY: Continuing

DOES THIS ATTORNEY CURRENTLY REPRESENT YOU? YES ☐ NO ☑   WAS THIS YOUR ATTORNEY?  YES ☐ NO ☑

IS YOUR CASE: CRIMINAL ☐ CIVIL ☑  CASE# Murphy v. Murphy, Civ. No. 2012-V-413

COUNTY: Coweta _____  OR FEDERAL DISTRICT: NORTHERN ☐  MIDDLE ☐  SOUTHERN ☐

## CLEARLY DESCRIBE YOUR COMPLAINT AND ATTACH SUPPORTING DOCUMENTS:

I believe Millard Farmer has violated Georgia Rules of Professional Conduct 1.2(a), 1.6(a), 3.1, 3.2, 3.3(a)(1), 3.3(a)(4),

3.4(a), 3.4(h), 3.5(c), 3.6, 3.7(a), 4.1(a), and 8.4(a) in furtherance of an extortionate scheme.

Please see attached narrative. Further supporting documents available on request.

_____

_____

_____

_____

_____

_____

_____

_____

If more space is needed, please attach other pages. Please do not write on the back.

**Return to:**   **State Bar of Georgia**
        **Office of the General Counsel**
        **104 Marietta Street, NW**
        **Suite 100**
        **Atlanta, Georgia 30303**

"I affirm that I have read and understand the information and instructions.
The information I have provided here is true to the best of my knowledge."

SIGNATURE: _____

DATE: _____

*OPTIONAL: PLEASE PROVIDE THE NAME AND PHONE NUMBER OF SOMEONE WE CAN CONTACT IF WE HAVE*
*DIFFICULTY CONTACTING YOU:*

NAME OF CONTACT PERSON:  Wilmer (Buddy) Parker, Esq.

PHONE NUMBERS OF CONTACT PERSON: (W) 404-875-2700       (H) 404-229-5198

Exhibit 1, Page 2 of 18

IF YOU HAVE A DISABILITY AND NEED ASSISTANCE IN THE GRIEVANCE PROCESS,
PLEASE CONTACT THE ADA COORDINATOR AT (404) 527-8720 OR (800) 334-6865.

Rev. 5/17/2011

# Maloy ∷ Jenkins ∷ Parker
*Attorneys At Law*

JAMES K. JENKINS•
W. BRUCE MALOY
WILMER PARKER••
 •  ALSO ADMITTED IN COLORADO
•• ALSO ADMITTED IN
    ALABAMA AND FLORIDA

TWENTY-FIFTH FLOOR
75 FOURTEENTH STREET, NW
ATLANTA, GEORGIA 30309

(404) 875-2700
FAX (404) 875-8757
www.mjplawyers.com

May 15, 2015

Paula Frederick, Esq.
State Bar of Georgia
Office of the General Counsel
104 Marietta Street, NW
Suite 100
Atlanta, Georgia 30303

      **Re: Millard C. Farmer**
      **Georgia Bar #255300**

Dear Ms. Frederick,

     On behalf of John H. Murphy, please find herein his verified Bar Grievance against Millard C. Farmer, Esq. An electronic version is also enclosed. In addition to the exhibits in support of the Bar Grievance, I am able to provide additional documents at your request. Please do not hesitate to contact me. Also, should you desire to question Mr. Murphy, I will be glad to arrange a mutually agreeable date for that purpose. Thank you.

             Sincerely yours,

             Wilmer Parker
             Counsel for
             John H. Murphy

CC: John H. Murphy

## Exhibit 1, Page 3 of 18

ATLANTA, GEORGIA | BOULDER, COLORADO

**Verified Bar Grievance Against Millard C. Farmer (Georgia Bar# 255300)**

**Filed by John H. Murphy[1]**

**Introduction and Summary[2]**

John H. Murphy and Michelle Murphy divorced in 2006. In 2012, John Murphy filed an action in the Superior Court of Coweta County seeking to modify the child custody provisions of the 2006 divorce decree. *See John Harold Murphy v. Nancy Michelle Murphy*, Civ. A. No. 2012-V-413 (Ga. Super. Ct., Coweta County, filed Apr. 11, 2012) (the "Child Custody Litigation"). Michelle Murphy is represented in the Child Custody Litigation by Millard C. Farmer.

It is now May 2015, and what should have been a simple child custody case adjudicated long ago instead has devolved into a three-year ordeal, with over 500 court filings due to Mr. Farmer's dilatory, unlawful, and unprofessional conduct. Throughout the case, Mr. Farmer has disregarded his ethical responsibilities and, even worse, his duties to his own client, by deploying illegal and unethical tactics that deliberately are designed to create chaos in the courtroom, in the judicial process, and in the lives of those to whom they are directed. He has not acted with any intention of achieving justice for his client, Michelle Murphy, or her children, the subjects of the custody action. Instead, he has imported his "Conflictineering"[3] program from his death penalty litigation practice into a child custody case (in which the laws of the State of Georgia mandate that the primary concern must be the children's best interests), as a means of wreaking havoc and

---

[1] Wilmer Parker of Maloy Jenkins Parker has been engaged by Mr. Murphy to assist him in filing this Bar grievance and to examine possible future litigation against Mr. Farmer. Mr. Parker, who is not involved in the pending Child Custody Litigation in any way, conducted an independent review of Mr. Farmer's conduct in connection with the preparation of this Bar grievance.

[2] Mr. Murphy has verified each of the facts and events discussed in this Grievance.

[3] "Conflictineering" is the term Mr. Farmer has coined to describe his style of terroristic lawyering. Mr. Farmer even has published a guide to his methodology for misusing the legal process to extract unwarranted concessions. The Introduction to this guide can be found at http://www.goextranet.net/Seminars/Conflictineering/IntroductionAll.htm

**Exhibit 1, Page 4 of 18**
Page 1 of 15

creating "chaos" to seek to extort money and litigation concessions from John Murphy and his current wife. These tactics have resulted in Mr. Farmer's violation of numerous Georgia Rules of Professional Conduct, all with the goal of pressuring Mr. Murphy to pay excessive "attorney's fees" to make Mr. Farmer go away.

Among other violations too numerous to specify, Mr. Farmer has attempted to influence and control the testimony of witnesses in the Child Custody Litigation by threatening to divulge confidential information and "making trouble" for them professionally as well as personally; he has violated the attorney-client privilege by divulging confidential information regarding a former client in public filings; and he has attempted to pressure a judge by promising to drop frivolous and retaliatory litigation  that he commenced against that judge's court reporter if the judge vacated his order awarding temporary custody to John Murphy.

In addition, Mr. Farmer has filed more than twenty recusal motions alleging that every single one of the Coweta County Superior Court Judges and several Georgia Court of Appeals Judges are violating their oath of duty and engaging in unconstitutional conduct. By and through his multitude of recusal motions, he imposes abuse and delay into a case involving children who grow older by the day, questions the integrity of the Georgia judiciary, and implies that its members place their own financial and other interests above the interests of justice and the public, all without presenting any competent evidence. Mr. Farmer's actions in the Child Custody Litigation and in multiple interlocutory appeals through the Georgia appellate courts (*see Murphy v. Murphy*, 322 Ga. App. 829 (2013), *aff'd but criticized*, 295 Ga. 376 (2014); *Murphy v. Murphy*, 328 Ga. App. 767 (2014), *recons. denied, cert. denied*; *Murphy v. Murphy* 330 Ga. App. 169 (2014), *recons. denied, cert. denied, recons. denied*), have been recognized as disruptive, meritless, frivolous, and "antithetical to the children's best interests." *Murphy v.*

*Murphy*, 328 Ga. App. 767, 774 (2014). These actions were taken deliberately to impact and interfere with the judicial process, all in furtherance of Mr. Farmer's overarching extortionate scheme of pressuring John Murphy to abandon his claims in the custody case and pay Mr. Farmer $500,000 or more to go away.

As is customary in Georgia custody cases, the Court appointed a Guardian ad Litem to represent the interests of the children and a licensed Georgia psychologist to investigate, analyze, and assist with the Court's review of the domestic situation presented in the Child Custody Litigation. Because these appointments by the Court created a risk that his client's parenting would be subjected to independent professional scrutiny and his scheme to extort would collapse, each of these individuals became additional targets for recusal motions and intimidation by Mr. Farmer. As a result, both the initial Guardian ad Litem and the initial custody evaluator withdrew from the case, rather than continue to endure Mr. Farmer's abusive and unwarranted attacks.

A partial listing of the specific ethical violations committed by Mr. Farmer is presented below. Several of these rules and standards governing the practice of law in Georgia explicitly provide that in the instance of even a single violation, disbarment is an available penalty.[4] Considered individually, any of Mr. Farmer's knowing and intentional violations warrant serious discipline and potential disbarment. Considered cumulatively, Mr. Farmer's conduct warrants the most severe action possible by the Bar, to make clear in no uncertain terms that such conduct will not be tolerated and to reinforce the standards of ethics, professionalism, and integrity required of attorneys admitted to the practice of law in Georgia.

---

[4] Specifically, the following Rules of Professional Conduct ("Rules") are implicated by Mr. Farmer's conduct and provide for disbarment as the maximum penalty: Rule 1.2(a); Rule 1.6(a); Rule 3.3(a); Rule 3.4; Rule 3.5; Rule 4.1; Rule 4.2(a); and Rule 8.4(a).

## Georgia Rules of Professional Conduct Implicated By Mr. Farmer's Conduct

1.    Rule 1.6(a): "A lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these Rules or other law, or by order of the Court."

Mr. Farmer previously had an unrelated attorney-client relationship with Dr. Patricia Nice, a child psychiatrist in Newnan, Georgia. Scheming to leverage and take advantage of that unique relationship, Mr. Farmer brought Dr. Nice into the Custody Litigation, with the goal of having Dr. Nice testify in the manner he dictated in support of his client, Michelle Murphy. Owing to that relationship and expectation, Mr. Farmer pressured Dr. Nice to suppress certain testimony and provide his own programmed testimony in a hearing on November 15, 2012.

Mr. Farmer also attempted to pressure Dr. Nice to provide favorable testimony for his client at a hearing on August 13, 2013. When Dr. Nice failed to capitulate to Mr. Farmer's demands in connection with the August 13, 2013 hearing, he commenced relentless attacks upon her. Specifically, as he had threatened in advance to do, Mr. Farmer divulged, in a series of public filings in the Child Custody Case, confidential, sensitive, and embarrassing information regarding Dr. Nice initially obtained in the course of his prior representation of her. *See*, among many others in the trial and appellate courts, filings by Mr. Farmer on August 19, 2013, August 28, 2013, and September 13, 2013. (Copies of these pleadings, each in excess of 40 pages, are included in an electronic format submitted along with the electronic version of this Bar Grievance). Mr. Farmer disclosed this information, and characterized her publicly as the "pill-

popping psychiatrist," to punish Dr. Nice for testifying truthfully by publicly humiliating her and attempting to destroy her professional and personal reputations.

2.      Rule 3.5(a): "A lawyer shall not, without regard to whether the lawyer represents a client in the matter seek to influence a judge, juror, prospective juror or other official by means prohibited by law."

After filing specious litigation against Ms. Nan Freeman (the court reporter for Chief Judge Quillian Baldwin, who at the time was the judge in the Child Custody Litigation), Mr. Farmer approached Mr. Ken Gordon (Ms. Freeman's attorney in the litigation Mr. Farmer brought against her) and proposed that (a) if Mr. Gordon or Ms. Freeman "persuaded" Judge Baldwin to recuse himself from the Child Custody Litigation and vacate all prior orders entered in that litigation (including the order granting temporary custody of the minor children to Mr. Murphy), then (b) Mr. Farmer would dismiss his litigation against Ms. Freeman. This overture by Mr. Farmer constituted an attempt to pressure, if not bribe, a judicial officer in violation of O.C.G.A. § 16-10-97. Mr. Gordon has signed an affidavit regarding the details of this violation by Mr. Farmer. A copy of Mr. Gordon's affidavit is attached as **Exhibit 1**.

3.      Rule 3.1: "In the representation of a client, a lawyer shall not: (a) file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injury another; (b) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law."

Mr. Farmer has engaged in an extraordinary sequence of filings intended solely to delay the Child Custody Litigation and harass and maliciously injure John Murphy, Mr. Murphy's

current wife (Renee Haugerud), Judge Baldwin, both Guardians ad Litem, both custody evaluators, and court reporter, Nan Freeman.  As a result of Mr. Farmer's tactics, this simple custody litigation has languished over three years (Mr. Murphy filed the litigation in April 2012).  Mr. Farmer's filings repeatedly have been found to be frivolous, both by Judge Baldwin and by the Georgia Court of Appeals.  Copies of two orders from the Court of Appeals regarding Mr. Farmer's dilatory and frivolous appeals are attached as **Exhibits 2** and **3**.  The following orders of Judge Baldwin relative to Mr. Farmer's frivolous filings also are attached: (a) January 11, 2013 Order dismissing purported third-party claims against Ms. Haugerud (Mr. Murphy's wife) (**Exhibit 4**); (b) November 19, 2013 Order finding Mr. Farmer in criminal contempt (**Exhibit 5**); (c) March 13, 2014 Order imposing multiple limitations and requirements for future filings in light of the "lack of decorum witnessed in this Court" (**Exhibit 6**); (d) June 5, 2014 Order noting Mr. Farmer's "constant objections and interruptions on issues that the Court already ruled on numerous times" (**Exhibit 7**); and (e) October 20, 2014 Order requiring Mr. Farmer to submit a "Request to File" further filings, in light of Mr. Farmer's prior submission of filings that were "frivolous, malicious, vexatious and redundant" (**Exhibit 8**).

4.      Rule 3.2: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

As noted above, this simple custody case has endured over three years.  The docket sheet, **Exhibit 9**, contains well over 500 entries, which do not include the various "Requests to File" by Mr. Farmer made after the October 20, 2014 Order (**Exhibit 8**) that were rejected by the trial court as patently frivolous.  The vast majority of the 500 docket entries in this case were filed by Mr. Farmer or were caused directly by Mr. Farmer's conduct and tactics.

5.      Rule 3.3(a)(1): "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal," and Rule 3.3(a)(4), which states that "A lawyer shall not knowingly offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

The instances of Mr. Farmer's untrue accusations are too numerous to catalog, but they concern every single participant in the Child Custody Litigation including Judge Baldwin, his official court reporter, the court-appointed Guardians ad Litem, Mr. Farmer's own former client (Dr. Nice), other court-appointed professionals, and, of course, Mr. Murphy and his current wife. One specific misrepresentation is worthy of identification because it explicitly was reviewed and noted by the trial and appellate courts.  Specifically, Mr. Farmer repeatedly has accused the current Guardian ad Litem (Elizabeth "Lisa" Harwell) of "stealing" funds from her GAL trust account.  Judge Baldwin properly rejected this untrue accusation as a "misrepresentation" by Mr. Farmer (Ms. Harwell used the funds to defray her costs of visiting the minor children at Mr. Murphy's residence). The trial court's December 4, 2013 Order explicitly found that Mr. Farmer, in a court filing, "again state[d] his misrepresentations that [Ms. Harwell] converted funds for personal use when [Mr. Farmer] is well aware that [Ms. Harwell] used funds provided by the Plaintiff for the GAL for travel expenses she incurred to meet with the children." The Georgia Court of Appeals rejected a challenge to this ruling by Mr. Farmer, ruling that he "simply and frivolously mischaracterizes the Guardian ad Litem's actions as law-breaking and her conduct as the illegal, unlawful conversion of money she held in trust." *Murphy*, 328 Ga. App. at 773.

6.      Rule 3.4(a): "A lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

Mr. Farmer participated in a scheme with his client (Michelle Murphy) and a minor child to (a) have the minor child travel to visit with the children who are the subject of the Child Custody Litigation; (b) manufacture false evidence purporting to show abusive conduct by Mr. Murphy; and (c) download his false evidence to Mr. Farmer and his paralegal.

In addition, Mr. Farmer delayed and attempted to prevent an independent determination of serious parenting concerns regarding his client by intimidating and threatening the professional psychologist appointed by the court to conduct a full custody evaluation, Dr. Nancy McGarrah, through a series of inappropriate communications and other intimidation tactics, ultimately forcing her to withdraw from the case. *See* Mr. Farmer's letter to Dr. McGarrah dated March 18, 2014 (Farmer writing the day before she moved to withdraw as the custody evaluator on March 19, 2014) (**Exhibit 10**).

7. Rule 4.4: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

Mr. Farmer's terroristic "Conflictineering" approach to litigation rests on making every possible effort to embarrass and attack the participants in a judicial proceeding to create "chaos," to delay, prolong and hinder the course of litigation, and to cause those individuals to capitulate to Mr. Farmer's extortionate demands without regard to the actual merits of the underlying dispute. Although the examples of such means by Mr. Farmer in this case are too numerous to list, the manner in which he has attacked the Guardians ad Litem, the licensed Georgia psychologists appointed by the Court, his former client (Dr. Nice), the official court reporter, the court itself, and above all, John Murphy and his current wife, leave no doubt that he willfully has transgressed Rule 4.4 on a constant basis throughout the Child Custody Litigation.

Moreover, when Mr. Murphy told one of his sons ("J.M.") on June 9, 2014 that he would be taking away his mobile phone to enforce the "no contact" ban the trial court ordered on June 5, 2014, Ms. Murphy and Mr. Farmer counseled J.M. to run away from home. Mr. Murphy notified the local authorities, frantically looked for his son, and urged J.M. to divulge his location. Ms. Murphy and Mr. Farmer further coached J.M. to seek to elicit litigation concessions from Mr. Murphy as a condition of his safe return (specifically, a written statement from Mr. Murphy to his own counsel, and Mr. Farmer stating that he agreed J.M. should be returned to Newnan and the custody of Ms. Murphy)

      8.     Rule 3.5(c): "A lawyer shall not, without regard to whether the lawyer represents a client in the matter engage in conduct intended to disrupt a tribunal."

Mr. Farmer repeatedly has engaged in "conduct intended to disrupt [this] tribunal," including, but not limited to: violating and counseling his client to violate court orders; making rude and inappropriate remarks in pleadings and briefs regarding Judge Baldwin, opposing counsel as well as Mr. Murphy and his current spouse; filing over twenty motions to recuse; and consistently interrupting or speaking over Judge Baldwin and opposing counsel in hearings. Mr. Farmer's commentary has disrupted the proceedings and, more importantly, attempted to obscure and taken away resources from the critical issue of the children's best interests.

The Georgia Court of Appeals upheld the lower court's order of contempt against Mr. Farmer for "discussing the issues, allegations, and claims in [the custody case] with the children and that such discussions are not necessary to implement the terms of the August [23] Order." 330 Ga. App. 169, 174 (2014), *recons. denied, cert. denied, recons. denied.*

The Georgia Court of Appeals also has characterized Mr. Farmer's arguments in a separate appeal as "frivolous." 328 Ga. App. 767, 773 (2014), *recons. denied, cert. denied.* It

further concluded that Mr. Farmer "has appealed purely for the purpose of delaying John Murphy's custody modification petition – an act that is antithetical to the children's best interests." *Id.* at 774. The court also found that Mr. Farmer repeatedly had violated Georgia Courts of Appeals Rule 10, particularly with respect to Mr. Murphy's wife. *Id.* at 773, 774.

Although Mr. Farmer's theatrics have disrupted virtually every hearing in the Child Custody Litigation, the two most recent hearings are illustrative. On March 17, 2014, Mr. Farmer made demeaning statements toward Judge Baldwin, argued with the Court, and uselessly interrogated Dr. McGarrah about irrelevant issues. *See, e.g.*, Tr. (Mar. 17, 2014) at 16:1-2, 53:9-10, 134:18-25, 66:1-7, 68:8-9, 68:24-69:3 (excerpts attached as **Exhibit 11**). On May 27, 2014, the trial court could not complete a hearing in the Child Custody Litigation due to Mr. Farmer's constant interruptions and deliberate objections. *See* June 5, 2014 Order (**Exhibit 7**).

9. Rule 3.6: "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a person would reasonably believe to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

Mr. Farmer has supported and participated in Michelle Murphy's "social media" campaign, pursuant to which innumerable defamatory statements regarding Mr. Murphy, his wife, his attorneys, Judge Baldwin, court reporter Nan Freeman, both custody evaluators (Dr. Nancy McGarrah and Dr. Betty Nice), and both Guardian ad Litems have been broadcast over the Internet and even over the public airwaves. Among other things, Mr. Farmer wrote a letter to Michelle Murphy's "social media" followers in December of 2014, which letter was posted on Michelle Murphy's Facebook page and website. **Exhibit 12**. Mr. Farmer also has participated in

"town hall" meetings in Newnan, Georgia (the venue of the Child Custody Litigation) in which numerous defamatory statements have been disseminated. All of this conduct is intended to bring illegitimate pressure on Mr. Murphy and his wife to relinquish the claims in the Child Custody Litigation and to pay Mr. Farmer his extortionate demanded fees of $500,000 or more to terminate the case.

10.     Rule 3.7(a): "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:  (1) the testimony relates to an uncontested issue or . . . (3) disqualification of the lawyer would work substantial hardship on the client."

Mr. Farmer repeatedly has testified, through his own sworn affidavit testimony, to contested issues of fact that are material to the custody matters at issue. Although Mr. Farmer occasionally has submitted affidavits from Michelle Murphy or the minor children, virtually all of his frivolous and incendiary filings are supported by nothing more than his own conclusory affidavits. As shown by the example attached as **Exhibit 13**, Mr. Farmer's affidavits state in conclusory fashion that the innumerable false "facts contained in" in his filings (many of which run well in excess of 100 pages) are "true and correct to the best of the knowledge of Millard Farmer." *See* **Exhibit 13**, at 1. Mr. Farmer then testifies that facts "that are obviously derived from hearsay information from other parties reflect information that Millard Farmer believes to be accurate and correct." *Id.* at 2. Mr. Farmer also vouches for any "opinions" in his filings by stating such opinions "are those of Millard Farmer, based on information that he has received and his experience." *Id.* at 2.

Mr. Farmer also repeatedly has testified to factual issues in pleadings and in open Court. *See, e.g.,* Tr. (Aug. 13, 2013), at 11; Tr. (Mar. 17, 2014), at 59; Tr. (May 27, 2014), at 13-14. (all attached as **Exhibit 14**). Mr. Farmer's testimony in open court is troubling on many levels,

including that his testimony is not subject to cross-examination as would be any other witness's testimony.

11.     Rule 4.1(a): "In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person."

On June 9, 2014 (the same date that J.M. ran away from home, as discussed above), Mr. Farmer made a false report of child abuse against Mr. Murphy to the Department of Human Resources for the U.S. Virgin Islands (VI-DHS).  As a result of this false report, a representative from VI-DHS visited Mr. Murphy at his residence in St. Thomas, U.S. Virgin Islands, and conducted detailed interrogations of Mr. Murphy and his wife, as well as thoroughly inspecting their residence (later, this same official returned and spoke at length with the Children as well as the Guardian ad Litem).  The filing of this false report and the resulting investigation by VI-DHS resulted in Mr. Murphy being delayed for several hours in his efforts to search for J.M.

In early October 2014, Mr. Farmer made another false report of child abuse against Mr. Murphy to the Tennessee Department of Children's Services ("TDCS").  As a result of this second false report, a representative of TDCS visited Mr. Murphy and his current wife at their Chattanooga home and questioned them. Neither of these "investigations" yielded any evidence whatsoever that supports the false claims of child abuse made by Mr. Farmer.

Following their comprehensive and categorical investigations prompted by Mr. Farmer's filing of these false reports, both VI-DHS and TDCS  closed their files having found no evidence whatsoever to support the false reports

Moreover, as noted above, Mr. Farmer has been an active participant in Michelle Murphy's "social media" campaign, including participating in two "town hall" meetings in

September 2014 and writing a letter to her "supporters" in December 2014.  These publications contain numerous misstatements regarding the Child Custody Litigation.

12.     Rule 8.4(a): "It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to: (1) violate or knowingly attempt to violate the Georgia Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ... (4) engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation ....(b)(ii) state and ability to achieve results by means that violate the Rules of Professional Conduct or other law ...."

Mr. Farmer has engaged in a course of conduct and perpetrated a scheme to violate, on numerous occasions, the Georgia Rules of Professional Conduct, as well as Georgia and United States of America criminal laws, all in furtherance of his effort to extort monies from John Murphy and his spouse.  Mr. Farmer further has published and widely disseminated his "Conflictineering" techniques for engaging in terroristic lawyering as a means of achieving litigation results based entirely on humiliation, intimidation, and other improper and illegal tactics, rather than based on the factual and legal merits of a party's position in litigation.  Mr. Farmer's conduct demeans the State Bar of Georgia and the legal profession as a whole.

13.     Rule 1.2(a): "A lawyer shall abide by a client's decision whether to settle a matter."

Based upon direct communications from Michelle Murphy and the minor children, Mr. Farmer has required his client to transfer complete authority and control of the case and all pertinent decisions affecting it exclusively to him. Based upon these same sources, and evidencing this unethical arrangement, Mr. Farmer recently refused to abide by his client's

wishes relative to mediation of the Child Custody Litigation and instead insisted that he must be paid approximately $500,000 as a non-negotiable condition of any negotiated settlement.

### Request for Investigation, Discipline, and Other Relief

Mr. Murphy respectfully requests that the Bar investigate fully each of the foregoing allegations; provide Mr. Farmer with an opportunity to be heard and defend the allegations; and recommend the maximum available punishment for Mr. Farmer's ethical violations.

Mr. Murphy will provide the Bar with any additional evidence and information desired regarding any of the foregoing violations as promptly as possible. Mr. Murphy requests and authorizes any request for additional information to be made to his counsel in connection with this Bar grievance, Wilmer Parker of Maloy Jenkins Parker.

Mr. Murphy further respectfully requests that, if and to the extent the Bar determines Mr. Farmer has violated any criminal statute, it refer the matter to the appropriate district attorney for criminal prosecution in accordance with Rule 21 of the Rules of Conduct and Procedure of the Investigative Panel State Disciplinary Board.

Mr. Murphy further requests any other relief the Bar considers just and proper.

DATED: May 15, 2015

Contact information:

Wilmer Parker, III
Maloy Jenkins Parker
75 Fourteenth Street N.W., 25th Floor
Atlanta, GA 30309
404-875-2700
parker@mjplawyers.com

John H. Murphy
6501 Red Hook Plaza
Suite 201
St. Thomas, USVI 00802

## VERIFICATION OF JOHN H. MURPHY

I, John H. Murphy, having first been duly sworn, do hereby declare, certify, verify, and state under penalties of perjury that the above and foregoing factual assertions within this narrative of my Bar Grievance against Millard C. Farmer are true and correct to the best of my personal knowledge and belief. So stated this _15th_ day of May, 2015.

John H. Murphy

SUBSCRIBED and SWORN before me

this _15th_ day of May, 2015

Notary Public

Thomas Brian Pierce
Notary Public, State Of New York
No. 01PI6135084
Qualified In New York County
Comission Expires 03/30/2018

**Exhibit 4, Page 18 of 18**

**Exhibit 2**

**Millard Farmer's Response to**

**Bar Complaint of John Harold Murphy**

**(without attachments)**

## State Bar of Georgia

**John Harold Murphy (or, "John Murphy"), Grievant** to State Bar **and Plaintiff** in federal RICO action, No. 3:15-cv-92-TCB, filed two complaints (prepared by Wilmer "Buddy" Parker, Georgia Bar No. 563550) **vs.**

**Millard Farmer 255300, Respondent**, counsel for Michelle Murphy in actions involving John Murphy and Renee L. Haugerud. that include over 5,000 record pages in which John Murphy and Renee L. Haugerud were and still are represented in various forums by 10 or more lawyers in four or more law firms.

**1. Wilmer "Buddy" Parker's** website identifies him as "having **special expertise in tax, money-laundering, forfeiture (both inside the United States and internationally.)**" Buddy Parker is further identified as, "among the world's leading Business Crime Defense and Investigation Lawyers, and a "**Super Lawyer" in the area of white collar crime**. See, http://www.mjplawyers.com/parker.html

1.1  Before and after Buddy Parker was brought into the case, John Murphy and Renee L. Haugerud were, and still are, represented in the ongoing modification of custody case by counsel of record: Taylor B. Drake, Michael W. Warner, Peter A. Durham, Glover & Davis P.A, Stephen E. Hudson, William R. Poplin, Jr., and Kilpatrick Townsend & Stockton LLP; and, in St. Thomas, USVI, they are represented by the Kellerhals, Ferguson and Kroblin lawyers. The Attorney General, at times represents Judge A. Quillian Baldwin, Jr., and his former official court reporter is represented by Kenneth Lamar Gordon; Cynthia Clanton is a lawyer with the Administrative Office of the Courts who is involved by restricting Millard Farmer's contact with State Agency witnesses and by engaging  in *ex parte* communications.

**Note:  The Response follows**. **The Motion to Dismiss includes Referenced Exhibits.**

1.2   Buddy Parker, as counsel for John Murphy, brings the Bar Complaint against Millard Farmer based upon John Murphy's false swearing and an erroneous and unconstitutional interpretation of the Code of Judicial Conduct and State Bar's use of it to prosecute Millard Farmer. John Murphy concurrently brought a federal RICO Complaint against Millard Farmer and persons/entities assisting Michelle Murphy in protecting the best interest of her boys, T.M., age 14 and J.M., age 16, who wish to live with their mother, as they have lived most of their lives with her.

1.3   Michelle Murphy has never been provided any funds to defend the best interest of her children. Funds for the actions against her and Millard Farmer are most likely

derived from Renee L. Haugerud and/or her businesses, including Galtere, Ltd.

1.4   These Bar and RICO charges are brought against Millard Farmer as the result of Millard Farmer's absolutely necessary challenges to the illegal selection of Judge Baldwin, as the sole trier of fact in the modification of custody case that John Murphy brought against Michelle Murphy. **Ex 1, p.4**

1.5   Judge Baldwin was selected by Taylor Drake to fulfill a political obligation that Judge Baldwin owes to Glover & Davis lawyers, who engage in judge shopping. *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114 (2012) **Ex 1 p. 4**

1.6   Millard Farmer [State Bar. No. 255300, the licensed lawyer who became the moniker credited with the litigation aspect of the hard work of statistics compiling law students and paralegals who were committed to changing the unconstitutional jury compositions, i.e., triers of fact, in the South] **Ex 4, pp. 10, 73**

1.7   The change, over a 40 year period of time, county by county, and state by state, took place with great resistance from most of the judges in the State of Georgia.

1.8   This and the following section is included is to say that, while Michelle Murphy and Larry King were unaware of the judicial retaliation that they could possibly suffer, Millard Farmer, after the first conference with Judge Baldwin, knew two things - - - Millard Farmer had to challenge this trier of fact, as he had done for 40 years, or leave the case. Larry King chose to stay with the case; he and Michelle Murphy did not have the experience with judicial disqualifications to make an informed decision, but both knew that Judge Baldwin would not be impartial.

1.9   Millard Farmer knew the only way for Michelle Murphy to obtain a fair trier was for Judge Baldwin to be disqualified. Judge Baldwin's lack of knowledge of the law left him too weak to withstand the political pressure of Glover & Davis, which also represented Coweta County that provided Judge Baldwin a salary supplement.

1.10    The central legal issues in this case were the detriment of the selection of Judge Baldwin as the exclusive trier of fact by Taylor Drake and Judge Baldwin's

appointment of the also biased guardian ad litem, who was a practicing lawyer beholding to the judge selection system by judicially affiliated lawyers. **Ex 6, p. 7**

1.11     In a modification of custody case, the judge is the sole trier of fact. When the judicial system permits a judge such as Judge Baldwin, to be illegally handpicked, the obligation upon counsel becomes even greater than in cases where there is a jury, as the standard of appellate review of the judge's decisions, as the sole trier of fact, become almost impossible to reverse. Judge Baldwin was an illegal trier of fact.

2.  The retaliation against Millard Farmer and Michelle Murphy for exposure of the illegal conduct of Taylor Drake and Judge Baldwin is not very different, although a bit more sophisticated that Millard Farmer endured during the forty years of bringing challenges to the illegal compositions of juries, *i.e.,* illegally selected triers of fact.

2.1   Many people today believe that the Courts just made changes in the selection of the trier of fact system. It did not happen in that way. Most State courts yielded to public opinion that was often expressed with threats of violence to prevent change.

2.2   Persons working with Millard Farmer had their car windows smashed and even their loved ones had their car windows smashed when they would visit. **Ex 4, p. 3**

2.3   One young lawyer working with Millard Farmer, appearing at his first hearing alone, was asked by the District Attorney to step outside the courtroom to discuss a matter. It was outside the courtroom door that the lawyer was then struck by the District Attorney before the lawyer ran back into the courtroom for protection.

2.4   In another county, Millard Farmer was struck in the face by the Sheriff when Millard Farmer appeared in Court to litigate another lawyer being struck by a Deputy Sheriff for exposing the Deputy's misconduct during a hearing.

2.5   Millard Farmer has been warned by a District Attorney that if he appeared back before a court again to expose the perjured testimony of an expert witness that he would be indicted by the District Attorney -- and prosecuted.

2.6   Millard Farmer, after one trial that concluded with a favorable result, was taken

to a house for safekeeping. When Millard Farmer was located, persons began driving by the house in pickup trucks and throwing stones onto the roof of the house. The homeowner feared her house being set on fire and called for assistance from some community people, as she was afraid the Sheriff would offer no help. Several large men escorted Millard Farmer from the house and pushed him onto the floor of the back of a car and drove around until the car was no longer followed. Millard Farmer was then told to get off the floor of the car and taken to a safe location.

2.7   The driver of the car, after been thanked, informed Millard Farmer that he was not "for or against him or the Judge," but just did not want Millard Farmer hurt because the driver had been the jury foreman and did not believe it was fair for Millard Farmer, or the people helping him, to be hurt.

2.8   In another incident, Millard Farmer and the people working with him had their car struck by a bullet as they were driving from a town where they had been working.

2.9   Judges, not so different from Judge Baldwin, have had Millard Farmer put in jail for no legal reason but for the judge's anger that Millard Farmer attempted to obtain a universe of potential triers of fact who were constitutionally composed.

2.10   The incidents of attempted physical violence are not the most feared. The most feared incidents are the incidents such as those involving Judge Baldwin, because they are accompanied by harm to persons other than Millard Farmer and people working with him, whom assume the risk, as the price for seeking change.

2.11   Millard Farmer has a strong memory of sitting at the residence of a Governor awaiting a decision about a stay of execution when the Governor, a lawyer, asked him to explain how he had such faith in the judicial system. Millard Farmer made his case for belief in the federal system. The Governor, keen to demonstrate that corruption did not stop at the door of the federal courthouse, got a federal judge on the phone to ask how and when case seeking a stay of execution would be decided. The polite governor then offered Millard Farmer the opportunity to either go to the

prison for the execution, or the opportunity to remain in his residence for a meal until there was an Order that would not allow time to have to witness the execution.

3. Millard Farmer, without other ethical choices, made the decision to trust the system, including the regulatory authorities, by continuing to defend Michelle Murphy in her quest to protect her children in an unconstitutional environment.

3.1   John Murphy, with unlimited funds mostly derived from Renee L. Haugerud and her businesses, including, Galtere, Ltd., has spent nearly a million dollars to deprive Michelle Murphy of her boys, whom she raised mostly without his presence.

3.2   Winning or losing a litigated issue is not a *per se* ethical violation; an absence of diligence or willingness to defend a client from illegal judicial conduct, and filing a Bar Complaint against a lawyer with falsely sworn statements is illegal conduct and an ethical violation by the lawyer who assists that client in filing the Complaint.

**4. Relitigating issues with a Bar Complaint usurps the authority of our courts and undermines the State of Georgia public policy of finality, as established by its Constitution and the Constitution of the United States, while abridging a lawyer's protection from the double jeopardy and equal protection**

4.1   The Bar Complaint requires the Bar to transform itself into a Super Court.

4.2   John Murphy, with his ever increasing cadre of lawyers, has new counsel, apparently only charged with the duty to disable counsel for Michelle Murphy and those who are assisting her and others who are being victimized by John Murphy.

4.3   The State Bar is not constitutionally composed to retry the pending case in the Superior Court of Coweta County. John Murphy, once again, uses the most continuous, constitutionally infirm component of the Georgia justice system, *i.e.*, the availability of triers of fact who are not constitutionally eligible to decide the matters they are sought to adjudicate. The State Bar is not composed for its requested task.

4.4   With more than 40 years of experience in addressing and bringing change to unconstitutional compositions of triers of fact -- more than any practicing Georgia lawyer - - Millard Farmer has a clear understanding of the unconstitutional detriment

that occurred with violations of the Uniform Superior Court Rule 3.1 case management plan in the Coweta Judicial Circuit. Millard Farmer established, with an Open Records Act Request, that there was no Rule 3.1 plan. **Ex 6, p. 13**

4.5    It is John Murphy's unwarranted, pure hatred of Michelle Murphy and desire to torment her with unconscionable treatment to her children to the extent of falsely sworn statements that prevent a resolution of this case. Millard Farmer has **never** sought $500,000 or any amount other than an unspecified fee that was a requested court awarded fee that Michelle Murphy should be awarded, in the modification case. Millard Farmer has only sought a legally selected trier of fact to litigate the best interest of the children. That day has not arrived and has little chance of arriving.

4.6   The false swearing by John Murphy identifies his value system. The only issue for Millard Farmer and Larry King has been that of the best interest of the children.

4.7   It is not John Murphy's desire or ability to suitably parent J.M. and T.M, whom he frequently abandons to the detrimental care of others. While the children are in John Murphy's custody, he provides them access to cigars and alcoholic drinks, he has slugged Jack in the chest and caused physical damage to T. M., in a manner that is foreign to the parenting that Michelle Murphy provided the children. **Ex 2 p 1, 98**

4.8   John Murphy had these children removed from their beds in the wee hours of the morning by four "Transporters" who separately took them, without explanation, to Elevations RTC in Utah, where John Murphy had them incarcerated for months without them being allowed to communicate, not only with their mother, but with anyone outside of Elevations RTC. **Ex 1, p.126** This is the John Murphy for whom Judge Baldwin abandoned his oath of office in order to fulfill his political obligations.

4.9   John Murphy and Renee L. Haugerud leave the children with caretakers for weeks at the time while they travel, rather than allowing Michelle Murphy even to talk with her children. The ill-informed scribe for John Murphy publishes in his Bar

Complaint, "As is customary in Georgia custody cases, the Court appointed a Guardian ad Litem to represent the best interest of the children and a licensed Georgia psychologist." **This was not the practice in the Superior Court of Coweta County, as Taylor Drake requested as follows in his motion.**

> *In the event Defendant Nancy Michelle Muphy ("Defendant") does not consent to this Court granting this Motion* [the Motion for a guardian ad litem] *and if Plaintiff and Defendant are unable to agree on the individual who will serve as the guardian ad literm in this case, Plaintiff requests this Court allow him to present evidence on April 26, 2012 at 9:00 a.m. to support this motion being granted.*

4.10    The absurdity of the Bar Complaint is that this white collar crime lawyer for John Murphy is buying -- hook, line and sinker, John Murphy's litigation assertions and attempting to transform his assertions into an ethical violation. John Harold Murphy seeks, with Renee L. Haugerud's money, for the State Bar to become a Super Court trier of fact. Domestic Relations litigants can become emotionally irrational, but the State Bar of Georgia is not a healing and punishing Super Court.

4.11    The initial distrust with the handpicked Judge Baldwin arose because he appointed as guardian ad litem, the co-sponsor with Taylor Drake of the fundraiser that Judge Baldwin attended the night before Judge Baldwin was handpicked. **Ex 1, p. 52.**

4.12    The motion to disqualify Lisa Harwell identifies some of the reasons available at that time for her disqualification that could have been expanded with a hearing. Motion to Disqualify Elizabeth F. "Lisa" Harwell. **Ex 6, 25**

4.13    John Murphy uses the State Bar and federal RICO complaints in an attempt to financially and professionally punish Millard Farmer and others who attempt to protect Michelle Murphy and her children from the viciousness of John Murphy. Millard Farmer remembers once being greeted by an unconstitutionally selected and composed jury pool in the Ocmulgee Judicial Circuit, one of the numerous, illegally composed triers of fact infecting justice in Georgia. See, *Gibson v. Zant*, 547 F.

Supp. 1270 (M.D. Ga. 1982).

4.14    Now Chief Justice Thompson, as a lawyer, as a State Court Judge, and as a Superior Court Judge, did not attempt to correct that situation, or to compensate counsel who did. Counsel's presentation of evidence to a federal court judge corrected the situation. The same situation exists, in a different manner, with Judge Baldwin's handpicked selection as the trier of fact by John Murphy's Glover & Davis lawyers.

4.15    The example of Chief Justice Thompson is identified, as Judge Baldwin told Millard Farmer in chambers, that after the case ended, he planned to talk with his former law school classmate, now Chief Justice Thompson, about restricting appeals concerning judicial disqualification. In Court, he stated that when the case was over, he was going to talk with the Supreme Court about it. Who will speak for J.M. and T.M. at those meeting? Not the people who are now restricted from even using the Internet (**Ex 9 and Ex 10, June 10, 2015 "Status Hearing" transcript Ex11**) and whom John Murphy wishes disabled with his RICO action. The First Amendment recently caught its Social Media breath; it may stand in wait, but *Elonis v. United States*, 135 S. Ct. 2001 believers have yet to give it legs.

4.16    Millard Farmer endured evil wrath for tens of years in attempting to change the composition of juries in Georgia (**Response to Motion to Strike, Ex 4, p. 12**). With persistence, the changes occurred, as did the change in the Coweta Judicial Circuit, with the establishment of a Rule 3.1 mandate because of counsel's efforts in Michelle Murphy's case. However, the resulting bias to Michelle Murphy was so immense that she could not obtain appellate or regulatory relief for the boys.

5.    The 97 page Bar Complaint, with Exhibits, attempts to transform the State Bar into a Super Court by offering it snippets from 5000 pages of documents and Orders from **the eventually recused, unconstitutional trier of fact, Judge Baldwin,** while urging that the conduct of Millard Farmer was unethical, that he should have done

**Exhibit 2, Page 8 of 25**

as other lawyers did for years -- accepted the illegal judge-shopping process used to obtain judicial favoritism in order not to sustain the wrath of the Rule 3.1 violating judges in the Coweta Judicial Circuit.

5.1   The Bar Complaint maintains that the deprivation of the constitutional protections of Millard Farmer should extend Judge Baldwin's bias to punishing Millard Farmer for the Dec. 25, 2014 very heartfelt holiday letter, **Ex 7,** that was posted on Social Media. Upon the Motion of John Murphy, Millard Farmer is to be fined $500 per day for each day that this letter remains on the Internet. **Ex 10**

5.2   The letter followed by a few hours the completed cert petition to the Georgia Supreme Court that was denied. Millard Farmer wrote the petition and letter with the knowledge and sorrow that John Murphy, for no justifiable reason, had J.M and T.M. incarcerated in Utah, away from their mother during the holidays and that Michael Williams Warner, a Glover & Davis lawyer for John Murphy, filed, with his lawyer's oath, a false affidavit that Glover & Davis used for John Murphy's garnishment of the personal bank account of Millard Farmer and his wife during the holiday season. John Murphy role models vengeance -- not a good parenting skill.

5.3   The "Super Court" is urged to rely upon hindsight, falsely interpreted litigation and information falsely sworn to by John Murphy, who, from the time of his divorce action until this Bar Complaint has sworn falsely and now uses his false oath to obtain State Bar disapproval of Millard Farmer.

6.   John Murphy seeks Super Court actions to financially and professionally annihilate Millard Farmer and essentially to prevent others from attempting to restrain judges who exchange judicial favoritism for personal benefits to themselves. Judge Baldwin attempted to do this in the court proceedings by hollering and yelling at Millard Farmer in a crowded courtroom. **(Enclosed DVD, Audio excerpts, Aug. 6, 2013 calendar call,** *et al.***)** Judge Baldwin role models tyrannical injustice.

6.1   John Murphy enters the new Super Court forums, *i.e.*, the State Bar and the

federal court, now that Michelle Murphy, without a cent of funding from the court, has been stripped of child support, and only has one remaining lawyer. Now, while Michelle Murphy's attorney is diverted during this most critical phase of her representation before a new judge, Millard Farmer must litigate about litigation and defend himself before the Bar. Michelle Murphy's brother is her only help now.

7.    Each of the 20 or more Motions to Disqualify Judge Baldwin (some of which are not in the record, as Judge Baldwin would not allow them to be filed) were justified and should have been permitted a timely Rule 25.3 hearing. Judge Baldwin never referred a motion to disqualify him to another judge for a Rule 25.3 hearing. The Attorney General, who has provided no assistance in correcting the illegal conduct of Judge Baldwin, prohibited Judge Baldwin's deposition related to the conduct of his court reporter, who failed to produce a correct, certified transcript.

7.1   The Coweta Judicial Circuit, as a result of Millard Farmer's combined disqualification motions, pleas to the personal jurisdiction of Judge Baldwin, attempted appellate relief, and attempted regulatory relief, eventually succumbed to the law and adopted a Uniform Superior Court Rule 3.1 mandated Case Management Plan in all cases.  It was the required Rule 3.1 conformity-with-the-law litigation that angered Judge Baldwin, as this Chief Judge wished the extra leisure and time for golf and status with the political money bundlers and judicial politicians.

7.2   Uniform Superior Court Rule 3.1's mandate should have been followed once its violation was exposed, as a part of Millard Farmer's first "Mercy" motion to disqualify Judge Baldwin.

7.3   Instead of following the law, Judge Baldwin chose to return his political obligation to Glover & Davis and to enhance his status with the first appointed guardian ad litem, who, on the night before she was appointed, co-sponsored a judicial political fund raiser for the candidate of Judge Baldwin's preference. **Ex 6, p 25.**

7.4   It was at an initial chambers conference where Judge Baldwin signed, without reading, the Glover & Davis prepared Order illegally providing the guardian ad litem authority to temporarily change custody of the children without the Court's approval. This was over Millard Farmer's strong objection. No evidence was allowed.

7.5   In addition to adopting the Rule 3.1 mandated random selection Case Management Plan after substantial litigation and regulatory attempts by Millard Farmer, Judge Baldwin eventually recused himself before there was a hearing on a permanent change of custody in the modification of custody case, which change, would have restricted another modification hearing for two years.

7.6   There were constant motions to disqualify Judge Baldwin and repeated attempts to have the regulatory authorities remove him. Each motion to disqualify Judge Baldwin after the first one was filed contained a request for relief with the following type of language: "Counsel for the Michelle Murphy and Children Parties request that all Orders entered in this case before the filing of this motion be vacated." This is a legal request that is not unethical. Judge Baldwin's Orders were illegally entered.

7.7   There was no offer of a bribe or any such thing to Judge Baldwin to obtain anything. Judge Baldwin sent Millard Farmer an email stating, "If you file a lawsuit against Ms. Freeman, she will not voluntarily give you directly or file with the clerk's office, copies of said audio recording. Of course, you already have a copy of the transcript as legally required by law. We look forward to your immediate response." **Ex 5**.

7.8   The trier of fact with that bent of mind and with the authority to modify custody of children, should have been removed *instanter* after attempting to protect himself by advocating for the court reporter and sending that message to counsel.

7.9   Millard Farmer's statement to Ken Gordon about Judge Baldwin vacating his existing Orders mirrored his request for relief in the disqualification motions, and was in no way intended as a bribe to Judge Baldwin. It was merely a request that the legal rights of Michelle Murphy be restored to where they were before the

unconstitutional events that deprived her and her children of their legal rights.

7.10    It should be emphasized - - these children had rights that were being violated that this mother had the right to protect.

7.11    The action against the court reporter was not about money. It was about her not providing a complete transcript and allowing Millard Farmer to have an audio recording to send to the regulatory authorities. Her overcharging became a very minor issue when it was learned that she was overcharging; the issue with her was about her intentionally concealing a relevant part of Judge Baldwin's conduct that should have had him removed from the case by the regulatory authorities, if it was produced. Millard Farmer only sought for Michelle Murphy what the law provided, a fair trier of fact to determine the best interest of her children.

8.    Judge Baldwin's recusal would have never occurred without Millard Farmer's consistent disqualification motions and pleas to the personal jurisdiction of Judge Baldwin. Millard Farmer did not violate the Code of Professional Conduct by filing the disqualification motions; in fact, if the motions had not been brought, Millard Farmer would have failed to diligently represent Michelle Murphy.

8.1    The recusal of Judge Baldwin, without any further motion by Millard Farmer, was followed by recusal of all judges in the Coweta Judicial Circuit. It is difficult to tell if these other recusals were just slow pleas of guilty by the other judges for participation in the Rule 3.1 violation, or fear if they were assigned to the case, that the judicial money bundlers would be knocking on their doors for the favoritism that Judge Baldwin could no longer provide due to his recusal.

**8.2    Let's get this straight: Judge Baldwin did not just commit judicial error. Judge Baldwin deliberately and intentionally assumed the authority as the trier of fact, in violation of the clear law, after being placed on notice that this was judicial corruption.**

8.3    This unpleasant and detrimental litigation would not have been necessary

except for the corruption of Judge Baldwin in allowing himself to be handpicked by the Glover & Davis Lawyers. The corruption of Judge Baldwin never ceased, as he continually signed Orders without reading them and without allowing Michelle Murphy to present evidence. Judge Baldwin was selected by the Glover & Davis lawyers because they knew could count on him to judicially return political favors.

8.4   The Glover & Davis law firm accomplished a similar type of corruption of a judge in *Mayor & Aldermen of Savannah v. Batson-Cook Co*., 291 Ga. 114 (2012). The Glover & Davis lawyer's conduct in *Aldermen of Savannah* was left intact by the Court of Appeals until the Supreme Court addressed the Glover & Davis conduct.

8.5   Judge Baldwin's judicial holdings do not constitutionally qualify as a *per se* basis for a bar complaint against Millard Farmer. Because the holdings are constitutionally infirm, they should be set aside due to his recusal amidst pending disqualification motions and his pending, unresolved regulatory inquiries.

Judge Baldwin did not conform his conduct to the Code of Judicial Conduct.

9.   John Murphy's Bar Complaint and RICO Complaint must be viewed as a systemic attack upon Millard Farmer's attempt to address the lack of a Rule 3.1 Case Management Plan and the judge selection process by the money bundling lawyers. These constitutional issues are included as a separate, attached motion, as the use of Judge Baldwin's statements and findings as a factual basis for a bar complaint against Millard Farmer do not pass constitutional muster when Judge Baldwin was illegally selected by counsel for John Murphy, in violation of Uniform Superior Court Rule 3.1 and Judge Baldwin intentionally refused to adhere to Uniform Superior Court Rule 25.3.

9.1   Judge Baldwin judicially served, in violation of Uniform Superior Rule 25.3 and the doctrines in *Birt v. State,* 256 Ga. 483 (1986); *Isaacs v. State*, 257 Ga. 126 (1987); and *Horn v. Shepherd*, 292 Ga. 14, 14-21 (2012). The tenacity of counsel resulted in the Coweta Judicial Circuit enacting the mandated Uniform Superior

Court Case Management Rule 3.1 that Judge Baldwin, even after its enactment, violated on occasions and refused to allow the client of Millard Farmer the benefit of the randomly selected judge assigned after the enactment of Rule 3.1.

9.2   The employment of Wilmer "Buddy" Parker, although he may not admit it, may have also been to preemptively discredit Millard Farmer and others as a defense to the conduct of Renee L. Haugerud, the wife of John Harold Murphy, relating to tax issues and tampering with witness conduct tangentially involving the children of Michelle Murphy. Millard Farmer is informed that the retention of the boys provided the business of Renee L. Haugerud a tax advantage in St. Thomas, USVI.

9.3   Millard Farmer reported the conduct of Renee L. Haugerud to the Federal Bureau of Investigation relating to her attempting to intimidate one witness. Millard Farmer, while visiting a witness, heard one of the people near enough to the phone to see the caller identification, before picking up the phone, announce to the people in the room who had been discussing the illegal conduct of John Murphy that Renee L. Haugerud was calling. Because of the large number of people in the room, Millard Farmer suggested that the phone be answered and Renee L. Haugerud be told that her call would be returned later.

9.4   Millard Farmer and others left. As Millard Farmer only later learned, two people set a trap to catch Renee L. Haugerud with a later, well prepared call.

9.5   At a later time, Millard Farmer was informed that Renee L. Haugerud had "taken the bait." Within a day, Millard Farmer, with other information that he had obtained, called the FBI and provided them some of the information about Renee L. Haugerud and John Murphy. Michelle Murphy was not a part of the phone call to the FBI, as that call was kept secret from her, as were other calls.

9.6   Millard Farmer, much earlier, had joined in notifying the St. Thomas, USVI version of the Department of Children Services of an incident involving J. M. and T.M. The information provided was accurate, as known by Millard Farmer. J. M.

left the house of Renee L. Haugerud at one time. Millard Farmer is familiar with the attempts of Michelle Murphy to have J. M. return to Renee L. Haugerud's house when he wandered, what is now thought to be close to the house in St. Thomas.

9.7.  Millard Farmer talked very briefly with an attorney who represented Elevations RTC in Utah in an attempt to confirm information that Michelle Murphy obtained. Millard Farmer talked on numerous occasions with another attorney in Utah about the treatment of children who had been incarcerated at Elevations RTC. Millard Farmer gained information about children at Elevations RTC, their parents and about past and potential other litigation involving Elevations RTC. Millard Farmer talked with informants about the care of J.M. in T.M in St. Thomas.

9.8.  Millard Farmer had other communications with informants. None of the communications were illegal, although they involved disclosure of illegal conduct about John Murphy and Renee L. Haugerud. This information motivated the intense effort to have Renee L. Haugerud and John Murphy investigated and identified by regulatory authorities.

10.   The RICO and Bar Complaints use the word "Conflictineering" [Complaint p.1Fn. 3] as a buzz theme to indicate illegal conduct by Millard Farmer. The term is derived from a segment of an approximate sixty pages presented by Millard Farmer to lawyers and law students involving representation in death penalty cases and the litigation of systemic discrimination in the administration of the law.

10.1    There is nothing unethical about the comments in the paper, or the examples included in the paper - - - the paper reflects numerous hours of *pro bono* CLE work by Millard Farmer and numerous people who wish to assist lawyers representing indigent persons who wanted to more effectively prepare to defend their clients when using, or being confronted with the various models of legal representation.

10.2    When the Models of Representation paper was prepared, there was no known consolidated source of information, as most lawyers relied upon law review articles,

old seminar materials, form books and old pleadings rather than assistance in a manner designed to better present a way for advocates to visualize a concept to present legal, moral and constitutional representation of clients who are without adequate financial resources and who were required to be defended by uninformed, inexperienced counsel who had not been subjected to judicial bias.

**10.3    The Ivon Stanley; Joseph Thomas;** *Farmer v. Holton*, 146 Ga. App. 102 **Study**

Plainly stated, Ivon Stanley [*Ivon Stanley,* 697 F.2d 955 9 (11th Cir. 1983) – read the case] was executed because his counsel was not Joseph Thomas's counsel. *Thomas v. Zant*, 697 F.2d 977 (11th Cir. 1983).

10.4    Early in the litigation, Ivon Stanley's lawyers essentially advised Joseph Thomas's lawyers that they were being too litigious. The Bar Complaint attempts to so advise Millard Farmer and to impose the *Ivon Stanley* standard upon Millard Farmer in this Bar Complaint. There are strong deterrents that prevent this imposition on Millard Farmer. The lesson of the study is not how a murderer's life was saved, but how the integrity of our system of justice was tainted by a less than diligent lawyer.

10.5    [One of Joseph Thomas' counsel was a *Farmer v. Holton*, 146 Ga. App. 102 judicially attacked and punished lawyer with 3 days of incarceration that has burdened this lawyer since that adjudication, much the same as John Harold Murphy's lawyers and Judge Baldwin seek to have Michelle Murphy's lawyer disabled presently and in the future for attempting to change the illegal conduct of Judge Baldwin. The opposition to Michelle Murphy sees the case as one lawyer down, Larry King, and one lawyer to go -- and the Coweta Judicial Circuit will be back in the hands of the golf buddies of the money bundlers.

10.6    Both Joseph Thomas and Michelle Murphy took what lawyers that they could get and Michelle Murphy has ended up with a *Joseph Thomas* type lawyer, his

paralegal, Michelle Murphy's brother and community members, all of whom have been threatened with a $500 a day or greater fine if they use Social Media to seek other help for Michelle Murphy and her children, who lost a grade in school last year while John Murphy and Renee L. Haugerud had temporary custody of them. Not in the history of the Coweta Judicial Circuit and maybe the State of Georgia has a lawyer filed RICO and Bar Complaints to litigate an ongoing domestic relations case. Justice weeps daily for J.M. and T.M., who had their lives hit in the rough by a Rule 3.1, 25.3 violator whose takes a Mulligan with each mark on the boys' card.

10.7    John Murphy has the well-financed, judicially and politically connected lawyers, who are in line with the same type of lawyers who opposed both *Joseph Thomas* and *Ivon Stanley,* who attempt to heap detriment upon Michelle Murphy and her counsel in each selected forum *du jour* by the lawyer *du jour* for the selected judge *du jour*.

10.8    Many of the other case materials of Millard Farmer in death penalty and discrimination cases are archived in the Georgia State University Library Special Collections & Archives. These documents and much greater support are available to defend the ethical basis for the Model of Representation paper and accusations in the two complaints of John Murphy.

11.    There is a great disparity of wealth among the parties in the Coweta Superior Court case that has unbalanced the scales of justice to the extent that the scales have been hidden from the view of the public.  One of the Orders of Judge Baldwin which has been in place since October, 2014, is that Millard Farmer must present all motions and pleadings for prior approval by the judge before the document can be filed.  At the same time, John Murphy is free to plaster the local newspaper with the RICO Complaint against counsel for Michelle Murphy and her supporters. **Ex 1 p.13**

11.1    Judge Baldwin would not allow the filing of some motions to disqualify him, nor would he allow some of the motions tendered to be retained in the records to

memorialize that the motion had been offered for filing. **Ex 1 p.13**

11.2     This judicial conduct is a replica of the *In re Farmer*, 212 Ga. App. 372 (Ga. Ct. App. 1994) issues that resulted in the judge ultimately resigning and the lawyer/elected official pursuing *In re Farmer* adjudication being federally indicted and the attorney general who attempted to protect the judge being exposed for having a sexual relationship with an employee of the State working for that attorney general.

11.3     *In re Farmer* was an important motivation for an informant, who exposed at least four ranking State and local officials for legal violations **Ex 4, pp. 3, 16** The informant provided information in a similar manner that information has been provided to Millard Farmer in the case in Coweta County. Millard Farmer learned early in life that those who are strong enough to protect informants are frequently visited by informants who wish good government, but can't pay the price.

11.4     One of the *In re Farmer* officials whose illegal conduct was exposed was recently proposed as a member of the Judicial Qualifications Commission, but withdrew when a casually involved person with *In re Farmer* apparently remembered parts of that case.

12.     The RICO Complaint and Bar Complaint state or infer that Millard Farmer's lust for the wealth of Renee L. Haugerud was the motive of counsel for Michelle Murphy. This type of accusation is so far off the mark that counsel will restate the assurance that counsel provided the Court in response to the RICO Complaint. John Murphy swears in the Bar Complaint as follows:

> *Mr. Farmer has disregarded his ethical responsibilities and even worse, his duties to his own client, by deploying illegal and unethical tactics that deliberately are designed to create chaos in the courtroom in the judicial process and in the lives of those to whom they are directed. **He has not acted with any intention of achieving Justice for his client Michelle Murphy or her children**, the subjects of the custody action. Instead he has imported his Conflictineering fn program . . . .  as a means of **creating***

*chaos to seek to extort money and litigation concessions from John Murphy and his current wife. These tactics have resulted in Mr. Farmer's violation of numerous Georgia Rules of Professional Conduct, with the goal of pressuring Mr. Murphy to pay excessive "attorney's fees to make Mr. Farmer go away.*

**The John Murphy accusation is false.**

**12.1    The Superior Court of Coweta County Malpractice Case in which Millard Farmer received a 33 1/3% fee to collect. There was no extortion**

That case in the Superior Court of Coweta County, Civil Action No. 08V2137 was styled as follows.

> *Nancy Michelle Murphy, Plaintiff vs. Delia Tedder Crouch, Defendant* Complaint Seeking Relief for Negligent, Actionable Conduct of Legal Malpractice, Breach of Expressed and Implied Contractual Duty, Breach of Fiduciary Duty and Unjust Enrichment

12.2    Before contacting Millard Farmer to investigate the filing of a legal malpractice complaint against Delia Tedder Crouch, Michelle Murphy asked John Murphy to provide the approximate $155,000.00 which he erroneously received due to an improperly prepared QDRO by her divorce lawyer, Delia Tedder Crouch.

12.3    John Murphy refused to provide Michelle Murphy her share of the unjust enrichment of John Murphy due to the error of Delia Tedder Crouch. Michelle Murphy did not even ask for her share of the stock options that John Murphy secreted from her and the Court with a false swearing in his financial statement.

12.4    Michelle Murphy was due funds under a Qualified Domestic Relation Order (QDRO) that Superior Court Judge William F. Lee maintained, in a pretrial conference, that John Harold Murphy was not entitled to retain, albeit that John Harold Murphy had retained the funds as the result of the legal malpractice of Delia Tedder Crouch, the attorney for Michelle Murphy during the divorce action.

12.5    Superior Court Judge William F. Lee identified the funds that John Harold Murphy wished to retain as the result of the legal malpractice, as unjust enrichment of John Harold Murphy.

12.6    The RICO Complaint charges that Millard Farmer, in a malpractice litigation

action against Dee Crouch, became "aware of Mr. Murphy's and his current wife's net worth, and extorts an excessive payment that yields substantial 'attorney's fees.'"

12.7    Millard Farmer was aware of the financial status of Renee L. Haugerud on the day that Michelle Murphy first came to his office seeking a lawyer to file the malpractice, *et al*., action against Delia Tedder Crouch. The financial status of Renee L. Haugerud had nothing to do with the malpractice case against Michelle Murphy's malpractice insured divorce attorney for the botched QDRO.

12.8    Millard Farmer obtained the divorce record that he has retained and investigated the case, by employing Larry King as an expert witness to compute and provide an affidavit about the correct amount of the QDRO due Michelle Murphy.

12.9    Millard Farmer informed Michelle Murphy that John Murphy should be made a party with Delia Tedder Crouch in the QDRO case because it was John Murphy's false swearing in his financial statement that caused Michelle Murphy to lose half the value of the stock options that John Murphy failed to disclose to the Court. This share of the lost stock options was in addition to the amount that Michelle Murphy lost due to the improperly prepared QDRO by Delia Tedder Crouch.

12.10   Millard Farmer informed Michelle Murphy that the divorce file indicated that John Murphy attempted to secret assets from Michelle Murphy in other ways by placing money in bank accounts of his mother and in other places and that it may be difficult to recover any additional fraud by John Murphy without him being a party.

12.11    Michelle Murphy would not allow John Murphy to be made a party, as she stated that she feared he would retaliate against her and that would be detrimental to the children. John Murphy was not initially included in the action that was filed.

12.12    A rather quick review of the file that is complete, but contains some attorney/client privileged information, indicated that John Harold Murphy had in excess of $300,000 from the divorce settlement agreement that was due to Michelle

Murphy. This was an amount involved fraud that a jury could have awarded to Michelle Murphy from John Murphy, rather than from Delia Tedder Crouch.

12.13     The wealth of Renee L. Haugerud and/or John Murphy was not relevant to taking, or litigating that case. When the case was filed, the intent was to recover for the malpractice, etc. from the malpractice insurance of Delia Tedder Crouch.

12.14   After Judge Lee, who had executed the botched QDRO unknowingly, informed counsel for Michelle Murphy that he was not going to allow John Murphy to retain the windfall that he received from the cause of action against Delia Tedder Crouch, the parties began negotiating a settlement in order to avoid more expensive discovery and a trial. The motion to add John Murphy as a party, with a detailed accounting of the amount of John Murphy's unjust enrichment, is retained.

12.15     There are documents containing attorney/client privileged information supporting the negotiations. The documents reflect that John Murphy has never paid his share of the amount that the divorce settlement agreement required him to pay.

12.16   Millard Farmer's memory, from reviewing documents, is that John Murphy maintained that he had spent $50,000 in attorney fees in attempting to keep Michelle Murphy's share of the stock options that were thought at one time to be one-half of $180,000, instead of the now believed to be $164,000 plus the overpayment of QDRO funds that John Murphy would not return. The problem was that John Murphy was not truthful with Michelle Murphy or her lawyer, Delia Tedder Crouch.

12.17   Counsel for Delia Tedder Crouch attempted to exit the case by filing a Motion for Summary Judgment in December, 2009, that was denied.

12.18   In December of 2010, counsel for Michelle Murphy prepared a Motion to Join John Harold Murphy as a party. Kurt Kegel, counsel then representing John Harold Murphy and his current wife, Renee L. Haugerud, chose to obtain money from Renee L. Haugerud to settle the case rather to litigate it. Millard Farmer had nothing to do with the source of the money.

12.19   The RICO Complaint's assertion that John Harold Murphy and the attorney who engaged in the malpractice were asked to pay more than Michelle Murphy lost is both incorrect and a matter that the parties were entitled to litigate in the Superior Court of Coweta County instead of entering into the Settlement Agreement and having the attorney for John Murphy sending Michelle Murphy a check that conformed with the Settlement Agreement that John Harold Murphy signed. Upon receiving the check, I learned for the first time that the funds were from a trust belonging to Renee L. Haugerud.

12.20   The only thing that Millard Farmer can remember that Renee L. Haugerud had to do with the malpractice and motion to add John Murphy as a party was that she initiated a phone call that was forwarded to the cell phone of Millard Farmer. Renee L. Haugerud asked if Millard Farmer would agree to settle the case for less money than the amount for which the case settled. She was told, "No." There were no unpleasant words or haggling about the price. Kurt Kegel called Millard Farmer. The check was made payable directly to Michelle Murphy. The check was deposited directly into Michelle Murphy's bank account. The check that Kurt Kegel provided to Michelle Murphy is pasted below, after the executed settlement letter and agreement. The present significance of the check is that it documents that Renee L. Haugerud was paying the obligations of John Murphy.

Re:   Nancy Michelle Murphy v. Delia Tedder Crouch
Civil Action File No. 08V2137
Coweta County Superior Court

Dear Millard:

Pursuant to the terms of the *Settlement Agreement and Release* executed by our clients, Enclosed please find check number 1000 in the amount of $150,000.00 made payable N. Michelle Murphy as full satisfaction of any and all claims Ms. Murphy may have had against Mr. Murphy in the above referenced matter.

With Kind Regards, I remain

Sincerely Yours,

_(signature)_ for Renee

Kurt A. Kegel

JOHN HAROLD MURPHY (SEAL)

SETTLEMENT APPROVED
BY COUNSEL:

_(signature)_ (SEAL)
KURT A. KEGEL
On Behalf of The Law Office of
Kurt Kegel, P.C.
Counsel for John Harold Murphy

_(signature)_ (SEAL)
MILLARD C. FARMER
Counsel for Nancy Michelle Murphy

Enclosure
cc: John Murphy

**Exhibit 2, Page 22 of 25**

12.21     The issue of check becomes relevant to the tax treatment of the funds and in-kind assets that Renee L. Haugerud has transferred to John Murphy.



12.22   The attorney, Kurt Kegel's settlement of John Murphy's part of the QDRO case terminated the QDRO litigation between the parties.

12.23   The QDRO litigation ended along with all litigation of John Harold Murphy and Renee L. Haugerud that involved Millard Farmer until April 11, 1012, when John Harold Murphy filed the Complaint for modification of custody case.

12.24   Counsel for Michelle Murphy does not have and has never had any relationship with Michelle Murphy other than that of attorney/client. The difference between the modification of custody case and the QDRO case was that Millard Farmer and Larry King agreed to represent Michelle Murphy in a case that was initially anticipated to end in a relatively short period of time, where counsel would receive compensation based upon the amount of time that was spent on the case based on an award of attorney fees by the Court, as they were defending a change of custody case and a modification of child support that John Murphy sought to have Michelle Murphy pay him. Millard Famer's assessment of the case soon changed when it became obvious that Taylor Drake was exchanging political influence for judicial favoritism with Judge Baldwin.

12.25   To the best of the knowledge of Millard Farmer, no lawyer representing Michelle Murphy in the modification of custody case has received any monetary or

in-kind compensation in the modification of custody case. Judge Baldwin warned counsel for Michelle Murphy after the first motion to disqualify him that he most likely would not award attorney fees. This was a warning of retaliation that was understood to be a warning for Millard Farmer to drop the disqualification motion.

> And there's no kind of guarantee that I'm going to award any attorney's fees, you know, to cover any of this stuff. There's nothing that requires me to do that. And so I just want y'all to think about that. (Tr. Aug. 30, 2012, p. 29, lines 2-15) **Ex 1, pp., 103, 127**

12.26   Much to the contrary of the accusation that Michelle Murphy's counsel attempted to obtain the large amount of fees is false, as counsel are seeking to protect the best interest of the children.

12.27   It is estimated that the lawyers for John Harold Murphy and Renee L. Haugerud have received almost a million dollars in fees and litigation costs that originate from the businesses of Renee L. Haugerud.

12.28   Not as an initially intended method of representation, counsel has been required to advance Michelle Murphy over $20,000 in out-of- pocket, case related expenses for transcripts, filing fees, postage, etc., that do not include travel, copying and office material costs. On one occasion, Michelle Murphy paid $7500.00 toward some of the out of pocket litigation expenses, but when it was determined that she needed money to keep her business, $1,000.00 was refunded to her within a few days and more than $1,000.00 of the money was used, first, to attempt to repair and/or recover data from a computer which she required for her business, and then to replace the computer and necessary software.

12.29   The pending Superior Court of Coweta County Modification of Custody case is *John Harold Murphy v Michelle Murphy,* Civil Action No. 12V-413.

That case has been in a critical stage while it was necessary for Millard Farmer, Michelle Murphy's only lawyer since Larry King retired, to respond to the RICO Complaint that John Murphy and his current RICO and Bar Complaint lawyer filed. The RICO Complaint has intimidated persons with legal experience from assisting

Michelle Murphy and she has been left only with her brother from Florida to locate witnesses to talk with the Guardian ad Litem, who is under a deadline to present a recommendation to the new judge about custody.

13.   Millard Farmer is accused of attempting to influence and control the testimony of Dr. N. in a child custody case. This is untrue. Millard Farmer represented Dr. N. related to employment, building and Magistrate Court issues. She was not charged a fee, and Millard Farmer received no benefit for himself or anyone else for the representation, as Millard Farmer believed she was assisting indigent children in her practice by providing them more time and care than her employer thought the children needed. Millard Farmer felt that she deserved *pro bono* services due to the nature of her community service. Providing *pro bono* services to Dr. N.'s is in keeping with the nature of Millard Farmer's law practice. A large percent of the people who consult with Millard Farmer are not charged a fee, if they are unable, or would be strained to pay. Later, Dr. P.N. appeared in Court as a witness in the Murphy case after being subpoenaed by the guardian ad litem. On that day, she appeared to be under the influence of a drug that was affecting her speech. Millard Farmer had checked her medical background and learned for the first time that she had a history of substance abuse. He prepared large blow-ups of evidence to use in confronting her if she appeared to be on drugs and a case related issue was that she was overmedicating Michelle Murphy's children. Before he could confront her, Judge Baldwin terminated the cross-examination of Dr. N., and would not subsequently allow its completion, even though he committed to do so. Millard Farmer believes he told Michelle Murphy not to take the children back to Dr. N. or to Tony Johnson, because he believed that Tony Johnson had to have known about the drug usage of Dr. N. and deemed it dangerous for children to be around that type of medical care.  Millard Farmer, from those records on the website of the Composite Board of Medical Examiners, contacted the Medical Board in another state and obtained her professional history.

14. The Third Party Complaint, for which John Murphy seeks to have Millard Farmer punished is **Ex 12**. This complaint, although dismissed by Judge Baldwin, was warranted.

This 6th day of July, 2015.

Respectfully submitted,

*Millard Farmer*

Millard Farmer, Georgia Bar No. 255300
P.O. Box 1728
Atlanta, GA 30301-1728

**Exhibit 2, Page 25 of 25**

**Exhibit 3**

**July 8, 2015 Dismissal of**

**Bar Complaint filed by John Harold Murphy**

# STATE BAR OF GEORGIA
## OFFICE OF THE GENERAL COUNSEL



**PAULA J. FREDERICK**
*General Counsel*

**WILLIAM P. SMITH, III**
*Ethics Counsel*

**Bar Counsel**
**WILLIAM D. NESMITH, III**
*Deputy General Counsel*

**JOHN J. SHIPTENKO**
*Sr. Assistant General Counsel*

**Disciplinary Counsel**
**JENNY K. MITTELMAN**
*Deputy General Counsel*

**JONATHAN HEWETT**
*Sr. Assistant General Counsel*

**REBECCA A. HALL**
**A. M. CHRISTINA PETRIG**
**WILLIAM J. COBB**
*Assistant General Counsel*

**WOLANDA R. SHELTON**
*Grievance Counsel*

July 8, 2015

CONFIDENTIAL
Mr. John H. Murphy
c/o Wilmer Parker
Maloy Jenkins Parker
75 Fourteenth Street, N.W., 25th Floor
Atlanta, GA 30309

Re:   Grievance filed against Mr. Millard C. Farmer, Bar No. 255300
      P.O. Box 1728, Atlanta, GA 30301

Dear Mr. Murphy:

Thank you for submitting your grievance with the Office of the General Counsel of the State Bar of Georgia. We carefully reviewed the grievance filed with our office against attorney Millard Farmer.

You allege that while litigating a pending child custody matter in Coweta County, Mr. Farmer has disregarded his ethical responsibilities and his duties to his client by using unethical tactics that deliberately are designed to, amongst other things, extort money and litigation concessions from the opposition. While you have articulated several other facts supporting the complaints you have against Mr. Farmer, it is clear that this matter is currently in litigation. Only after a court has ruled on the matter can it be determined if a violation of the State Bar of Georgia's ethics rules has occurred; therefore, this grievance is dismissed.

Nevertheless, dismissal of the grievance by our office does not affect any other right you may have under Georgia law. The State Bar of Georgia is unable to provide any legal advice or representation. You may want to discuss your concerns with an attorney.

Thank you.

Sincerely yours,

Wolanda Shelton
Grievance Counsel
WS/

cc: Millard C. Farmer

# Exhibit 3, Page 1 of 1

## CERTIFICATE OF SERVICE

I hereby certify that counsel for the following parties are designated to receive electronic notification at the email address listed below, of the filing with this Court of the LR 16.2 Report of Millard Famer.

Wilmer Parker
Maloy Jenkins Parker
75 Fourteenth Street, 25th Floor
Atlanta, Georgia 30309

Mary Helen Moses
Mary Helen Moses, Esq., LLC
P.O. Box 20673
St. Simon's Island, Georgia 31522

John C. Rogers
Carlock, Copeland and Stair, LLP
191 Peachtree Street, 36th Floor
Atlanta, Georgia  30303

This 23rd day of September, 2015.

/s/ Millard Farmer
Millard Farmer