**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

**John H. Murphy,**
      **Plaintiff**,

            vs.                                    No.   3:15-cv-92-TCB
Millard C. Farmer, Jr.
Deborah L. Beacham and
My Advocate Center, Inc.
      **Defendants.**

**Motion in Limine**

 **Supported by Constitutionally Challenging the Abridged, now Spoliated,
Constitutional Protections due Millard Farmer and other Accused Parties that
John Harold Murphy charges to be a part of the actionable conduct included in
his Civil RICO Complaints [ 1]; [31] and otherwise**

   1. The mandated  Defenses of a modification of custody case in the state court

      Coweta  Judicial  Circuit   Defendant,  Nancy  Michelle  Murphy  (Michelle

      Murphy)  and  her  counsel  Millard  Farmer  and  Larry  King  arrived  in  this

      Courts,  with  others   in  various  capacities.in  this  Civil  RICO  Case.  Before

      addressing  the  core  issues  with   the  illegal  conduct  of  a  Corrupt  Judge  and  a

      host  of  corrupt  lawyers  who  litigated  with  a  money  for  scorched  earth

      approach  against  all  persons  who  did  not  otherwise  succumb  to  their  corrupt

      judges'  way  of  litigating.  The  real  world  life  and  death  issue  is  the  manner

      in  which  Judge  Baldwin  allowed  the  Taylor  Drake  and  Glover  &  Davis

                                          1

corruption to endanger the lives of the minor children of Michelle Murphy

2.   Millard   Farmer   first   seeks   inlimine   protection   and   then federalinvestigative FBI, SEC and IRS investigative protection for persons in the Coweta Judicial Circuit from the money funding source of the judicial corruption in the Coweta Judicial Circuit.

2.   A, lawyer, Taylor Drake  and a law firm, Glover & Davis in an ex parte gerrymandering pattern of unethical and unlawfu  lconduct have provided financial and political benefits to Judge A. Quillian Baldwin. that corrupted his judicial duties to the people litigating in the Coweta Judicial Circuit. That conduct is so corrupt, that it is well established and financed and. The funds former federal employees, as Patrick Crosby and Buddy to assist in its, not available to everybody case related conduct. that they use this venue and jurisdiction in an attempting to punish persons who attempted to expose the corrupt  spoliated evidence of the magnitude of their corruption. The state court abridgment of constitutional protections make it prudent to detail the Coweta Judicial Circuit corruption that comprises the defense of the persons in this civil RICO  and Gerrymandering   in this Coweta Judicial Circuit where lawyer selected corrupted judge, A. Quillian Baldwin  to the abridged Uniform  Superior  Court  Rules,  the  rule  of  law  and  the  Fourteenth Amendment   Due   Process   Equal   Protection   and   First   Amendments

2

constitutional protections  in the   Coweta Judicial Circuit modification of custody case of this case and thereby the sought in limine protections are based upon the constitutionally justified and Georgia Rules of Professional Conduct  warranted legal defenses provided by two lawyers in the course of fulfilling their attorney client relationship and the quite different, but equally legal and justified, voluntary assistance provided by the Client's family and the community of supporters. These Civil RICO accused persons, with this mother of, a one chair out of her home hair stylist were attempting to protect the mother's two minor children from the consequences of the judicial corruption and the illegal abridgment of constitutional protections inflicted upon this mother, who was defending the illegal child abuse that the front- Plaintiff and at his spouse, Renee L. Haugerud, a hedge fund operator were inflicting in differing ways upon Michelle Murphy's children. The accused persons were also burdened with detecting and reporting information necessary to protect this mother and her children from the illegal conduct against and interference with the legal responsibilities this mother pro bono counsel who were engaged in legally protecting this mother and the best interest of her children. In addition to serving without pay, counsel for this mother were financially burdened with attempts by a corrupted judge and  unethically  corrupted lawyers for the front-Plaintiff, to have the

3

corrupted judge  inflict financial and illegal contempt actions against this mother's attorneys. This punishment was used as a means of weakening the advocacy skills of these lawyers for their clients while weakening the lawyers' personal livelihood. The financial and contempt attacks were additionally used to deter attempts by other attorneys to address the corrupt ex parte gerrymanded judge selection conduct of Taylor Drake and Glover & Davis.

3. , Glover & Davis and their hand selected and corrupted Judge Baldwin marketed illegal judicial corruption that was purchased on behalf of the front-Plaintiff, The illegal authority mustered with the judicial corruption was aggressively illegally inflicted upon Michelle Murphy, her lawyers, and those assisting Michelle Murphy. Millard Farmer request in limine protection from all charged conduct that occurred with the authority of the illegally ex parte gerrymanded hand selected Coweta Judicial judge A. Quillian Baldwin, Jr.

4.  John Harold Murphy is the front-Plaintiff for Renee L. Haugerud and her *Galtere et al Enterprises*. Hedge fund operations. This front-Plaintiff with funds derived from his spouse's *Galtere et al Enterprises*. Hedge fund operations compensated Taylor Drake and Glover & Davis to engage in the unconstitutional illegal conduct that included initiating judicial corruption

4

that included the hand selection of a judge with the authority as the exclusive trier of fact in a child custody case.

5. The front-Plaintiff after engaging in a Settlement Agreement and Release with Michelle Murphy. her counsel, Millard Farmer, Larry King and other persons associated with the dispute involving John Harold Murphy, activated the Judicial corruption action against a released party, After John Harold Murphy filed an action against Michelle Murphy (Michelle Murphy) that required responsive pleadings by her counsel, Millard Farmer and Larry King as counsel for Michelle Murphy defended the judicial corruption conduct of the front-Plaintiff including his active participation with his lawyers in the Judicial corruption, its evidence spoliation and other abridged constitutional protections of Michelle Murphy and her counsel

The Front-Plaintiff, as a continuation of the judicial corruption, its spoliation of evidence and other abridgment of constitutional protections and the release brought this Civil RICO case, accompanied by State Bar of Georgia grievances with the false swearing of Patricia Nice, M.D, John Harold Murphy and others.

The Civil RICO actions against Millard Farmer and Larry King and the other accused persons only engaged in the actions necessary to defend the illegal conduct of the front- Plaintiff and his spouse's *Galtere et al Enterprises*..

5

It is the Front-Plaintiff's' causes of action that are the Defendant's defense to the illegal and constitutional abridgment causes of action that this in limine motion seeks protections. Identifying the illegal conduct of the front-Plaintiff is necessary to explain the Defendants' justified conduct in defending themselves and this mother, Michelle Murphy and the best interest of her two minor children.

2.The Supreme Court of Georgia, under its inherent and constitutional authority, Effective July 1, 1985 enacted Uniform Superior Court Rules, The Preamble to these rules dictates as follows. "It is the intention of these rules and the policy of this State that these rules prevail over local practices and procedures and shall be in force uniformly throughout the State."

3.Uniform Superior Court Rules are the "public policy of the State of Georgia.

 the Coweta Judicial Circuit did not create and enforce a Uniform Superior Court Rule 3 *et seq*,.that provides as follows

**Rule 3.1. Method of Assignment**

multi-judge circuits, unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. The clerk shall have no power or discretion in determining the judge to whom any case is assigned; the clerk's duties

are ministerial only in this respect and the clerk's responsibility is to carry out the method of assignment established by the judges. The assignment system is designed to prevent any persons choosing the judge to whom an action is to be assigned; all persons are directed to refrain from attempting to affect such assignment in any way. If the order or the timing of filing is a factor in determining case assignment, neither the clerk nor any member of the clerk's staff shall disclose to any person the judge to whom a case is or will be assigned until such time as the case is in fact filed and assigned.

5.The Coweta Judicial Circuit does not adhere to this Case Management plan.

6. Judge Baldwin not only violates USR31, Judge Baldwin. also, does not adhere to the other mandated Duty of the Trial Judge rules including Uniform Superior Court Rule 25, *etse*q.

Rule 3.1, doesn't just suggest.; Rule 3.1 mandates the random assignment of Superior Court Judges to cases.

7. The Coweta Judicial Circuit Judges, violated the Supreme Court's mandated Rule 3.1 without enacting any Order, or legal process addressing case assignment, The Circuit did not provide, any public notice, or notice to the Georgia Supreme Court, about the Coweta Circuit's Rule 3.1 defiance.

Quite the opposite occurred, the evidence about the due process abridgments was spoliated.so that it could not be detected and presented to a non-participating Court.

8.The Coweta Circuit judges abandoned enforcement of Uniform Superior Court Rule 3.1 mandate It is relevant to identify that it was in the Coweta Judicial Circuit that Millard Farmer litigated with associates for about ten (10) years to have a constitutional jury pool provided. See, *Davis v. Zant* 721 F.2d 1478 (11th Cir. 1984)

9.By participating in violating USCR3.1, some of the judges and lawyers in the Coweta Judicial Circuit illegally obtained personal benefits that these judges and lawyers were not authorized by law to obtain; other judges used their disobedience of the rule of law to provide income to Senior Judges who filled the judicial role that the people's authorized holder of the judicial position judges did not wish.  Sadly, other judges and lawyers and people, apparently, very realistically for fear of such treatment as Judge A. Quillian Baldwin, Jr., Taylor Drake  and the Glover & Davis lawyers inflicted upon Millard Farmer, Larry King  and others could only perform as did one of the initial  closet -informant did for Millard Farmer and justice. Then there were others, who wished to assist in breaking up the consequences of the judicial corruption, who did not have the credentials, but had the skill, knowledge and dedication, provided

10. Michelle Murphy and thereby, Millard Farmer the valuable information to assist Michelle Murphy in protecting her children who were being abusively treated from Tennessee to St. Thomas U.S. Virgin Islands. with the uncontrolled availability of alcohol to the children and their friends by an alcoholic father. The Front Plaintiff

Commented [M1]:

8

published false accusation about the children. their mother and engaged in other abridgements of the rule of law. The front-Plaintiff's abusive treatment of the children was partly for the financial benefits that the children provided during one period of time to Renee L. Haugerud and her *Galtere et al Enterprises*., Taylor Drake obtained the ability to select a judge who is willing to participate in Judicial corruption with this corrupt lawyer, who with spoliated evidence engaged in his illegal conduct without being detected by other lawyers and community people This conduct was accomplished  through The illegal absence of enforcement of USCR3.1

11. For example, Taylor Drake and  other Glover & Davis  lawyers financially benefitted from the absence of enforcement of a case management plan. There were other lawyers acting illegally in concert with Judge Baldwin and other

12.Coweta Judicial Circuit Judges. The Coweta Judicial Circuit Judges knowingly, intentionally failed to enforce Uniform Superior Court Rule 3.1, or any legal alternative. This is illegal conduct that the front-Plaintiff in this Civil RICO case financially benefited while this front-Plaintiff illegally damaged Millard Farmer and other Defendants and persons accused of assisting Michelle Murphy who was also damaged by the illegal conduct of the front-Plaintiff, John Harold Murphy for Renee L. Haugerud's hedge fund  *Galtere et al Enterprises*

9

1.  13.The USCR3.1Case Management Rule serves as the gatekeeper to the U.S.

    Fourteenth Amendment Due Process protection from the opening conduct of

    judicial corruption by deterring the corrupt judge and a corrupt lawyer from

    being assured of providing judicial corruption for a specifically designated case.

    The hand Selection of a Judge in a custody of minor children case has a large

    financial and political benefit to both a corrupt lawyer, and a corrupt judge, as

    14. the judge is the exclusive trier of fact (sole juror) in child custody cases

    This illegal conduct should be considered as the equivalent t to the tampering

    with a juror..(It appears that Judge Baldwin got short changed in this case as he

    received mostly political benefits; however he had to continue his corruption, as

    he had been financially and politically supported for years by Taylor Drake, and

    15. Glover & Davis.  with financial payments and political benefits for the

    corruption that he was expected to provide.  The gerrymandered selection of

    Judge Baldwin occurred when he  acted in concert with  the deal initiated with

    Taylor Drake's  *ex parte* communication to Judge Baldwin related to Judge

    Baldwin's role in Taylor Drake being allowed to violate Uniform Superior

    Rule 3.1 in a combined  judge and trier of fact (sole juror) corrupt deal in the

    modification of custody case that Taylor Drake initiated against Michelle

    Murphy. This illegal conduct by Taylor Drake and Glover & Davis was a part of

    the pattern of their judicial corruption. Taylor Drake replicated, with slight

10

modification, the Glover & Davis City of *Savanah v Batson Cook* judge

selection illegal conduct into a modification of custody action for John Harold

Murphy that also involved what he and his hand selected judicial operative,

Judge A. Quillian Baldwin, Jr. most likely believed, that, if they were caught in

their unethical judicial corruption that , they would be protected by their

political connections at the State Bar of Georgia and at that time, with members

of the then composed Judicial Qualifications Commission.

16. This corruption with its spoliated evidence assured Judge Baldwin of

financial and political benefits that Judge Baldwin accepted knowing of

this illegal violation of the rule of law that corrupted the judicial process.

17.Taylor Drake and Glover & Davis used this corrupt type of judge selection

process for their important clients who are clients with money that finances

the corruption.  The judge selection system with compensation to the judge

was illegal; however; in this case it became far more than illegal. It involved

serious criminal conduct that could have resulted in the death of a child.

Taylor Drake and Glover and Davis who were habitual offenders of various

types of illegal judge selection process used the corruption to spoliate

evidence that is a part of what is sought with this motion.to support this in

limine request. Taylor Drake' and Glover & Davis' repeat offender conduct

for instigation and participation in judicial corruption warrants the federal

11

investigative protections for the Defendants in this federal case that has

imported their judicial corruption into this Court with the Civil RICO case.

18. The violations of the Uniform Superior Court Rule 3.1 in concert with the

participation of Judge Baldwin in also violating Uniform Superior Court

Duty of Trial Judge Rule 25.3 breaks down the gateway to the components

of the ultimate desired other corrupt conduct, implemented by Taylor Drake

and Glover & Davis.  Taylor Drake, Glover & Davis Judge Baldwin and

others who were engaging in criminal conduct that threatens constitutional

freedoms that distinguish our justice system from the old Star Chamber

system or injustice that primarily benefited persons of wealth.

19. Do not misunderstand the corruption during the modification of custody

case. The audio recording of the court reporter is relevant.

20. Judge Baldwin, Taylor Drake and Glover with malice inflicted financial

punishment upon Millard Farmer Larry King and others accused in the Civil

RICO case. This was done by their corruption of the judicial system in the

Coweta Judicial Circuit. and the damage to the law practice of Millard

Farmer. Many judges strongly resent exposure of any judge's judicial

corruption. and other judges engage in sever bias against lawyers who

expose judicial corruption. It is difficult to accept that so many judges and so

many lawyers tolerated the Taylor Drake and Glover & Davis judicial

corruption  for so many years. The bias was exhibited in this case by all the

Circuit Judges voluntarily recusing themselves after Judge Baldwin recused

himself in such an abridgment of Due Process that Judge Baldwin left each

of the Orders that he executed during his abridged constitutional service.

pending after his recusal. This is an abridgment of Due Process. The

lingering illegal Orders of Judge Baldwin resulted in Senior Judge E. Byron

Smith being available to Glover & Davis  to obtain a a$36,914.48 fine

against Millard Farmer on the dismissal of the Third Party complaint. That

was only a failure to state a claim dismissal of Michelle Murphy's Third

Party Complaint against Renee L. (**Ex70**) Haugerud that Judge Baldwin

dismissed. without any discovery. With Judge Baldwin's recusal, each of the

judges in the Coweta Judicial Circuit also recused themselves leaving  their

case  to a Senior Judge, who financially benefited from the illegal absence of

USCR3.1 enforcement. This Senior Judge, based upon Judge Baldwin'

Orders would not allow Millard Farmer to file any documents to adjudicate

the punitive $36,91 4.48 fine that he accessed only against Millard Farmer, a

co-counsel on the third party motion.

21.The Front- Plaintiff's motivation for this civil RICO case has a simplistic

explanation.

13

Millard Farmer was successful in having the judges in the Coweta Judicial for the first time in the history of the Uniform Superior Court Rules to begin enforcing USCR 3.1 Case Management Plan. This required the twenty (20) Coweta disqualifications attempts, against one illegally hand selected judge, several appellate attempts several contempt fines and a a $36,914.48  garnishment for filing the Third Party Complaint against Renee L. Haugerud. The complaint was Moore v. Moore compliant    . The Civil RICO front-Plaintiff opposed every motion of Millard Farmer and Larry King. Never did they attempt to discuss a solution to the smallest of disputes. The Front-Plaintiff wanted only the full value of the corruption that he purchased and could have only attained with his purchased judicial corruption.  That full value of the judicial corruption to the Front-Plaintiff is the amount of tax and other benefits that *Galtere et al Enterprises*. received from illegally obtaining temporary custody of the children. The   fight   for   the   custody   in   a   substantial   part   was   a   business dealfor Renee L. Haugerud's  *Galtere et al Enterprises*and  their cadre of lawyers

.

The front-Plaintiff in this case, John Harold Murphy with Taylor Drake, Glover & Davis engaged in corrupt judicial conduct that Millard Farmer during his representation of Michelle Murphy exposed in part. Now, this front-Plaintiff brings the Civil RICO case against Millard Farmer and the other Defendants and persons who attempted to assist Michelle Murphy. The illegally corrupt dirty hands of the

14

front-Plaintiff as a matter of law deprives John Harold Murphy of any relief from this federal court. The front-Plaintiff has eating at the trough of Coweta Judicial Circuit corruption too long. The only persons who have attempted to correct the judicial corruption at any time during the front-Plaintiff's tour of corruption are the persons accused in the Civil RICO case of wrong doing.

22.   The Civil RICO case is about more corruption involving spoliation of evidence. The in-limine request is Due Process justified. A jury of lay persons cannot be expected to understand the constitutional abridgments and the consecutive filing, or waiver requirements of *Hargis*, 294 Ga. 818, 822-823 (2014) and *Pyatt  v. State* __Ga. __ S15A1734 (March 2016)  and the other Duty of Trial Judge  disqualification motion requirements  the counsel for front- Plaintiff's  to appeal to the uninformed bias of people who do not understand the requirement to disqualify a corrupt judge, complains that this lawyer filed twenty (20) disqualification motions against this judge.

23. In limine protections are necessary to prevent a travesty of justice that the Civil RICO Complaint is written to accomplish with the prejudice of irrelevant bias creating statements, such as the 20 disqualification motions and other cases of Millard Farmer.

24. Without the judicial corruption, this case's custody issues would have been quickly resolved, as they were during the divorce.

15

25. The judicial corruption was necessary to satisfy the hedge fund's business needs. **The time has arrived to have a FBI, SEC and IRS investigation of this illegal judicial corruption conduct and spoliation**. This judicial corruption has now been for judicial consideration in this federal jurisdiction.

26. Taylor Drake, A. Quillian Baldwin, Jr. and Glover & Davis granted entry into their open door of Judicial Corruption to at least ten or more other lawyers associated with four or more different law firms. Millard Farmer could never establish a contact with a lead lawyer who could resolve disputes. Larry King before Renee L Haugarud in the Third party complaintwas sought as a party whom Larry Kingwas accused of being unethical for attempting to discuss a solution to the case with her.

27. The lawyers not talking was more than just unusual.

28. Each law firm appeared to have a proprietary interest in their billing opportunities with Renee Haugerud's hedge fund entity. Once Millard Farmer drove from Atlanta to Newnan to resolve a rather simple problem relating to the children's school. No sooner than Millard Farmer began talking with Taylor Drake about very small issues that should be easy to resolve, Lisa Harwell, whose office was a block away, came to door of the

16

upstairs Glover & Davis office that Millard Farmer was had been escorted to meet with Taylor Drake in private. Lisa Harwell, the replacement GAL barged in the door and asked if we were ready to talk with her. Millard Farmer told Lisa Harwell that he would like to talk in private with Taylor Drake for a while and asked that she leave the room. Lisa Harwell left the room for a few minutes and then came back in the room and announced that she had Judge Baldwin on the phone. Millard Farmer greeted Judge Baldwin pleasantly and in making no more noise than a deer standing in the middle of the road, Judge Baldwin asked, what is the emergency? Millard Farmer explained he knew of no emergency and then explained how he had been deceived into believing that if he came to Newnan that he and Taylor Drake could discuss issues in general that could be resolved.  The meeting ended with Taylor Drake and Lisa Harwell telling Judge Baldwin that there was the need for an emergency hearing. These two lawyers were simply creating a show case event for a client who would pay for some unproductive courtroom appearance time. Lisa Harwell with prepaid GAL fees placed in trust by the Plaintiff. That Michelle Murphy, at the discretion of the hand picked Judge Baldwin could be required to pay the GAL paid Patricia Nice M.D, a psychiatrist $15,00 to attend a hearing before Judge Baldwin during which Judge Baldwin asked her the same question, What is the emergency?.

17

Dr. Nice fumbled around for a while and then stated that she did not see any emergency. That was $1,500 toward the share of Dr. Nice in the corruption that she later returned in-kind by swearing falsely on at least two documented occasions. See **Exhibit 66**)In dealing with false swearing in the affidavit of Patricia Nice, M.D.  Millard Farmer was observing a subset of the judicial Corruption that financially unnecessarily compensated expert witnesses.  On one occasion that Dr. Nice testified with her office records in her hands the relevant issue before the Court was whether, or not Michelle Murphy had brought the children to Dr. Nice for medication that John Harold Murphy wished for the children to have to enhance their school performance. This became a legal issue when the mother was going before a corrupt judge that could take her children for violating his order. Michelle Murphy was not opposed to the medication until she observed the children could not sleep normally at night when medicated, as Dr. Nice prescribed and then could not be awaken in the morning if she followed the suggestion to medicate the children to sleep. . To support that the children were not seeing Dr. Nice on a regular basis   Dr. Nice testified on the many periods of time that the children, except to the front-Plaintiff's needs were normal children,  had been absent from her Dr. Nice's  office appointments.

18

29.At the final custody hearing, during which Buddy Parker replaced Taylor
   Drake, Buddy Parker presented an affidavit of Dr. Nice that falsely showed
   the children's regularly visited by Dr. Nice.  Millard Farmer was not counsel
   at the final hearings and Buddy Parker did not produce Dr. Nice as a live
   witness.  The children were treated by John Harold Murphy and Renee L.
   Haugerud and their lawyers like a commodity of a hedge fund operator.

*Galtere et al Enterprises*  profited very sustainable, as the recovered spoliated
evidence will show when the federal investigators and Millard Farmer are provided an
opportunity to question Renee L. Haugerud under oath.

   No litigant should be subjected to Judicial corruption in any form, but when the
judicial corruption extends to such other expanded corruption, as bring a Civil
RICO action, supported with affidavits of witnesses containing false statements,
criminal contempt actions that are also State Bar Grievances with the false
swearing under oath against the lawyers who, with others are exposing the illegal
corruption, that judicially participated the  corruption has reached the stage that a
federal court should in limine address the Fourteen Amendment Due Process
Equal Protection and First Amendment *Packingham v. North Carolina*, 582 U.S.
___ (2017) government action is prohibiting Michelle Murphy and her family's
use of the internet  The Court, without any hearing Ordered Millard Farmer fined
$500 a day for each day the website on the Internet about the case was operative.

19

Millard Farmer had nothing to do with the publishing on the internet, yet he was to be fined for other person's use of it. At the time of that Order the Plaintiff and Renee L. Haugerud  *Galtere et al Enterprises* had a professional publicity agent, Patrick Crosby publishing pleading of Millard Farmer on the internet that included Patrick Crosby's First Amendment protected representations that he was publishing "The Truth." The Orders of Judge Baldwin in the Custody case attest to theDue Process abridgment of the Front-Plaintiff to the extent that the Court should grant the in limine request to exclude the material of the RICO Plaintiff as information obtained in violation of the Fifth Amendment protections of the persons assisting Michelle Murphy, as the the custodial parent Renee L. Haugerud and her *Galtere et al Enterprises*. of the children had been taken from the custodial parent under conditions that abridged the constitutional protections of the children and their mother. Family members attempting to learn information about children who are being held hostage, who only make reasonable efforts to learn of the safety of the children are exempt from RICO actions of persons who obtained the children without due process of law by a judge who was engaging in illegal conduct.   The hostage holder of the children would not allow the children access to the telephone to inform their mother of their condition. John Harold Murphy with the assistance of Taylor Drake sent written communications in interstate commerce that the Plaintiff in his case maintained were communications from

20

Judge Baldwin.    with The Civil RICO case with an in limine adjudication before any aspect of the case is placed in the hands of jurors who are not trained in the constitutional protections that provide the orderly administration of justice. The evidence that supports the defenses of the Defendants is spoliated, as a part to the judicial corruption. RICO case is a federal attempt at Georgia's eliminated *Yost v. Torok et al* 256 Ga.92 aa(1986) 344 SE2d 414 put to rest litigation about litigation that was replaced. Using Front-Plaintiff's opinion only pleading standard, there are more Civil and Criminal RICO claims against the Front Plaintiff than against the defendants. The federal investigation sought with this motion resolves the judicial corruption issue and the spoliation of evidence issue. The so-called investigation about Nan Freeman and the abusive treatment of the children by John Harold Murphy and Renee L. Haugerud are just proof of the bias of the persons supplying information about the court reporter, Nan Freeman's overcharging private clients for their work and not documenting Judge Baldwin's commitment to the children to testify provided by supporters for this hair stylist mother of two minor children who worked out-of-her home after her divorce from t John Harold Murphy, who married Renee L. Haugerud, a hedge fund operator.

30. After Plaintiff,John Harold Murphy's marriage Renee L. Haugerud they

learned that she and her businesses could benefit if John Harold Murphy had

custody of the two minor children of that Michelle Murphy had physical

21

custody, which she obtained in an agreement with the Plaintiff that was made the Court's Final Divorce Decree Order. . When Michelle Murphy refused to move from Newnan, GA to Chattanooga TN.at ,John Harold Murphy's demand he initiated a modification of custody case against Michelle Murphy.

31. Millard Farmer with 50 years of trial experience in representing clients without money to adequately fairly litigate and Larry King, an attorney with over 35 years of experience in in domestic relations cases agreed to represent this mother in the modification of custody case. this mother and her counsel and family used their legal judgments that displeased the party paying the front-**plaintiff, who brings the Complaint that is** brought for the protection of Renee L. Haugerud and *Galtere et al Enterprises'* spoliation of evidence of illegal, fiduciary conduct, for tampering with Michelle Murphy's  witness and other illegal conduct.  John Harold Murphy and *Galtere et al Enterprises* are not constitutionally, or by Georgia law, entitled to sustain this civil RICO action against the defendants and those accused of assisting them for causes related to exposure of *Galtere et al Enterprises illegal conduct* and for providing defense of the illegal conduct of Judge Baldwin and the illegal conduct of *Galtere et al Enterprises*' including the cadre of lawyers acting on behalf of the Plaintiff and *Galtere et*

*al Enterprises* front-Plaintiff to the extent that John Harold Murphy is only the front for the funders of the judicial corruption.

32. Millard Farmer first represented Michelle Murphy in a legal malpractice negligence case that was against a lawyer who negligently represented Michelle Murphy in a divorce case that John Harold Murphy filed to obtain a not-so- fair divorce proceeding against Michelle Murphy. Larry King was the legal malpractice expert witness for Michelle Murphy in that legal malpractice case.

33. Information discovered during that malpractice case alerted Millard Farmer to the false swearing, general absence of integrity and illegal conduct of John Harold Murphy related to litigation matters and more particularly the absence of John Harold Murphy's integrity and illegal conduct in matters related to Michelle Murphy, and their children. The willingness of John Harold Murphy to often swear falsely, The enormous wealth his wife, Renee. Haugerud, a hedge fund operator and the disparity in the wealth with Michelle Murphy who was the mother with the physical custodial caretaker responsibilities of her minor children when compared and the wealth of her former husband's wife presented unique responsibilities for Millard Farmer and Larry King to fulfill for Michelle Murphy, their client. This responsibility was dangerously enhanced when combined with the most

23

dangerous of all litigation issues which was that Taylor Drake and Glover &
Davis, the lawyers for John Harold Murphy were funded in this custody
case, by a hedge fund manager with wealth that was used to compound and
continue the infection of Judge Baldwin's judicial corruption. that Taylor
Drake and Glover & Davis financially and politically created with Coweta
Judicial Circuit Judge Baldwin and others.

The intent of the Civil RICO case was and has been a deprivation of the Constitutional
protections of the Defendants and those accused of attempting to assist Michelle
Murphy  engage in what some will call trafficking in the custody of minor children
from Utah to St.Thomas U.S. Virgin Islands.

34.

35. This Case Management, plan, when enforced made it more difficult for
lawyers to select judges with whom they participate in judicial corruption.
selection of judges.  Judge Baldwin who  Larry King, a lawyers with over 35
years' experience in domestic relations litigation and Millard Farmer with
over (50 years of litigation experience were faced with a formattable task
without the Taylor Drake and Glover &Davis lawyers hand selection of
Judge Baldwin in a custody case in which Judge Baldwin was also
empowered, as the exclusive trier of fact  (the only juror) who from the first

24

hour was beholding to his political and financial allies, Taylor Drake and Glover & Davis.

36. After detecting that Judge Baldwin was purchased by Taylor Drake and the Glover & Davis lawyers The task for Michelle Murphy's lawyers was to have this illegal conduct corrected by having Judge Baldwin disqualified.

37. Cannon 2A, 2B, Canon 3E of the Code of Judicial Conduct are substantive grounds for recusal or disqualification of a judge. These grounds should be assessed in light of two well-recognized principles of Georgia law. First, no one has a right to select the judge of their choice, and a judge, of course, has no right to select the cases over which the judge presides. See Uniform Superior Court Rule 3.1. Yet, that is what happened in this case and happened in the Coweta Judicial Circuit on a regular basis. (V3 pp.447-448)

38.

39. The Civil RICO case supplementary litigation scheme, was supplemented with lawyers for John Harold Murphy filing time consuming to responses to State Bar of Georgia Grievances filed by Buddy Parker on behalf of John Harold Murphy and his financed expert witness, Patricia Nice, M.D. a psychiatrist, See **Ex 66**

1. John Harold Murphy, is not eligible to sustain the Civil RICO case individually,

25

or on behalf of *Galtere et al, the* **real party and cause at interest in this Civil RICO case brought in John Harold Murphy's name, the front plaintiff,** *as the* RThe case is brought for the protection of Renee L. Haugerud and *Galtere et al Enterprises'* spoliation of evidence of illegal, fiduciary conduct, for tampering with a witness and other illegal conduct.  John Harold Murphy and *Galtere et al Enterprises* are not constitutionally, or by Georgia law, entitled to sustain this civil RICO action against the defendants and those accused of assisting them for causes related to exposure of *Galtere et al Enterprise's illegal conduct* and for providing defense of the illegal conduct of Judge Baldwin and the illegal conduct of *Galtere et al Enterprises,* including the cadre of lawyers acting on behalf of the Plaintiff and *Galtere et al Enterprises.*'

   A person, as John Harold Murphy, now attempts, cannot constitutionally abridge a lawyer's client's Fourteenth Amendment Due Process, Equal Protection and First Amend Protection to the extent that Taylor Drake and the other lawyers of John Harold Murphy and Renee L.  attacked and abridged these protections of Michelle Murphy, Millard Farmer and Larry King and thereafter bring a Civil RICO action against these pro bono lawyers for defending their client and themselves to the extent that any lawyer could have defended their client and themselves under the conditions created by the unconstitutional conduct of the ex *parte* hand selected Judge Baldwin, as the exclusive trier of fact in the custody

26

case (*Taylor v. Taylor* 293 Ga, 616 (2013). A Court cannot gerrymander the triers of fact, as this corrupt selection of the judge in the child custody case did. Millard Farmer and Larry King conduct in calling the Court attention with motions to the illegal judicial corruption came at a high price; The Due Process protections of *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009) provide justification for each alleged cause of action in the Civil RICO case, as a matter of law and public policy. An organized society cannot allow a corrupted judge to engage in the conduct of Judge Baldwin against the persons attempting to assist a mother with minor children from the such as Glover && Davis who were repeat offenders of *their Savannah* corruption.

This case in every respect, against Millard Farmer involves his defense of Michelle Murphy, a client of Millard Farmer, and  The case against the others involves  those persons assisting Michelle Murphy in the Coweta Judicial Circuit case that gives rise to this Civil RICO Case was adjudicated outside the Due Process protections of *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009) that the Plaintiff, though his counsel Taylor Drake and Glover & Davis, with an ex parte plan (deal)  with Judge Baldwin created for the constitutional Due Process abridgment that they illegally engaged with the intent to financially and legally damage. The Motion seeks for this Court to adjudicate the conduct of Taylor Drake, Glover & Davis and Judge

27

Baldwin as violative of the Fourteenth Amendment Due Process, Equal Protections and First Amendment Protections of Millard Farmer, all other Defendants and persons accused of assisting them in the causes of action in the Complaint.

**The underlying Modification of Custody Case's Unconstitutional Infirmity**

The Coweta Judicial Circuit has a lengthy history of depriving litigants of constitutionally composed juries, Millard Farmer and associates for nearly forty (40) years have called this discriminatory unconstitutional conduct to the attention of the Coweta Judicial Circuit's judges. Ironically, now Millard Farmer for himself and others once again calls upon that protection of this for his defense as a client

1.  The Defendants with false accusations were attacked with this Civil *RICO* case and elsewhere. **Millard Farmer is not liable to Plaintiff and committed** no predicate RICO acts**.** 2 This is a statement that the Plaintiff and Renee L. Haugerud cannot make under oath without **their** committing another **of their** RICO predicate acts.

2. The Glover & Davis Lawyer, Taylor Drake, in an *ex parte* agreement (*deal*) with Judge A. Quillian Baldwin, Jr. illegally selected Judge Baldwin, with his authority as the exclusive trier of fact, (sole juror) for a specific child custody case

3.   . This *deal* among Judge Baldwin, Glover & Davis and Taylor Drake was planned with their knowledge that they were abridging Uniform Superior Court Rule 3.1, the rule of law, and Codes of Judicial and Rules of Professional Conduct with their participation in an unconstitutional *ex parte* gerrymandering judge selection scheme

4.   That *deal* provided enormous illegally obtained financial benefits to Taylor Drake, Glover & Davis and these lawyers' client, Renee L. Haugerud's Galtere Ltd., "a global investment, hedge fund and trading company" that involved John Harold Murphy (or, *Galtere et al Enterprises*)

5.   Renee L. Haugerud was aware that her husband, John Harold Murphy, and their friend, Coweta Judicial Circuit Judge Louis Jack Kirby, guided the Plaintiff into illegal conduct by suggesting the lawyer for the Plaintiff to obtain for his planned modification of custody case against Nancy Michelle Murphy, a financially and politically weak, relatively new resident to the Coweta Judicial Circuit area. This mother styled hair from her home and spent the remainder of her time caring for her two boys.

6.   Michelle Murphy, early in the case informed Millard Farmer. that Renee L. Haugerud met with her, as a professed peace-maker, to inform Michelle Murphy that **she should 'not put herself through this, because it was a done deal."**

7.   It is accurate that it was a well-planned and financially perfected *deal*.  Renee L. Haugerud knew that the deal was done, because

29

she knew that John Harold was an experienced law violator

8. The problem with the illegal "deal" was that Michelle Murphy, unexpected by the deal's makers, had two lawyers whom, admittedly, she could not afford with her child rearing obligations, but who were so offended by the illegal conduct that they had seen John Harold Murphy engage during the divorce case that these lawyers were willing to represent this mother, in protecting the best interest of her children from the illegal lifestyle and conduct that John Harold Murphy was engaging as a kept man with the hedge fund resources of Renee L. Haugerud's *Galtere et al Enterprises*

10. Judge Baldwin's illegal deal to be the judge was only the initial "*deal*" of the totality of the Judicial corruption.

11. There are approximately 5,000 pages of documents identifying the judicial corruption. That corruption was as contagious, as the stuffing in the purse of Renee L. Haugerud that John Harold Murphy carried, could find other participants to infect.

12. Judge Baldwin was a hostage, without a sanctuary, from his initial "deal". It was painful to see Taylor Drake's, once respected selected judge judicially wither into the character traits of some of the white-collar criminals that this Judge once saw, or sentenced.

30

40.

41. Patricia Nice, M.D. in this case tries Millard Farmer, as if John Harold
Murphy had some legal authority to dictate the issues that Millard Farmer
and Larry King and others assisting Michelle Murphy were eligible to
expose by simply asserting that Renee L. Haugerud was being "extorted"
because of her wealth

42. Millard Farmer and Larry King never at any time had other than a
professional legal relationship and the accompanying legal obligations that
were a part of that professional relationship, with Nancy Michelle Murphy
(Michelle Murphy), or her family members and has never represented John
Harold Murphy, Renee L. Haugerud or any of their businesses.

43. The Civil RICO assertions against Millard Farmer begin with accusation
about Millard Farmer's legal representation of his clients that pre-date
1978 and then move chronologically forward by falsely alleging that
those1978 and thereafter accusation involving Millard Farmer relate to
Millard Farmer's representation of Michelle Murphy in that malpractice
negligence case and further support the accusations in this Civil RICO
case.

44. The malpractice negligence case that John Harold Murphy and Renee L.
Haugerud and others became involved was voluntarily closed with a

31

comprehensive consensual settlement agreement, [**Ex 64** ] intended to be a release to end all disputes, excepting for the large universe of Released parties protected rights for indemnification from the Settlement Agreement and Release's violators.

45. **John Harold Murphy violated the Settlement Agreement and Release** John Harold Murphy's violation was first noticed by Millard Farmer when, for financial and other benefits to him, Renee L. Haugerud and their hedge fund businesses he initiated his first version of the Civil RICO Complaint [ **1**] ]against the Defendants, *et al*. The first version of the Civil RICO Complaint, without being dismissed, was amended [ **31**] with duplications and incorporations from the Complaint's first version [**1**]. The Amended Civil RICO Complaint continues the violations of the Settlement Agreement and Release. [Ex**64**]

46. That **Mutual Release and Settlement Agreement** [**Ex 64** ] was drafted by counsel for Renee L. Haugerud and John Harold Murphy and was executed  at their counsel's request in exchange for good and valuable consideration. It released the universe of persons with prior involvement in the Murphys' disputes, including but not limited to John Harold Murphy, Michelle Murphy, Millard Farmer, Larry King and a larger universe of other people charged in the Civil RICO Complaint, including

32

designated protected parties, their counsel and all counsel's associates and assistants.

47. Michelle Murphy, as a part of that settlement was paid for some of her financial damages. Michelle Murphy, nor her children were compensated fully for John Harold Murphy's spoliated evidence of his illegal division of the marital assets, child support and other illegal conduct, including John Harold Murphy's retention of marital and child support assets that John Harold Murphy illegally retains and is contractually due Michelle Murphy.

48. John Harold Murphy, who was aware of Taylor Drake's judicial corruption plan, compensated Taylor Drake and Glover & Davis to engage with Judge Baldwin in their ex *parte,* consensual illegal hand selection of Judge Baldwin to be the judge in John Harold Murphy's modification of custody case against Michelle Murphy. (John Harold Murphy v. Nancy Michelle Murphy, Civ. A. No. 2012-V-413 (Ga. Super.Ct., Coweta Cnty., filed Apr. 11, 2012)

49. Taylor Drake and Glover & Davis, long before the beginning of the case involving John Harold Murphy and Michelle Murphy, engage in an lengthy progression of consensual illegal purchases from Judge Baldwin, of his authority as a Coweta Judicial Circuit judge and thereby his

additional exclusive authority as a trier of fact the (only juror) in cases involving the custody of minor children and other matters where the judge essentially, was the exclusive trier of fact, as in licensing and attorney fees matters.

50. Judge Baldwin intentionally and at times, with malice.in Michelle Murphy's case abused his authority, which abridged the U.S. Fourteenth Amendment Due Process, Equal Protection and First Amendment Protections of Michelle Murphy, her minor children, her counsel, Millard Farmer, Larry King and other persons attempting to assist Michelle Murphy and her children in obtaining spoliated evidence related to the abuse of the minor children and the children's best interest.

51. Judge Baldwin engaged in illegal conduct for present and future compensation, and/or political power, that provided Judge Baldwin assurance of additional compensation.  Judge Baldwin obtained personal benefits for himself and others, some of whom consensually assisted Judge Baldwin in spoliating evidence of his illegal and fraudulent conduct that violated his duties as a trial judge and oath of office,  that Judge Baldwin owed not just to Michelle Murphy, her counsel and other accused Civil RICO parties, but  Judge Baldwin owed this duty to all people, even those who do not provide the judges campaign election money and political

34

support for a judge, or for a Judge's choice for a political office with in kind valuable political support and favoritism.

52. That universe of affected persons by the judicial corruption addresses the importance of a federal investigation. Millard Farmer exhausted a state court attempt to present evidence and to have a hearing on the corruption. That Corruption Motion is **Ex 67**. and is so factually relevant to the conditions that Millard Farmer and Larry King were representing Michelle Murphy pro bono that it and the excerpts of the facts contained in that 98-page motion **Ex 67** are include, without that motion's attachments after the following full title of that motion in

### Motion for an Investigation, Public Disclosure and Termination of the Corruption of Judge A. Quillian Baldwin, Jr. and those Participating in, conspiring with and initiating his Corruption, by financing, and otherwise providing incentive to those persons and entities engaging in fraud, perjury, false statements and false swearing

This Motion includes a Request for the immediate Disqualification of Judge Baldwin, until he is provided his Due Process protections that accompany the most appropriate discipline for his judicial misconduct and removed. Included here is a Plea to Judge Baldwin's Personal Jurisdiction while Seeking Other Relief that is Necessary to Access Murphy and T immediately.

January 1, 2015 Picture of John Harold Murphy Renee L. Haugerud, Michelle Murphy, and the minor children J.M.and T.M Omitted. (or, "family") Jan. 1, 2015 Photo taken in Utah. **They met to work this out fairly!**

Michelle Murphy urgently needs State of Georgia Funded financial and investigative

Motion continues

**3. There are two Different Sets of Books Documenting One Transaction is another timeworn, but never the less true, identity of an Attempt to Hide Corruption that is of itself corruption Judge A. Quillian Baldwin, Jr. mandated that there be two sets of books of the pleading filed on behalf of Michelle Murphy in this case. One set is kept by the Clerk of Superior Court of Coweta and available to the public and the other document, without any hearing are not retained by, or tendered to the Clerk of Court. Judge A. Quillian Baldwin, Jr. will not permit Nancy Michelle Murphy to file any new action, motions, or petitions without his approval of the document that counsel for Michelle Murphy seeks to file.**

---

3.2                              This Order by Judge Baldwin has resulted in him denying the right of counsel for Michelle Murphy to file two motions to disqualify him. Before counsel for Michelle Murphy can have the proposed filing retained by the clerk of court, counsel for Michelle Murphy must present the proposed filing to Judge Baldwin for his approval after first serving the proposed filing upon opposing counsel. There is no such illegal requirement placed upon opposed counsel and this illegal restraint was placed upon Michelle Murphy's counsel without an opportunity for a hearing and was the subject of a motion to disqualify Judge Baldwin. If the proposed document is rejected for filing by Judge Baldwin, the Clerk of Court does not retain an official record of the document for appellate review. This Order prevented Millard Farmer from filing any documents with the Senior Judge who

36

fined Millard Farmer$36,914.48 for filing the third party complaint against Renee al.

Haugerud , who provided the children's father most of his income and expenses.

## ORDER

Defendant and her attorney have filed numerous motions and petitions in the above styled case. Most of these filings have been frivolous, malicious, vexatious and redundant. "No person is free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose." Higdon v. Higdon, 321 Ga.App. 260, 266, 739 S.E.2d 498, 504 (Ga.App.,2013) citing In re Carter, 235 Ga.App. 551, 552(1), 510 S.E.2d 91 (1998).

Therefore, the Court hereby ORDERS that before filing any new actions, motions or petitions, Defendant must satisfy certain conditions:

1) Defendant must file a "Request to File," in the Clerk of Court's Office;
2) attach the document she wishes to file to the "Request," as an "Exhibit";
3) attach to any such pleading, motion, petition, or any other filing, a copy of this Order; and
4) present a courtesy copy of the Request, along with the Exhibit to the Judge's Chambers.

If the Court finds that the action is not frivolous, malicious, vexatious, or redundant then the Court will approve the action, motion, or petition for filing.   The purpose of this Order is to aid the Court in the orderly administration of its business.

SO ORDERED, this _11th_ day of _October_ 2014.

Honorable A. Quillian Baldwin, Jr.

The Background of the Case is Relevant, to understanding the Corruption that resulted in the Contempts that were Retaliatory, but Worse, were Against all protection of the LAW provided to a litigant and the litigant's lawyer.

Michelle Murphy, the custodial parent, is defending herself and the choices of her children to live with her as a family in two equally difficult arenas due to her income and financial resources. She is defending in the courts and defending in the real world, where the children are being financially deprived and emotionally attacked in order to facilitate their takeover by John Harold Murphy and Renee Haugerud, his current multimillionaire spouse. (V16 p.3436)

37

The money derived from the business of Renee L. Haugerud financed Patrick Crosby, a profession public relation expert, who attempts to sponsor to the public that Michelle Murphy is an "unfit" mother.

While the efforts of John Harold Murphy and Renee Haugerud,  are in two very different arenas, they and their cadre of lawyers have one unified tactic, *i.e.,* to financially deplete the resources of Michelle Murphy to cause her submission. See, *e.g*., Renee Haugerud's Motion for Attorney's Fees (V7 p.1437); Glover & Davis' request for attorney fees (Tr. Oct. 3, 2013, p.68, lines 13-22) motion for $9,000 supersedeas bond to allow appeal of her contempt action that was confirmed by the Court of Appeals and is now pending on a petition for writ of certiorari to the Georgia Supreme Court.V18, p.3823)

The contempts adjudicated by Judge A. Quillian Baldwin, Jr. originated in this modification of custody case (V1 p.1) initiated against the custodial parent, Michelle Murphy, by John Harold Murphy, who only lived in their home until TMwas 18 months old and JM was 30 months old before moving to New York, leaving Michelle Murphy, Murphy, now age 16, and T Murphy, now almost 14 years old, in Georgia.

The litigation against Michelle Murphy was initiated and continued with combined attempts by John Harold Murphy to create a financial crisis for Michelle Murphy with the combination of expensive litigation costs and the deprivation of financial, educational support for the children that he and Renee Haugerud voluntarily provided since Superior Court Judge Louis Jack Kirby performed John Harold Murphy's marriage ceremony with Renee Haugerud, a multimillionaire hedge fund operator. (V16 p.3440)

After Michelle Murphy, informed John Harold Murphy that she would not yield to his request for her and the children to move to Tennessee near Renee

38

Haugerud's home on Lookout Mountain, he began the financial assault upon the family by withdrawing transportation for the children from Newnan to the private school in Atlanta that Murphy/Haugerud had previously, voluntarily provided. (V9 p.1768)

The type of conduct in which John Harold Murphy and Renee L. Haugerud have engaged is a clear indication that it is not in the "best interest of the children." It is a part of their agenda that is to obtain another possession that just happens at this time to be the children, whom they display as ornaments. Their possession is to fill a void in what Renee Haugerud calls her 21st payoff life. (V14, 2766)

Taylor Drake, the Glover & Davis lawyer initially sent a proposed contract to Michelle Murphy that required her and the children to move to Chattanooga, or be imperiled with this modification litigation. (V8 p.1567)

John Harold Murphy and Renee Haugerud apparently view Michelle Murphy only as a "nanny" or a surrogate mother for the children. John Harold Murphy maintained that Renee Haugerud was the natural mother of T Murphy on a recent visit to the emergency room for his alcohol poisoning that occurred while visiting in their Atlanta residence. (V16, p.3489) Murphy/Haugerud consider Michelle Murphy to be a hair stylist beneath their social and economic status and do not accord her the dignity deserved for the mother who raised the children when their father left their home for New York and other women long before he began living with Renee Haugerud.

When Michelle Murphy refused to move from Newnan to Tennessee, the Glover & Davis lawyer used an "emergency" motion to select Judge Baldwin.

He was easily selected by the Glover & Davis lawyer falsely alleging an emergency, with the sworn statement of John Harold Murphy that Michelle Murphy was planning to move to South Carolina. (V1 p.13) The Standing Order

39

prevents such a move, in the Coweta Judicial Circuit, upon the filing of any type of domestic relations complaint without the feigned emergency hearing on the day that Judge Baldwin was presiding. This tactic was used by the Glover & Davis lawyer to hand pick Judge Baldwin for this case. (V1, p.7)

Judge Baldwin, without granting a requested hearing, over strenuous objection, signed, without reading, a Glover & Davis prepared order illegally appointing Melissa Griffis, the Glover & Davis selected guardian ad litem (V1, p.23) and provided her authority unauthorized by law. This guardian ad litem had co-sponsored a judicial political rally with Taylor Drake, attended by Judge Baldwin on the night before her appointment. The Order, contrary to what Judge Baldwin was told that he was signing, made Michelle Murphy potentially liable for payment of the fees of the guardian ad litem. (Tr. Nov. 15, 2012, p.33, l. 25- p. 34, l. 22)

The guardian ad litem was illegally granted the authority to temporarily modify custody without judicial approval that **shall** be followed. This illegal authority is not authorized and statute, or the Uniform Superior Court Rules. Uniform Superior Court Rule 24.9 provides the authority authorized for some guardian ad litem. Superior Court judges are restricted The authority that the Glover & Davis lawyers included in the appointment order that Judge Baldwin signed without reading is, as follows.

> The GAL may make temporary recommendations/adjustments during the pendency of this action regarding custody and parenting time and the parties shall follow said recommendations of GAL. (V1 p.23)

Judge Baldwin, without knowing, or by intentionally misstating the Uniform Superior Court Rules, states as follows in his disqualification order.

> While the court acknowledges that it is better practice to read such order, in this case it was not needed. The GAL order was a standard order that the Judge has seen a number of times. Further, the order tracts the Uniform Superior Court Rules for the duties of a GAL.

Judge Baldwin did accurately state that the Glover & Davis lawyer includes this illegal authority in the Glover & Davis prepared guardian ad litem appointment orders that apparently Judge Baldwin, as a matter of practice always signs without reading.

Elizabeth "Lisa" F. Harwell the replacement guardian ad litem after Melissa Griffis resigned, who was not even provided the authority to change temporary custody that Melissa Griffis was granted and without any legal authority, to the detriment of Michelle Murphy, attempted to use authority granted to Melissa Griffis to create an order to Michelle Murphy about the children going to school in Atlanta rather than near their home in Coweta County. This order by Elizabeth "Lisa" F. Harwell created expensive litigation costs for Michelle Murphy. (V16 p.3394).

The illegal conduct of the Gal, Elizabeth "Lisa" F. Harwell, is relevant, as it was Elizabeth "Lisa" F. Harwell alone who selected the psychologist with the illegal contract that Judge Baldwin attempts, with an aspect of the contempt, to force Michelle Murphy to sign.

This conduct of Elizabeth "Lisa" F. Harwell attempting to modify custody at the beginning of the school year with the approval of the Judge accepting the blanket assignment of this authority in the appointment order, initiated an expanded disqualification of Judge Baldwin motion that he denied on

41

June 7, 2012. (V2 p.306), That disqualification motion addresses the illegal conduct that Judge Baldwin identifies as "messing" with him. Judge Baldwin has no respect for those who seek the protections provided by the LAW.

The June 7, 2012 denial of disqualification Order was appealed to the Court of Appeals and was not adjudicated on the substance of the conduct of Judge Baldwin, but upon procedural grounds.

It is relevant to here state that violations of the Code of Judicial Conduct can occur even if the violations of the Code are not reversible legal error.

The June 7, 2012 Order disputed other facts in the affidavit supporting the disqualification motion and further violated the Uniform Superior Court Rule 25, *et seq*. as Judge Baldwin did not refer the motion to another judge and did not cease acting on the merits of the case, as required by USCR 25.3

The lynchpin in all appellate matters in this case is Judge Baldwin's violations of the Canons of the Code of Judicial Conduct (or, "Canons") and the Glover & Davis lawyer's selection of Judge Baldwin. The Glover & Davis judge shopping selection of Judge Baldwin was doable with a combined feigned "emergency" motion (V1 p.13) and the absence of a Uniform Superior Court Rule 3.1 case management plan. (V2 p.310; V3 pp. 436, 447, 506) Glover & Davis lawyers engage in a pattern of judge selection conduct. Superior Court Judge Louis Jack Kirby knew of this when he suggested Taylor Drake as counsel for John Harold Murphy.  See, *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114 (2012).

When John Harold Murphy began withdrawing transportation for the children voluntarily provided to an Atlanta private school that Murphy/Haugerud had previously offered to the children, (V9 p.1768) Michelle Murphy informed the John Harold Murphy that she could not afford the transportation to Atlanta schools

42

twice a day while engaging in her occupation as a hair stylist. Taylor Drake after rejecting alternative suggestions for transportation, wrote a letter accusing this hair stylist of "laziness" in not making the two trips to the Atlanta schools each day from Newnan. (V9 p.1783)

When Michelle Murphy made it clear that if alternative suggestions for transportation (Tr. Aug. 30, 2012 p. 10) were not accepted she would not take the children to the Atlanta schools, Elizabeth "Lisa" F. Harwell, without court approval, ordered the children to stay with John Harold Murphy in Atlanta at the beginning of school. (V9 p.1788)

Michelle Murphy refused to surrender the children, as ordered by Elizabeth "Lisa" F. Harwell and enrolled the children in public school in Coweta County.

Taylor Drake then obtained an "emergency" hearing before Judge Baldwin on August 30, 2012. Judge Baldwin, after hearing the testimony of the psychiatrist expert witness for John Harold Murphy to whom Elizabeth "Lisa" F. Harwell committed to pay $1,500 to testify, was unable to identify any emergency. (Tr. Aug.30, 2012 p. 72, lines 20-25) The hearing was a flop for the goals of "Murph," as Elizabeth "Lisa" F. Harwell called John Harold Murphy.

Judge Baldwin, at that August 30, 2012 hearing, issued the following threat to Michelle Murphy, whom he knew could not afford the litigation.

> **But let me just talk again to the parties. Do y'all**
>
> **want to keep putting all this money out here,**
>
> **fussing about this thing?**
>
> **I mean, again, if you don't have anything to fear,**
>
> **if everything is all right, and everything's been**

43

**done the way it's supposed to be done, you don't**

**have anything to fear about losing custody of the**

**children.**

**And I just wanted to know if y'all really want to**

**just keep dragging this out like this. You know,**

**y'all can spend money to kingdom come, that kind**

of thing. **And there's no kind of guarantee that**

**I'm going to award any attorney's fees, you know,**

**to cover any of this stuff. There's nothing that**

**requires me to do that. And so I just want y'all**

**to think about that.**   (Tr. Aug. 30, 2012, p. 29, lines 2-15)

It was at the next hearing that Elizabeth "Lisa" F. Harwell, an attorney who appears before Judge Kirby on a regular basis with her private clients, (Tr. Aug. 30, 2012, p. 68, line 9) was caught by counsel for Michelle Murphy converting funds to her personal use in violation of USCR 24.9(8)(g). As a part of the corruptive conduct of Judge Baldwin, he approved of the violation of the LAW by Elizabeth "Lisa" F. Harwell (Tr. Nov 15, 2012, p.30, l. 9-p.33, l. 22).She then began attempting to get Judge Baldwin to Order the employment of another expert psychologist, called a "custody evaluator." There are no special circumstances to justify this unnecessary expense. This was yet another expensive, unnecessary

44

"expert witness" litigation tactic in which Michelle Murphy could not afford to equally participate and litigate.

Those costs were paid from the bank accounts controlled by Renee L. Haugerud. Elizabeth "Lisa" F. Harwell selected "custody evaluator," not experts for the best interest of the children, as their lives were being tormented by the snatch and grab litigation tactics of the John Harold Murphy and Renee L. Haugerud cadre of lawyers, investigators and experts who cannot even legally turn up an untidy lawn.

Judge Baldwin, who was very ruffled by the disqualification motions' disclosure of his conduct and the appeal of his Order denying them, began to participate with the Glover & Davis lawyers, who were using the tremendous disparity in income and wealth of the parties as a detriment to Michelle Murphy.

In his June 7, 2012 Order, Judge Baldwin disputed the relevant facts contained in the supporting affidavit**.** (V2 p.306) See, *Isaacs v. State*, 257 Ga. 126 (1987); *Birt v. State* 256 Ga. 483 (1986). Judge Baldwin opposed each disqualification motions that he denied with a travesty of justice Order that was filed on December 4, 2013, without referring the matter to another judge. (V17, p.3827)

It was necessary for Michelle Murphy to present a ready to file Petition for a mandamus to the Attorney General to waive service before Judge Baldwin following the advice of the Attorney General denied the motion with the December 4, 2013.  See, the attached petition for mandamus that was presented to

45

the Attorney General.

**The disqualification motions affected the contempt adjudications; more accurately stated, the disqualification motions were Judge Baldwin's corruptive motivation for the contempt adjudications.**

After Judge Baldwin's June 7, 2012 denial of his disqualification, Judge Baldwin clothed himself with a Teflon armor attitude and declared as follows.

illegal conduct by the Court of Appeals in unconstitutionally extracting money from Millard Farmer and falsely accusing Millard Farmer of engaging in illegal appellate jurisdiction conduct that the State Bar of Georgia with efforts by John Harold Murphy's counsel was used to create a grievance against Millard Farmer.

The step by step process follows.

It was only the 20 consistent motions to disqualify Judge Baldwin that resulted in his recusal and retirement.

Even after the Coweta Judicial Circuit enacted the Uniform Superior Court Case Management Rule 3.1 Plan, Judge Baldwin, with the assistance of the Court Reporter, Nan Freeman   (Murphy v. Freeman) attempted to evade detection in allowing hand selection of cases.

The hand selection of case created corruption in several ways other than the obvious selection of a biased exclusive trier of fact in custody cases.

46

The violation of the Case Management Rule provided the elected and appointed judges to vacate their court obligation and to have a Senior Judge paid to come and serve in place of the legally designated judges who could be playing golf instead of serving the people.  From the first  disqualification motion, as amended to the last Consolidated motion for Judge Baldwin's disqualification the releif requested  on behalf of Michelle Murphy contained various versions of the folling request for relief

was for the hand selected Judge to grant the following relief

Counsel for Michelle Murphy and the Children Parties request that Judge Baldwin be disqualified from serving as s judge in this case

Counsel for Michelle Murphy and the Children Parties request that all Orders entered in this case before the filing of this motion be vacated

 to turn the disqualification motion as provided by Uniform Superior Court Rule  over to another judge to adjudicate, or as the Judge eventually did, to recuse himself. Instead of following the law, the Glover & Davis lawyer, Taylor Drake af a fund raiser sponsored by Taylor Drake and the guardian ad litem selected by  and eventually fell apart.

Millard Farmer cannot appropriately be charged with delaying the child custody litigation. It was Court of Appeals Judge Christopher J. McFadden who created the longest delay in the litigation.

47

Judge McFadden after hearing oral argument in an Georgia Court of Appeals appeal of Michelle Murphy's case, with the panel assigned to that case adjudicated that the Court of Appeals had jurisdiction of the case.  After this adjudication, Judge Mc Fadden participated with section members of the State Bar of Georgia in lobbying to have a statute enacted that the Judge McFadden panel after the statute was enacted, adjudicated that the statute should be applied retroactively to the case pending before the Judge McFadden Court of Appeals panel.  The Georgia Supreme Court after an extremely large amount of time in preparing a certiorari petition, struck down the retroactive application of the statute that Judge Mc Fadden lobbied to have passed. It was only much later that Millard Farmer learned from one of the people who assisted Judge Mc Fadden in divesting jurisdiction of case pending before him that Judge McFadden did not inform the State Bar that he had a case pending before him that the sought legislative change would retroactively change. On other grounds, jurisdiction was eventually lost in Michelle Murphy's case.

It was the deception of Judge McFadden in not informing one of the most influential member of the lobbing group and thereby informing the legislative body of his conflict that corrupts the judicial process when such conduct mandates that counsel for Michelle Murphy must move to disqualify a judge,

48

albeit a Court of Appeals Judge who engages in such conduct with the authority of the State Bar of Georgia.

Judge Baldwin informed counsel as follows.

**had your chance on recusal.  It's been appealed.  They upheld me staying in this case and not recusing myself. And we're just going to keep it like that.**[emphasis supplied]（Tr. Oct. 3, 2013, p. 17) See, *Murphy v. Murphy*, 322 Ga. App. 829 (2013)

Counsel for Michelle Murphy has never understood if the above statement of Judge Baldwin. This statement could be a part of Judge Baldwin's absence of knowledge about the law, or it could be a sophisticate cover for the statement that Judge Baldwin made on August 13, 2013 when he informed counsel that he was a classmate of the soon to be Chief Justice Hugh Thompson. Judge Baldwin after identifying the relationship stated that after this case that he was going to contact Justice Thompson and ask that he eliminate appeals of disqualification motions until the end of domestic relations cases. If Judge Baldwin did make the request and discussed the case, this should be revealed to counsel for Michelle Murphy. Certainly, Justice Thompson had no role in the conduct of Judge Baldwin, but it is difficult to determine the reason that Judge

49

Baldwin continually made the same statement that a lawyer is only granted one opportunity to seek a recusal.

Sticking by that manifesto that a lawyer can only file one motion, regardless of later events, but failing to perform his non-discretionary, sworn duty, Judge Baldwin refused to obey the non-discretionary dictates of Uniform Superior Court Rule 25, *et seq.* (Recusal) and never entered an order adjudicating any other disqualification motions that were filed on June 13, 2012 (V3, p.436)**;** July 2, 2012 (V3, p.502); Aug. 19, 2013 (V10, p.1904); Aug. 28, 2013 (V11, p.2195); Sept. 13, 2013 (V12, p.2321); Oct. 7, 2013 (V14, p.2890); and Nov. 26, 2013 (V17, p.3639) until December 4, 2013 when he entered yet another Order in which he, as he did in his June 7, 2012 denial of his disqualification motion, once again opposed by disputing his disqualification motion's affidavits with both deceptive and false statements. (V17 p.3827)

Adding grounds to his disqualification and thereby his corruption in the unadjudicated, pending disqualification motions, Judge Baldwin, with the motions pending, and without adhering to USCR 25.3 to "temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted"  proceeded with the Glover & Davis request to hear the merits at

an August 13, 2013 hearing. That hearing resulted in the August 23, 2013 Order.

The August 23, 2013 Order (V11, p.2187) modified visitation, *i.e.*, modified custody, (*Edge v Edge,* 290 Ga 551, 552 (2012) as determined by the Divorce Decree (V2, p.411 ) and Standing Order of all the Circuit Judges (V1, p.7), after the Court refused to allow Michelle Murphy to present evidence, (Tr. Aug. 13, pp.235, 274) or to complete the cross-examination of John Harold Murphy's witness (Tr. Aug 13, p. 276), at the August 13, 2013 hearing, contrary to *Shore v. Shore*, 253 Ga. 183 (Ga. 1984) and its progeny. All, while there were four pending, unadjudicated judge disqualifications motions. (V3 p.436; V10 p.1904; V11 p.2195; V14 p.2890)

Baldwin never read before signing and filing the *ex parte* obtained August 23, 2013 Order. (V11 p.2214) Judge Baldwin defends the *ex parte* letter delivered by Michael Williams Warner (V14, p.2752) that accompanied the proposed August 23, 2013 Order.

> **THE COURT I'm just tired of things -- Like I noticed**
> **in this thing all talk about some kind of ex parte**
> **conversations. I don't think I have had any ex parte**
> **conversations with Mr. Drake about this anytime**
> **lately if I ever had any. I don't think, since the**
> **beginning of this case I have, partly because of**

51

> **all the stuff that's been going on in the State**
> **about ex parte conversations. *    *    * And I**
> **don't believe I have had any ex parte conversations,**
> **and I don't see how all could know about any unless**
> **you supposedly have my phones bugged or his phone**
> **bugged. (Tr. Oct. 3, 2013, p.15, lines 4-17).**

Before Michelle Murphy received or learned of the *ex parte* supported August 23, 2013 Order, a deputy sheriff, whose office is represented by Glover & Davis PA, came to the home of Michelle Murphy to get the children to comply with the modified visitation, *nunc pro tunc* to August 13, 2013. (V14, p. 2702)

The August 23, 2013 Order was obtained with an *ex parte* communication to Judge Baldwin, containing facts not in evidence and false statements, not provided to counsel for Michelle Murphy, until after the Order was obtained and filed. (Tr. Oct. 3, 2013, p. 19, lines 12-23)

On August 29, 2013, the Glover & Davis lawyers filed a Motion for Indirect Criminal Contempt accompanied only with a "notice of hearing" without a Rule Nisi or subpoena requiring that Michelle Murphy attend a hearing. (V12, p.2243), Michelle Murphy responded on September 23, 2013 to that contempt motion with detailed, supporting affidavits refuting the motion. (V14, p.2721)

That motion and the Amended Contempt were abuses of the criminal process.

52

A proceeding on the motion occurred on October 3, 2013 without a Rule Nisi or subpoena for any person to attend. The response, with support of affidavits from the children, with a recorded cell phone conversation by one of the children with John Harold Murphy, clearly indicated that John Harold Murphy could not sustain an indirect criminal contempt, even if he had provided the due process required service, as he consented to the children not visiting, as he was in St. Thomas on his visitation time. (V14, pp. 2743, 2758, 2763)

After John Murphy and the Glover & Davis lawyers orchestrated the Deputy Sheriff's illegal display of force to the children gimmick that did not result in an incident, and the Glover & Davis lawyer realized after obtaining the response, supported by the affidavits of the children and their mother, that John Harold Murphy had made a false statement under oath, they changed their attack.

The Glover & Davis lawyers then attempted to use the August 23, 2013 Order, while it was on appeal to the Supreme Court of Georgia (V14 p.2774) as the basis for the hasty, illegal filing on Friday, September 27, 2013 of an Amended Contempt Motion (V14 p.2779) The Amended Contempt Motion was one shoddy piece of legal work apparently designed only to take additional advantage of Judge Baldwin while also initiating a threat of incarceration action against Michelle Murphy and her lawyers to appease Murphy/Haugerud.

The Amended Contempt Motion was not supported with a notice of hearing that

53

would have been an infirm due process notice to a person charged with the October 3, 2013 indirect contempts. (V14 p.2807)

The Amended Contempt Motion did not include a Rule Nisi

The Amended Contempt Motion did not subpoena any person.

The Amended Contempt Motion was not even copied to Larry King.

The Amended Contempt Motion stated that it was for contempt of "Defendant's lawyer" [singular] when Michelle Murphy had two lawyers and the lawyer charged was not named. (V14, p.2782)

The Amended Contempt Motion was not a charging document that comported with the LAW to the extent that it could legally be adjudicated. (V14, p.2817)

The Thursday, October 3, 2013 court calendar posted and sent to counsel from the Clerk of Court of Coweta County did not indicate that the Amended Motion for Contempt, or any motion for contempt, was on the Thursday, October 3, 2013 calendar, as the "Prosecutor/Plaintiff" Taylor Drake of Glover& Davis did not obtain from the Judge, or any Clerk, a Rule Nisi to have served upon the persons charged. (V14 p. 2807) See, *Crocker v. Crocker*, 132 Ga. App. 587, 589 (1974)

Michelle Murphy, Larry King and Millard Farmer filed a comprehensive response to the September 27, 2013 Amended Motion for Contempt. (V16, p.3334) The response pled to the jurisdiction of Judge Baldwin to hear the Amended Contempt Motion.

54

Judge Baldwin abrogated his judicial authority in all relevant matters in the entirety of this case to the Glover & Davis lawyers. It is unconscionable, but certainly not unpredictable that Judge Baldwin delegated the preparation of the contempt orders to the Glover & Davis lawyers.

It is unconscionable that the Taylor Drake included false findings of fact in the Order that he prepared for Judge Baldwin to sign. The Glover & Davis lawyer included the findings in the Order that Judge Baldwin may or may not have read before singing, as on previous occasions Judge Baldwin did not read the orders that he signed.

The November 19, 2013 Order falsely states, without evidence that "Defendant and her lawyers had reasonable and sufficient notice of the hearing." Again, the Order states that "The Court further finds that Defendant had reasonable notice of the hearing but failed to appear and present evidence."

The ironic aspect of this finding that Defendant "failed to present evidence" is the August 23, 2013 Order that "Defendant" is accused of violating resulted from a hearing on August 13 where Michelle Murphy and each of her counsel did appear, but Judge Baldwin aborted the hearing for a personal commitment and never allowed Michelle Murphy to present any evidence, including the principal and teacher from the children's school, who awaited all of the hearing to testify.

55

*Shore v. Shore*, 253 Ga. 183 (1984) and its progeny.

There was absolutely no evidence to support that Michelle Murphy, Larry King or Millard Farmer were provided a Rule Nisi, a subpoena to appear or any other notice that fulfills the requirements of due process.

Judge Baldwin doesn't read the orders that he signs, and, worse, has such little understanding of the law relating to contempt that on October 3, 2013, he initially held Larry King in contempt for just attempting to explain the impropriety of Judge Baldwin beginning the hearing with the shoddy papers that the Glover & Davis lawyers filed without the vaguest understanding of the due process protections associated with criminal prosecutions, albeit the prosecution for contempt.

The inability of Judge Baldwin even to allow Larry King to explain the due process protections involved in contempt actions speaks the reason that Uniform Superior Court Rule 3.1 was never implemented in the Coweta Judicial Circuit and the reason that due process protections in the court is at such a low level that orders drafted by political friends are signed without reading.

Cannon 2A, 2B, Canon 3E of the Code of Judicial Conduct are substantive grounds for recusal or disqualification of a judge.  These grounds should be assessed in light of two well-recognized principles of Georgia law. First, no

one has a right to select the judge of their choice, and a judge, of course, has no right to select the cases over which the judge presides. *See* Uniform Superior Court Rule 3.1. Yet, that is what happened in this case and happened in the Coweta Judicial Circuit on a regular basis. (V3 pp.447-448)

Persons accused of conduct that subjects them to incarceration are entitled to a trier of fact who is not biased. Judge Baldwin and the contempt convictions do not open the first gate to uphold the contempt convictions under the *Cole v. Arkansas*, 333 U.S. 196 (1948) standard of adequate notice of the charges and under the *In re Winship,* 397 U. S. 358, requirement that to support a criminal conviction the record must reasonably support a finding of guilt beyond a reasonable doubt.

Judge Baldwin not only deprived the applicants of a fair hearing, he deprived the applicants of a motion for new trial before a fair jurist, when, after the November 19, 2013 contempt Order, he denied all of the disqualification motions that were pending before the November 19, 2013 Order., thereby not allowing another judge to take over this case. With Judge Baldwin remaining in the case there is no possibility for the applicants to obtain a fair ruling on a motion for new trial that reviews the criminal contempt convictions under a different standard. See, *Walker v. State*, 292 Ga. 262, 264-265 (Ga. 2013)

In particular, Section (B) (7) of Canon 3 of the Georgia Code of Judicial Conduct forbids a judge from considering an *ex parte* communication:

57

> Judges shall accord to every person who has a legal interest in a proceeding,
> or that person's lawyer, the right to be heard according to law. Judges shall
> not initiate or consider *ex parte* communications, or consider other
> communications made to them outside the presence of the parties
> concerning a pending or impending proceeding.  ***

> *Ex parte* communications "are presumed to have been in error."

"[W]hen the court considers facts not properly in evidence, the other party has
rights that cannot be protected fully if he is thus denied the privilege of cross-
examination. *Arnau v. Arnau*, 207 Ga. App. 696, 697 (Ga. Ct. App. 1993)

The law relating to indirect contempt is clear. Michelle Murphy, Millard Farmer
and Larry King were accorded no due process protections that *Crocker v.
Crocker*, 132 Ga. App. 587, 589 (1974) identifies must be provided:

> In cases of constructive contempt of court, where the alleged contumacious
> conduct is disobedience to a mandate of the court, not an act in the presence
> of the court or so near thereto as to obstruct the administration of justice,
> the law requires that a rule nisi issue and be served upon the accused,
> giving him notice of the charges against him, and that he be given an
> opportunity to be heard. [citations omitted]

1.6.2   Michelle Murphy need an investigator who has the authority to require
statement under oath about the participation of the following person with the

corruption of Judge Baldwin.

**Elizabeth "Lisa" F. Harwell**, the guardian ad litem who illegally took funds in violation of Uniform Superior Court Rule 24.9(9)(g) that Judge Baldwin allowed after her illegal was disclosed by counsel for Michelle Murphy.

**Melissa Griffis,** who co-sponsored the fund raiser attended by Judge Baldwin on the night before Taylor Drake judge shopped to obtain Judge Baldwin who, over strong objection of counsel for Michelle Murphy signed without reading an Order appointing Melissa Griffis, as the guardian ad litem with authority to change temporary custody of the children without approval of the Court. Her compensation was set at $250 per hour while the mediators in Coweta County are paid $100 per hour.

**Nan Freeman** of Georgia that required to legally perform her obligations as an official court reporter.

The transcript that documents that Nan Freeman did not provide a transcript of four pages of the May 27, 2014 "Blame Yourself, Blame Yourself, Blame Yourself until after an action by Larry King to obtain that transcript. It was also necessary to bring a civil complaint against Nan Freeman in the Superior Court of Fulton County that has been transferred to the Superior Court of Troup County after compliance by the Fulton County jurisdiction defendants. Copy of the deposition transcript of Nan Freeman is available There is a video recording that supports the transcript that is available upon request.

**Peter Durham** sponsored false statement on behalf of Renee L. Haugerud and was a participant in the garnish of the bank account of Elvira Dimitrij on behalf and apparently with the authority of John Harold Murphy.

59

**Renee L. Haugerud** passim

Representative of **Galtere LTD**, Galtera N.A., Inc. and the businesses that Renee L. Haugerud has a business interest in St. Thomas USVI

Nathan Lee of Glover & Davis who represents Coweta County

Peter J. Skandalakis, District Attorney Coweta Judicial Circuit and ADA, Monique Lynn Fouque (wife of Superior Court Judge Jack Kirby)  who were advised of the illegal conduct of Nan Freeman.

Mark Lawrence DE Gennaro, Attorney for Troup County

Willis McKenzie LLP

Representative of Foxy's Bar Jost Van Dyke, BVI

Judge Louis Jack Kirby
Probate Judge of Troup County Georgia
**Memorandum of LAW**
**2. "Corruption" Defined**
2.1

2.1.5                                   We were likewise warned in *Mayor & Alderme*n *of Savannah v. Batson-Cook Co*., 291 Ga. 114 (2012), another Glover & Davis PA case of the law firm in this case that was also involved judicial corruption. That case also resulted from judge shopping that occurred during the absence of a Uniform Superior Court Rule 3.1 case management plan.

**There was an application for appeal that followed The following are excerpts of that application.**

60

*********************Quotes from an appeal application follow

This application seeks an appeal of the November 19, 2013 adjudications of contempt against Nancy Michelle Murphy, Larry King and Millard Farmer (V17 p.3624) that resulted from a Thursday, October 3, 2013 proceeding involving the Amended Motion for Contempt (Tr. Oct 3, 2013) that was filed on Friday, September 27, 2013, and not noticed for a hearing. (V14 p. 2779)

There was no Rule Nisi or subpoena that required the attendance of Michelle Murphy, Larry King and Millard Farmer at the previously scheduled October 3, 2013 hearing on an earlier filed Motion for Contempt (V12, p.2243) that also did not require attendance of these applicants with a Rule Nisi or subpoena. See, *Crocker v. Crocker*, 132 Ga. App. 587, 589 (1974).

The adjudicated contempts resulted only from assertions made in the September 27, 2013 filed Amended Motion for Contempt.

The assertions in the Amended Motion were based upon an August 23, 2013 Order that was rendered for an August 13, 2013 hearing that was terminated over objection of counsel without Nancy Michelle Murphy (or, "Michelle Murphy") being allowed to present her witnesses or evidence, or even to complete the cross-examination of John Harold Murphy's expert witness, who, with a history of substance abuse, was slurring her words. See, *Shore v. Shore* 253 Ga. 183 (1984) and its progeny.

61

The Applicants were not provided even a due process, insufficient Notice of Hearing for the Amended Motion for Contempt.

The August 23, 2013 Order that was the basis for the assertions in the Amended Motion for Contempt was noticed for appeal by Michelle Murphy before the Amended Motion for Contempt was filed. (V14 p.2774)

There were numerous motions to disqualify Judge A. Quillian Baldwin that were not adjudicated before the filing of the Amended Motion for Contempt. (*infra*, p. 17;  V3 p.436; V10 p.1904; V11 p.2195; V14 p.2890)

Michelle Murphy, Larry King and Millard Farmer filed a comprehensive response to the September 27, 2013 Amended Motion for Contempt. (V16, p.3334) The response pled to the jurisdiction the "Amended Contempt."

Judge Baldwin was clearly placed on notice of the pending appeal, his failure to adjudicate his disqualification and the fact that the August 23, 2013 Order was obtained by the Glover & Davis lawyers with an *ex parte* letter that contained false statements about Michelle Murphy that were not in evidence.

This application details the disqualification of Judge Baldwin and misconduct of the Glover & Davis lawyers in order to expose the malicious abuse of the criminal process to obtain an illegal advantage in the underlying case.

**Michelle Murphy held in contempt of August 23, 2013 Order and incarcerated** until she signs documents submitted to her by a psychologist, Nancy

McGarrah, that provided this psychologist complete immunity -- not just statutory, bad faith immunity, and obligated Michelle Murphy, a hair stylist, to be responsible for expensive fees and financial liability to depose the witness, have the witness' presence in Court. (V17 p.3627)

**Michelle Murphy ordered to** pay $5,000 to John Murphy within thirty (30) days pursuant to OCGA. 19-9-3 and is based on, inter alia, the attorney's fees Plaintiff incurred in seeking to compel Defendant's compliance with the August 23, 2013 Order. See, *Horn v. Shepherd*, 292 Ga. 14, 14-21 (2012) The Court did not consider the disparity of the ability to pay. (V17 p.3628)

**Millard Farmer held in indirect criminal contempt** of the provisions of the August 23, 2013 Order prohibiting Defendant or her attorneys from discussing this case or the issues raised herein with the Children and further in contempt for Michelle Murphy's failure to appear at October 3, 2013 indirect criminal contempt hearing. Millard Farmer was ordered incarcerated for 20 days or until he pays $1,000.00. (V17 p.3628)

**Larry King was held in contempt twice.** After being taken into custody and paying $1,000, Larry King was released after Judge Baldwin withdrew the first contempt that occurred as quoted below (Tr. Oct 3, 2013 p.8, lines 8-21) at the beginning of the hearing, as Larry King was attempting to explain the rights of persons charged with indirect contempt. Judge Baldwin later stated he withdrew

63

the first contempt because he was "mad." (Tr. Oct. 3, 2013 p.19, line 4)

[MR KING] That order is on appeal, and it has been superseded.

THE COURT:  What was that?  I haven't seen an appeal.

MR. KING:  You'd have to look in the Clerk's file, Judge.

THE COURT:  It's not my business to look at the Clerk's file.  It's y'all's

business to show me where it is.  Do you understand?

I'm tired of this.  I'm holding you in contempt for not having this stuff.

And I want him put in jail until he purges himself of contempt by paying at least

a thousand dollars' attorney's fees.  All right.  Anything else?

At the end of hearing, Larry King was held in contempt again because Michelle

Murphy failed to appear at the October 3, 2013 contempt hearing. Larry King was

ordered incarcerated for 20 days or until he paid One Thousand Dollars ($1,000).

(Tr. Oct. 3, 2013, p. 112, l. 4 – p.113, l. 24)

After the first contempt of Larry King, Judge Baldwin had an obligation under

the rationale of *Dowdy v. Palmour*, 251 Ga. 135 (1983) and *Hargis*, 294 Ga. 818,

822-823 (2014), to discontinue adjudicating the other contempts.

**The Background of the Underlying Case is Relevant, as the Contempts were
Retaliatory, but Worse, were Illegally and Unconstitutionally Obtained as Part
of a Very Detrimental Obstruction of Justice**

Michelle Murphy, the custodial parent, is defending herself and the choices of

her children to continue living with her as a family in two equally difficult arenas

64

due to her income and financial resources. She is defending in the courts and defending in the real world, where the children are being financially deprived and emotionally attacked to facilitate their takeover by John Harold Murphy and Renee Haugerud, his current multimillionaire spouse. (V16 p.3436) While the efforts of John Harold Murphy and Renee Haugerud, (or, collectively, "Murphy/Haugerud") are in two very different arenas, Murphy/Haugerud and their cadre of lawyers have one unified tactic, *i.e.,* to financially deplete the resources of Michelle Murphy to cause her submission. See, *e.g*., Renee Haugerud's Motion for Attorney's Fees (V7 p.1437); Glover & Davis' request for attorney fees (Tr. Oct. 3, 2013, p.68, lines 13-22) motion for $9,000 supersedeas bond to allow appeal of these contempts.V18, p.3823)

The contempts adjudicated by Judge A. Quillian Baldwin, Jr. originated in a modification of custody case (V1 p.1) initiated against the custodial parent, Michelle Murphy, by John Harold Murphy, who only lived in their home until Thomas was 18 months old and Jack was 30 months old before moving to New York, leaving Michelle Murphy, Jack Murphy, now age 15, and Thomas Murphy, now almost 13 years old, in Georgia.

The litigation against Michelle Murphy was initiated and continued with combined attempts by John Harold Murphy to create a financial crisis for Michelle Murphy with the combination of expensive litigation costs and the deprivation of

financial, educational support for the children that he and Renee Haugerud voluntarily provided since Superior Court Judge Louis Jack Kirby performed John Harold Murphy's marriage ceremony with Renee Haugerud, a multimillionaire hedge fund operator. (V16 p.3440)

After Michelle Murphy informed John Harold Murphy that she would not yield to his request for her and the children to move to Tennessee near Renee Haugerud's home on Lookout Mountain, he began the Murphy/Haugerud financial assault upon the family by withdrawing transportation for the children from Newnan to the private school in Atlanta that Murphy/Haugerud had previously, voluntarily provided. (V9 p.1768)

The type of conduct in which Murphy/Haugerud have engaged is a clear indication that it is not in the "best interest of the children." It is a part of the Murphy/Haugerud agenda that is to obtain another possession that just happens at this time to be the children, whom they display as ornaments. Their possession is to fill a void in what Renee Haugerud calls her 21st payoff life. (V14, 2766)

The Glover & Davis lawyer initially sent a proposed contract to Michelle Murphy that required her and the children to move to Chattanooga, or be imperiled with this modification litigation. (V8 p.1567)

John Harold Murphy and Renee Haugerud apparently view Michelle Murphy only as a "nanny" or a surrogate mother for the children. John Harold Murphy

66

maintained that Renee Haugerud was the natural mother of Thomas Murphy on a recent visit to the emergency room for his alcohol poisoning that occurred while visiting in their Atlanta residence. (V16, p.3489) Murphy/Haugerud consider Michelle Murphy to be a hair stylist beneath their social and economic status and do not accord her the dignity deserved for the mother who raised the children when their father left their home for New York and other women long before he began living with Renee Haugerud.

When Michelle Murphy refused to move from Newnan to Tennessee, the Glover & Davis lawyer used an "emergency" motion to select Judge Baldwin.

He was easily selected by the Glover & Davis lawyer falsely alleging an emergency, with the sworn statement of John Harold Murphy that Michelle Murphy was planning to move to South Carolina. (V1 p.13) The Standing Order prevents such a move, in the Coweta Judicial Circuit, upon the filing of any type of domestic relations complaint without the feigned emergency hearing on the day that Judge Baldwin was presiding. This tactic was used by the Glover & Davis lawyer to hand pick Judge Baldwin for this case. (V1, p.7)

Judge Baldwin, without granting a requested hearing, over strenuous objection, signed, without reading, a Glover & Davis prepared order illegally appointing the Glover & Davis selected guardian ad litem (V1, p.23) and provided her authority unauthorized by law. This guardian ad litem had sponsored a judicial political

rally with the Glover & Davis lawyer, attended by Judge Baldwin on the night before her appointment. The Order, contrary to what Judge Baldwin thought he was signing, made Michelle Murphy potentially liable for payment of the fees of the guardian ad litem. (Tr. Nov. 15, 2012, p.33, l. 25- p. 34, l. 22)

The guardian ad litem was illegally granted the authority to temporarily modify custody without judicial approval that **shall** be followed. This illegal authority is not authorized and statute, or the Uniform Superior Court Rules. Uniform Superior Court Rule 24.9 provides the authority authorized for a guardian ad litem. Superior Court judges are restricted The authority that the Glover & Davis lawyers included in the appointment order that Judge Baldwin signed without reading is, as follows.

> The GAL may make temporary recommendations/adjustments during the pendency of this action regarding custody and parenting time and the parties shall follow said recommendations of GAL.
> (V1 p.23)

Judge Baldwin, without knowing, or by intentionally misstating the Uniform Superior Court Rules, states as follows in his disqualification order.

> While the court acknowledges that it is better practice to read such order, in this case it was not needed. The GAL order was a standard order that the Judge has seen a number of times. Further, the order tracts the Uniform Superior Court Rules for the duties of a GAL.

68

Judge Baldwin did accurately state that the Glover & Davis lawyer includes this illegal authority in the Glover & Davis prepared guardian ad litem appointment orders that apparently Judge Baldwin, as a matter of practice always signs without reading.

The guardian ad litem, to the detriment of Michelle Murphy, attempted to use this authority to create an order to Michelle Murphy about the children going to school in Atlanta rather than near their home in Coweta County. This order by the guardian ad litem created expensive litigation costs for Michelle Murphy. (V16 p.3394)

The illegal conduct of the guardian ad litem is relevant, as it was the guardian ad litem alone who selected the psychologist with the illegal contract that Judge Baldwin attempts, with an aspect of the contempt, to force Michelle Murphy to sign.

This conduct of the guardian ad litem attempting to modify custody at the beginning of the school year with the approval of the Judge accepting the blanket assignment of this authority in the appointment order, initiated an expanded disqualification of Judge Baldwin motion that he denied on June 7, 2012. (V2 p.306), That disqualification motion addresses the illegal conduct that Judge Baldwin identifies as "messing" with him.

The June 7, 2012 denial of disqualification Order was appealed to this Court.

69

The June 7, 2012 Order disputed other facts in the affidavit supporting the disqualification motion and further violated the Uniform Superior Court Rule 25, *et seq.* as Judge Baldwin did not refer the motion to another judge and did not cease acting on the merits of the case, as required by USCR 25.3

The lynchpin in all appellate matters in this case is Judge Baldwin's violations of the Canons of the Code of Judicial Conduct (or, "Canons") and the Glover & Davis lawyer's selection of Judge Baldwin. The Glover & Davis judge shopping selection of Judge Baldwin was doable with a combined feigned "emergency" motion (V1 p.13) and the absence of a Uniform Superior Court Rule 3.1 case management plan. (V2 p.310; V3 pp. 436, 447, 506) Glover & Davis engaged in a pattern of judge selection conduct. See, *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114 (2012).

When John Harold Murphy began withdrawing voluntarily provided transportation to an Atlanta private school that Murphy/Haugerud had previously offered to the children, (V9 p.1768) Michelle Murphy informed the Murphy/Haugerud couple that she could not afford the transportation to Atlanta schools twice a day while engaging in her occupation as a hair stylist. The Glover & Davis lawyer, after rejecting alternative suggestions for transportation, wrote a letter accusing this hair stylist of "laziness" in not making the two trips to the Atlanta schools each day from Newnan. (V9 p.1783)

70

When Michelle Murphy made it clear that if alternative suggestions for transportation (Tr. Aug. 30, 2012 p. 10) were not accepted she would not take the children to the Atlanta schools, the guardian ad litem, without court approval, ordered the children to stay with John Harold Murphy in Atlanta at the beginning of school. (V9 p.1788)

Michelle Murphy refused to surrender the children, as ordered by the guardian ad litem and enrolled the children in public school in Coweta County.

The Glover & Davis lawyer then obtained an "emergency" hearing before Judge Baldwin on August 30, 2012. Judge Baldwin, after hearing the testimony of the psychiatrist expert witness for John Harold Murphy to whom the guardian ad litem paid $1,500 to testify, was unable to identify any emergency. (Tr. Aug.30, 2012 p. 72, lines 20-25) The hearing was a flop for the goals of "Murph," as the guardian ad litem called John Harold Murphy.

Judge Baldwin refused to obey the non-discretionary dictates of Uniform Superior Court Rule 25, *et seq*. (Recusal) and never entered an order adjudicating any other disqualification motions that were filed on June 13, 2012 (V3, p.436)**;** July 2, 2012 (V3, p.502); Aug. 19, 2013 (V10, p.1904); Aug. 28, 2013 (V11, p.2195); Sept. 13, 2013 (V12, p.2321); Oct. 7, 2013 (V14, p.2890); and Nov. 26, 2013 (V17, p.3639) until December 4, 2013 when he entered yet another Order in which he, as he did in his June 7, 2012 denial of his disqualification

71

motion, once again opposed by disputing his disqualification motion's affidavits

> `THE COURT I'm just tired of things -- Like I noticed`
>
> `in this thing y'all talk about some kind of ex parte`
>
> `conversations. I don't think I have had any ex parte`
>
> `conversations with Mr. Drake about this anytime`
>
> `lately if I ever had any. I don't think, since the`
>
> `beginning of this case I have, partly because of`
>
> `all the stuff that's been going on in the State`
>
> `about ex parte conversations. *    *    * And I`
>
> `don't believe I have had any ex parte conversations,`
>
> `a`
>
>
> `nd I don't see how y'all could know about any unless`
>
> `you supposedly have my phones bugged or his phone`
>
> `bugged.  (Tr. Oct. 3, 2013, p.15, lines 4-17).`

Before Michelle Murphy received or learned of the *ex parte* supported August 23, 2013 Order, a deputy sheriff, whose office is represented by Glover & Davis, came to the home of Michelle Murphy to get the children to comply with the modified visitation, *nunc pro tunc* to August 13, 2013. (V14, p. 2702)

The August 23, 2013 Order was obtained with an *ex parte* communication to

Judge Baldwin, containing facts not in evidence and false statements, not provided to counsel for Michelle Murphy, until after the Order was obtained and filed.  (Tr. Oct. 3, 2013, p. 19, lines 12-23)

On August 29, 2013, the Glover & Davis lawyers filed a Motion for Indirect Criminal Contempt accompanied only with a "notice of hearing" without a Rule Nisi or subpoena requiring that Michelle Murphy attend a hearing. (V12, p.2243), Michelle Murphy responded on September 23, 2013 to that contempt motion with detailed, supporting affidavits refuting the motion. (V14, p.2721)

That motion and the Amended Contempt were abuses of the criminal process.

A proceeding on the motion occurred on October 3, 2013 without a Rule Nisi or subpoena for any person to attend. The response, with support of affidavits from the children, with a recorded cell phone conversation by one of the children with John Harold Murphy, clearly indicated that John Harold Murphy could not sustain an indirect criminal contempt, even if he had provided the due process required service, as he consented to the children not visiting, as he was in St. Thomas on his visitation time. (V14, pp. 2743, 2758, 2763)

After John Murphy and the Glover & Davis lawyers orchestrated the Deputy Sheriff's illegal display of force to the children gimmick that did not result in an incident, and the Glover & Davis lawyer realized after obtaining the response, supported by the affidavits of the children and their mother, that John Harold

73

Murphy had made a false statement under oath, they changed their attack.

The Glover & Davis lawyers then attempted to use the August 23, 2013 Order, while it was on appeal to the Supreme Court of Georgia (V14 p.2774) as the basis for the hasty, illegal filing on Friday, September 27, 2013 of an Amended Contempt Motion (V14 p.2779) The Amended Contempt Motion was one shoddy piece of legal work apparently designed only to take additional advantage of Judge Baldwin while also initiating a threat of incarceration action against Michelle Murphy and her lawyers to appease Murphy/Haugerud.

The Amended Contempt Motion was not supported with a notice of hearing that would have been an infirm due process notice to a person charged with the October 3, 2013 indirect contempts. (V14 p.2807)

The Amended Contempt Motion did not include a Rule Nisi

The Amended Contempt Motion did not subpoena any person.

The Amended Contempt Motion was not even copied to Larry King.

The Amended Contempt Motion stated that it was for contempt of "Defendant's lawyer" [singular] when Michelle Murphy had two lawyers and the lawyer charged was not named. (V14, p.2782)

The Amended Contempt Motion was not a charging document that comported with due process to the extent that it could legally be adjudicated. (V14, p.2817)

The Thursday, October 3, 2013 court calendar posted and sent to counsel from

the Clerk of Court of Coweta County did not indicate that the Amended Motion for Contempt, or any motion for contempt, was on the Thursday, October 3, 2013 calendar, as the "Prosecutor/Plaintiff" Taylor Drake of Glover& Davis did not obtain from the Judge, or any Clerk, a Rule Nisi to have served upon the persons charged. (V14 p. 2807) See, *Crocker v. Crocker*, 132 Ga. App. 587, 589 (1974)

Michelle Murphy, Larry King and Millard Farmer filed a comprehensive response to the September 27, 2013 Amended Motion for Contempt. (V16, p.3334) The response pled to the jurisdiction of Judge Baldwin to hear the Amended Contempt Motion.

**Enumeration of Errors**

**One**. Whether the Court erred in holding the applicants in contempt based upon the any or all of following infirmities:

the alleged violations of the August 23 Order that was based upon the August 13 hearing that was terminated before Michelle Murphy was allowed to present her available evidence, in violation of *Shore v. Shore*, 253 Ga. 183 (1984) and its progeny;

the alleged violations of the August 23, 2013 Order that was obtained with an *ex parte* communication (V14, p.2752); See, *Hargis v. State*, 319 Ga. App. 432, 436-437 (2012);

the alleged violations of the August 23, 2013 Order that was obtained while

75

there were unadjudicated disqualification motions at the August 13, 2013 terminated hearing, at the time the August 23, 2013 Order was entered, when the October 3, 2013 hearing occurred, and on November 19, 2013, when the contempt Order was filed;

the alleged violations of the August 23, 2013 Order that was on appeal and subject to a supersedeas at the time of the September 27, 2013 filing of the Amended Motion for Contempt;

the alleged violations of the August 23, 2013 Order that directed that Michelle Murphy execute a contract with a third party psychologist, was an illegal order by the Court void as against public policy of the State, as the contract (V17 p.3627) required that Michelle Murphy waive all immunity against the psychologist and not just statutory, bad faith immunity and become liable for payments that would require financial resources from the family that would not be in the best interest of the children and litigation cost that the judge has warned on numerous occasions that he might not award. Such a contract (V17 p.3627) which a court orders executed corrupts the judicial process.

**Two**  Whether the court erred in ordering Michelle Murphy to execute the contract (V17 p.3627) required by the psychologist as a condition of her services.

**Three**  Whether the court erred in holding Michelle Murphy in contempt for not

executing a contract (V17 p.3627) when the psychologist would not inform her of the method used for the "custody evaluation" and provide other information before she executed the contract; the contract required Michelle Murphy to grant the psychologist full immunity, become financially liable for fees that she could not afford, pay fees with 18% interest for late payments; and to obtain discovery and production at trial at a cost that she could not afford.

**Four**   Whether the court erred in holding the applicants in contempt without a due process hearing and thereafter in adjudicating them in contempt without evidence supporting the finding beyond a reasonable doubt at a hearing when they were not required by Rule Nisi, subpoena or other due process notice to attend and defend, as they were not accorded due process notice and other due process protections.

**Five**   Whether the court erred in adjudicating Millard Farmer in contempt without a hearing, beyond a reasonable doubt and for not requiring Michelle Murphy to attend the October 3, 2013 hearing when co-counsel appeared and filed objections to the hearing, and Millard Farmer was never provided due process notice that required him or Michelle Murphy to attend, and the only notice of accusation against any lawyer was the designation "defendant's lawyer" (singular) when there were two lawyers in the case.

**Six**   Whether the court erred in adjudicating Millard Farmer in contempt without

77

a hearing, beyond a reasonable doubt and for talking with the children.

**Seven**   Whether the Court erred in ordering, without a finding of necessity, that the children could not be explained the hearing during which Judge Baldwin met with them and informed the oldest child that his request to live with his mother would be honored, and later, when the Glover & Davis lawyer objected, Judge Baldwin retracted his commitment to the child without informing the child of his retraction of the commitment. (Tr. Aug. 13, 2013, p.263, lines 14-16)

**Eight**   Whether the court erred in adjudicating Larry King in contempt for not requiring Michelle Murphy to attend the October 3, 2013 hearing.

**Nine**   Whether the court erred in adjudicating Michelle Murphy, Millard Farmer and Larry King in contempt when they were not accorded due process protections and found guilty beyond a reasonable doubt.

**Ten**   Whether the evidence support the convictions for contempt.

Argument and Citation of Authority in Application

   Judge Baldwin abrogated his judicial authority in all relevant matters in the entirety of this case to the Glover & Davis lawyers. It is unconscionable, but certainly not unpredictable that Judge Baldwin delegated the preparation of the contempt orders to the Glover & Davis lawyers.

   It is unconscionable that the Taylor Drake included false findings of fact in the Order that he prepared for Judge Baldwin to sign. The Glover & Davis lawyer

78

included the findings in the Order that Judge Baldwin may or may not have read before singing, as on previous occasions Judge Baldwin did not read the orders that he signed.

The November 19, 2013 Order falsely states, without evidence that "Defendant and her lawyers had reasonable and sufficient notice of the hearing." Again, the Order states that "The Court further finds that Defendant had reasonable notice of the hearing but failed to appear and present evidence."

The ironic aspect of this finding that Defendant "failed to present evidence" is the August 23, 2013 Order that "Defendant" is accused of violating resulted from a hearing on August 13 where Michelle Murphy and each of her counsel did appear, but Judge Baldwin aborted the hearing for a personal commitment and never allowed Michelle Murphy to present any evidence, including the principal and teacher from the children's school, who awaited all the hearing to testify. *Shore v. Shore*, 253 Ga. 183 (1984) and its progeny.

There was absolutely no evidence to support that Michelle Murphy, Larry King or Millard Farmer were provided a Rule Nisi, a subpoena to appear or any other notice that fulfills the requirements of due process.

Judge Baldwin doesn't read the orders that he signs, and, worse, has such little understanding of the law relating to contempt that on October 3, 2013, he initially

79

held Larry King in contempt for just attempting to explain the impropriety of Judge Baldwin beginning the hearing with the shoddy papers that the Glover & Davis lawyers filed without the vaguest understanding of the due process protections associated with criminal prosecutions, albeit the prosecution for contempt.

The inability of Judge Baldwin even to allow Larry King to explain the due process protections involved in contempt actions speaks the reason that Uniform Superior Court Rule 3.1 was never implemented in the Coweta Judicial Circuit and the reason that due process protections in the court is at such a low level that orders drafted by political friends are signed without reading.

Cannon 2A, 2B, Canon 3E of the Code of Judicial Conduct are substantive grounds for recusal or disqualification of a judge. These grounds should be assessed in light of two well-recognized principles of Georgia law. First, no one has a right to select the judge of their choice, and a judge, of course, has no right to select the cases over which the judge presides. *See* Uniform Superior Court Rule 3.1. Yet, that is what happened in this case and happened in the Coweta Judicial Circuit on a regular basis. (V3 pp.447-448)

Persons accused of conduct that subjects them to incarceration are entitled to a trier of fact who is not biased. Judge Baldwin and the contempt convictions do not open the first gate to uphold the contempt convictions under the *Cole v. Arkansas*,

80

333 U.S. 196 (1948) standard of adequate notice of the charges and under the *In re Winship,* 397 U. S. 358, requirement that to support a criminal conviction the record must reasonably support a finding of guilt beyond a reasonable doubt.

Judge Baldwin not only deprived the applicants of a fair hearing, he deprived the applicants of a motion for new trial before a fair jurist, when, after the November 19, 2013 contempt Order, he denied all of the disqualification motions that were pending before the November 19, 2013 Order., thereby not allowing another judge to take over this case. With Judge Baldwin remaining in the case there is no possibility for the applicants to obtain a fair ruling on a motion for new trial that reviews the criminal contempt convictions under a different standard. See, *Walker v. State*, 292 Ga. 262, 264-265 (Ga. 2013)

In particular, Section (B) (7) of Canon 3 of the Georgia Code of Judicial Conduct forbids a judge from considering an *ex parte* communication: Judges shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. Judges shall not initiate or consider *ex parte* communications, or consider other communications made to them outside the presence of the parties concerning a pending or impending proceeding. ***

*Ex parte* communications "are presumed to have been in error."

"[W]hen the court considers facts not properly in evidence, the other party has

81

rights that cannot be protected fully if he is thus denied the privilege of cross-examination. *Arnau v. Arnau*, 207 Ga. App. 696, 697 (Ga. Ct. App. 1993)

The law relating to indirect contempt is clear. Michelle Murphy, Millard Farmer and Larry King were accorded no due process protections that *Crocker v. Crocker*, 132 Ga. App. 587, 589 (1974) identifies must be provided:

> In cases of constructive contempt of court, where the alleged contumacious conduct is disobedience to a mandate of the court, not an act in the presence of the court or so near thereto as to obstruct the administration of justice, the law requires that a rule nisi issue and be served upon the accused, giving him notice of the charges against him, and that he be given an opportunity to be heard. [citations omitted]

**Conclusion of Application**

Judge Baldwin's adjudication of the contempts incarcerates Michelle Murphy for defending her family, and her lawyers for defending her.  (V17, p.3624)

Without relief from the Court, John Harold Murphy's threats to Michelle Murphy that she would "end up in a trailer" just like where she and her mother had to live for a while when her father abandoned the family, will come true. This 9th day of December, 2013. Respectfully submitted,

53. Judge Baldwin spoliated evidence of his illegal conduct in abridging the rule of Law mandated by USCR3.1 and by violating USCR 25.3 with the intent to spoliate evidence that Michelle Murphy, her counsel and the defendants in this case and the public under the rule of law were United States constitutionally entitled.

54. John Harold Murphy and *Galtere et al Enterprises* now compensate Wilmer "Buddy Parker and Maloy Jenkins Parker to assist Galtere *et al Enterprises* and others to engage is a vindictive continuation of evidence spoliation and illegal conduct to interfere with the livelihood, professional obligations of counsel defending the Civil RICO case and to obtain money from the Defendants for exposing the illegal conduct of Renee L. Haugerud's hedge fund operation with John Harold and her Galtere *et al Enterprises.*

55. The state court infected Due Process was inflicted upon Millard Farmer, Larry King for providing legal representation and upon the others accused in this case does not pass constitutional muster to support the Civil RICO complaint. The Defendants and other civil RICO persons' Fourteenth Amendment Due Process Equal Protection and The First Amendment protections dictate that the rope of jurisdiction corruption not be used to hang these Defendants and other of the Civil RICO victims.

83

56. Larry Kings' insurance carrier paid the Plaintiff an estimated $100,000 for the professed reason to avoid the expenses of the litigation. This negotiated payment to the Plaintiff was to deprive the remaining persons and entity in the Civil RICO case of the advocate for Larry King the benefit of the unadulterated witness that Larry King would be if presented by the counsel that Larry King pa1d premiums for many years to have his insurance carrier provide. and funds from the insurance carrier should be recoverable by the Bankruptcy Trustee and the Defendants. Larry King possess some of the valuable evidence of the constitutional abridgments of Judge Baldwin that occurred in concert with the Glover & Davis and other lawyers of the *Galtere et al Enterprises.*   Larry King, as the other defendants, is a victim.

57. Larry King, albeit that he served Michelle Murphy and her children valiantly and diligently and yes, with only pro bono compensation, provided legal services with Millard Farmer in the modification of custody case, during the time that Larry King's wife was ill in Florida, Larry King and Millard Farmer had a far more difficult task than they expected.

58. Even so, Millard Farmer and Larry King had and have a lingering professional obligation to the next Michelle Murphy's and others who now are also attacked in the Civil RICO case., as a supplement to judicial

84

corruption. The obligation of a lawyer if different from that of a Little League baseball Umpire, the lawyer cannot quit because of rain and lightning. Larry King and Millard Farmer have an obligation to every person who lives in the Coweta judicial Circuit, or who, like Michelle Murphy, may be moved there with their children from California to be abandoned for the six months necessary to get a Georgia Divorce.

59. Larry King and Millard Farmer have an obligation to every lawyer in the Coweta Judicial Circuit, who allowed the Glover & Davis lawyers to judge shop to the detriment of those other lawyers' clients. There is a message in this case. A pattern of judicial corruption and discriminatory triers of fact cannot exist in an environment of ethical diligent lawyers who do not offer temptation to unethical, or impaired judges and who remove temptation from unethical Judges.

60. Most every litigant, as did John Harold Murphy, wish their lawyer to have an inside relationship with their judge. Our system of justice only prevents judicial corruption with dedicated lawyers and judges who say "NO". This means that lawyers cannot allow insurance carriers to set the mark twain of justice and morality. This is twice in the last five years that Millard Farmer has observed insurance carriers tampering with justice by tampering with the motivation of witnesses being provided, otherwise

85

unavailable, benefits . This insurance carrier of Larry King, primarily for its financial interest, participated with John Harold *Murphy and Galtere et al Enterprises in* breaching, the lingering protections that Larry King professionally owed others. Larry King had no RICO liability. The defendants are entitled to have that conduct investigated, as the absence of Larry King and his competent Civil RICO counsel contributes to the ability of the Plaintiff in spoliating evidence that can only be cured with the federal investigative assistance requested in this motion. The state court investigation, albeit by honorable persons in one incident are not of the investigative quality that an independent federal investigation. The so-called investigation of the overcharging of fees by Nan Freeman did not even investigate the overcharging of court reporting fees to individuals and did not provide copies itemized accounts of the court reporting work by Nan Freeman, as it accepted such information as. the District Attorney often gets copies of transcripts that are not invoiced, so that is evidence of not overcharging for items that the Board of Court Reporting allows. The issue was, did Judge Baldwin agree for Nan Freeman to be paid for work that she did not submit an itemized required invoice to Judge Baldwin for his approval?, or was their a consensual relationship relating to protecting each other such that it comprised spoliated evidence of  they prohibiting

86

Millard Farmer document that even after the USCR3.1 enactment supporting that Judge Baldwin was engaging in consensual case and judge selection.?

61. Some how, Yes,, "some how,' some lawyers and the judge fail to accept that the judicial corruption that existed in the Coweta Judicial Circuit involved the lives of minor children and the mothers' responsible for giving birth to these children that are, statistically speaking, without the funds to litigate against hedge fund operators who can financially benefit by taking a mother's children from her for the financial benefits to a hedge fund and such, instead of providing the mother adequate child support. The substitute Senior Judge for Judge Baldwin after his recusal upon the objection of relevance by John Harold Murphy's final custody hearing lawyer, Buddy Parker, yes, Taylor Drake was dumped as the trial lawyer for that final hearing. The Senior Judge held that evidence about the need of the children for the hedge fund business was not relevant. Somehow it may be relevant to the quality of life that a mother who seeks the children does so for the exclusive love and care that she can provide to the children that a hedge fund operator will provide, or was provided when one of the children was required to go to the hospital for over consumption of alcohol during a drinking contest with older visiting friends that occurred within

twenty feet of Renee L. Haugerud and John Harold Murphy in their home. This drinking contest and over consumption occurred, while John Harold Murphy had "gone to sleep" looking at television and Renee L. Haugerud was working on her computer.

62.. The factual recitations contained in the affidavit of Larry King that his competent Civil RICO experienced Counsel with the assistance of his large law firm  could have presented to the Court relates to the defense of the defendants and defense of those accused of assisting Michelle Murphy that the Civil RICO Complaint avers had evil motives and were, as Millard Farmer is accused,  of being disrespectful lawyers and judges engaging in judicial corruption involving minor children  That Larry King Affidavit is Exhibit **XX**  The factual content and other information not in that affidavit is absent its presentation to the Court with the dedication of Larry King on one of days that he alone was inflicted with the malice of Judge Baldwin that inflicted upon Larry King, probably because Millard Farmer was lead counsel in a specially set venue changed case in Mississippi and there was no legal notice for Millard Farmer, or his client, Michelle Murphy to appear before Judge Baldwin.

63. The Glover & Davis lawyers filed a $36,914.48   garnishment against Millard Farmer based upon an abusive litigation fine imposed for Judge

Baldwin dismissal of a Third Party Complaint that Millard Farmer and Larry King filed was *Moore v. Moore,* 281 Ga. 81 (2006) compliant.

24This Civil RICO case falsely avers that the Third Party Complaint was initiated as a " sham "third-party" claim against Mr. Murphy's spouse in the Child Custody Litigation, knowing such a claim was completely without any legal or factual basis. This is another of The Civil Rico' Ashcroft *v. Iqbal* not compliant falsely stated opinions in the Civil RICO Complaint.

25The Georgia Supreme Court's 2006 Supreme Court's Third Party supporting custody Opinion by Justice Carley in in *Moore v. Moore,* 281 Ga. 81 (2006) Millard Farmer was not allowed to brief and the numerous national cases that supporting the absence of abusive litigation relating to the filing.

1. Frankly, there are few lawyers that are even qualified to carry Justice Carley bags and none who dare dispute his intellectual integrity and dedication to upholding the integrity of the judicial system. By any fair test the third party complaint did not justify the $36,914.48 fine sought and obtained only against Millard Farmer and not against Larry King because the Senior Judge E. Byron Smith who replaced Judge Baldwin after the recusal of all the Circuit Judges enforced, Judge Baldwin's Order against Millard Farmer that

"Defendant" could not file any motions, documents etc. without Judge Baldwin's approval to file any documents to defend any matter.

The exceptions to abusive litigation fines, as the advancement of the law rule, "Moore," refusal to allow a filing by a judge with pending disqualifications, alone should have prevented the fine paid to the Glover &.Davis for Renee L. Haugerud, who each corrupted the justice of Judge Baldwin being ex parte consensually had selected to be the judge is a travesty of justice that this Court should adjudicate as a stand alone abridgment of Fourteen Amendment Due Process. Equal Protection and First Amendment Constitutional protections.

The Third Party state court issue is constitutionally before this federal Court as the Civil RICO Complaint raises the issue of the third party complaint only being a "sham" to delay, etc.

10

64. The factual basis. for the Third Party Complaint filed against Renee L. Haugerud was  while this Civil RICO Case was pending to further disable the financial resources of  counsel who were representing Michelle Murphy when this Civil RICO case was filed and was to deter other lawyers from going forward with attacks against the pattern of judicial

90

corruption that  Glover & Davis engage, on behalf of Renee L. Haugerud, with a garnishment of Millard Farmer, paid Glover & Davis to obtain $36,914.48 from Millard Farmer as a fine for Millard Farmer's and Larry King's filing of the Third Party Complaint against Renee L. Haugerud, the wife and business associate of John Harold Murphy.

65. That Third Party Complaint, made a part of the John Harold Murphy's Complaint against Michelle Murphy in the Modification of Custody case was compliant with Georgia Supreme Court Justice Carley's Opinion in *Moore v. Moore,* 281 Ga. 81 (2006) and similar cases throughout the country.

66. Millard Farmer was not allowed to defend the $36,914.48 fine sought and obtained only against him and not Larry King because the   Senior Judge who replaced Judge Baldwin after the recusal of all the Circuit Judges enforced, Judge Baldwin's Order against Millard Farmer that "Defendant" could not file any motions, documents etc. without Judge Baldwin's approval.

67.  Millard Farmer and Larry King had a responsibility to the children of Michelle Murphy to obtain adequate child support for them.

68. These lawyers for Michelle Murphy attempted to pierce the crime fraud veil of John Harold Murphy, Renee L. Haugerud and *Galtere*

91

*et al Enterprises* with that Third Party Complaint that Judge Baldwin's Judicial Corruption guided by Glover &Davis vindictively killed. This "Vindictively" word is used to emphasize that judicial corruption in a case involving the custody of children is something more egregious than illegal, unethical and a constitutional abridgment.

69. John Harold Murphy appeared to have a contorted moral view that financial benefits to the children were only justified when he had the children in his physical custody; for example, John Harold Murphy and Renee would not allow Michelle Murphy's children to take home shoes or clothes that they purchased for the children to wear.

70.

71. This Civil RICO Case is basically grounded upon the legal efforts of Millard Farmer, Larry King and others attempting to assist Michelle Murphy and her children. These lawyers' defense of the illegal conduct is thereby relevant.

72. Millard Farmer, Larry King and the other Civil RICO accused persons were swimming against an ever-strengthening  storm of unconstitutional conduct, which could make it difficult for persons never being in such a storm of judicial corruption toto unfairly judge the attempted protectors of Michelle Murphy from the profiteers of their created judicial corruption.

92

The conduct of the constitutional protectors can only best be judged by those without the financial resources to withstand the attack of a hedge fund operator who needed the children to enhance the wealth of the hedge fund.

73. The  Senior Judge who would not allow Millard Farmer to defend the amount of the fine had a history of financially benefiting from the absence of the USCR 3.1case management Rule that allowed the Coweta Judicial Circuit to elect not serve in cases and instead to substitute compensated Senior Judges.

There is  spoliated evidence  justifying this federal court's  assistance to the Trustee in Bankruptcy and Defendants **in obtaining  investigative regulatory** assistance from **the FBI,  SEC and IRS** seeking for a full investigation of the source and the amount of the funds and in kind benefits paid and received by all parties and entities with any involvement in matters related to the pattern of illegal judicial corruption that Taylor Drake and Glover & Davis and those defending against their conduct were involved. John Harold Murphy now attempts to financially benefit for compensating Taylor Drake and Glover & Davis for participating in the illegal conduct of violating USCR 3.1 and. for participating in the illegal and unethical conduct of Judge Baldwin, who without their illegal conduct could not have inflicted

93

the misery that he created for Michelle Murphy and her children. This, these lawyers committed with malice intended to obtain the large financial gain derived from John Harold Murphy and the *Galtere et al Enterprises*.

74. After resolving the malpractice negligence case, John Harold Murphy initiated the Modification of Custody Case against Michelle Murphy, who by the Divorce settlement agreement, with John Harold Murphy was designated as the custodial parent of the two minor children. Millard Farmer and Larry King were not counsel in the Divorce action; however, they had full knowledge of that litigation from the malpractice negligence litigation.

75. Millard Farmer and Larry King, were co-counsel for Michelle Murphy in the Modification of Custody Case that John Harold Murphy initiated.

It was during that Modification of Custody case that John Harold Murphy initiated this Civil RICO case against these two attorneys and the other Defendants who are accused in various capacities of attempting in different ways to assist Michelle Murphy and her attorneys in protecting Michelle Murphy's freedoms and thereby the constitutionally protected freedoms of this mother's children.

76. custody case "expert" witnesses selected by the participating judges in the Coweta Judicial Circuit.

77. It was the legal and ethical responsibility of the judges in the Coweta
    Judicial Circuit to implement a USCR 3.1 Plan that would Order the
    Clerks of Courts to adhere to the random assignment of cases according
    to the Supreme Court of Georgia's Uniform Superior Court Rules
    Approved plan.

78. The Due Process, Equal protection and First Amendment Constitutional
    abridgments of the USCR 3.1Plan, as part of the judicial corruption was
    more egregiously judicially corrupt by the additional abridgment of the
    only defense to the unconstitutional selected judges that is. motions for
    disqualification of the judge. Judge Baldwin after agreeing to become the
    exclusive judge and trier of fact, refused to comply with USCR 25.3 by
    refusing to refer any of the twenty (20) disqualifications to another judge,
    or to allow a hearing, about his conduct at a deposition. Judge Baldwin
    advanced his atrocious, conduct to the stage of criminal conduct when he
    began holding Millard Farmer, Larry King and Michelle Murphy in
    indirect Criminal Contempt without a constitutional notice of a hearing,
    or allowing then to present evidence at a hearing before an independent
    judge. See, Affidavit of Larry King Ex XX to Memo, Corruption motion
    Ex x

79. In addition to engaging in the illegal conduct that effected the
abridgments of the constitutional protections of Michelle Murphy.

80. Judge Baldwin, with malice attempted to inflict as much financial and
professional detriment to counsel for Michelle Murphy as he and counsel
for John Harold Murphy and *Galtere et al Enterprises* could envision a
way to have imposed. Judge Baldwin spoliated evidence of the state court
actors who assisted him in engaging in his constitutional abridgments, the
least of which were his yelling at Millard Farmer and Larry King to the
extent that Michelle Murphy and Millard Farmer lost the professional
assistance of Larry King as counsel., as Judge Baldwin Order that both
counsel for Michelle Murphy were required to be present at every court
event. This was a financial burden that no judge in the Coweta Judicial
Circuit ever imposed upon any lawyers.  The detriment to Millard Farmer
and those accused of assisting Michelle Murphy extends to this Civil
RICO case. This case was devised to protect the continuation existence
of the illegal judge selection of Taylor Drake and Glover & Davis  The
conduct of Judge Baldwin in not allowing the court reporter to record the
calendar call, as Millard Farmer requested, identifies one of the many
ways that evidence of the judicial corruption is spoliated by the judges
who participate in the ex parte judge selection in the cases they wish to

96

try and for the lawyers, who provide judges financially and politically

compensation to gain judicial favor that makes the lawyers' eligible to *ex*

*parte* select the judges they wish to try their cases. Judge Baldwin

protected part of his judicial corruption and evidence of its spoliation

with the Glover & Davis lawyer, Taylor Drake by Judge Baldwin never

allowing Millard Farmer to examine him, as USCR 25.3. provides. The

This illegal conduct of evading a random and not enforced case

assignment plan by not having an enforced USCR 3.1Case Management

Plan reaches the peak of its potential judicial corruption when the

custody of the children is at issue. The exclusive trier of fact purchased is

secure because in child custody cases the judge is the exclusive trier of

fact without a jury. On appeal those decisions are reviewed under an

abuse of discretion standard. Lawyers gain status to participate with

judges in this rule of law and Constitutional abridgment system by

discreetly providing benefits to the vulnerable judges or with documented

elections donations compensating, either financially, or politically the

vulnerable judges from whom they wish benefits.

The violation of an enforced Case Management Plan mandate provided Taylor Drake

and Glover & Davis, as repeat offenders of the law, to have the community reputation

for being "good lawyers." The reality is that they are repeat offenders of the law who

engaged in in various forms of judge selection, as they did in Michelle Murphy'

modification of custody case. when Taylor Drake and Glover & Davis were no more

than skillful violators of the law than some people who are called crooks, or criminals

as Taylor Drake and Glover & Davis take attorney fees in exchange for illegal conduct.

This is illegal conduct that this federal court should initially address with the

investigative assistance that Millard Farmer here request on his behalf and on behalf

of those accused in the Civil RICO Case with Millard Farmer.

Lawyers, as Taylor Drake and Glover & Davis who choose to act illegally to

select the judge they wish, or Judges who select   the case that they wish   provide

the opportunity for the illegal judicial corruption utilized by Taylor Drake and the

Glover & Davis lawyers, who were repeat illegal violators that deprived litigants

who did not pay the expensive attorney fees of the Glover & Davis lawyers of

their constitutional protections in civil and some types of criminal cases. The

District Attorney and the judges in the Coweta Judicial Circuit did nothing to

correct these constitutional abridgments of Fourteenth Amendment, Due Process

Equal Protection and First Amendment protections. The Defendants and those

accused of assisting them suffered the consequences of becoming victims in this

case.

The Coweta Judicial Circuit has a lengthy history of depriving litigants of

constitutionally composed juries, Millard Farmer and associates for nearly forty

(40) years have called this discriminatory unconstitutional conduct to the attention of that Circuit's judges and District Attorneys. Ironically, now Millard Farmer for himself and others once again calls upon the protection from the federal courts.

9.  The Defendants with false statements, other than in the Civil RICO case were attacked elsewhere.

10. **Millard Farmer committed** no predicate RICO acts**.** 2 This is a statement that the Plaintiff and Renee L. Haugerud cannot make under oath without **their** committing another **of their** RICO predicate acts.

11. The Glover & Davis Lawyer, Taylor Drake, in an *ex parte* agreement (*deal*) with Judge A. Quillian Baldwin, Jr. illegally selected Judge Baldwin, with his authority as the exclusive trier of fact, for a specific child custody case and for specific illegal acts.

12.. This ex parte *deal* among Judge Baldwin, Glover & Davis and Taylor Drake was planned with their knowledge that they were abridging Uniform Superior Court Rule 3.1, the rule of law, and Codes of Judicial and Rules of Professional Conduct with their participation in an unconstitutional *ex parte* gerrymandering judge selection scheme

99

13. That *deal* provided enormous illegally obtained financial benefits to Taylor Drake, Glover & Davis and these lawyers' client, Renee L. Haugerud's Galtere Ltd., "a global investment, hedge fund and trading company" that involved John Harold Murphy (or, *Galtere et al Enterprises*)

14. Renee L. Haugerud trusted that her husband, John Harold Murphy, and their personal friend, Coweta Judicial Circuit Judge Louis Jack Kirby, guided the Plaintiff into fruitful illegal conduct in suggesting the lawyer for the Plaintiff to obtain for his planned modification of custody case against Nancy Michelle Murphy, a financially and politically weak, relatively new resident to the Coweta Judicial Circuit area. This mother styled hair from her home and spent the remainder of her time caring for her two boys.

15. Michelle Murphy informed Millard Farmer. that Renee L. Haugerud met with her, as a professed peace-maker, to inform Michelle Murphy that **she should 'not put herself through this, because it was a done deal."**

16. It is accurate that it was a well-planned and financially perfected *deal*.

17. The problem with the illegal "deal" was that Michelle Murphy,

100

unexpected by the deal's makers, had two lawyers whom, admittedly, she could not afford with her child rearing obligations, but who were so offended by the illegal conduct that they had seen John Harold Murphy engage during the divorce case that these lawyers were willing to represent this mother, in protecting the best interest of her children from the illegal lifestyle and conduct that John Harold Murphy was engaging as a kept man with the hedge fund resources of Renee L. Haugerud's *Galtere et al Enterprises*

10.Judge Baldwin's agreement with Taylor Drake to become the ex parte selected judge for the Glover & Davis ' hedge fund financed client did not wait a full ten minutes after Millard Farmer and Taylor Drake went into Judge Baldwin chambers for an initial meeting before Taylor Drake displayed his judge to Millard Farmer, as a young child would show a friend a new bicycle. Taylor Drake pull out an Order that he had prepared and informed Judge Baldwin just where he wanted Judge Baldwin to sign. While Millard Farmer was explaining his objection to the Order and not having an opportunity to present evidence in response to process and Order, Judge Baldwin handed the signed Order with the name of the co-sponsor of the fund raiser with Taylor Drake name inserted as the Guardian ad litem. That display of Taylor Drake's judge was so foreign to the way that Millard Farmer had dealt with the extremely highly

101

professionally ethical members of Taylor Drake' family members for over forty years before that day, initially led Millard Farmer to believe that for some reason Judge Baldwin was ill

After being ignored by Judge Baldwin,  Millard Farmer told Judge Baldwin that if he was going to treat Michelle Murphy the way that he did that Millard Farmer would have to move to disqualify him. Judge looked toward Taylor Drake, apparently for direction an shrugged his shoulders and left his chambers, ad did Millard Farmer and Taylor Drake . e the initial "*deal*" of the totality of the Judicial corruption.

11. There are approximately 5,000 pages of documents identifying the judicial corruption. That corruption was as contagious, as the purse of Renee L. Haugerud that John Harold Murphy carried, could find other participants to infect.

12. Judge Baldwin was a hostage, without a sanctuary, from his initial "deal". It was painful to see Taylor Drake's,  once respected selected judge judicially wither into the character traits of some of the white-collar criminals that this Judge once had before him as defendants, or had sentenced for far less dangerous conduct to the administration of justice that the conduct that Taylor Drake, Glover & Davis, Judge Baldwin and the *Galtere et al Enterprises* had initiated.

 13, Taylor Drake also Glover & Davis, except in name became expendable to John Harold Murphy and the *Galtere et al Enterprises*, as lawyers with appellate political and real trial experience replaced Taylor Drake because he, as Judge Baldwin

transformed from a person with credibility into the lawyer with the reputation of the lawyer who captured Judge Baldwin with a "deal" that was the illegal conduct that Taylor Drake initiated when Judge Baldwin surrendered to him and thereafter refused to allow the USCR 25.3, Duty of the Trial Judge, hearing on any of the Disqualification motions. This withering down of Judge Baldwin brought Taylor Drake and Glover & Davis large attorney fees, but also withered their reputation from respectable to dishonest lawyers who created illegal conduct that caused each lawyer in the Coweta Judicial Circuit to recuse themselves because of the illegal judge selection *deal* of Glover& Davis and Judge Baldwin.

After the judicial corruption became fully operative, Millard Farmer and Larry King were no more than clay pigeons with State of Georgia bar licenses. This was Judge Baldwin and the Glover & Davis defense to their illegal deal. Millard Farmer and Larry King served as, Michelle Murphy's legally designated defenders in a Star Chamber type of Court that was the Taylor Drake, Glover & Davis initiated, planned illegal conduct "deal" that was designed, without any legal justification for taking Michelle Murphy's children from her.

14. The children were sought for the needs of Renee L. Haugerud's hedge fund business. The illegal judge selection and subsequent operative corruption was illegally funded by the *Galtere et al Enterprises*.

103

15 There is a societal need for the requested relief in this motion. Galtere *et al* Enterprises have a fiduciary responsibility to persons and entities who have no direct interest in the plight of Michelle Murphy that Millard Farmer, Larry King and others who had an interest in protecting Michelle Murphy and her children from the consequences of the illegal intended beneficiary of the illegal *deal, i.e.*. Renee L. Haugerud and her *Galtere et al Enterprises that* took full aim at the defendants with funds derived in part from *Galtere et al Enterprises*. This "deal" was and continued to be illegal conduct, that corrupts the judicial system and investment funds of other innocent persons who expect that principals of Galtere *et al Enterprises* are not engaging in the most egregious of judicially related crimes, the "deal" to hand select the judge designed to take a mother's child from her, instead of providing the mother the financial assistance to provide the child the benefits that the wealthy father maintains that he and his hedge fund operator wife can provide. John Harold Murphy and Renee Haugerud did not turn on and off their integrity and illegal conduct only when they attacked the Defendants, *e.g.*

When John Murphy and Renee L. Haugerud went to the Probate Court in Troup County for marriage licenses they both made false oaths for the licenses for Judge Kirby to marry them in Walker County, Georgia. This is only an example of the reality that there appeared to be no limit as to the false statements under oath that John Harold Murphy would make to a Court and elsewhere as a defense to his illegal conduct.

104

The Third-Party Complaint that Millard Farmer and Larry King filed to disclose to the Court Renee L. Haugerud's financial perks to John Harold Murphy that assisted him in evading the guidelines set child support to his children, was dismissed by Judge Baldwin without Judge Baldwin understanding but one thing about the third party complaint. Judge Baldwin understood that Renee L. Haugerud and Glover & Davis wanted it dismissed without discovery and that he could use the dismissal to inflict financial punishment upon Millard Farmer, who was fined $36,914.48 for filing that Georgia Supreme Court Justice Carley Opinion in *Moore v. Moore*, 281 Ga. 81 (2006) compliant third party complaint. The third party Complaint documented evidence of the child support assets that Michelle Murphy should provide to the Court that could be considered for her two children. The Substitute Senior Judge, who in the past benefitted from the USCR3.1 violations set the amount of the fine that Millard Farmer was required to pay the Glover& Davis lawyer for Renee L. Haugerud. Millard Farmer under the still enforced rules of Judge Baldwin that he must approve any motion, or response before Millard Farmer could file the tendered document was not allowed to even file a brief related to the justification or amount of the fine, as Judge Baldwin did not approve the filing that he never saw, because he had recused himself from the case by that time

The filings that the Civil RICO Case accuses Millard Farmer and Larry King of using to delay the case, were document that Millard Farmer and Larry King used to defend

the illegal and constitutional conduct that the approximate ten rotating lawyers for the *Galtere et al Enterprises* inflicted upon Millard Farmer and Larry King. These lawyers quickly learned that Judge Baldwin would and did execute any Order that he was presented without reading the content of the Orders he was signing.

Millard Farmer and Larry King filed no more than a notice of appearance until after an attempt to meet with Taylor Drake and the appointed guardian ad litem who refused, as requested, to talk with Millard Farmer and Larry King on the record about her participation in the Judge Baldwin Glover & Davis's  judge selection.

> 6 After the initial illegal conduct of Judge Baldwin, it became prudent to move for his disqualification. Millard Farmer and Larry King began doing what their conscience and profession requires of them., *i.e.* defending their client. It is that defense that the Civil RICO Complaint seeks to further punish the Defendants and those accused of assisting counsel's clients. Such work is not pleasant, or financially rewarding, but it brings what some call the Magna Carta earned and constitutionally protected Due Process, Equal Protection and First Amended protected justice to persons of all wealth and status in life., which is what the "Glover & Davis Taylor Drake "deal" prohibited and attempts to further scare lawyers from challenging with this Civil RICO Case against the Defendants, *et al.*

> 7The entirety of the Civil RICO complaint is the result of Millard Farmer

and Larry King exposing and protecting, to the extent possible, their client's and their Fourteenth Amend Due Process, Equal Protections and First Amendment protections. from constitution abridgments, The clearly illegal conduct that created the judicial corruption was that of Judge Baldwin who was participating with Taylor Drake and the Glover & Davis lawyers in the unconstitutional historical pattern of the Glover & Davis lawyers' *ex parte* engagement in illegal conduct with Judge Baldwin from his selection throughout the litigation until Judge Baldwin's and the other judges in the Coweta Judicial Circuit's  recusal where Judge Baldwin, as his last Due Process abridgment, left active his Orders that abridged the Defendants' Due Process, Equal Protection and First Amendment protections.

The following initial paragraph of the Civil RICO Complaint identifies the fictitious opinion pleading in *Galtere et al Enterprises* financed Complaint for its front, John Harold Murphy, that is not *Ashcroft v. Iqbal* compliant.., as the Complaint essentially argues that each act of defending the constitutional and rule of law protections of Michelle Murphy and her counsel defense of themselves was" **extortion"**

Mr. Murphy and his wife have spent over three years of their lives and hundreds of thousands of dollars litigating what

107

should have been a straightforward and simple child custody
modification proceeding in a Georgia state court, John Harold
Murphy v. Nancy Michelle Murphy, Civ. A. No. 2012-V-413
(Ga. Super. Ct., Coweta Cnty., filed Apr. 11, 2012) (the
"Child Custody Litigation").

Over the course of that three-year-plus period, and continuing to the present,
Defendant Farmer and his co-defendants/co-conspirators have sought for
financial gain and other reasons to extort and otherwise injure Mr. Murphy,
by means of a plan they conceived and have been executing via a pattern of
racketeering activity reaching into several states and the United States
Territory of the Virgin Islands

The Civil RICO Complaint's Gripes refuse to accept that this mother was
entitled to have a lawyer to present her case to a constitutionally obtained judge
and constitutionally selected trier of fact. Even when there was a fix to corrupt the
Court between Taylor Drake, Glover & Davis and Judge Baldwin that was a deal
that these once respected persons were not going allow The following is the initial
crime scene that Millard Farmer, Larry King and their client were placed.

8 It was the criminal conduct of Taylor Drake and Glover & Davis who
placed the financial and difficult burden of defending their client upon
Millard Farmer and Larry King. Now we read how these unethical
lawyers whose, conduct was illegal, depict Millard Farmer's and Larry
King' fulfillment of their client's and her children's protections without
any judicial protections from a constitutionally designated judge.

108

9It was not Millard Farmer, or his client who moved the children around as if they were in a traveling carnival with children. Millard Farmer has never known any parent who, as John Harold Murphy did, who had their children picked up by" transporters" and forcefully taken to Utah where the children could not see each other, or their mother. This incarceration in Utah, without even notice to Judge Baldwin, their mother or opposing counsel caused one of the children with high school grades to lose a year in school. Lisa Harwell knew where the children were, as did Taylor Drake and neither would tell Millard Farmer, or Michelle Murphy. In the RICO Complaint   the Front- Plaintiff complains about calls to governmental agencies reporting the children mission.  Every one had a right to assist Michelle Murphy in attempting to learn of the children's condition The final divorce decree required that the fron-Plaintiff, John Harold Murphy give notice to Michelle Murphy of such changes in the children's location.   The Front-Plaintiff brought  the modification of custody case, as an emergency because the Complaint stated that Michelle Murphy was threatening to move to South Carolina. The problem with domestic relations case is lawyers such as Taylor Drake and Glover & Davis using the family problems to enrich the lawyer who have no dispute

109

resolution skills, because resolving a dispute deprives the lawyer of fees.

10   Judge Baldwin, after 20 tendered disqualification motions with supporting affidavits showing caused for his disqualification continued to serve as judge by abridging his duty to refer his disqualification to another judge for a hearing, as required by Uniform Superior Court Rule 25.3.

11   Judge Baldwin engaged in this illegal conduct for his financial and political benefits, as he attempted to reach a higher retirement pay level and Chief Judge status before retiring as a Senior Judge who, in addition to his retirement benefits, could get compensated for part time judicial appointments. The Glover & Davis lawyers Purchased the "deal" from Judge Baldwin so cheap that he should come clean and squeal on them and the *Galtere et al Enterprises* for the benefit that the maybe seemingly small initial illegality advanced into the need for Judge Baldwin to involve other State of Georgia public servants. If Judge Baldwin came clean before he engages in other illegal conduct to spoliate evidence, it could assist other judges and regulatory authorities in preventing this illegal conduct. The children were young, but knew of the judicial corruption.

12  John Harold Murphy, is not eligible to sustain the Civil RICO case individually, or on behalf of Renee L. Haugerud's *Galtere et al, the* **real**

> **party and cause at interest in this Civil RICO case of John Harold Murphy, the front plaintiff,** *i.e*. The Civil RICO case is brought for the protection of Renee L. Haugerud and *Galtere et al Enterprises'* spoliation of evidence of illegal, fiduciary conduct, for tampering with a witness and other illegal conduct in addition to financing the judge selection and the false swearing obtained from Patricia Nice, M.D., *Ex 66*.

. John Harold Murphy and *Galtere et al Enterprises*  are not constitutionally, or by Georgia law, entitled to sustain this  civil RICO action against the defendants and those accused of assisting them for causes related to exposure and  defense of the illegal conduct of Glover & Davis, Judge Baldwin and the illegal conduct of *Galtere et al Enterprises*' including the cadre of lawyers acting on behalf of the Plaintiff and *Galtere et al Enterprises*' and   the attempts to prevent those accused with the Defendants and Michelle Murphy from being victimized by the Plaintiff's unconstitutional use of Judge Baldwin being against these parties. This Civil RICO case is not pled *Ashcroft v. Iqbal compliant*. The Complaint is pled with numerous cases of Millard Farmer in which he pro bono represented unpopular indigent persons whose constitutional protections were abridged and portions of books that Millard Farmer has written with others about ways that unpopular person attempted constitutional abridgments can be protected by inexperienced lawyers. The pleadings in the Civil RICO case are written to abridge the constitutional protections of Millard

111

Farmer, his client Michelle Murphy and those accused of acting in concert with them. The Civil RICO case is also filed to deter regulatory authorities having knowledge of the illegal conduct of the *Galtere et al Enterprises*. This goal of the Complaint accomplishes with its opinion based attacks upon persons assisting Michelle Murphy, who at one time had custody of the needed business asset for Renee L. Haugerud *i.e.*, the children who lived in Newnan, GA with Michelle Murphy.

The Child custody case was not brought by a father who lived with his newly married wife in Chattanooga Tennessee TN with access to his wife's private jet airplane not being able to see his children who, as he falsely stated, being threatened to move to South Carolina. The child custody case was not to resolve the issue of the children's mother threatening to move to South Carolina, as this was not occurring. This alleged threat to move less than two hundred miles from where John Harold Murphy abandoned Michelle Murphy and the children in Newnan, GA did not motivate cause, or reason for the modification of custody case, or a best interest of the children issue. The conduct of a cadre of the over ten different rotating lawyers for John Harold Murphy who was the front the *Galtere et al Enterprises,* is a strong clue to the Court about what it took Millard Farmer months to learn *i.e.* the case was not about the best interest of the children. The case was about the need for the children to assist a hedge fund operation to obtain tax, regulatory and business benefits. The investigative request should support that the abuses that these children were subjected were

112

primarily for benefits to the *Galtere et al Enterprises* until Renee Haugerud qualified it for the tax, regulatory family with children status business benefits, or until the law, or business benefits changed to the extent that the children were not needed for the tax, regulatory and business benefits for the *Galtere et al Enterprises*.

The illegal selection of Judge Baldwin and the aftermath of the significantly more detrimental other unconstitutional conduct of Judge Baldwin justifies this motion's request for the Court's assistance in obtaining investigative regulatory assistance from the FBI, SEC and IRS for protection of the victims of this atrocious judicial corruption that Plaintiff continued with this Civil RICO case that is adulterated with spoliated evidence created at the time that the defendant had no opportunity, for a Due Process compliant hearing when the Orders of Judge Baldwin were effective. John Harold Murphy assisted Taylor Drake, and Patricia Nice, M.D. in falsely accusing and insinuating to Judge Baldwin, to whom Patricia Nice, M.D. had also alluded, that Michelle Murphy was fondling the children. This accusation was not only false, but was so disturbing to the children that they reported the accusation to John Harold Murphy's mother, who told the child that their father would not make such a false accusation. This accusation by Taylor Drake to Judge Baldwin typifies the litigation environment that Millard Farmer and those accused with him in the Civil RICO case were functioning. This crime accusatory conduct warrants federal regulatory investigation of the entirety of the *Galtere et al Enterprises*. Conduct. The lawyers for

113

*Galtere et al Enterprises were not only participants in the illegal conduct, Taylor Drake and Glover were planers of the illegal conduct that is relevant to the crime fraud exception to obtaining the spoliated evidence.*

13  It was only after Millard Farmer's cross examining of the proposed expert that the guardian ad litem selected that it was discovered that John Harold Murphy had made the fondling accusation to the expert custody

14. evaluator witness. That expert psychologist should have reported the accusation to the authorities. The psychologist made no such report.

14

15  The expert voluntarily disqualified herself, as her counsel apparently recognized the apparent judicial corruption that she was being requested to participate and the justification for Millard Farmer refusing to execute her contract and so advised his client, but did not direct his client. The contract provided for unfair collection authority and required that this psychologist be granted absolute, not just statutory, immunity from liability for every reason.

16Patricia Nice, M.D. the pusher of this false fondling information and John Harold Murphy should have made the report of the fondling, instead of attempting to bias the trial and appellate court with the accusation until the final hearing on the custody after Judge Baldwin's recusal when the Court found the false statements be just that, only

false statements that were made to bias Michelle Murphy.  Patricia Nice, M.D. became very angry at Millard Farmer and used false statements as a means of retaliating against Millard Farmer for identifying to the Court her prior substance abuse addiction illness and out-of-State license suspensions, that were not documented in Georgia. Licensing records. Millard Farmer deemed this information case relevant to the Court, as she was attempting to have the Court Order the children to take drugs that their mother and others, including Millard Farmer, who observed and discussed with the children deemed dangerous to the sleeping habits and thereby developing lifestyle of the children. The Civil RICO case falsely accuses Millard Farmer related to the expert psychiatrist and psychologist, witnesses. The .accusation of such a crime as fondling by this mother had no factual basis and the Civil RICO Complaint against Millard Farmer related to the Patricia Nice M.D. witness further supports the need for federal regulatory investigation of the judicial corruption. The Glover & Davis lawyers did not just select a judge, they selected a judge who would allow Taylor Drake and the Glover & Davis to engage in the assassination of Michelle Murphy's character for their financial benefit.

Millard Farmer, with this unusual, but relevant motion, followed by a separate memorandum of law, seeks a FED.R. P. 26 hearing to provide the Court a showing of need and cause to have the Court's assistance in obtaining the Plaintiff's, Glover & Davis et *al*l's created, once available, but now spoliated, evidence of false statements

and exculpatory information that is relevant to adjudication of this Civil RICO case. The spoliation is relevant to Judge A. Quillian Baldwin's unconstitutional selection and retention, as the judge to serve as the child custody case's exclusive trier fact.

The conduct of the unconstitutional selection and utilization of Judge Baldwin and the Spoliated evidence is relevant to the consequences of the judicial bias of Judge Baldwin, while he was disqualified in the custody case and refusing to allow a USCR 25.3 hearing on his disqualification. During that time, Judge Baldwin inflicted contempt convictions upon Millard Farmer, Larry King, and their client. The spoliation and requested need for investigative assistance is relevant to the illegal conduct of Renee L. Haugerud in tampering with a witness relating to the abusive conduct of the minor children of Michelle Murphy This was a crime that Renee Haugerud personally committed.

the spoliation hearing is relevant to the counter claim that Millard Farmer has against John Harold Murphy and the claims that other parties have. The spoliation is not limited to these enumerated reasons, as it is relevant to the entirety of the case including the false accusation against Millard Farmer that he attempted to have a person extort money from Renee L. Haugerud. Millard Farmer never discussed money, or authorized anyone to discuss money with Renee L. Haugerud after the malpractice negligence case ended with the release and settlement agreement.

116

The spoliation is relevant to defending the consequences of the unethical conduct of Court of Appeals Judge Christopher J. McFadden legislatively lobbying for enactment of a law that would deny the Court of Appeals jurisdiction of Michelle Murphy's pending appeal of the selection of Judge Baldwin. This lobbying occurred after the Court of Appeals had found it had jurisdiction under the existing law that Christopher J. McFadden sought and had appealed and adjudicated as retroactive in Millard Farmer's appeal of the illegal selection of Judge Baldwin; the spoliation is relevant to Millard Farmer defending the Georgia State Bar Grievance that Counsel of John Harold Murphy filed against Millard Farmer for witnesses who spoliated evidence and who otherwise made relevant false statements under oath about Millard Farmer and his client; the spoliation is relevant to the Glover & Davis conduct of persons' accused by John Harold Murphy in  illegal regulatory conduct of the hedge fund businesses defending Millard Farmer, Michelle Murphy, her minor children and persons assisting Michelle Murphy, who have been required to litigate the consequences of the unconstitutional selection and litigation criminal contempt action before Judge Baldwin and  Georgia State Bar grievances that counsel for John Harold Murphy prepared for filing against Millard Farmer, for this case and for the regulatory violation.

117

The Spoliation is relevant to the spoliated evidence includes cause for potential regulatory actions that provide defenses and potential private causes of action for the persons that John Harold Murphy accuses in this case.

2. The Glover & Davis's hand selected Judge Baldwin unconstitutionally abridged the persons accused by John Harold from obtaining the spoliated evidence.

3. Judge Baldwin never allowed Millard Farmer to question him, or others about their spoliated evidence. Judge Baldwin had a subpoena for his deposition quashed.

4. Judge Baldwin at times did not exhibit the mental stability or knowledge to engage in his illegal conduct without legal assistance, or prescribed medication at times. If Taylor Drake has knowledge of Judge Baldwin's medical condition that information is spoliation evidence in this case and mitigation for Judge Baldwin illegal conduct in this case in which the civil RICO parties are accused.

5. There are four relevant audio recordings that reflect the physical emotional consequences to Judge

118

Baldwin of the type of illegal judicial corruption that Judge Baldwin engaged and the legal, ethical manner that Millard Farmer and Larry King engaged in providing legal representation to their client when their client's and their own constitutional protection were being abridged. Millard Farmer and Larry King were eventually able to obtain the audio\ of The May 27, 2014 ""Blame Yourself" scheduled hearing that typifies constitutional abridgments of the numerous time that Millard Farmer sought to present witnesses with relevant evidence.  That May 27 proceeding resulted in the minor children being taken to St. Thomas USVI without Judge Baldwin hearing any evidence from their teachers, their experts, or the children as Judge Baldwin promised. Nan Freeman the court reporter failed to record and make available Judge Baldwin's commitment to the children.

6. During Nan Freeman's video Deposition that Millard Farmer tenders she describes Judge Baldwin's and Millard Farmer's demeanor in reacting to the

119

yelling of Judge Baldwin, as follows when Millard

Farmer sought recorded evidence of Judge Baldwin'

about to begin evasive courtroom judge and case

selection.

7. The Nan Freeman, court reporter video deposition

supports the effort that Judge Baldwin made to spoliate

the evidence related to his illegal judge selection

conduct.

Q       I know you heard him raise his voice one other time to me when
you went to get the -- to get him to prevent from us taking down the call
of the calendar, didn't you?  You heard it that day,

        I don't remember his raising his voice about that.

     didn't you?

   A  Q       Okay.  Let -- just a second.  Let me see if I can play that for
you.

         You remember when we had a hearing and I said -- I came to you
         before the hearing and I said I would like for you to take down
         the call of the calendar?  You remember that day, don't you?

   A       I remember you doing that twice.

   Q     Okay.  And --

       (Audio recording played.)

    BY MR. FARMER:

   Q       So you -- he was hollering at me on that day, right?

   A       He had raised his voice, yes.

   Q       Would you say he was substantially raising his voice?

   A       That's a matter of opinion, I guess.

120

Q      Okay.  In the matter of your opinion, how would you say?

A      It was louder than his normal voice.

Q      Was -- do you remember the courtroom being full of other lawyers and other people waiting to have their case heard?

A      It was a calendar -- it was a calendar call, so yes.  I mean, all the cases that were on the calendar and the people that were present that day were in the courtroom, yes.

Q      It wasn't necessary for him to holler that loud for me to hear him, was it?

A      I don't know.  I would say you didn't respond the first time or the second time.

Q      So you say that he was justified in hollering?  Is that what you're trying to say?

A      No.  I'm not -- I'm just saying that maybe he wanted -- I don't know what Judge -- what was in Judge Baldwin's mind.  I don't know.

Q      But you know he wasn't acting in a normal manner in hollering like that at me at a bench conference?  We were at a bench conference, right?

A      Yes, sir.

Q      We were standing a few feet away from him, right?

A      Yes, sir.

Q      And I wasn't jumping up and down and flapping my arms at him or anything like that, was I?

A      Not that I remember.

Q      All right.  I wouldn't do that.  You don't see me do things like that, do you?

A      I've never seen you flap your arms, no.

Q      Okay.  Well, so -- and you heard him threaten to put me in jail, didn't you?

A      I heard that at the bench -- I mean, I heard it on that recording, but it was at a bench conference.

121

Q      Right.  And -- and all of that started with me asking you
before the hearing started, would you please take down the
calendar call?

A      I don't know that that's what --

Q      You remember before the hearing started I came to you and
said --

A      Yes.  I --

Q      -- Nan, would you please take down?

A      Yes.

Q      And you had done that on a previous occasion for me?

A      Yes, sir.

     Q      You had taken down the call of the calendar?

                8.  A      Yes, sir.

                9.  Q      And -- and so what happened after I
                       asked you to please take down the call of the
                       calendar and I would pay you?

                10. A      The first time, I took it down.

Q      No, the second time.

A      Second time.

Q      This "do you understand" hollering time.

A      You asked me.  And the judge said he wasn't going to have
the calendar call taken down.

Q      Okay.  Well, where did you go after -- where did you go
after I asked you to take it down?

A      I'm sure I went in the back.

Q      Okay.  Who did you go in the back and see?

A      Well, I did tell the judge that you asked --

Q      All right.  That's what --

A      -- for the calendar call.

Q      -- I'm getting at.

A      I told him the first time, and I told him the second time.

     Q      Okay.  What did he say the second time?

122

A     I really do not remember.

Q     Okay.  Well, what did he say the first time?

A     I don't remember.

Q     Okay.  Well, why was it a big -- why was it a big thing about it taken down the second time?

A     I have no idea.

Q     Why -- why didn't you want to take it down?

A     I don't know what you mean by that.  If the judge -- I mean, if the judge -- I would not have not taken it down.

Q     Okay.  Well, why didn't you take it down then?

A     Because the judge told you in the courtroom that we weren't going to take it down.

Q     Okay.  But he told me that after you went and had a conference with him, right?

A     It was after I went and had -- after I told him that, yes.

Q     Okay, yes.  Well, why did -- why did he not want to take it down?

A     I don't -- I can't answer for him.

Q     Do you understand there's an issue in this case about judge shopping and about judge selecting of cases?  Do you understand that, that there was -- that what happens is that the judge selects who he chooses to give a particular case to and that the lawyers select who they want -- what judge they want to hear the case?  Do you understand that to be an issue?

A     I'm not privy to any of that, but I understand that that's what you say.

Q     Okay.  That's all I'm asking.  You understand that that was the issue that I was raising?

A     I understand that's what you say, yes.

Q     And you understand that taking down the calendar call is something that would document that supporting information that I was trying to obtain?

Do you understand that?

A     I understand that's what you're saying.  I don't know if --

123

Q    Okay.

A    I don't know if it could be used for that or not.

    11.  Judge Baldwin recused himself from the case before the custody of the children was to be decided; however, Judge Baldwin left uncorrected the remainder of his constitutional abridgments.

    12.  It is Millard farmer's representation of himself and Michelle Murphy in the defense of those Constitutions abridgments by Judge Baldwin that the real party at interest here, *Galtere et al Enterprises,'* case relies.

    13.  The spoliated evidence, in part, involves information available to John Harold Murphy, Renee L. Haugerud and her businesses, Galtere Ltd. (a global investment and trading company involving John Harold Murphy) (or, *Galtere et al Enterprises)* (http://www.galtere.com).

14. , **John Harold Murphy is a, front party[1] Plaintiff, in this Civil RICO case for the real party and cause at interest in this Civil RICO case** *i.e.* the protection of Renee L. Haugerud and *Galtere et al Enterprises'* spoliation of evidence of illegal, fiduciary conduct, for tampering with a witness and other illegal conduct.

15. judicial corruption. Information from informants and observation of other Coweta Judicial Circuit counsel's treatment by different judges confirmed all suspicions.  The Informants connected and added to information about the illegal conduct of the Glover & Davis lawyer and Judge Baldwin that Millard Farmer observed.  It was the evidence of John Harold Murphy' stealing with false statements under oath during the divorce case, and Millard Farmer's  Coweta Judicial Circuit and federal court ten years' in litigating *Davis*

---

[1] John Harold' sworn testimony about his net worth at the final custody hearing where Buddy Parker was representing him when  support and litigation cost would have been an issue  confirms he could not finance the Civil RICO litigation, as John Harold Murphy informed the Court he had no money for child support.

*v. Zant* 721 F.2d 1478 (11th Cir. 1984) that provided the knowledge of the potential for corruption.

16. Twice before filing this Civil RICO case, John Harold Murphy executed settlement agreements with Michelle Murphy and after acceptance of the agreements' benefits. John Harold Murphy soon breached the agreements that were intended to absolve John Harold Murphy of illegal retention of valuable marital assets which, by Court order, belonged to Michelle Murphy.

17. Millard Farmer observed that when Renee L. Haugerud attempts to financially assist John Harold Murphy in evading the consequences of his illegal conduct, John Harold Murphy's storyline that he publishes through lawyers becomes that counsel for Michelle Murphy is attempting to illegally extort money from Renee L. Haugerud because of her wealth and not because of John Harold Murphy's illegal attempt to steal money belonging to Michelle Murphy. John Harold Murphy engaged in such allegations when

he secreted the $180,000 that he obtained from the exercising undeclared marital asset of stock options that he exercised within days of Michelle Murphy signing the divorce settlement agreement, or that counsel is engaging in some illegal act.

18.   Litigation related settlement discussions are just communications about the weakness and strength in the opposing parties positions that have a potential in affecting the ultimate trier of fact's decision. The falsely alleged extortion of Renee L. Haugerud was a disputed issue in the negligence Malpractice case that John Harold Murphy resolved with the Settlement Agreement and is a part of one of those "settled" issues that John Harold Murphy now attempts and does replicates in this RICO complaint, as one of the modified case causes against Millard Farmer and other of the released parties follow on the next page where John Harold Murphy admits as follows in the Civil RICO Complaint

On December 15, 2008, Michelle Murphy, represented by Defendant Farmer, filed a "Complaint Seeking Relief for the Negligent, Actionable Conduct of Legal Malpractice, Breach of Expressed [sic] and Implied Contractual Duty, Breach of Fiduciary Duty and Unjust Enrichment" in the Superior Court of Coweta County against Ms. Crouch (the "Crouch Malpractice Litigation"). Michelle Murphy v. Delia Crouch, No. 08-V-2137 (Ga. Super. Ct., Coweta Cnty.).

In the Crouch Malpractice Litigation, Michelle Murphy (through Defendant Farmer) claimed that Ms. Crouch had mishandled the equitable distribution of a pension between Michelle Murphy and Mr. Murphy in the divorce case resulting in an alleged shortfall of approximately $50,000 to Michelle Murphy. To comply with the requirements of O.C.G.A. § 9-11-9.1, Michelle Murphy attached an affidavit from Defendant Larry King expressing his opinion that Ms. Crouch had provided "substandard legal representation." In Defendant King's affidavit, he acknowledges having reviewed the entire divorce case file of Mr. Murphy as well as financial information of Mr. Murphy. Defendant Farmer paid Defendant King fees for his participation in the Crouch Malpractice Litigation.

On November 30, 2010, Defendant Farmer moved to join Mr. Murphy as a defendant in the Crouch Malpractice Litigation,

128

which motion was granted.

Shortly thereafter, Defendant Farmer engaged in a discussion with Mr. Murphy, Mr. Murphy's wife, and Mr. Murphy's attorney regarding the litigation. During that discussion, Defendant Farmer refused to accept the full amount in dispute (approximately $50,000) as a payment from Mr. Murphy to resolve the case. In refusing to accept the full amount in dispute to resolve the case, Defendant Farmer repeatedly proclaimed: "We are talking about a hairdresser and her boys!"

Defendant Farmer began talking directly with Mr. Murphy's wife, who was not a party to the lawsuit. In one conversation, Defendant Farmer stated to Mr. Murphy's wife, "If I don't get what I want, I will continue to litigate for years because I am not charging Michelle." Defendant Farmer continued, "It matters what I want!"

Defendant Farmer made it clear that since he had expanded the case by joining Mr. Murphy in the Crouch Malpractice Litigation, he would ensure that the case would be

129

unnecessarily protracted, expensive, and painful unless resolved "fairly" for Defendant Farmer**. On the basis of these threats from Defendant Farmer, Mr. Murphy and his wife capitulated to Defendant Farmer's extortionate demands and paid him and Michelle Murphy $150,000, three times the amount in dispute, to have "order restored" and the case resolved.**

As a result of the proceedings in and settlement of the Crouch Malpractice Litigation, Defendants Farmer and King became acutely aware of the wealth of Mr. Murphy and his wife.

19.   It is relevant that the record reflects John Harold Murphy' breach of his open court divorce settlement agreement with Michelle Murphy was obtained with his illegal spoliation of evidence and the false swearing that John Harold Murphy's was able to achieve with the absence of a USCR 3.1 mandated Case Management plan and the negligence of Michelle Murphy's lawyer.

130

20. Millard Farmer's first contact with Michelle Murphy and John Harold Murphy arose when Millard Farmer represented Michelle Murphy in a legal malpractice and negligence case. In that case, Larry King served as the expert witness against her divorce attorney, Delia Tedder Crouch.  This malpractice negligence action against Michelle Murphy's lawyer, eventually involved John Harold Murphy, who at the time, albeit that he was only a strawman for Galtere Ltd, he was identified in that malpractice action as a top executive with Galtere Ltd., a global investment and trading company. During that malpractice action, John Harold Murphy was represented by counsel in that negligence litigation that Millard Farmer brought on behalf of Michelle Murphy. That litigation included a comprehensive motion to join John Harold Murphy as a party. John Harold Murphy was not originally included as a party in that negligence case, as requested by Michelle Murphy, because she feared that he would attempt to retaliated against her and the children if

131

he became angry about disclosure of his illegal conduct in the negligence litigation.

21. Michelle Murphy was correct, John Harold did later attempt to retaliate against Michelle Murphy for the apparent reason that Millard Farmer, as required by the Judge, did reveal the part of John Harold Murphy' illegal conduct. That trial judge informed the parties to the negligence litigation that Michelle Murphy had minor children and that he would not allow John Harold Murphy to be unjustly enriched due to judicial error that Delia Crouch induced the Judge to commit in executing an erroneous distribution of a marital asset Order. Renee L. Haugerud, in the absence of John Harold Murphy's presence was instrumental in bring a settlement of John Harold Murphy's liability in that litigation with one short phone call to Millard Farmer followed by a comprehensive Mutual Release drafted by her counsel.

22. The owner of Galtere, Ltd., Renee L. Haugerud, paid the money to Michelle Murphy that John Harold Murphy earlier obtained through a judicial error and

132

money which John Harold Murphy was accused of attempting to illegally retain. The integrity of John Harold Murphy in attempting to retain money due Michelle Murphy that he was not legally entitled  was the prime issue that supported the litigation to add John Harold Murphy as a party to case ready for a trial  case that was not necessary after the settlement.

23. The wide scope of the malpractice negligence litigation that was settled included the very broad scope of the disputed issues among John Harold Murphy, Michelle Murphy and her counsel, Millard Farmer, Alfred Larry King, Jr. (Larry King) and the insurer of Delia Crouch.

24. The litigation supporting the factual basis for the global dispute that comprised a part of the global mutual Release and Settlement Agreement included the entirety of the illegal and integrity misconduct of John Harold Murphy during his divorce litigation from Michelle Murphy and the negligence litigation.

25. The malpractice negligence litigation, during which

133

John Harold Murphy became a participant, and the execution of the Mutual Release and Settlement Agreement occurred long before the demand for Michelle Murphy to move within ten miles of John Harold Murphy and Renee L. Haugerud in Chattanooga Tennessee and after Michelle Murphy's refusal to mover to Tennessee, the   modification of custody proceedings initiated against Michelle Murphy by John Harold Murphy before the Taylor Drake, Glover& Davis illegally selected Coweta Judicial Circuit Judge, A. Quillian Baldwin Jr.

26. The disputed issues involving John Harold Murphy and the malpractice negligence litigation are relevant here, as they resulted in a **Mutual Settlement Agreement and Release, Farmer Exhibit 64**) among John Harold Murphy, Michelle Murphy, her attorney, Millard Farmer and other RICO accused parties who are provided indemnification protection from breach by John Harold Murphy, and those acting at his bequest and on his behalf.

134

27. The indemnification protection relates to actions initiated on behalf of John Harold against Michelle Murphy, Millard Farmer, Larry King and other RICO accused parties in this Court with the Civil RICO case.

28. The indemnification protections in the Settlement Agreement and Release should include "hold harmless" indemnification, in-kind injunctive protections to Millard Farmer and an included dragnet clause inclusion of other RICO Accused Parties, together with other protections for contempt actions sought by and on behalf of John Harold Murphy against Millard Farmer, Michelle Murphy and Larry King and person accused of acting in concert with Millard Farmer.

**29.** The Settlement Agreement, in part, provides **protection from John Harold Murphy to the following group of persons.**

The Parties hereby release, acquit and forever discharge the others, including their respective past and present officers,

135

directors, agents, affiliates, employees, parent corporations, sister corporations, subsidiary corporations, their attorneys, law firms, insurers, principals, affiliates, heirs, administrators, successors, and assigns, partners, members or associates, managers, and independent contractors. . .

The Parties further agree that if either of them takes any action to pursue a Released Claim, including but not limited to, filing a lawsuit, against any party released herein, that Party will indemnify and hold harmless the other of and from all claims, costs and expenses, including, but not limited to, reasonable attorney's fees incurred by them as a result thereof.

30. The February 1, 2011 "Release and Settlement Agreement. Also provides as follows.

WHEREAS, in the interest of avoidance of future disputes between the Parties in connection with the Lawsuit or any other matter of any kind arising from the Lawsuit, or and any other matter arising from the Lawsuit and/or the allegations contain therein, the Parties have reached a resolution of all

136

disputes and issues among them arising therefrom and desire to document the settlement by and through this Agreement.

31.

32. The Parties are Released from the following types of occurrences.

33. ....any and all other claims of contempt, malpractice, negligence, breach of contract, breach of fiduciary duty, or misconduct, intentional or negligent, concerning, directly or indirectly, the Lawsuit and/or the Underlying Action as relates to the Lawsuit and/or the allegations contained therein, and from any and all other claims, causes of action, demands, suits, proceedings, costs, expenses, liabilities, judgments, sums of money, rights, obligations or liabilities of any kind or nature whatsoever, in law or in equity, whether known or unknown, suspected or unsuspected, which either Party ever had, now has, or hereafter can, shall or may have, against the other for, with respect to the Lawsuit and/or the Underlying Action as relates to the Lawsuit and/or

137

the allegations contained therein, cause or thing whatsoever from the beginning of time to the date of this Agreement ("Released Claims").

34. The Parties further agree that if either of them takes any action to pursue a Released Claim, including but not limited to, filing a lawsuit, against any party released herein, that Party will indemnify and hold harmless the other of and from any and all claims, costs and expenses, including, but not limited to, reasonable attorney's fees incurred by them as a result thereof.

35.

36. John Harold Murphy, in collaboration with Taylor Drake and the Glover & Davis law firm has violated the February 1, 2011 Settlement Agreement and Release involving John Harold Murphy and Renee L. Haugerud, who provided consideration for the Release that was prepared by counsel for Renee L. Haugerud and John Harold Murphy, Kurt Kegel.

37.  , followed by his then breached settlement

agreement involving his illegally retaining money belonging to Michelle Murphy that also involved John Harold Murphy's accusations that Millard Farmer was attempting to extort money from Renee L. Haugerud to settle John Harold Murphy's liability for illegally retaining money belonging to Michelle Murphy. that illegal conduct of John Harold Murphy happened before initiating the unlawful lawyer directed illegal conduct in the modification case.

38.

39.   Renee L. Haugerud and *Galtere et al Enterprises* funded John Harold Murphy' modification of custody case against Michelle Murphy, as she had a hedge fund related business interest in the children establishing their residence in St. Thomas, U.S.V.I. as a family with her husband, John Harold Murphy. That case has ended with Judge Baldwin first and then all the judges in the Coweta Judicial Circuit voluntarily recusing themselves.

40.   The Coweta Judicial Circuit now has a USCR3.2

139

mostly enforced case management plan.

41.   After *Galtere et al Enterprises* obtained its sought tax and regulatory benefits and Renee Haugerud has deterred   John   Harold   Murphy   from   donating   her Haugerud's hedge fund's income and assets for such gifts as a grass carpet for a football practice field, to satisfy John Harold's need for being perceived as being important and wealthy.

Michelle Murphy and her children are now no longer trophy candidates for John Harold Murphy and Renee L. Haugerud, as they now offer little value in furtherance of the *Galtere et al Enterprises* hedge fund's once sought, now obtained, benefits  The children are no longer valuable for John Harold Murphy to use to threaten and abuse, as he did for many years when Millard Farmer and Larry King represented Michelle Murphy. before the Taylor Drake Glover & Davis selected Judge Baldwin who soon after several of the *Hargis*, 294 Ga. 818, 822-823 (2014) and *Pyatt  v. State* __Ga. __ S15A1734 (decided March 2016)  compliant disqualification motion  emphatically informed   these lawyers of his anger about the motions to disqualify him in that modification of custody case Judge Baldwin informed Millard Farmer, Larry King and Michelle Murphy at a scheduled  hearing as follows

You know, y'all can spend money to kingdom come, on that kind of thing. and there's no kind of guarantee that I'm going to award any attorney's fees, you know, to cover any of this stuff. There's nothing that requires me to do that. And so I just want y'all to think about that. (Tr. Aug. 30, 2012, p.

42.29, lines 2-15)

43.Chief Judge Baldwin, soon after that statement, learned that Larry King and Millard Farmer accepted that they could not abandon Michelle Murphy and her children. These lawyers and people dependent upon them for their livelihood, together with these lawyers' families, soon became aware that these lawyers' professional relationship in that litigation would not be only their pro bono professional time and office expenses,

but would require an additional supplement of an unre coverableble amount of about $20,000. in out-of-pocket cash litigation expenses that John Harold Murphy's lawyers and Judge Baldwin inflicted upon these pro bono lawyers.

141

53.The status of the legal representation of the parties only identifies a small aspect of the economic inequality of the ability of Larry King and Millard Farmer to provide Michelle Murphy standard of care representation in the litigation environment that Judge Baldwin created to favor the cadre of lawyers that Taylor Drake accumulated to deprive Michelle Murphy to be prejudiced at every stage of the litigation.

44.and her minor children what they professionally believed necessary to adjust for the problem that

45.arose from the Glover & Davis lawyers. The Glover & Davis lawyers, with the absence of a Uniform

46.Superior Court Rule 3.1 case management plan, had been able to

47.handpick Chief Judge Baldwin, who was the exclusive trier of fact.

48.    when the  Judge Baldwin

49.    John Harold Murphy and his cadre of fee hungry lawyers now appear to seek, less financially rewarding to the hedge fund, people for John Harold Murphy's cadre of lawyer to compete by  engages financial weak

142

people to engage in legal disputes who are not able to obtain the assistance of the Larry King ; That conduct allows John Harold Murphy a forum in which he can appear that he has a productive life; that apparently, makes this narcissistic male appear as important as his spouse, who continues to finance his need for feeling important, as a means of minimizing his abuse of alcohol problem.

50.

51. After John Harold Murphy settled a long existing dispute with an extensive settlement agreement among the mother of his children, Michelle Murphy, her two attorneys, Millard Farmer and Larry King, Renee Haugerud and numerous others,  relating to marital assets that John Harold Murphy wished to retain that belonged to Michelle Murphy, with guidance of his former divorce lawyer, Louis Jack Kirby, who had become a Coweta Judicial Circuit judge, John Harold Murphy engaged another lawyer Taylor Drake to require  Michelle Murphy to move to Chattanooga, TN

143

to live next to him and Renee Haugerud. Exhibit **XX** Taylor Drake letter. The children and Michelle Murphy refused and Taylor Drake aligned Judge Baldwin, a judicially weak victim to become the judge for John Harold Murphy's attack upon Michelle Murphy and her children.

52. To begin the modification of custody case, John Harold Murphy arranged payment to Taylor Drake and Glover & Davis with the tacit understanding from Taylor Drake that he had arranged for a judge who would abridge the Georgia rule of law Uniform Superior Court Rule 3.1 Case Management Plan, and serve in the modification of custody case that John Harold Murphy sought to be filed against Nancy Michelle Murphy (Michelle Murphy. It was the intent of Renee L. Haugerud that Taylor Drake and the Glover & Davis lawyers would abridge the USCR 3.1 U.S. Constitutional protections of Michelle Murphy, Millard Farmer, Larry King and those accused of acting in concert with them in the Civil RICO

144

Complaint. The Glover & Davis lawyers were proficient in ex parte hand selection of judges. The Court is requested to initially allow the requested hearing and thereafter the requested relief under Court's inherent power to control the judicial process and litigation, and the authority granted pursuant to Federal Rule 37(b)(2)

53. Millard Farmer, as a defendant in the Civil RICO case, on his behalf and on behalf of those whose conduct may in some way be attributed or apportioned to Millard Farmer, or to other Defendants in the civil RICO Case, seek the Court's authority in obtaining investigative assistance from the FBI, the Securities and Exchange Commission (SEC) and the IRS investigative assistance unit. This assistance should make the spoliated evidence available for appropriate sanctions and Regulatory adjudication relating to breaches of fiduciary hedge fund obligations . The Plaintiff in this Civil RICO action, with funds derived from Renee L. Haugerud' hedge fund businesses,

145

including Galtere Ltd. with knowledge of the illegal purpose of the payments knowingly compensated the Taylor Drake and the Glover & Davis lawyers to engage in the illegal conduct of abridging the Fourteenth Amendment Due Process protections, Equal protection, First Amendment constitutional and rule of law protections of Michelle Murphy, her attorneys, Millard Farmer, and Larry King, persons providing the public information about the case, Deborah L. Beacham and My Advocate Center, Inc.

54.

55. There are particularized needs for the federal investigative assistance and United States Constitutional Fourteenth Amendment Due Process protections for Millard Farmer and others in this civil RICO case.

56. John Harold Murphy, with his Civil RICO case attempts to use, this RICO and other causes of action, against Millard Farmer as retaliation for Millard Farmer's legal representation and others' attempts to

146

provide Nancy Michelle Murphy (Michelle Murphy) rule of law protections during Coweta Judicial Circuit litigation during which, Taylor Drake, a Glover & Davis lawyer, with judicial gerrymandering ex parte judge selection initiated judicial corruption on behalf john Harold Murphy in a modification of child custody case.

57. John Harold Murphy, with the financial assistance of Renee L. Haugerud engaged in a myriad of rule of law abridged punitive attacks upon Millard Farmer and others accused in this Civil RICO case and elsewhere.

58. This Civil RICO case is Renee L. Haugerud's retaliation against the Defendants for partial exposure of only aspects of Renee L. Haugerud's and John Harold Murphy's illegal conduct that they are spoliating with the assistance of a cadre of lawyers and some Superior Court and Appellate Court judges.

59. The Georgia Supreme Court, apparently to no avail in deterring Taylor Drake and the Glover & Davis lawyer involved with the ex parte hand selection of Judge

Baldwin,  , warned the Glover &Davis lawyers, about their illegal judge selection conduct in, *Mayor & Aldermen of Savannah v. Batson–Cook Co.*, 291 Ga. 114 (Ga., 2012)

60. In that Coweta Judicial Circuit trial court, the Glover & Davis lawyer, J. Littleton Glover Jr., with an ex parte communication, unlawfully hand selected the trial judge in a case that was important to Glover & Davis, as J Littleton Glover, Jr. had a substantial ownership and business interest in Batson Cook. Littleton Glover and others tampered with justice by ex parte judicial gerrymandering.to hand select a judge.

61. Littleton Glover and Taylor Drake were aware that the Coweta Judicial Circuit had no USCR3.1 enforced case management plan and of the   judges who were amenable to being hand selected by lawyers for their important cases by using deceptive ex parte judicial gerrymandering secreted from the selecting lawyer's opposing litigant.  That conduct is unlawful tampering with judicial proceedings.

148

62. When that conduct occurs in a custody judicial proceeding, as it did with the Glover & Davis, Taylor Drake and Judge A. Quillian Baldwin, Jr. episode, the conduct of those tampering with justice and its spoliation cannot be overlooked by a federal court.as a petty unlawful act. The multiple acts of criminal conduct of John Harold Murphy and Renee L. Haugerud were initiated in furtherance of a multitude of other unlawful acts. involving minor children. It was the exposure of this illegal conduct by John Harold Murphy Taylor Drake, the Glover & Davis lawyers, Haugerud and *Galtere et al Enterprises* that gave cause for the cadre of *Galtere et al Enterprises* lawyers to bring the Civil RICO action against the only person attempting to protect the constitutional protections of Michelle Murphy and her minor children who were being abused physically and psychologically by John Harold Murphy and Renee L. Haugerud. and by failing to fulfill that duties the Judge Baldwin and Lisa Harwell, the guardian ad litem, who was so afraid of

149

what she would find failed to go the bar, or even attempt to see the bartender where the children and their friend were be provided "Pain Killer" alcoholic beverages by John Harold Murphy, until the children became known and were allowed to purchase the alcoholic beverages with credit cards. Millard Farmer was aware of Judge Baldwin's and Lisa Harwell's compromised judicial integrity when he moved to disqualify them and became more certain of the justifiable motions to disqualify these two persons with such impaired moral and legal judgments.

There is only one way that any person could have legal or moral compassion for Judge Baldwin and that is if he was being medicated for an illness. If that be the case, he, or his health care provider should now provide that information to the regulatory authorities, as no jurist should want to leave unexcused the treatment that Judge Baldwin engaged in with Michelle Murphy and her children. Judge Baldwin did not commit judicial error; he engaged in illegal conduct that equates to that worse than that for which he has sent persons to prison for committing The spoliated and federally investigated evidence may exonerate these wrongdoers.

150

63. The Glover & Davis lawyers, including Littleton Glover and Taylor Drake, gained the status to select judges and tamper with judicial proceedings through their and their law firm's financial and political contributions to the judges' judicial elections and judge's judicial appointment efforts.

64. The Supreme Court of Georgia, in its *Savannah* opinion, unlike the reversed Court of Appeals, did not tolerate the Glover & Davis law firms' judicial gerrymandering conduct, in *Savannah* where the Court clearly informed Taylor Drake's fellow Glover & Davis Lawyers that their ex parte judge selection conduct and tampering with the judicial process could not stand. Judge Baldwin, even though he does not stay current with appellate decisions, was aware of the court house news of the rebuke of Glover & Davis in that *Savannah* case. Taylor Drake chose Judge Baldwin, as the Glover & Davis next judge to be victimized by the Glover & Davis judicial gerrymandering trap. Judge A. Quillian Baldwin, Jr. elected to ignore the Supreme

Court's *Savannah* notice, and chose to never refer the numerus disqualification motion by Millard Farmer to another judge., as the Uniform Superior Court Rule 25.3, Duty of Trial Judge, required of Judge Baldwin. Even more egregiously, Judge Baldwin remained the judge in the contempt convictions that he imposed upon Millard Farmer.

1. Judge Baldwin initial threat to Millard Farmer and Larry King was that if they continued filing those "things" (disqualification motions) that he would not likely approve any attorney fees for them, which Millard Farmer knew was a reality when the first motion to disqualify Judge Baldwin was filed. Millard Farmer represented Michelle Murphy in that case with full knowledge that Michelle Murphy, with the financial responsibilities that she had to her children could not afford to pay Millard Farmer and Larry King for the attorney fees that John Harold Murphy's lawyer were require incurred for her defense. Judge Baldwin, like the literally hundreds of other jurists who Millard Farmer in his over fifty years of practicing law, observed would not provide attorney fees If Millard Farmer found the constitutionally necessary to seek and successfully attempted to correct the judge's unconstitutional conduct.

152

2.  Many judges, such as Judge Baldwin will in addition to not provide attorney fees to counsel who seek to disqualify them, or who brings challenges to their jury pool composition, will also   attempt to file colorable cause to charge those lawyers who are out of their home town jurisdiction with contempt. It is for that reason that lawyers such as those for John Harold Murphy, engage is such rule of law, including constitutional abridgments.

.

65. Taylor Drake did not heed the *Savannah* lawyers' briefing of rule of law and constitutional abridgment to the Supreme Court of Georgia, but instead The Glover & Davis lawyers followed John Harold Murphy's Renee L. Haugerud hedge fund benefited and financially reinforced. *sic em!* Cry.

66. The hedge fund's need for John Harold Murphy to have custody of the children in a distant location was spoliated together with his alcohol and other illegal inducements to the children and their friend to alienate them from their mother's   simple life in Coweta County.

67. This requested spoliated evidence supports the pattern

153

of State Court uncontrollable abridgment of U.S. constitutional protections by the Glover & Davis law firm lawyers in the Coweta Judicial Circuit

68. Lawyers with the Glover & Davis law firm and some judges in the Coweta Judicial Circuit frequently illegally collaborate to allow the lawyers' clandestine ex parte selection of the judge for a specific case or motion and more frequently to allow judges in a similar manner to select cases and motions over which they wish to preside. This illegal Rule 3.1 abridgment system allowed the Coweta Judicial Circuit judges to pander for political favor that was accompanied with such benefits as the election fund raiser event that Taylor Drake and Melissa Griffis, the first selected guardian ad litem arranged for Judge Baldwin's candidate, to fulfill a vacant judicial position.

69. Millard Farmer has received notice that one of the RICO case defendants has obtained the Bankruptcy Court protection. The fiduciary responsibility of that trustee should be protected with the requested

154

investigative assistance in recovering the requested partially spoliated information before that evidence becomes more difficult to recover and more of the hedge fund's investors is applied to John Harold Murphy's cadre of lawyers. Court should require the estimated $100,000 recipient paid by Larry King's insurance carrier should now be accounted for by the Bankruptcy Trustee, while there is an accounting of the spoliation funds.

70. Litigants in the Coweta Judicial Circuit are deserving of federal constitutional protection that that the State of Georgia has never provided to them before Millard Farmer. Larry King their client and other RICO accused persons endured with the illegal regular punishment administered by Judge Baldwin to favor John Harold Murphy, his counsel, and Renee L. Haugerud.

71. This case specific, judicial gerrymandering abridges the Uniform Superior Court Rule 3.1 mandated Case Management Plan and the most overt judicial

155

gerrymandering, by Taylor Drake in the custody case abridges, the Fourteenth Amendment Due Process protections of litigants opposing the Glover & Davis lawyers.

72. The Glover & Davis judicial gerrymandering in John Harold Murphy's modification of custody case against Nancy Michelle Murphy included numerous levels of judicial assisted spoliation of illegal conduct. John Harold Murphy, learned the path to receiving the benefit of the illegal judicial gerrymandering from Coweta Judicial Judge Louis Jack Kirby, who was John Harold Murphy' divorce attorney before becoming a Superior Court Judge, This Judge instructed John Harold Murphy about the lawyers who could select a judge for the modification of custody case and benefits from the selections.

73. The judicial corruption of Judge Baldwin, Judge Emory Palmer and Court of Appeals Judge Christopher J. McFadden and other State of Georgia actors prevented an effective investigation of the spoliation

156

by Georgia authorities.

The Glover & Davis Taylor Drake lawyers instigated  judicial corruption is imbedded in this RICO case by the necessity for Millard Farmer's and Larry King's defense of Michelle Murphy's constitutional protections from the effect of the totality of the judicial corruption in the modification of custody case that Taylor Drake instigated against Michelle Murphy on behalf of John Harold Murphy. The judicial corruption was purchased with financial and/or in-kind political compensation to Judge Baldwin and other judges, including Judge Emory Palmer, Judge Louis Jack Kirby and Senior Judge E. Byron Smith and Court of Appeals Judge Christopher J. McFadden.

**A person, as John Harold Murphy, who now attempts, cannot constitutionally abridge  a lawyer's client's Fourteenth Amendment Due Process, Equal Protection and First Amend Protection to the extent that Taylor Drake and the other lawyers of John Harold Murphy and Renee L. attacked and abridged these protections of Michelle Murphy, Millard Farmer and Larry King and thereafter bring a RICO action against the lawyers for defending their  client and themselves.**

The RICO civil action against Millard Farmer and those accused of acting with him is an active unconstitutional extension of the judicial corruption that Taylor Drake, John Harold Murphy and Renee L. Haugerud purchased with the judicial

157

gerrymandering hand selection of Judge Baldwin.

The conduct of John Harold Murphy and his source of financing  requires the stick federal investigative circumspection that this motion request.

The requested spoliated evidence obtainable with the federal investigation is warranted to expose and make available, for federal action against the law violators, for use by the RICO accused parties as defenses, for the Court's justification in granting a dismissal of the Complaint and for all uses allowed by the RICO accused parties.

In addition to the Coweta Judicial Circuit Judges receiving benefit from their rule of law case management abridgments, the Senior Judges also enjoyed financial benefits derived from abridgment of the Uniform Superior Court Rule 3.1 case management plan, as they were compensated for adjudicating cases at times when the constitutionally designated jurist was playing golf, or otherwise and not serving the taxpayers of the State of Georgia, as sworn to do.

When Senior Judge E. Byron Smith took over the disposition of the modification of custody case after Judge Baldwin and all judges in the Coweta Judicial Circuit recused themselves, he asked Judge Baldwin what he should do about deciding how the custody of the children should be adjudicated. At that time, Michelle Murphy had substituted counsel for Millard Farmer in the custody case. The custody of the children is not an issue in this motion or case.

158

To the credit of Judge Baldwin, he informed Senior Judge Smith that the Senior Judge should make the decision without considering Judge Baldwin's opinion.

Detrimental to Millard Farmer, Judge Baldwin left unchanged his Order that ""the ***Defendant***" who Millard Farmer had never been in the custody case must obtain the permission of Judge Baldwin before filing any motion, or pleading. The Court in administering that can't file without permission Order to mean that "Millard Farmer" was ""the ***Defendant***"  Millard Farmer at times would bring a motion that was due for a timely filing to the Clerk of Court's Office for fining and Millard Farmer would be denied the right to file the tendered motion, or have the clerk retain a copy of the tendered motion.

This denial of fining occurred most memorably after the Judges in the Coweta Judicial Circuit recused themselves and the Glover & Davis lawyers scheduled, Renee L. Haugerud' s motion for attorney's fees against Millard Farmer

Senior Judge Smith interpreted that Order of Judge Baldwin to prohibit Millard Farmer from filing any documents to protect himself in the matter of attorney fees that could not be legally imposed, if there was reason for the motion to be filed, including reason to believe that the motion would advance current law.


Senior Judge Smith, a frequent financial beneficiary of the absence of a Case management plan in the Coweta Judicial Circuit, permitted a Glove &

Davis lawyer to set a hearing on a motion for Millard Farmer to be required to pay the Glover &Davis lawyer attorney fees for filing a motion to include Renee L. Haugerud a third party. Judge Smith would not allow Millard Farmer to file a response to the motion and when Judge Smith was asked if he would read the response of Millard Farmer to motion before not allowing it to be filed, or ruling on the motion Senior Judge Smith with emotional anger refused.

Judge Smith did not make available a court reporter for the hearing and entered an Order granting the Glover & Davis lawyers $4  Millard Farmer was not allowed to file the necessary documents to obtain appellate review of Senior Judge Smith Order.  That issue is addressed in the memorandum of law that follows this motion.

Judge Baldwin, Taylor Drake and John Harold Murphy's insistence unconstitutionally attacked Millard Farmer and Larry King with contempt adjudications when they attempted to provide Michelle Murphy her constitutional protections at proceedings involving John Harold Murphy's attempt to modify Michelle Murphy's adjudicated divorce custody agreement.

John Harold Murphy married Renee L. Haugerud, a hedge fund operator who

found it beneficial to her hedge fund businesses for John Harold Murphy to have custody of the minor children in St. Thomas, U.S.V.I. It is the consequences of the defense of Michelle Murphy in the underlying custody case that John Harold Murphy attempts to use as the basis for his RICO Complaint against Millard Farmer and others. The modification of custody case was delayed due to the unethical conduct of Court of Appeals Judge Christopher J. McFadden.

The purchased judicial corruption against which Millard Farmer and Larry King attempted to defend was, at times, disguised as attorney fees. It was disguised as knowingly and intentionally made false accusations that Michelle Murphy fondled the children. It was disguised as fees to experts in exchange for their committing perjury. It was disguised as campaign election contributions, and now is disguised as the insurance carrier's payment for Larry King's RICO case dismissal. It is also disguised as other illegal conduct.

3.

4. These abridgments of United States Fourteenth Amendment Due Process, Equal Protection and First Amendment protections involved illegal conduct related to hedge fund assets, the children and other judicial criminal activities.

5. These illegal activities on behalf of John Harold Murphy constitutionally should insulate Millard Farmer and those accused in the RICO Complaint with Millard Farmer from the additional punishment now sought to be inflicted upon these

161

parties that John Harold Murphy seeks with his non-compliant *Ashcroft v. Iqbal,* defectively pled complaint, which, with this motion, is also requested to be dismissed, with the constitutional authority of the Supreme Court's decision in *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009).

5. Taylor Drake initiated the case specific, judicial gerrymandering to make Judge A. Quillian Baldwin, Jr. available for Taylor Drake to engage with Judge Baldwin in such due process abridgments that Judge Baldwin allowed himself to be hand-selected by Taylor Drake in the modification of custody case of John Harold Murphy against Michelle Murphy.

6. After numerous motions to disqualify Judge Baldwin, Millard Farmer was successful in having a Case Management Plan enforced in the Coweta Judicial Circuit. Then and only then, the Clerk of Court, as mandated, randomly assigned the modification of custody case to a judge other than Judge Baldwin.

7. Again, wishing to grant favor to Taylor Drake, Chief Judge Baldwin again, without a hearing, took over Taylor Drake's modification of custody case, over Millard Farmer's objection. The conduct of Judge Baldwin transformed from displaying judicial favoritism to displaying malicious and retaliatory judicial demeanor that was such a due process abridgment of the Uniform Superior Court Rules that Judge Baldwin had the Attorney General's office file a motion to quash a subpoena for Judge Baldwin's appearance at a deposition that Millard Farmer

had served upon Judge Baldwin related to disputed issues of fact that Nan Freeman raised in the action brought by Michelle Murphy against Nan Freeman, the court reporter in the modification of custody action, who did not report or preserve relevant testimony.

8. Millard Farmer's and Larry King's defense of Michelle Murphy required the exposure of Taylor Drake and the Glover & Davis lawyers' illegal conduct. This defense and its exposure angered Renee L. Haugerud to the extent that she and her hedge fund businesses financed John Harold Murphy to retaliate against Millard Farmer and others to bring this civil RICO case.

9. For these, and other reasons, this Court should initially apply the United States Supreme Court's *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, due process standard and dismiss John Harold Murphy's RICO Complaint against the defendants, as John Harold, the instigator of the judicial corruption, cannot now request the assistance of the federal court's participation in his State Court judicial corruption. These immunity protections are constitutional protections that should be provided to Millard Farmer and those accused of assisting Michelle Murphy without the expense of a trial.

10. The Complaint of John Harold Murphy should now be dismissed, as the Defendants are entitled to have their initial Motions to Dismiss and its

briefing be revisited by the Court with this additional request to dismiss. John Harold Murphy's allegations of extortion are legally non-existent.

11.  This attempted post-trial punishment of counsel is statutorily prohibited as being against Georgia's public policy. The Georgia judicial *ad hoc* gerrymandering did not end with Taylor Drake's due process and other rule of law abridgment selection of Judge Baldwin.

The Release and Settlement Agreement was executed on Feb 1, 2011 by John Harold Murphy, Nancy Michelle Murphy, Millard Farmer, as counsel for Nancy Michelle Murphy, and Kurt Kegel, as counsel for John Harold Murphy. The Settlement Agreement and Release was approved by counsel for the parties.

The entirety of the Settlement Agreement and Release document is in possession of counsel for John Harold Murphy, Renee L. Haugerud, Millard Farmer and others.

. Judge Baldwin's political favoritism initiated the judicial corruption that transformed Millard Farmer and Larry King's anticipated normal representation of Michelle Murphy into the frequent litigation occurrences that John Harold Murphy's RICO lawyers now, in not such different code words as, "Bundy" Conflictineering" let me tell you what Florida said about Millard Farmer" charge

Millard Farmer, outside the venue of his Residence, in the judicial abridgment playground of the Glover & Davis lawyers.. Buddy Parker, who during the final hearing in the custody case frequently stated "Your honor the **Government** objects, OH,  excuse me judge that is just an old habit."  The same illegal conduct that unconstitutionally charges Millard Farmer also unconstitutionally charges those assisting him with actionable RICO conduct.

Taylor Drake knew that Millard Farmer represented Michelle Murphy when he arranged for the hand selection of Judge Baldwin as the judge, as well as he knew that the false swearing of John Harold Murphy of the need for a hearing to prevent the movement of Michelle Murphy to South Carolina was not necessary. The Standing Order in the Coweta Judicial Circuit prevents a litigant from moving outside the jurisdiction of the Court with the mere filing of the Complaint. The locking in of the hand selected judge and guardian ad litem with a $250 an hour fee in a county that paid $150 a hour for a mediator was a reimbursed contributions to Judge Baldwin and his supported candidate Emory Palmer.

There is one type of judicial corruption that is associated with hand selection there is federal criminal corruption associated with bring the RICO federal action against counsel and others attempting to represent Michelle Murphy.

This Court may not have full notice of the criminal conduct of John Harold Murphy, Renee L. Haugerud Taylor Drake and the Glover & Davis lawyer. It is

165

for this reason that Millard Farmer on his behalf and on behalf of others charged with him request a hearing to support the requested federal investigative assistance, a removal of the venue to the Atlanta Division and a dismissal of the civil RICO Complaint.

A person cannot constitutionally abridge a lawyer's, and/or a lawyer's client Fourteenth Amendment Due Process, Equal Protection and First Amend Protection to the extent that Taylor Drake and the other lawyers of John Harold Murphy and Renee L.  attacked and abridged these protections of Michelle Murphy, Millard Farmer and Larry King under the judicially corrupt conditions that Judge Baldwin created, participated and prohibited these constitutional protections to be protected and thereafter bring a RICO action against the lawyer for defending the client and the lawyer who is the victim of the political corruption.

The RICO civil action against Millard Farmer and those accused of acting with him is an active unconstitutional extension of the judicial corruption that Taylor Drake, John Harold Murphy and Renee L. Haugerud purchased with the judicial gerrymandering hand selection of Judge Baldwin.

Millard Farmer, and those accused with him in the RICO action are entitled to

166

present evidence to support the need for this Court to provide the federal investigative information and protection requested.

Every act that John Harold Murphy and his lawyers attempt to charge Millard Farmer and Larry King with committing were defenses that this pro bono serving lawyers only method of defending the judicial corruption initiated and continued by lawyers for John Harold Murphy who were compensated by Renee L. Haugerud

of the modification of custody proceedings that also reminded Judge Baldwin that they wished for him to be the exclusive trier of fact in John Harold Murphy's modification of custody case. Judge Baldwin in the Coweta Judicial Circuit timely reminded Judge A. Quillian Baldwin, Jr. that he was to be reminded with an ex parte request to become the hand select in a position to only act as he acted when Millard Farmer objected Taylor Drake's hand selection of a guardian ad litem and to the condition of the Order that Judge Baldwin signed without reading.

when .to serve as the exclusive trier of fact in a modification of custody case after Taylor Drake and in the Posi initiated of lowest level of judicial corruption to the level that he was exposed.

John Harold Murphy then bring this Civil RICO action, without any just cause against Millard Farmer and others accused of assisting of in exposing the judicial participated corruption.

The alleged RICO conduct of those that John Harold Murphy

167

Attorney Louis Jack Kirby, before becoming a Coweta Judicial Circuit Judge guided his client, John Harold Murphy, through loopholes in the integrity protections of the divorce functions of the Coweta Judicial Circuit.

John Harold Murphy during the divorce attempted to illegally retain over half million dollars of marital assets that were due Nancy Michelle Murphy (Michelle Murphy). the mother of his John Harold murphy's two children, whom he also ceased paying child support to deplete the litigation resources of Michelle Murphy to compensate expert witnesses.

Millard Farmer with the assistance of Alfred Lawrence King, (Larry King) as an expert witness caught John Harold Murphy 's theft of marital assets. The exposure of the integrity of John Harold Murphy was obtained with the assistance of Superior Court Judge, Judge 5 of 5 in the divorce litigation that allowed for John Harold Murphy's secreting of assets due to the absence of an enforced mandated Case Management Plan.

judicial corruption

Alfred Lawrence King (Larry King) is no longer a defendant in this case.

Millard Farmer was informed that Larry King's malpractice insurer chose to pay $100,000 to avoid litigation cost and to have the case against Larry King Dismissed. The other persons charged in this case have no such insurance coverage.

168

The identity of the person, or persons who received what portions of the $100,000, and the person or persons releasing and being Larry King from liability together with the conduct for which persons were released is relevant to this request for investigative assistance.

Buddy Parker,and Maloy Jenkins Parker, brought the Civil RICO action that

The conduct of Buddy Parker in suborning the perjury f Patricia Nice, M.D. in providing and affidavit that was used by an expert witness at the final hearing during which Millard Farmer did not participate as counsel and had no opportunity to expose the false swearing of Patricia Nice, M.D.

charges some accused persons with criminal conduct.

Glover & Davis / Kilpatrick Townsend & Stockton LLP lawyers

This requested investigative assistance is warranted for the protection of the integrity of judicial system's domestic relations litigants in the State of Georgia and not only for the protection of the accused parties in this case whom John Harold Murphy and Renee L. Haugerud seeks punished for exposing John Harold Murphy and Renee L. Haugerud's illegal conduct and the illegal appropriation of the hedge fund's assets in furtherance of their intended detriment to Michelle Murphy and the persons whom were attempting to deter the judicial wrongdoing

169

involving so-called "custody evaluators and persons representing Michelle Murphy and her obligation to care for the best interest of her children.

Michelle Murphy to protect her children had to reach out for help from everyone, as Judge Baldwin allowed John Murphy to cease paying Michelle Murphy child support and allowed John Harold Murphy to remove her children from Newnan, Georgia to St. Thomas U.S. V.I. It was after the children were moved to St. Thomas U.S. V.I. that Millard Farmer obtained information about Renee L. Haugerud engaging in illegal conduct related to witnesses and reported information about Renee L. Haugerud intimidating witnesses and who were willing to testify about the endangerment of the children's use of alcohol. Judge Baldwin abridged Michelle Murphy's First Amendment protections by prohibiting her use of social media, while not restricting John Harold Murphy's expert, Patrick Crosby's use in the same manner that he restricted the use of persons supporting Michelle Murphy. . See, *Packingham v. North Carolina*, 582 U.S. ___ (2017)

Counsel for John Harold Murphy, the Glover & Davis law firm's Taylor Drake's hand selection of Judge A. Quillian Baldwin, Jr., as the exclusive judge combined with the simultaneous selection of a guardian ad litem  in the modification of custody case was a violation of a Uniform Superior Court mandated Rule 3.1 case management plan that was a rule of law, violation that was a Fourteenth Amendment Due Process Abridgment of the highest magnitude

170

that that that conduct with its habitual further constitutional abridgments restrict John Harold Murphy from his asserted causes of action against counsel attempting to protect the interest of a mother who was without other means to protect herself and her children other than the pro bono counsel that Millard Farmer provided to her until Judge Baldwin and each judge in the Coweta Judicial Circuit recused themselves after enforcement of the Case Management Plan began.  was used as the initial foundation for the more egregious illegal conduct of Judge Baldwin, Taylor Drake, John Harold Murphy, Renee L. Haugerud and others.

Judge Baldwin was retained, as the exclusive trier of fact until Millard Farmer was eventually successful in obtaining his recusal after twenty (20) State v. Hargis compliant disqualifications motions.

Taylor Drake extended the constitutional detriment of his long standing judicial gerrymandering and preferential treatment business model, to the extent that

John Harold Murphy, whose conduct is just one step above a street gang member and Renee L. Haugerud with her hedge fund resources made the decision to utilize the Glover & Davis control of Judge Baldwin with

It was Michelle Murphy's necessity in having to employ Millard Farmer, a lawyer who had represented unpopular clients in unpopular litigation that created

171

an obstacle of inequality that the Taylor Drake, Glover & Drake the Buddy Parker, Maloy Jenkins Parker, and the Kilpatrick Townsend & Stockton LLP lawyers attempt to stick in the face of judges, the public and soon the jury in the RICO case.

The judicial corruption of Judge Baldwin that in the case of John Harold Murphy v. Nancy Michelle Murphy (Michelle followed the judicial corruption model used by the Glover & Davis lawyers in , *Mayor & Aldermen of Savannah v. Batson–Cook Co.*, 291 Ga. 114 (Ga., 2012).

The enhanced constitutional Due Process detriment to Michelle Murphy was that in a modification of custody case the judge is the exclusive trier of fact.

The illegally hand selected Superior Court Judge Baldwin from the day of his selection began engaging in rule of law, Fourteenth Amendment Due Process abridgments. Once Taylor Drake warmed Judge Baldwin into accepting the level of judicial corruption that John Harold Murphy required  to obtain to assist Renee L. Haugerud, a hedge fund operator in her ultimate goal of capturing the children of Nancy Michelle Murphy, Judge Baldwin prohibited Millard Farmer a hearing on all issues, and soon required Millard Farmer to obtain this judge's approval of any motion that Millard Farmer sought to file on behalf of Nancy Michelle Murphy. requiring federal investigative assistance. Witnesses, willing to testify

before this now fear retaliation from funds financed by Renee L. Haugerud On August 7, 2024 Millard Farmer called the FBI and reported a threat of Renee L. Haugerud to the mother of a child who had observed the abusive alcohol provided the minor children.

Judge Baldwin was selected to be the judicial source for the illegal conduct of Taylor Drake in seeking criminal contempt actions against Larry King and Millard Farmer for these two lawyers providing exactly what a competent lawyer should do, and what every lawyer in the Coweta Judicial Circuit should have done years ago, but failed to do maybe for the reason having to endure this litigation.

The lawyers in the Coweta Judicial Circuit lawyers should have, filed challenges to such egregious systemic unconstitutional Case Management conduct that allowed lawyers and judges, in civil and criminal cases to the detriment of mostly unaware, out of Circuit, opposing counsel, select the judge to try a particular case, or to allow a judge to select a case to try.

This type of conduct is not just a rule violation, it is not just judicial error. – it is illegal conduct that progressed to being a crime that John Harold Murphy and Renee L. Haugerud paid to have committed for the benefits that they could receive for her the hedge fund business.

. Judge Baldwin knew the reason that he was hand selected and he retained that authority after twenty motions informing him of his illegal conduct.

173

.

Renee L. Haugerud and her hedge fund operation including, but not limited to Galtere Ltd., have a fiduciary responsibility to numerous persons. Renee L. Haugerud's lawyer prepared a Settlement Agreement and Release that John Harold Murphy entered into with Michelle Murphy and Millard Farmer That Settlement Agreement provided a release of Millard Farmer, and other parties for relevant aspects of John Harold Murphy's instigation of attacks upon the released parties in numerous forums. (ExF640

The lingering indemnification liability of John Harold Murphy under that Settlement Agreement and Release contains the Indemnity protections that John Harold Murphy, provided to Millard Farmer and others whom he includes in his RICO Complaint.

2.The constant, consistent and unconstitutional rule of law abridgments that Taylor Drake illegally induced Judge Baldwin to engage for the illegal benefits for his clients included  Judicial Circuit Judge Emory L. Palmer's financial gains that he obtained with the assistance of Judge   A. Quillian Baldwin, Jr. was so prevalent that the conduct should be investigated for not for the ethical violations that it was but for criminal prosecution, as the conduct has infected the Coweta Judicial Circuit to the extent that each judge in the Circuit recused themselves in

174

the cases involving Michelle Murphy.  that , as Taylor Drake, without corporation began using  in the Coweta Judicial Circuit prevented Millard Farmer, as counsel for Nancy Michelle Murphy, and at times counsel for himself and Alfred Lawrence King (Larry King) and others of having a rule of law opportunity to fully expose the  illegal conduct of John Harold Murphy, Renee L. Haugerud and the illegal conduct of their cadre of lawyers beginning with that of Taylor Drake, in suborning the false statements of John Harold Murphy and Taylor Drake's knowingly violation of the rule of law in his hand selection and retention  of Judge A. Quillian Baldwin, Jr. as the exclusive trier of fact in a modification of custody case that Taylor Drake and the other Glover & Davis lawyers continually sought criminal contempt convictions of Millard Farmer, as a part of John Harold Murphy and Renee L. Haugerud' efforts to interfere with the reputation of Nancy Michelle Murphy's right to counsel and Millard Farmer's occupation as an attorney. wi and their "experts." It was defending a client from the consequences of this John Harold Murphy/Renee L. Haugerud induced illegal that Millard Farmer, Larry King and others attempted to defend Nancy Michelle Murphy and her two minor children.

   3.Counsel for John Harold Murphy, Wilmer "Buddy" Parker's unquestionable illegal conduct was first noticed by Millard Farmer when Buddy Parker made a false statement to the Superior Court of Gwinnett County to delay a trial of Millard

Farmer for another client in a case that except for disrupting Millard Farmer' law practice was unrelated to the child modification of custody case.

    4. The Superior Court of Gwinnett Court rejected the false statement of Buddy Parker seeking a delay that he falsely informed that Court that Millard Farmer approved. That conduct by Buddy Parker is relevant as it was the initial retaliatory conduct that Buddy Parker was delivering for Renee L. Haugerud who vowed to continue attacking Millard farmer until she spent her last penny, if necessary to ruin Millard Farmer

5. After Buddy Parker's unsuccessfully attempting to derail that Gwinnett Superior Court case of Millard Farmer, Buddy Parker's pandering to his client conduct became so regular and pathetic that he became much like a South Georgia gnat, just a nuisance without a substantial bite.

    6.Buddy Parker and his client did not even appear at the Gwinnett trial that he made a false statement to the Court to delay. The Judge at that trial apparently knew Buddy Parker and his client in that case and held the trial without waiting upon their announcement, or their presence.

    7. Buddy Parker used State Bar of Georgia Grievances against Millard Farmer as a part of his attempted vindictive litigation intimidation and disruption of Millard Farmer's representation of Michelle Murphy. Buddy Parker sought State Bar actions against Millard Farmer for persons even after the first Bar Grievance

Buddy Parker filed for John Harold Murphy was dismissed with prejudice for the reason of this pending litigation.

8.Buddy Parker suborned perjury in the State Bar of Georgia grievances he filed against Millard Farmer for his "expert" witness, Patricia Nice, M.D., who executed a perjurious affidavit for Buddy Parker to use at the final custody hearing by another expert witness for John Harold Murphy. That grievance involved involving litigation issues of that psychiatrist's previous abusive substances addictions that Millard Farmer exposed to the Court during the time that John Harold Murphy was attempting to Michelle Murphy to administer Dr. Nice's prescribed medication to the children after the medication was having detrimental effect upon one of the minor children. upon during which he represented John Harold Murphy against Michelle Murphy, Millard Farmer's client.

9. The grievances conduct of Buddy Parker is relevant here because responding to the grievances delayed the litigation that Buddy Parker accuses Millard Farmer of actionable RICO conduct for causing delays.

10.   The case adjudication delays that would not have occurred absent the necessity to litigate the judicial corruption created by Taylor Drake in hand selecting Judge Baldwin as the exclusive trier of fact. and Judge Baldwin's participation in the Glover & Davis judicial corruption that was a part of John Harold Murphy's breach of the two Settlement Agreements and Releases with

177

Michelle Murphy.

11. The attractiveness of obtaining money from Renee L. Haugerud that John Harold Murphy attempts to attribute to Millard as the reason for his and Larry King' persistent represent of Michelle Murphy on behalf of her children was in no way motivated by the lust for Renee L. Haugerud's money, or the money from anyone. The representation of Michelle Murphy was not in accordance with a Conflictineering article that Millard Farmer wrote.

The representation provided to Michelle Murphy in the legal malpractice and the modification of custody was not provided because of a personal relation that Millard Farmer or Larry King had for Michelle Murphy

The representation that Millard Farmer and Larry King provided for Michelle Murphy was not motivated by some ill feeling that Millard farmer had for John Harold Murphy, Renee L. Haugerud, or their lawyers, or for Judge Baldwin, or any other person, judge, or lawyer.

Millard Farmer observed the love that Michelle Murphy's brother had for her and her children and Millard Farmer consistently observed that Rob Hardman separated these personal feelings from any assistance that he provided to Millard Farmer in discussing the case and decisions to be made by Michelle Murphy.

Millard observed as many as fifty or more community persons attempting to assist Michelle Murphy and her children, many of whom discussed their feelings with

178

Millard Farmer, who attempted to individually provide emotional support to each person who .

and breaches of John Murphy of agreements that he made with the children about changing visitation conditions. .

12. Responding to the grievances filed by Buddy Parker and consumed a large amount of time, as they were much akin to the RICO Complain, in that they were grounded with opinions based upon unsupported truthful facts. The legal problem with John Harold Murphy's initial[1] and his Amended Complaint [31] is that they would not have satisfied his clients, John Harold Murphy and Renee L. Haugerud, if pled as required by *Ashcroft v. Iqbal,* 556 U.S. 662, 680-683,.as they would not have supported his allegations of "extortion."

This RICO civil case is difficult to understand without realizing that the RICO action was the Buddy Parker, Maloy Jenkins Parker, Glover & Davis / Kilpatrick Townsend & Stockton LLP lawyers abusive litigation method of zooming for those lawyers personal financial benefits to pander approval of Judge Baldwin, Renee L. Haugerud, and those who was attempting to clean up public knowledge of  John Harold Murphy's child endangerment, playboy alcoholic conduct to the extent that John Harold Murphy could assist Renee L. Haugerud in locating new hedge fund

179

investors for Galtere Ltd. with her family image of being successful, wealthy St. Thomas U.S. V.I. residents and hedge fund operators.

It was unfortunate for those relying upon the integrity of the Superior Courts in the Coweta Judicial Circuit that Judge Baldwin was not knowledgeable of the law enough to accept and reject that he was being played for the unethical judge who he was who as a now recused judge is now only left with the spoils of a corrupt judicial career that further depicts the integrity of the Coweta Judicial Circuit as it was exposed in the City of *Savanah v Batson Cook* and in *Davis v. Zant* 721 F.2d 1478 (11th Cir. 1984) after Millard Farmer and those litigated with him for ten years to change another type of malicious jury composition corruption in the Coweta Judicial Circuit that the appellate courts of Georgia approved.

The federal investigation will provide this Court the guidance and information that Judge Baldwin was not provided. Consequently Judge Baldwin was left a victim who did not know that it was Larry King and Millard Farmer who were not taking a single penny from this mother and her children in the modification of custody case and who would not have betrayed Michelle Murphy and her children for Fort Knox.

It was Millard Farmer and to an extent, for a period of time, Larry King, who constitutionalized the Case Management System mandated by the Uniform Superior Court Rules.

180

There will be a day that Renee L. Haugerud learns who zoomed her hedge fund pocket book and those who were attempting to protect the lives of the minor children. That day will arrive sooner without more judicial victims with the federal investigative assistance and the requirement for the *Ashcroft v. Iqbal,* 556 U.S. 662, 680-683,. pled Complaint.

Rest assured; the affidavits obtained with the federal investigation will change the storyline client pandering pleading and State Bar of Georgia grievances, or expand the federal prison population.

Buddy Parker suborned the false swearing contained in an affidavit of a relevant witness ae the final custody hearing. Millard Farmer was not a party, or an attorney at that hearing and did not have an opportunity to expose that perjury, or its subornation.

The cumulative acts of illegal conduct by counsel for John Harold Murphy compounded with the Orders that Judge Baldwin most frequently signed without reading and more frequently did not know the consequences of the Orders.

That conduct justifies federal investigative assistance before Millard farmer and those accused of assisting him are placed before a jury to explain the justification for defending a hair stylist born in New York from conduct of a person of one of the highest ethical status in our society, a Judge.

181

A pro se lawyer with other undefended alleged so-called co-conspirators are not provided a constitutional chance in defending themselves in a forum outside the venue of their residence when further restricted with this Court's limited in limine motion protection documents. There are approximately 5,000 pages of document and several audio recordings that are a relevant part of the wrong doings of this hand selected judge, who is not a defendant, but the hidden prosecutor that Millard Farmer and others will be required defend themselves against in a Donald Trump electoral venue instead of the venue of their residences, the Atlanta Division of the Northern District of Georgia.

The federal investigation will disclose that the children of Michelle Murphy, at the time they were sought, were a part of the business tax and regulatory benefits for Renee L. Haugerud' hedge fund operation, whose child support to their mother had been terminated by John Harold Murphy. This termination of financial resources for the children was detrimental to the children's wellbeing and created some of the causes of action that it was incumbent upon Millard Farmer and Larry King to defend without compensation and litigation expenses. For a while Larry King traveled to and from Florida to assist Millard Farmer who was represented Michelle Murphy at every hearing except one when Larry King alone represented Michelle Murphy when Millard Farmer was lead counsel in a specially set case in Mississippi in which the initially assigned judge had been changed. Yes, on

182

motion of Millard Farmer.

The County of Coweta and the Office of its Sheriff are represented by a Glover &Davis associated lawyer. The County Attorney for Coweta County, the District Attorney for the Coweta Judicial Circuit and Sheriff of Coweta County knowingly participated in abridgment of the rule of law mandated by the Uniform Superior Court rules.

The Coweta Judicial Circuit has a long history of discriminating against litigation by violation persons United States Fourteenth Amendment Due Process

The federal investigation will more relevantly show that Michelle Murphy and her lawyers were never provided a scintilla United States Fourteenth Due Process, Equal Protection or First Amendment Protections by judges serving in the Coweta Judicial Circuit.,

The RICO Accused Parties brought the rule of law Case Management Plan to the Coweta Judicial for the first time since they were enacted and made mandatory upon each of the Superior Courts in October 7, 2010. Each charge against Millard Farmer and those accused in the RICO action originated when Judge A Quillian was in violation the United States protections accorded them by the rule of law.

The August 7, 2014 case notes of Millard Farmer reflect report on behalf of a mother of a child who visited the minor children of Michelle Murphy on St.Thomas USVI.  The notes retains  the FBI Agent number,  the suspected

violations of Code Sections OCGA 16-10-93 and 18 USC 1512 and a summary of

the call of the mother to Millard Farmer. the notes state "

 and request reflect that on that August 7, 2014 FBI call  that reported a threat of Renee
L. Haugerud to the mother of a 15 year old witness who was to be subpoenaed for a
hearing before a requested hearing before Judge Baldwin. The call to the mother by
Renee L. Haugerud occurred while Millard Farmer and his paralegal were at the home
of the mother.

1. Judge Baldwin, Taylor Drake and the Glover & Davis law firm and their

   cadre of expert witnesses, lawyers had constitutionally infected more than

   the corruption of justice Michelle Murphy's modification of custody case

   and that case's ancillary actions.  The Galtere Ltd. Hedge funds of Renee L.

   Haugerud has a fiduciary obligation to persons and entities worldwide. The

   financial recourses controlled by Renee L. Haugerud that fund this case have

   caused breaches of constitutional protections in the Coweta Judicial, the

   Court of Appeals of Georgia and Regulatory Agencies of the State of

   Georgia. It would be a constitutional abridgment of the highest magnitude

   to impose upon a jury the task of that John Harold Murphy attempts with this

   case, *ie* a white wash of the malicious conduct of Judge A. Quillian Baldwin.

   to the mother of two minor children who only had Millard Farmer for a

   lawyer because she could not afford a lawyer with the political influence to

   obtain a fair judge.,

Millard Farmer, who appears *pro se*, seems presently to be the only remaining

184

attorney for the persons opposing the Plaintiff, John Harold Murphy's whose Complaint[31] accuses numerous person of engaging in conduct for which Millard Farmer stands charged. This Motion is being provided to Deborah L. Beacham for delivery to another judicial entity in which she seeks protection.

3. John Harold Murphy's Complaint contains public opinion pandering fictitious accusation of Millard Farmer's primary goal in the case is to obtain monetary benefits in representing Michelle Murphy. in the modification of custody case.

4. Millard Farmer represented Michelle Murphy in that case with full knowledge that Michelle Murphy could not afford and that Judge Baldwin, like the literally hundreds of other jurists who Millard Farmer in his over fifty years of practicing law, learned would not provide attorney fees If Millard Farmer found the constitutionally necessary to seek and successfully attempted correct the judge's unconstitutional conduct.

5.  Many judges, such as Judge Baldwin  will not only not provide attorney fees to counsel who seek to disqualify them, or bring challenges to of their jury pool composition, but those Judges will attempt to file cause to charge those lawyers with contempt.  to counsel litigation expenses  who brings motion for constitutional judicial compliance for litigants without adequate litigation resources will not only not compensate prevailing counsel, but will

often, as with Judge Baldwin, will attempt punish counsel and to provide benefits to counsel assisting the judge in continuance of the constitutional violations.

6.

7.   for attempting to illegally obtain money from Renee L. Haugerud the hedge fund operator wife of John Harold Murphy. completely fabricated attempt at financial greed and those accused of actionable Civil RICO for financial benefit derived from the malicious judicial conduct of Judge A. Quillian Baldwin, Jr. beg for the constitutional protections that this request for federal investigative assistance can provide.  Millard Farmer and co-counsel, Larry King, until Larry King was relieved by Judge Baldwin of responsibility of assisting Millard Farmer as the only remain lawyer, using the legally untrained voluntary resources of informants, a young as ten years old as others afraid of their livelihood, and the wrath of the financial funded cadre of the hired intimidators of Renee L. Haugerud'  of as a feral cat of a coyote defended their client and her obligation for the safety of her two minor children in a modification of custody case. Millard Farmer and Larry King defended  Michelle Murphy and her obligation to her two minor children without compensation, reimbursement for litigation expenses, or hope, of ever receiving anything but more abusive treatment from Judge Baldwin and

counsel for John Harold Murphy who without a request for payment, from the Glover & or any forewarning garnishing the joint personal bank account of Millard Farmer and his wife during the holiday season. Incidentally, That Taylor Drake and Glover & Davis garnishment behavior is now an annual holiday warning to our family of the necessity of the work we perform in attempting to protecting our justice system for those who cannot afford lawyers who gain political favor with judges.

, who is serving pro bono in a case  after an essential warning by Judge Baldwin that he would not approve attorney fees, if the disqualification and other motions continued. With only the investigative assistance obtainable from family members and friends of their client, counsel and their client, attempted to use the Internet and Social Media to obtain assistance and to reduce the malicious conduct of Judge Baldwin. Judge Baldwin Ordered Millard Farmer fined $500 dollars a day for each day that any social media information appeared on the Internet about the case, while allowing John Harold Murphy to compensate a professional media consultant Patrick Crosby to publicize information favorable to Plaintiff who relies upon the State Court actions based upon Constitutional abridgments that Millard Farmer defended for his client Nancy Michelle Murphy (Michelle Murphy)  who was required to accept as her exclusive trier of fact, Judge Baldwin, until after twenty (20) disqualification motions that judge and all judges in the

Coweta Judicial Circuit recused themselves, without removing the rule of law unconstitutional restrictions imposed upon. Millard Farmer and his client that included such unconstitutional restraints that the eventually recused judge must approve of each motion before it was filed, that Millard Farmer could not present any witnesses to support the abusive treatment of his client's children, that Millard Farmer was held in contempt for obtaining affidavits from the children defending criminal contempt charges, against their mother, that Millard Farmer could not question the Judge, as provided by the rule of law when he disputed the sworn facts in motion to disqualify him, The lives of the minor children and a friend of theirs was endangered by John Harold Murphy to the extent that Millard Farmer sought the assistance of the FBI

.

accused

Millard Farmer's first contact with Nancy Michelle Murphy (Michelle Murphy) and John Harold Murphy arose when Millard Farmer represented Michelle Murphy in a legal malpractice and negligence case against her divorce attorney., Delia Tedder Crouch.  This malpractice action against Michelle Murphy's lawyer, eventually

188

involved John Harold Murphy, who at the time, was identified in that malpractice action as 'presently a top executive with Galtere Ltd., a global investment and trading company. See, http://galtere.net.

During that malpractice action, John Harold Murphy was represented by counsel in litigation that Millard Farmer brought on behalf of Michelle Murphy that included a comprehensive motion to join John Harold Murphy as a party.

The owner of Galtere, Renee L. Haugerud, paid the money to Michelle Murphy that John Harold Murphy obtained through a judicial error that he was accused of attempting to illegally retain. The integrity of John Harold Murphy in attempting to retain money that he did not legally obtain from Michelle Murphy was the prime issue that supported the litigation to add him as a party to that case.

The wide scope of the malpractice negligence litigation included the very broad scope of the disputed issues among John Harold Murphy Michelle Murphy and her counsel Millard Farmer and the insurer of Delia Crouch.

The litigation supporting the factual basis for the global dispute that comprised a part of the global mutual Release and Settlement Agreement included the entirety of the illegal and integrity misconduct of John Harold Murphy during his divorce litigation from Michelle Murphy.

The malpractice negligence litigation during which John Harold Murphy became a participant and the execution of the Mutual Release and Settlement Agreement

occurred long before the Star Chambers type of modification of custody proceedings initiated against Michelle Murphy by John Harold Murphy before Coweta Judicial Circuit Judge, A. Quillian Baldwin Jr.

The malpractice negligence litigation disputed issues are relevant here, as they resulted in a **Mutual Settlement Agreement and Release Ex F 64)** among John Harold Murphy, Michelle Murphy, her attorney Millard Farmer and and other RICO accused parties who are provided indemnification protection from breach by John Harold Murphy, and those acting at his bequest and on his behalf.

The indemnification protection relates to actions initiated on behalf of John Harold against Michelle Murphy, Millard Farmer and other RICO accused parties who are accused in this Court.

The indemnification protections in the Settlement Agreement and Release should include indemnification "hold harmless" indemnification in-kind injunctive protections to Millard Farmer and the RICO Accused Parties together with other protections for contempt actions sought by and on behalf of John Harold Murphy. against Millard Farmer, Michelle Murphy and Larry King.

The Settlement Agreement, in part, provides **protection from John Harold Murphy to the following group of persons.**

The Parties hereby release, acquit and forever discharge the

190

others, including their respective past and present officers, directors, agents, affiliates, employees, parent corporations, sister corporations, subsidiary corporations, their attorneys, law firms, insurers, principals, affiliates, heirs, administrators, successors, and assigns, partners, members or associates, managers, and independent contractors

The Parties further agree that if either of them takes any action to pursue a Released Claim, including but not limited to, filing a lawsuit, against any party released herein, that Party will indemnify and hold harmless the other of and from any and all claims, costs and expenses, including, but not limited to, reasonable attorney's fees incurred by them as a result thereof.

The February 1, 2011 "Release and Settlement Agreement. Also provides as follows.

WHEREAS, in the interest of avoidance of future disputes between the Parties in connection with the Lawsuit or any other matter of any kind arising from the Lawsuit, or and any other matter arising from the Lawsuit and/or the allegations contain therein, the Parties have reached a resolution of all

191

disputes and issues among them arising therefrom and desire to document the settlement by and through this Agreement.

The Parties are Released from the following types of occurrences.

any and all other claims of contempt, malpractice, negligence, breach of contract, breach of fiduciary duty, or misconduct, intentional or negligent, concerning, directly or indirectly, the Lawsuit and/or the Underlying Action as relates to the Lawsuit and/or the allegations contained therein, and from any and all other claims, causes of action, demands, suits, proceedings, costs, expenses, liabilities, judgments, sums of money, rights, obligations or liabilities of any kind or nature whatsoever, in law or in equity, whether known or unknown, suspected or unsuspected, which either Party ever had, now has, or hereafter can, shall or may have, against the other for, with respect to the Lawsuit and/or the Underlying Action as relates to the Lawsuit and/or the allegations contained therein, cause or thing whatsoever from the beginning of time to the date of this Agreement ("Released Claims").

192

The Parties further agree that if either of them takes any action to pursue a Released Claim, including but not limited to, filing a lawsuit, against any party released herein, that Party will indemnify and hold harmless the other of and from any and all claims, costs and expenses, including, but not limited to, reasonable attorney's fees incurred by them as a result thereof.

John Harold Murphy in collaboration with Taylor Drake and the Glover & Davis law firm have violated the February 1, 2011 Settlement Agreement and Release. Involving John Harold Murphy and

Renee L. Haugerud who provided consideration for the Release that prepared by counsel for Renee L. Haugerud and John Harold Murphy

The Release and Settlement Agreement was executed on Feb 1, 2011 by John Harold Murphy, Nancy Michelle Murphy (Michelle Murphy) and Millard Farmer, as counsel for Nancy Michelle Murphy, The Settlement Agreement and Release was approved by counsel for the parties.

The entirety of the Settlement Agreement and Release document is in possession of counsel for   John Harold Murphy, Renee L. Haugerud, Millard

193

Farmer and others.

It was one of the United States Fourteenth Amendment Constitutional Due Process, Equal Protection and First Amendments Abridgments that deterred Millard Farmer from being able to obtain these protections in the Superior Court of Coweta County as the results of Judge A. Quillian Baldwin, Jr. being hand selected by Taylor Drake and the Glover & Davis law firm, as the exclusive trier of fact in the action that John Harold Murphy initiated.

It was not just the rule of law violations of Judge Baldwin that corrupted the Coweta Judicial Circuit until each of the Judges in the Coweta Judicial Circuit recused themselves.

The Coweta Judicial Circuit group recusal, most probably was for the Judges to protect themselves from having to take ownership of the malice with which Judge Baldwin inflicted his abusive treatment upon Michelle Murphy and her counsel. Judge Baldwin cut off all child support payments to Michelle Murphy and denied her contact with her children in furtherance of him maintaining his position as the Chief Judge of the Coweta Judicial Circuit long after he should have recused himself, as the Due Process, Equal Protection First Amendment unconstitutionally hand selected exclusive trier of fact by the Glover & Davis lawyer, Taylor Drake.

Judge Baldwin's Constitutional rule of law abridgments were not just the results of his judicial error, or his being provided unconstitutional guidance and illegal

194

request  by counsel for John Harold Murphy and Renee L. Haugerud, both of which occurred.

Judge Baldwin throughout his actions in the case of John Harold Murphy v. Nancy Michelle Murphy maliciously and intentionally abridged the United States Constitutional Fourteenth Amendment, Due Process, Equal Protection, First Amendment Protections of Michelle Murphy, her counsel and those who John Harold Murphy accuses of assisting Michelle Murphy and her counsel.

It is the maliciously administered unconstitutional conduct of a Superior Court Judge who has been the exclusive trier of fact that that necessitates that this Court provide Millard Farmer and those Accused Parties that John Harold Murphy charges to be. a part of the actionable conduct included in his Complaint [31] and other actions that merit the Request for the investigative assistance requested here.

Millard Farmer request that


 representing. The RICO action that John Harold Murphy brings abridges the Constitutional protections of Deborah L. Beacham, My Advocate Center, Inc. and each of the RICO Accused Parties.


Millard Farmer became knowledgeable about John Harold Murphy's pattern of illegal conduct in reviewing the transcript and records of the divorce case during

which Delia Crouch's malpractice occurred. It was there that Millard Farmer learned of the false swearing of John Harold Murphy in judicial proceedings and John Harold Murphy's other propensity to engaging in illegal, abusive and immoral conduct directed toward women and Michelle Murphy in particular.

That malpractice litigation was complex to the extent that it became relevant to distinguish between the damages suffered by Michelle Murphy, from the illegal conduct of John Harold Murphy that a competent lawyer should have detected and timely brought to the Court's attention during the divorce action as different from the portion of the damages attributable to the illegal conduct of John Harold Murphy that was so sophisticated that a competent domestic relations lawyer could not have been expected to detect John Harold Murphy's false swearing about his income and marital assets.

The bedrock of the malpractice action was Delia Crouch's long delayed shoddy preparation of the Qualified Domestic Relation Order (QDRO) that she presented for a routine execution to Coweta Judicial Circuit Judge 5 of 5, in the divorce case, who had no great familiarity with the divorce litigation and no knowledge of the QDRO requirements.

The QDRO expert witness for Millard Farmer in that malpractice case was Alfred Lawrence King, Jr. (Larry King) The presiding Judge in the malpractice

196

litigation was the judge who executed the erroneous QDRO.

After Larry King's deposition and other discovery, in a chambers conference, the Judge who mentally put together some of the reason for the delay in the litigation and fraudulent litigant conduct inflicted upon Delia Crouch the Judge asked Millard Farmer because John Harold Murphy was not included as a defendant.

Millard Farmer informed the Judge that Michelle Murphy attempted to have Delia Crouch recover the $180,000 value of the stock options and that she could not afford the attorney fees after Delia Crouch refused to accept her coat as part of her attorney fees.  In addition, Michelle Murphy was advised that if she sought to change the divorce settlement agreement before Judge 2 of 5 that she might lose some of her child custody benefits. Millard Farmer further explained that Michelle Murphy was afraid if she included John Harold Murphy as a party in the malpractice case that he would retaliate against the minor children.

Judge 5 of 5 quickly and strongly informed Millard Farmer and the other lawyers that John Harold Murphy, to the detriment of the legal malpractice insurance carrier of Delia Tedder Crouch, should not be allowed to financially benefit by retaining the QDRO money he erroneously received

Judge 5 of 5 strongly informed the lawyers that while he presided that there would be no unjust enrichment of John Harold Murphy resulting from the error of

Delia Crouch that the Judge did not detect before signing the ODRO Order presented to him by Delia Crouch.

To no avail, John Harold Murphy retained Atlanta lawyers to argue that John Harold Murphy should be allowed to keep the money that he had received from what the Judge called his and Delia Crouch's error.

To resolve the issue that the Judge correctly would not tolerate, Millard Farmer informally agreed to include John Harold Murphy as a party in the Delia Crouch litigation and to allow a jury to resolve the issue if John Harold Murphy would not voluntarily return to Michelle Murphy the money that he had obtained from the QDRO error and in Michelle Murphy not obtaining her marital share of the value of John Harold Murphy's  undisclosed stock options and his pension that was intended to be distributed with a QDRO.

Millard Farmer informed the Court of John Harold Murphy failure to disclose the approximate $180,000value of stock options that John Harold Murphy exercised on the day after he and Michelle Murphy signed the settlement agreement that his counsel, Louis Jack Kirby, prepared. The value of the stock options was secreted from Michelle Murphy until after she signed the settlement agreement.

While Millard Farmer was driving back to Atlanta after a conference with the lawyers and the Court, Millard Farmer received a phone call forwarded to his cell phone by a person who identified herself to be Renee L. Haugerud. She had only one

short question to Millard Farmer. She asked if she could pay the John Harold Murphy disputed money to settle everything.

Millard Farmer's answer to Renee L. Haugerud was as short as the question. "Yes. Have your lawyer prepare the papers and call me and I will get everything signed."

The Atlanta lawyer for John Harold Murphy, who had no role in the fraudulent secreting of assets There was no discussion of the amount, or the time for the payment as the lawyer had been involved in conferences with the Court. and knew that the Judge would not tolerate more discussions about the issue.

The malpractice and the resulting settlement of everything with the insurance carrier is relevant to this case, as the Settlement Agreement released Millard Farmer and others charged with him ("RICO Accused Parties"),from all conduct "from the beginning of time until the date of the Settlement Agreement with the reservation that of the right of Indemnification, including attorney fees to all of the very board universe of parties protected by the Settlement Agreement.

That February 1, 2011 Settlement Agreement is Exhibit **F64** to this motion

when John Harold Murphy, after a settlement agreement containing an indemnification initiated against his former wife in Superior Court of Coweta County. the former wife of John Harold Murphy and the mother of their two minor children, at the time of the filing of the civil RICO Complaint against him and others and some

199

of the others charged with him ("RICO Accused Parties"), are constitutionally entitled to protections from this Court based the ineligibility of John Harold Murphy to sustain his federal action [31] against Millard Farmer for  numerous mostly United States constitutionally protected reasons, including but not limited to the rule of law continuous malicious abusive of by Judge A Quillian, in  Baldwin, Jr. in violation of the Rule of Law, Code of Judicial Conduct, intentional Uniform Superior Court Rules abridgments, numerous malicious United States Fourteen Amendment Due Process abridgments, Equal Protection abridgments, First Amendment Abridgments that each malicious violated the of protections due the client of Millard Farmer, and the Accused Parties that John Harold seek to extract vengeance against with this civil RICO action.

   Millard Farmer participating

 Millard Farmer and some of the others charged with him ("RICO Accused Parties"), are constitutionally entitled to the Absolute Immunity and thereby limine protections protections they are provided by OCGA § 51-5-8

Millard Farmer and some of the RICO Accused Parties are constitutionally entitled to the OCGA 51-5-7 privileges and immunity from John Harold Murphy's pled in the Amended Complaint [ xx] causes of action against Millard Farmer and the Accused Parties

Millard Farmer and all of the RICO Accused Parties are constitutionally entitled to a dismissal of the Amended RICO Complaint, [] as the Plaintiff fails to constitutionally

provide the accused parties notice of actionable conduct with plausible pleadings that conforms with the *Ashcroft v. Iqbal,* 556 U.S. 662, 680-683,. heighten pleading standards for civil cases, such this federal court civil case.

Millard Farmer and all of the RICO Accused Parties are constitutionally entitled to a dismissal of the Amended RICO Complaint, as the Plaintiff relies its illegal reliance upon "extortion" allegations and illegal forms of character assassination of Millard Farmer. The need for detailed allegations applies with particular force to cases alleging violation of RICO statutes. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1380 (11th Cir. 1997), wherein it was held that plaintiff' s allegations must include the precise statements, documents or misrepresentations made, the time, place and person responsible for the statements, as well as the means by which statements misled the plaintiff. The Eleventh Circuit quoted the Seventh Circuit

of the Feb. 1, 2011 Settlement  Agreement executed by John Harold Murphy with Nancy Michelle Murphy (Michelle Murphy) and constitutionally protected in their assistance of Michelle Murphy in attempts to obtain reputation and financial indemnity, as provided by a fair interpretation of the indemnity that Michelle Murphy and the parties entitled after John Harold Murphy and Taylor Drake began their illegal attacks upon Michelle Murphy and her children who were party beneficiaries to the

Settlement Agreement.  the Settlement Agreement's . indemnity protections, The RICO Accused  Dismissal of the Complaint

Millard Farmer and all of the RICO Accused Parties are constitutionally entitled to Dismissal of the Complaint for failure to comply with the heightened pleading standard is warranted because John Harold Murphy, and his counsel,  Taylor Drake, his law firm Glover & Davis, Wilmer "Buddy" Parker and his law firm, Parker Maloy Jenkins, posed a heightened knowledge of the pattern of illegal conduct of the Plaintiff, including abuse the minor children, J.M. and T.M. and knew, under Georgia law that the reporting of this abusive conduct of the children was both warranted, immune, and mandated under the rule of law.

Millard Farmer and all of the RICO Accused Parties are constitutionally entitled to dismissal of the Complaint, as the conduct for which the accused parties appear to be *Shield of Florida, Inc.,* 116 F.3d 1364, 1380 (11th Cir. 1997) specific pleading standard of actionable RICO eligible criminal predicate act conduct.

charged are a part of the ongoing inchoate criminal conduct that John Harold Murphy, Taylor Drake, his law firm, Glover & Davis initiated with false statement in judicial proceeding in concert with Coweta Judicial Circuit Judges A. Quillian Baldwin, Jr, Dismissal of the Complaint  of John Harold Murphy, and counsel representing him, filed is essential a lengthy statements of  opinions made with the full knowledge of the irrelevance of statements about   numerous cases in which Millard Farmer

represented clients for as far back as 1978. while in the same Complaint ignoring the constitutional infirmity of each aspect of the litigation that the Plaintiff uses for charging RICO actionable conduct.

John Harold Murphy, as a party to litigation that forms the basis for the RICO, Complaint had personal knowledge of his criminal conduct, and the illegal conduct of his wife, including the false statements made under oath by Renee L. Haugerud. The Amended Complaint does not conform to pleading standard that places Millard Farmer and the accused person on notice of causes of action that will withstand the constitutional, statutory and ethical obligations of Millard Farmer to the client that he represented.

 in addition to his personal knowledge, of the hand selection of A. Quillian Baldwin, Jr. as the exclusive trier of fact in the modification of custody case and his ultimate recusal with each of the other judges in the Coweta Judicial and the  and the knowledge of his counsel who had participated in the modification of custody litigation that counsel Wilmer Millard Farmer and the other defendants had filed motions to dismiss the RICO Complaint by the time the RICO accused parties

This constitutional Challenge, by Motion, also request **federal investigative assistance from the FBI, Securities and Exchange Commission (SEC) and IRS investigative assistance unit.  The Front-Plaintiff, John Harold Murphy and**

**Renee L. Haugerud di not just cheat Michelle Murphy, her children and her counsel**

The scheme of obtaining of a judge, obligated to law through payment of election disguised assistance  to be the exclusive trier of fact in a case involving has been observed

This investigative assistance is needed for two primary reasons.

 The John Harold Murphy, Renee L. Haugerud hedge fund associated businesses are attempt to place the massive illegal conduct of the *Galtere et al Enterprise*  upon the duty station of this federal Court and our jury system who cannot be provided enough information by the litigation weakened defendants to detect modus operandi of these master criminals, who Millard Farmer, Delia Tedder Crouch and the Coweta Judicial Circuit judge in the Delia Crouch legal malpractice learned with hours of time detecting the false swearing of John Harold Murphy that he involved Renee L. Haugerud to the extent that she was more than twice detected in making false statement under oath to Courts in the Coweta Judicial Circuit.   The John Harold Murphy  to support its Constitutionality challenge and the application of this Court's litigation time page restraints for limine protections to defend this litigation about litigation

The past and continued abridged Constitutional Protections are challenging this RICO action include Millard Farmer's entitlement to the United States Constitution First

Amendment, Equal Protection, the  United States Fourteenth Amendment Due Process protections for the Rule of Law abridgments by Taylor Drake, John Harold Murphy, Renee L. Haugerud, , the Glover &Davis law firm, Wilmer "Buddy" Parker and his law firm, Parker Maloy  Jenkins, t h e  Coweta, the Judicial Circuit Judges A. Quillian Baldwin, Jr. Judges Emory Palmer, Senior Judge Byron E. Smith and Court of Appeals Judge Christopher J. McFadden And others as identified, or as later determined by the requested federal investigative authorities.

Millard Farmer, after the recusal of Judge Baldwin, no longer represented Nancy Michelle Murphy (Michelle Murphy) in the modification of custody litigation, except for the actions against the court reporter, Nan Freeman and the remaining portions of pending actions that substitute counsel Wade and Susan McDonald did not assume under their contract with Michelle Murphy.

John Harold Murphy, with financing, other assistance, litigation advice-giving encouragement provided by Renee L. Haugerud and her hedge fund entities including, but not limited to her Galtere, Ltd hedge filed this federal and Georgia civil Rico civil action. (RICO action). [xx; 31]

co-defendants/co-conspirators

Millard Farmer first knowledge of John Harold Murphy occurred in Briley-Holmes

205

This RICO action was initiated against Millard Farmer and Alfred Lawrence King (Larry King , the lawyers representing Nancy Michelle Murphy (Michelle Murphy). The RICO action included Deborah L. Beacham and her corporate entity Deborah L. Beacham and her business, My Advocate Center, Inc.as defendants,  while also alleging participation by Non-Party Co-Conspirator Michelle Murphy, "Rob" Hartman, Michelle Murphy's brother and other so called co- conspirators, in what was the legal representation of Michelle Murphy including the paralegal of Millard Farmer. The RICO was an added litigation matter to the existing *Harold Murphy v. Nancy Michelle Murphy*, Civ. A. No. 2012-V-413 (Ga. Super. Ct., Coweta Cnty., filed Apr. 11, 2012) *Harold Murphy v. Nancy Michelle Murphy*, Civ. A. No. 2012-V-413 (Ga. Super. Ct., Coweta Cnty., filed Apr. 11, 2012) included numerous so-called

   **Defendants.**

My Advocate Center, Inc.

   **Defendants.**

  John Harold Murphy's former wife and mother of their two minor children J.M and T. M. lawyers who represented that is litigation about other litigation that he was pursuing addressing the same and similar actions as an addition to oth

to f in Limine to Exclude Illegal and Unconstitutional Evidence Induced in violation of the Rule of Law

206

John Harold Murphy, the spouse and low-level business associate of Renee L. Haugerud, and her hedge fund entities (or "Galtere *et al*.")  initiated this Civil federal RICO case, that is designed as retaliation for exposure of the malicious conduct of Judge Baldwin obstruction that he supplemented with hi unconstitutional criminal contempt charges against Millard Farmer, Alfred Lawrence King (Larry) King and their client Michelle Murphy.

The lives of the minor children and obstruction was by Judge Baldwin, John Murphy and Renee L. Haugerud that Millard Farmer,  on August 7, 2014 based upon information that he learned in preparation for motion   contacted the United States Federal Bureau of Investigation seeking assistance for the safety of the minor children, which is no longer in jeopardy, or an issue here.

Millard Farmer took and retained notes of the report that he made to the FBI. Agent.

OCGA 16-10- 93  and  The notes that Millard Farmer retained of that report are as follows.August 7, 2014

MF calls FBI and talked with FBI about "what he suspects to be a crime including Code Sections OCGA 16-10-93 and 18 USC 1512
   Reports that Renee L. Haugerud has threatened mother of witness.
   Last night interviewed the 15 year old witness with several members of his family.

   Renee told the mother of the witness that they can't bring TB. to testify, that the lawyer is crazy, he can't give TBr a subpoena, that he is violating the law.

This RICO action against the defendants is, as one of the numerous actions in which Galtere *et al*. participated and/or compensated a cadre of lawyers and expert witnesses to knowingly actively participate in the illegal activities of its fully operative criminal enterprise. ("*Galtere et al Enterprise*")

The *Galtere et al Enterprise* needed the physical custody of the two minor children of Nancy Michelle Murphy, (Michelle Murphy) J.M. and T. M., for financial and Regulatory benefits that that it could obtain by establishing a residence in and near St. Thomas U.S. Virgin Islands.

Judge A. Quillian Baldwin for the rule of law abridgment financial and other benefits that he received and was receive later, in collusion with Taylor Drake, a Glover & Davis lawyer and the in collusion to illegally obtaining, and refusing to relinquish jurisdiction, as one of their continuous obstructions of justice  of a modification of custody action that Judge Baldwin assisted Taylor Drake obtain.

John Harold Murphy, and Renee L. Haugerud paid Taylor Drake to illegally select a Judge A. Quillian Baldwin, Jr. with full knowledge of the false swearing of John Harold Murphy that was suborned and supplemented with false statements to Judge Baldwin of the abridgements of the rule of law that  Taylor Drake and others to engage in the criminal conduct that included, conduct that would have been criminal, if Judge

A. Quillian Baldwin, Jr. did not have *Stump v. Sparkman* 435 U.S. 349 (1978) judicial immunity. Stump v. Sparkman and the History of Judicial Immunity

Taylor Drake, a Glover & Davis lawyer, Taylor Drake, located and initiated the core illegal judicial operative for the for *Galtere et al Enterprise*".

Taylor Drake replicated the Glover & Davis City of *Savanah v Batson Cook* judge selection illegal conduct into a modification of custody action for John Harold Murphy involving what he and his hand selected judicial operative, Judge A. Quillian Baldwin, Jr. most likely believed, if they were caught, and chastised their conduct would only rise to the level of a petty Georgia Code of Professional Conduct and Code of Judicial conduct violations that Taylor Drake and Judge A. Quillian Baldwin, Jr. could evade with their State Bar of Georgia and Judicial Qualification Commission political connections. Until this time they were correct, as there has been no federal investigation of the conduct of John Harold Murphy, Renee L. Haugerud and the

The initial envisioned petty judicial illegal litigation abridgments that Taylor Drake, and Melissa Griffis were selected to perform were nothing above the skill level of Taylor Drake, as he had engaged in this type of unethical/illegal judge hand selection lawyering on numerous occasions. At the time of the hand selection of Judge A. Quillian Baldwin activity by Taylor Drake and to a very much lesser involvement Melissa Griffis the Glover and Davis law firm had been successful in engaging is

similar conduct in the judgment in Mayor, etc., of Savannah v. Batson-Cook Co., 310 Ga.App. 878, 714 S.E.2d 242 (2011)., judicial  who Uniform Superior Court Judge Jack Kirby had suggested for his former client, John Harold Murphy, a sophisticated perjurer skilled false swearer , who had only recently obtained access to the large assets of Renee L. Haugerud  of   Murphy,  Melissa Griffis, the planned tag-along guardian ad litem  petty illegal conduct

The Galtere et al  some of whom were willing to and did instigate criminal conduct, including  perjury and its subornation  that disabled and continually diminish Michelle Murphy's First Amendment protection to petition the courts for relief from an exclusive trier of fact who, as the results of absence of knowledge of the rule and law and political dependence upon his selectors  was impotent to constitutionally serve as the exclusive trier of fact for a person without the financial resources to obtain equality when opposing a judicially gerrymander selected jurist with essentially the same *modus operandi* as the Glover & Davis selected a trier of fact in a less powerful amount of authority that the violation of Law exclusive trier of fact judicial gerrymander selection  used to select Judge A. Quillian Baldwin, Jr.

See, *Mayor & Aldermen of Savannah v. Batson–Cook Co.*, 291 Ga. 114 *Mayor & Aldermen of Savannah v. Batson–Cook Co.*, 291 Ga. 114, 728 S.E.2d 189, (Ga., 2012)

The ill exploitation of children by the Glover & Davis lawyer, Taylor Drake and others is more detrimental to society than the detriment to society in the *Savannah* case. The level of the child exploitation custody litigation conduct rises to the *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868,  129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) level as the. Judicial integrity is "a state interest of the highest order" because the power and prerogative of a court to resolve disputes rests upon the respect.

   This Civil RICO case, the accompanying State Bar Grievances are such attacks upon counsel that fear of raising such issues again will be deterred for decades, if this federal opportunity to place an end to the exploiting women with minor children who cannot afford to employ the Glover & Davis Taylor Drake lawyers who essentially sell political influence designated as legal services.


Millard Farmer and persons assisting Michelle Murphy, John Harold Murphy's former wife were deprived of their First Amendment protections, their Fourteen Amendment Equal protection, their Due Process Protections

**The epicenter of the issues that arise the litigation retaliatory conduct of John Harold Murphy and Galtere *et al*.**

211

The judicial gerrymandering by the Glover & Davis lawyers was exposure by Millard Farmer and Larry King at their first appearance for Michelle Murphy.

The initial rule of law of protection abridgments by Judge A. Quillian Baldwin, Jr. created by the judicial gerrymander selection process that endowed Judge A. Quillian Baldwin, Jr. as the exclusive trier of fact in the modification of child custody case was presumptive bias that Millard Farmer and Larry King exposed with a disqualification , not just recusal motion.  and United States constitutionally identified as infirm, the collateral consequences of this g

  of the exclusive trier of fact in the modification child custody case involving the rule of law abridgments by Judicial gerrymandering of judges by the Glover & Davis lawyers, as held to be a violation of the rule of law in

The litigation hostility that John Harold Murphy initiated against Millard Farmer and Alfred Lawrence King, Jr. (Larry King) provided Nancy Michelle Murphy legal representation in a modification of child custody action.

 Taylor Drake, a Glover & Davis lawyer, filed before a hand-selected judge with whom he participated in a . Millard Farmer and Larry King, as a part of their representation of Michelle Murphy were required to ward off the Rule of Law abridgments inflicted upon Michelle Murphy and her counsel by a Glover & Davis hand selected judge who habitually abridged the Rule of Law Duties of a trial judge. The legal issues dictated

212

addressing the unorthodox invasion in the litigation by numerous lawyers funded by Renee L. Haugerud and her associated Galtere, Ltd hedge fund entities.

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868,  129 S.Ct. 2252,  173 L.Ed.2d 1208 (2009). Judicial integrity is "a state interest of the highest order" because the power and prerogative of a court to resolve disputes rests upon the respect

entities (or "Galtere *et al*.")  and John Harold Murphy compensated a cadre of lawyers and their compensated, or politically exchanged benefits from persons to originate violations of the rule of law that Galtere *et al*. financed with funds of Galtere *et al* and funds of others with whom they owed a fiduciary legal obligation.

The Glover & Davis lawyers obtained benefits and services that belonged to the governing authority of Coweta County and State of Georgia to engage for conduct that was intimidating to potential witnesses, Michelle Murphy and her children.

Glover & Davis affiliated lawyer, Nathan Lee, provides legal services to Coweta County that provides a financial supplement to judges in the Coweta Judicial Circuit.

and. Nathan Lee provides legal services to the Sheriff of Coweta County.

213

Without being provided the proper legal representation about participating in cases involving civil disputes, the best of intentioned Deputy Sheriffs answered the request of the Glover & Davis lawyer to participate in aspects of the case of John Harold Murphy v. Nancy Michelle Murphy.

The investigation of the participation of Coweta County in aspects of the Murphy litigation cannot adequately be done by the State of Georgia, as demonstrated by the "investigation" of Nan Freeman that was done by to very honorable and skilled employees from counties outside of the Coweta Judicial Circuit.  These Nan Freeman investigators did not even interview Nan Freeman before rendering a report that was used against Millard Farmer. The investigators in making report, accepted the representations of friends of Nan Freeman that were not supported under oath with documented evidence. The investigators reached the correct moral conclusion that Nan Freeman should not be criminally prosecuted. They did not reach the correct legal conclusion that Nan Freeman received money from the government that was not supported by documented and approved statements that could be legally used to obtain compensation from the government. The investigation of Nan Freeman was a white wash of the excessive amounts of compensation that she received from litigants

214

in the Coweta Judicial circuit including fees that were paid to her in the Murphy case.

, wh

This motions now cries for the large law firm's insurance company compensated and adequately funded scribe for Alfred Lawrence King, Jr. (Larry King), who initially appeared as counsel of record in this Civil RICO case.

The Glover & Davis law firm's Taylor Drake was exploiting the children of women who did not have the financial, or political resources to obtain litigation equality in cases in which Taylor Drake hand selected the judge, or in cases in which Judge A. Quillian Baldwin, Jr. (Judge Baldwin, Jr. offered himself for hand selection by other lawyers in the Coweta Judicial Circuit who bankrolled political favoritism, as that obtained by John Harold Murphy against Nancy Michelle Murphy(Michelle Murphy) .

The entirety of the case that John Harold Murphy initiated against Michelle Murphy was so infected with corruption that causes of action against the defendants are so volatile of the United States Fourteenth Amendment Equal Protection and Due Process protections that this Court must, as a matter of federal Rule of Law constitutionality initially adjudicate the unconstitutional judge selection process. Michelle Murphy is a member of the class of women, who was exploited by the Coweta Judicial Circuit abridgment of the Rule of Law that

215

allowed judges to fetch financial and other election support from money bundling lawyers, as Taylor Drake, the Glover &Davis law firm and other lawyers in the Coweta Judicial Circuit that were unaffordable to Michelle Murphy and other women in the class of women with minor children such as Michelle Murphy.

The Rule of Law exploitation, constitutional Rule of Law abridgment of Taylor Drake, the Glover & Davis lawyers also abridged the ethical obligation of Nathan Lee, a Glover & Davis shareholder who represents the Board of Commissioners of Coweta County, the Coweta Judicial Circuit lawyers who participated in the absence enforcement of the Uniform Superior Court Rule 3.1 Case Management Plan created the addition expense of the government paying for Senior Judges to serve while the designated Coweta Judicial Circuit Judge failed to work and, as Judge Baldwin played golf rather than keeping abreast of the law.

Nathan Lee was placed upon notice of the Rule of Law violations in the Coweta Judicial Circuit by the Georgia Supreme Court. in *Mayor & Aldermen of Savannah v. Batson–Cook Co.*, 291 Ga. 114, 728 S.E.2d 189, 12 FCDR 1770 (Ga., 2012),

The exploitation of children by the Glover & Davis lawyer, Taylor Drake and others is more detrimental to society than the detriment to society in the *Savannah* case. The level of the child exploitation custody litigation conduct rises to the *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868,  129

S.Ct. 2252,  173 L.Ed.2d 1208 (2009) level as the. Judicial integrity is "a state interest of the highest order" because the power and prerogative of a court to resolve disputes rests upon the respect.

This Civil RICO case , the accompanying State Bar Grievances are such attacks upon counsel that fear of raising such issues again will be deterred for decades, if this federal opportunity to place an end to the exploiting women with minor children who cannot afford to employ the Glover & Davis Taylor Drake lawyers who essentially sell political influence designated as legal services.

The level of corruption involving the Glover & Davis lawyers including Taylor Drake, and John Harold Murphy is of such a level that it on occasion endangered the live of the minor children of Michelle Murphy and their friend.

The so-called guardian ad litem for the minor children of Michelle Murphy participated in the Rule of Law violations.

Millard Farmer here request that this Court request the assistance of the Securities and Exchange Commission in investigating the children for business benefits exploitation by John Harold Murphy and Renee L. Haugerud.

That law firm for Larry King was silenced, by Larry King's insurance carrier,

or that law firm silenced itself in sharing the responsibilities in this litigation to Larry King's client, Nancy Michelle Murphy (Michelle Murphy, her minor children, Millard Farmer, Deborah Beacham, her, My Advocate Center, Inc. and those accused of acting in concert with them. This abandonment occurred apparently because it was financially beneficial to that insurance carrier to pay a reportedly $100,000 requested  by Maloy Jenkins Parker, (Buddy Parker) on behalf of John Harold Murphy and his paymaster rather than fulfilling the legal and moral commitment that Larry king attempted to share in the fulfillment of the defense of the RICO litigation for those who provided their expertise to Nancy Michelle Murphy (Michelle Murphy), her minor children J.M., These children suffered from several of the various types of child abuses that resulted from the conduct of John Harold, Renee L. Haugerud and persons whom they compensated.

Each defendant in the Civil RICO case, were aware that Judge A. Quillian Baldwin, Jr. (Judge Baldwin) was hand selected by the Glover & Davis law firm counsel for John Harold Murphy, Taylor Drake. The record in the case was available to the insurance carrier of Larry King, and the law firm designated by the insurance carrier to provide the defense for Larry King, who was one of the victims of the Rule of Law violations of Judge Baldwin.

Larry King h

The Glover & Davis hand selected judge, A. Quillian Baldwin, Jr. rule of law

abridgments exponentially expanded the opportunities for the various types of Renee L. Haugerud financed child abuses that John Harold Murphy and those assisting him engaged.

In Millard Farmer fifty years of experience of litigating discriminatory litigation against persons in courts over a wide jurisdictional territory, this litigation frequently presented different forms of abuse and attacks upon persons attempting to protect Michelle Murphy and her minor children from the conduct that Judge Baldwin created.

This Civil RICO Case will identify the Northern District of Georgia, as few other case have during the last twenty years.

   byJ. And T. Murphy who suffered in confinement, as the result of a Fourteenth Amendment due process and other Rule of Law abridgments  and T.M., who was placed separate from J.M. in an unidentified institution without Fourteenth Amendment Due Process and other Rule of Law protections.

John Harold Murphy, Renee L. Haugerud, and Lisa Harwell, the guardian ad litem knew that so called "transporters" would awaken J.M. and T.M. from their sleep in their bedrooms in the residence of Renee L. Haugerud that she shared with John Harold Murphy. and forcefully, physically take control of these two minor children without prior notice to the Superior Court Judge A. Quillian Baldwin, Jr.

219

These two minor children taken under custody of four "transporters" from Tennessee to Utah and placed in confinement in Utah, without notice to their mother, Michelle Murphy, who was eventually able to locate her children.

The federal government, with Child Abuse Prevention and Treatment Act has established funding for various types of protections for children. In cases with a judge who will not provide evidence, funding for these protections are of little value. Michelle Murphy, until Larry King exited her case had one of the most experienced domestic relations lawyers available to Michelle Murphy. Larry King was so abusively treated by Judge Baldwin that it became and emotional and financial strain upon him that, with a wife located in Florida, who was ill and the punitive requirement of Judge Baldwin that each of Michelle Murphy lawyers must be present at each hearing, Larry King left the case in the trial court. This left Millard Farmer, as Michelle Murphy's only counsel.

The Rule of law has recognized its need for protection of young children.  With the federal Child Abuse Prevention and Treatment Act defines

John Harold Murphy's civil RICO action against Millard Farmer, Alfred Lawrence King, Jr. (Larry King) Deborah Beacham, My Advocate Center, Inc and those accused of acting in concert with these defendants is brought only in the

name of John Harold Murphy; however, the action is financed, sponsored and motivated by John Harold Murphy, Renee L. Haugerud her Galtere, Ltd. Hedge fund  and associated entities (or collectively, "Galtere *et al*.", or "FrontPlaintiff").

The Civil RICO Complaint is part of a strategy by Renee L. Haugerud to retaliate against the defendants for their assistance in the exposure of the intimidation, dangerous and abusive treatment of  Nancy Michelle Murphy, her minor children and, the children's friends and witnesses.

Galtere *et al*."

First, let it be said that Millard Farmer and Larry King would have hastened Michelle Murphy to a lawyer with Influence, if she could have afforded such a

lawyer. This is primarily because in modification of custody cases in Georgia, the judge is the exclusive trier of fact whose decisions are only reviewed under an appellate review standard of "abuse of discretion." This judicial authority provides substantial politically marketable power for judges such as Chief Judge A. Quillian Baldwin, Jr., who permitted himself to be judge-shopped, as Taylor Drake did for John Harold Murphy with a false affidavit from John Harold Murphy that falsely swore that Michelle Murphy was threatening to move with the children to South Carolina.

Millard Farmer only agreed to represent Michelle Murphy and to obtain the domestic relations expertise of Larry King, because they knew the mistreatment that Michelle Murphy endured in the initial divorce case during which, near the end of the divorce case, when her lawyer, Delia Tedder Crouch, squeezed Michelle Murphy for money that could have ultimately affected the welfare of J.M. and T.M. Michelle Murphy took her coat as an offer of payment to Delia Tedder Crouch in hopes that if she gave the coat, the lawyer would continue the divorce litigation, during which John Harold Murphy secreted approximately $180, 000 in stock options from the court, Michelle Murphy and her divorce lawyer until the day after a settlement agreement was executed.

222

Michelle Murphy eventually agreed to terminate the divorce case without her share of the $180,000 in funds derived from the stock options of John Harold Murphy.

It was the botched Qualified Domestic Relations Order that initiated Millard Farmer's representation of Michelle Murphy in the legal malpractice case. That case was resolved before John Harold Murphy filed the modification of custody case. There was no extortion of Renee L. Haugerud, who was represented by at least one or more lawyers who assisted her in executing a full release.

augerud and her hedge fund businesses.

OCGA § 51-7-85 Exclusive remedy provides as follows.

> On and after April 3, 1989, no claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation, provided that claims filed prior to such date shall not be affected. This article is the exclusive remedy for abusive litigation.

The Amended RICO Complaint, as now pled with unwarranted, prosecutorial style hyperbole and false statements, fails the *Ashcroft v. Iqbal*, 556 US 662 (2009) specific pleading standard of actionable criminal conduct required for the predicate civil RICO acts, and John Harold Murphy's other causes of action not containing specific relevant litigation facts.

223

The defendants are not be required to search a lengthy Complaint to locate and attempt to connect the required, specific, relevant supporting facts that are pled with huffing and puffing rather than *Ashcroft required specific pleadings.*,

The civil RICO action's pleading is John Harold Murphy's vindictive attempt to sell bias to this Court and to lay jury members. The intended bias is engendered with allegations about Millard Farmer's legal representation of other clients which has nothing to do with Millard Farmer's representation of Nancy Michelle Murphy ("Michelle Murphy") and nothing to do with this federal civil RICO action.

John Harold Murphy's cherry-picking of Millard Farmer's cases and articles is to inflict bias upon this lawyer related to other litigation that is not case related nor within any statute of limitations.

**Never,** at any time did Millard Farmer, or anyone with his consent inform John Harold Murphy, or Renee L. Haugerud that Millard Farmer required the payment of $500,000.00, or any such amount paid to him, or Michelle Murphy for any reason. John Harold was obligated to pay Michelle Murphy money for child support and  to comply with the court approved and ordered division of marital assets that Millard Farmer collected for Michelle Murphy as a part of the malpractice damages created by Michelle Murphy's lawyer, Delia Tedder Crouch.

224

Millard Farmer never attempted to do anything as stupid as attempting to bribe Judge A. Quillian Baldwin, Jr., or any judge, as the RICO civil action avers. Millard Farmer has never even given a judge, or a candidate to become a judge an election campaign contribution, Millard Farmer is one of the few lawyers who doesn't contribute money to judges' election campaigns and otherwise assist judges in obtaining political judicial benefits. The assistance provided to judges to obtain their judgeships is what make our system work; the down side of those judicial favored benefits occurs when with the judge returns favor to donors for their election assistance. It is that Judge Baldwin type conduct that corrupts our system of justice, as Taylor Drake and the Glover & Davis lawyers corrupted during John Harold Murphy's modification of custody case.

Millard Farmer with motions, arguments and legal pleadings sought Judge Baldwin's compliance with the law by filing numerous motions that required Judge Baldwin eventual recusal from the case, as he and all of the judges in the Coweta Judicial Circuit eventually did, as they should have done once their systemic violations of the mandated case management plan became a due process constitutional issue. It was the legal pleading and informal attempts to inform the public of the illegal conduct by many persons that resulted in having a case managemet plan enacted. Even after the plan was enacted Judge Baldwin, with the assistance of Nan Freeman the court reporter warning him that Millard Farmer wished the calendar call recorded [   ] that Judge Baldwin attempted to violate the plan. [ There is an audio recording of Judge Baldwin

225

yelling at Millard Farmer in a full court room in an attempt to warn other lawyers that they should not file motions attempting to document the hand selection of judges process.

The conduct of Judge Baldwin was a violation of the due process of Millard Farmer, Larry King and Michelle Murphy from  the first hearing date until Judge Baldwin recused himself and he retired, leaving in place his Order that Millard Farmer had to obtain permission of the Court to file any motion and leaving in place an Order that adjudicated that Millard Farmer and Larry King based upon the *Moore v. Moore* Supreme Court of Georgia opinion of Justice Carley and decisions for the hghest courts of other jurisdictions. had filed a third party complaint against Renee L. Haugerud **(Exhibit 70)** that subjected Millard Farmer and Larry King to 9-15-14 sanctions of $36914.48. that Millard Farmer was required to pay to the Glover & Davis attorney for  Renee L. Haugerud.

Senior Judge E. Byron Smith, who replaced Judge Baldwin based upon Judge Baldwin's Order that he maintain would not allow Millard Farmer to present a motion for filing  without the Court's approval, would not allow Millard Farmer to file a motion relating to the amount of attorney fees due the Glover & Davis lawyers.

The motions to disqualify Judge Baldwin, or any informal attempts to have Judge Baldwin disqualified  were in no way a form of bribery. Such a accusation before it could be made to a jury requires the strictest form of *Ashcroft* pleading that the RICO complaint did not provide. If such *Ashcroft* pleading

226

had been made the Court could in limine can vet that prejudicial assertions outside the presence of the jury.

It was John Harold Murphy and Renee L. Haugerud who engaged in numerous acts of illegal conduct.

Much of John Harold Murphy and Renee L. Haugerud's illegal conduct  was tolerated by their counsel's hand selection of the state court judge, who illegally refused to accord Michelle Murphy and her counsel their United States Fourteenth Amendment Due Process, Equal Protection, First Amendment protections and their Ga. Const. of 1983, Art. I, Sec. I, Par. I. life, liberty, property. No person shall be deprived of life, liberty, or property, except by due process of law protections, who otherwise violated the laws of Georgia, the Uniform Superior Court Rules This Prologue identifies some of the RICO action's systemic case specific jurisdictional infirmities, not as fully identified in the initial Motion to Dismiss and Answer of Millard Farmer. counsel for Michelle Murphy, who accepted the continuing obligation  to defend Michelle Murphy in a state court modification of custody case long after Judge A. Quillian Baldwin, Jr. informed Millard Farmer and Larry King that he would not likely allow them attorney fees after the motion to disqualify them was filed.[ Ans X p.    ] Millard Farmer continued to represent Michelle Murphy long after Judge Baldwin informed Millard Farmer and Larry King that each of Michelle Murphy's  two counsel, and not John Harold Murphy's multiple counsel,  must appear in court at each hearing.

b)(l); or 16-10-32(b)(4) as alleged in Counts 32-35.

227

322 Ga. App. at 444-45.

19 ─────────────────

In affirming the trial court's award of judgment on the pleadings in *Rolleston,* the Court of Appeals held that "it is clear that the mere filing of a lawsuit is not the type of humiliating, insulting or terrifying conduct which will give rise to a claim for the intentional infliction of emotional distress" and "[t]he 'threats' associated with institution of a civil action cannot and do not constitute duress and are not actionable in tort" (citation and punctuation omitted, emphasis in original*); see also Mobley v. Coast House, Ltd.,* 182 Ga. App. 305, 307 (1987) ("an act must be wrongful to constitute duress and it is not duress to threaten what one has a legal right to do. The threat to bring a civil proceeding against [a] person is not duress in a legal sense."); *Cannon v. Kitchens,* 240 Ga. 239, 240 (1977) ("'[T]hreats' associated with the institution of a civil suit cannot and do not constitute duress.").

20

310 Ga. App. at 525 n.35 (emphasis added

functionally extinct in the United States as a crime. Notably, last year the General Assembly repealed O.C.G.A. § 16-11-40, which had set forth the offense of criminal defamation and, like OCGA § 16-8-16, criminalized conduct that would expose a person to "hatred, contempt or ridicule . . . ."

228

Notably, last year the Georgia General Assembly repealed O.C.G.A. § 16-11-40, which had set forth the offense of criminal defamation and like O.C.G.A. § 16-8-16, criminalized conduct that would expose a person to "hatred, contempt or ridicule . . . ."

the OCGA 51-5-7 immunity is provided to Millard Farmer in  reporting child abuse immunity [6]he   involves counsel for Nancy Michelle Murphy 'representation of Nancy Michelle Murphy (Michelle Murphy) in the Superior Court of Coweta County State of Georgia Civil Action No. 12V-413 case of  John Harold Murphy, Plaintiff vs. Nancy Michelle Murphy, Defendant involved a modification of custody and child support case. The modification was sought only five years after the final divorce decree in the Superior Court of Troup County File NO. o4-CV-494 divorce was brought by John Harold Murphy that adjudicated with a contractual agreement resolving Troup County divorce case was made the Order of the Troup Court. [ XX] That divorce is relevant, as John Harold engaged in illegal conduct in attempting to secret his martial assets from Michelle Murphy by transferring assets to the bank account of his mother Florence Murphy and by not disclosing stock options in the sworn identification of his assets and otherwise.

229

In December of 2006, about two years after the finalization of the divorce, Michelle Murphy, represented by Millard Farmer as her counsel, with Larry King as her expert witness filed a legal malpractice action Nancy Michelle Murphy vs. Delia Tedder Crouch in the Superior Court of Coweta 082137 case against Delia Tedder Crouch, her divorce lawyer when John Harold Murphy refused to provide Michelle Murphy the funds she was due under the divorce settlement agreement.

A part of the funds that Michelle Murphy's counsel allowed John Harold Murphy to obtain that he retained and would not provide to Michelle Murphy until the legal malprice action was filed is supported by the affidavit of John Harold Murphy prepared by his counsel.

From Affidavit of John Murphy, August 6, 2009: that in part states as follows.

   If the calculation provided by AXA shows that I received more than half of the pension as it existed as of August, 2006, I agree that any funds that I received which exceed my one-half share of the pension as contemplated by our settlement agreement should be paid to Ms. Murphy by me pursuant to the terms of the settlement agreement and divorce decree.

That affidavit further stated that there had been no demand for payment made upon John Harold Murphy for payment of the amount that Delia Tedder Crouch had erroneously had a Superior Court Judge, unfamiliar with the case to sign. Michelle Murphy informed Millard Farmer that she did not wish for John Harold Murphy made a part of the malpractice litigation, as she feared he would retaliate against her. The judge who signed the Order that Delia Tedder Crouch  erronously prepared directed Millard Famer that he would not allow

230

John Harold Murphy to retain the windfall benefit that was received by John Harold Murphy. It was then that Millard Farmer prepared a motion to include John Harold Murphy as a party that Millard Farmer informed all counsel that he would file and litigated if the dispute was not resolved by counsel for the insurance carrier and counsel for John Harold Murphy. An agreement was reached and Millard Farmer, Larry King and other were released in two comprehensive settlement agreements  and matters ocurring before February 1, 2011, the date of execution of the release prepared by John Harold Murphy and Renee L. Haugerud's lawyer.

John Harold Murphy's civil RICO case relies upon alleged conduct that occurred on or before February 1, 2011, eg.[31 Page 19-20 §§39,41 of the Amended Complaint

period of time, Alfred Lawrence King, Jr. (Larry King) gave rise to Renee L. Haugerud, a hedge fund operator, financing a cadre of lawyers, experts, public arelations expert, investigators in the  and this civil RICO case for John Harold Murphy, nume in a modification of custody and child support case.

It is initially relevant to explain that it was the absence of causes of action by John Harold Murphy who initiated the the

been   changes in the litigation issues since the RICO case was filed. The changes are due in part to the retaliatory litigation craving and satisfaction

231

conduct of Renee L. Haugerud. who is a real party of interest for her surrogate, John Harold Murphy, who for the purposes of child support swore he had no money.    in various forms of retaliation against the Defendants, including Millard Farmer, *e.g.*. there are Settlement Agreements, O.C.G.A. 13-4-101 payments of judgments that are an accords and satisfactions of some of the alleged liability in this civil RICO action. There is an apportionment payments made to John Harold Murphy by Larry King that releases Millard Farmer from liability and reduces the amount in controversy. .

 It was Renee L. Haugerud who initially financed John Harold Murphy's counsel and funds to settle the remains of John Harold Murphy' illegal retention of marital assets that were adjudicated during his divoice from Nancy Michelle Murphy (Michelle Murphy) that ended with a settlement agreement made an order of the Court. [] Delia Tedder Crouch, Michelle Murphy divorce lawyer apparently could not keep track of John Harold Murph's secreting of his assets during the divorce litigation and provided an illegal distribution of assets Order to one of the six judges who only  participated in signing an Order prepared by Delian Tedder Crouch, counsel for Michelle Murphy that prepared an Order that erroneous distributed the pension assets for John Harold Murphy. a various times in the absence by the Coweta Judicial Circuit having a mandated Uniform Superior Court Rule 3.1 Case Manage Management Plan. Millard Farmer as counsel and Alfred Lawrence King as an expert witness in a legal malpractice case

232

It was during that legal malpractice litigation that Millard Farmer learned of the ability of a litigant and the litigant's counsel to deceive the Court related to litigation issues and the motivation of some of the Coweta Judicial Circuit to use substitute Senior Judges. The absence of the mandated Uniform Superior Court Case Management Rule was an unwritten invitation for litigants such as John Harold Murphy to secret marital assets during the divorce and custody cases.

John Harold Murphy in this RICO civil case attempts to include conduct releasing Millard Farmer with the settlement agreements prepared by John Harold Murphy and Renee L. Haugerud's counsel. John Harold Murphy attempts to present cause of action for which Renee L. Haugerud has been paid since the filing of the RICO civil action and thereby due to that accord and satisfaction are a reduction of the alleged amount in controversy.

to litigate some of  the modification of child custody case. That case was initially believed to be about the two minor children whom John Harold Murphy abandoned when the children were young that he wished to provide the fathering support that he had ignored. The reality is that the cadre of lawyers' goal was ostensibly portrayed as being about John Harold Murphy spending more time with the children. The cadre of lawyers and experts at a point in time, albeit many did not know the real reason for John Murphy and Renee L. Haugerud obsession for full custody of the children, became involved in divesting Michelle Murphy of  the children for the best interest of the hedge fund related businesses. Of Renee L. Haugerud rather than the best interest of

233

the children in an ordinary custody case, alleged to be in the initial in the modification of custody and child support case complaint that falsely alleged that Michelle Murphy was threatening to move with the children to South Carolina. At that time John Harold Murphy and Renee L. Haugerud lived on Lookout Mountain near Chattanooga Tennessee.

The case about John Murphy wishing to be a part of the two minor children lives transformed into a need for the full custody of the two minor children to benefit the business interest of hedge fund operation of John Harold Murphy's wife, Renee L. Haugerud. Was the reason that a workable child custody agreement could not be reached The hedge fund business of Renee L. Haugerud benefited from the alienation of the minor children from their mother and the hope of Renee L. Haugerud to provide a diversion for John Harold Murphy from his alcohol craving with Renee L. Haugerud's business getting the façade of a family living together that was at one time thought to be one of the requirements for the tax and regulatory benefits that Renee needed for her hedge fund benefits.

This federal civil RICO case against Millard Farmer, Deborah L. Beacham and her corporate entity, My Advocate Center, Inc., now encompasses all facts of the state court modification of child custody and child support case that John Harold Murphy with the financial resources of Renee L. Haugerud, as a part of relocation of her hedge fund businesses for income tax and evasion of regulatory restrictions benefits has expanded into numerous forums with a cadre of lawyers and experts that including a public relations

234

internet and print expert, Patrick Crosby. and accusations against Millard Farmer and other persons who attempted to assist Michelle Murphy.

The Defendants, with motions to dismiss and otherwise sought this Court to abstain and to dismiss this case before the state court litigation activities were in full bloom in the multiple forums being used to disable counsel for Nancy Michelle Murphy (Michelle Murphy) an in-home hair stylist who was attempting to protect the best interest of her two minor children whom, almost alone, she had reared since their birth. After filing the corresponding civil RICO action. Rather than John Harold Murphy pruning his litigation appetite, John Harold Murphy's litigation cadre expanded their litigation boundaries into the forum of the State Bar of Georgia, with Grievances against Millard Farmer that counsel for John Harold Murphy in this case prepared for John Harold Murphy and some of his state court expert witnesses to file. RICO counsel for John Harold Murphy also became trial counsel for John Harold Murphy in the Modification of custody and child support case where he attempted to obtain RICO and Bar Grievance information, information against Millard Farmer the Glover & Davis lawyers sought and obtained litigation cost for Renee L. Haugerud, the wife of John Harold Murphy against Millard Farmer and obtained Court of Appeals penalty against Millard Farmer. After Millard Farmer and Larry King's persistence challenges to the Coweta Judicial Circuit's absence of the mandated Uniform Superior Court Rule 3.1 case management plan that allowed Taylor Drake, a Glover & Davis lawyer hand selection of Judge

235

A. Quillian Baldwin, Jr. and persistent Rule and Fourteenth Amendment Due process and other constitutional challenges to Judge Baldwin presiding in John Harold Murphy's custody case,  after first enacting as mandated by Uniform Superior Court Rule 3.1[2], which absence Millard Farmer had challenged since the beginning of the modification of custody case in which Millard Farmer represented Nancy Michelle Murphy (Michelle Murphy.  each of the judges in the Coweta Judicial Circuit recused themselves when then Chief Judge Baldwin recused himself after twenty (20) *State v. Hargis*, 294 Ga. 818, 822-823 (2014) and *Pyatt v. State* __Ga. __ S15A1734 (decided March 2016), compliant motions to disqualify Judge A. Quillian Baldwin, Jr.

It was these twenty(20) motions alone that resulted in the Coweta Judicial Circuit's change in its systemic violations of the mandated requirements of

---

[2]**Rule 3.1. Method of Assignment**
In multi-judge circuits, unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. The clerk shall have no power or discretion in determining the judge to whom any case is assigned; the clerk's duties are ministerial only in this respect and the clerk's responsibility is to carry out the method of assignment established by the judges. The assignment system is designed to prevent any persons choosing the judge to whom an action is to be assigned; all persons are directed to refrain from attempting to affect such assignment in any way. If the order or the timing of filing is a factor in determining case assignment, neither the clerk nor any member of the clerk's staff shall disclose to any person the judge to whom a case is isor will be assigned until such time as the case is in fact filed and assigned.

Uniform   Superior Court Management Rule 3.1. and abridgment of due process.

This abridgment of United States Fourteenth Amendment Equal Protection and due process and violation of Uniform Superior Court Rule 3.1 was permitted by the Coweta Judicial Circuit to enable, so inclined judges, to violate the law and abridge constitutional protections of litigants who were astute enough to timely detecting abridgment o due process and illegal conduct by lawyers such as the Glover & Davis lawyer Taylor Drake who primarily represented clients in domestic relations cases in which  the selected judge is the exclusive  trier of fact. This status allowed Taylor Drake and the other Glover & Davis lawyers to obtain large legal fees from wealthy clients and thereby to cause the less wealthy parties to suffer the unconstitutional conduct that was judicially allowed and approved. This illegal conduct allowed judges to fetch political benefits with financial and other benefits. Even after the Coweta Judicial Circuit enacted the Uniform Superior Court Case ManagementRule 3.1 Plan, Judge Baldwin, with the assistance of the Court Reporter, Nan Freeman  (Murphy v. Freeman) attempted to evade detection in allowing  his hand selection and rejection of cases.

The hand selection of case created corruption in several ways other than the obvious selection of a biased exclusive trier of fact in custody cases.

The violation of the Case Management Rule provided the elected and appointed judges to vacate their court obligation and to have a Senior Judge

237

paid to come and serve in place of the legally designated judges who could be playing golf instead of serving the people.

From the first  disqualification  motion, as amended to the last Consolidated motion for Judge Baldwin's disqualification the releif requested  on behalf of Michelle Murphy contained various versions of the following request for relief The attempt of John Harold Murphy to transform such languages as follows in each of the request for relief pleadings into a bribe of Judge Baldwin. Does not create  such language into a RICO predicate act.

"Counsel for Michelle Murphy and the Children Parties request that Judge Baldwin be disqualified from serving as  judge in this case

Counsel for Michelle Murphy and the Children Parties request that all Orders entered in this case, before the filing of this motion, be vacated"

 Millard Farmer cannot appropriately be held responsible for delaying the child custody litigation. It was Court of Appeals Judge Christopher J. McFadden who created the longest delay in the litigation. It was Taylor Drake, who like another  Glover & Davis lawyer in the Savannah vs. *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114 engaged in an early preparation of Judge Baldwin for his hand selection as the judge who would become the exclusive trier of fact in determining custody, in the selection of the guardian ad

Judge McFadden after hearing oral agrument in an Georgia Court of Appeals appeal of Michelle Murphy's case, with the panel assigned to that case adjudicated that the Court of Appeals had jurisdiction of the case.  After this adjudication, Judge Mc Fadden participated with section members of the State

Bar of Georgia in lobbying to have a statute enacted tha the Judge McFadden panel after the statute was enacted, adjudicated that the statute shuld be applied retroactively to the case pending before the Judge McFadden Court of Appeals panel.  The Georgia Supreme Court after an extremely large amount of time in preparing a certiorari petition, struck down the retroactive application of the statute that Judge Mc Fadden lobbied to have passed. It was only much later that Millard Farme learned from one of the people who assisted Judge Mc Fadden in divesting jurisdiction of case pending before him that Judge McFadden did not inform the State Bar that he had a case pending before him that the sought legislative change would retroactively changed. On other grounds, jurisdiction was eventually lost in Michelle Murphy's case.

It was the deception of Judge McFadden in not informing one of the most influential member of the lobbing group and thereby informing the legislative body of his conflict that corrupts the judicial process when such conduct mandates that counsel for Michelle Muprhy must move to disqualify a judge, albiet a Court of Appeals Judge who engages in such conduct with the authority of the State Bar of Georgia.


Millard Farmer

John Harold Murphy, individually and on behalf of Renee L. Haugerud, his wife and her hedge fund source of financial resources,  with the RICO case now attempt to transform the lingering aspects of the state court case into a viable federal jurisdictional celebratory scorched earth retalittion action

against counsel for Michelle Murphy, as now, Nancy Michelle Murphy and her minor children are not lush targets for abuse that they once were before the cadre of John Murphy and Renee lawyers   beat them into psychological disarray.


This information is relevant to the case in this Court, the conditions placed upon an attorney whom the judges informs will not be allowed any attorney fees and who is representing a client pro bono is a strong policy reason that the federal courts have held that federal judges should sustain, from becoming domestic relations jurist.

It was not the absence of a Uniform Superior Court Rule 3.1 that caused the 20 motions to disqualify Judge Baldwin.  It was the other conduct of Judge Baldwin during the interval between the motions that created the necessity to file each of the disqualification motions.

It was the filing of the disqualification motions that progressed the other illegal and unconstitutional attacks upon Millard Farmer.

 John Harold Murphy, and his cadre of attorneys and experts with the benefit of Renee L. Haugerud' financial resources habitually created litigation incidents that were designed to intimidate Michelle Murphy.

Just as Judge Baldwin did with his initial motion in appointing the co-sponsor of the judicial election fund raiser as the $250 per hour paid guardian ad litem.

. Judge Baldwin during the litigation signed orders presented to him by the Glover & Davis lawyers that contained false statements of facts, Once the

Glover & Davis Lawyer, Taylor Drake and the other Glover & Davis lawyers were apparently not aggressive enough with the litigation, or not perceived to have enough political clout with an appellate judge, John Harold Murphy engaged Stephen E. Hudson, and William R. Poplin, Jr. and the

Kilpatrick Townsend & Stockton LLP law firm to assist in creating litigation issues with the assistance of that law firm's investigators and associates.

It was the absence of the mandated Rule 3.1 case management that  allowed locally judicially politically connected lawyers to hand select judges, as accomplished by the Glover & Davis Lawyers accomplished in the City of Savannah vs. *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114 case. Savannah v. Batson- Cook is a highly relevant case in understanding the background of the illegal conduct by the Court of Appeals in unconstitutionally extracting money from Millard Farmer and falsely accusing Millard Farmer of engaging in illegal appellate jurisdiction conduct that the State Bar of Georgia with efforts by John Harold Murphy's counsel was used to create a grievance against Millard Farmer.

 The step by step process follows.


It was only the 20 consistent motions to disqualify Judge Baldwin that resulted in his recusal and retirement.

Even after the Coweta Judicial Circuit enacted the Uniform Superior Court Case ManagementRule 3.1 Plan, Judge Baldwin, with the assistance of the Court Reporter, Nan Freeman   (Murphy v. Freeman) attempted to evade detection in allowing hand selection of cases.

241

[audi]. The hand selection of case created corruption in several ways other than the obvious selection of a biased exclusive trier of fact in custody cases.

The violation of the Case Management Rule provided the elected and appointed judges to vacate their court obligation and to have a Senior Judge paid to come and serve in place of the legally designated judges who could be playing golf instead of serving the people.  From the first  disqualification motion, as amended to the last Consolidated motion for Judge Baldwin's disqualification the releif requested  on behalf of Michelle Murphy contained various versions of the folling request for relief

was for the hand selected Judge to grant the following relief

Counsel for Michelle Murphy and the Children Parties request that Judge Baldwin be disqualified from serving as s judge in this case

Counsel for Michelle Murphy and the Children Parties request that all Orders entered in this case before the filing of this motion be vacated

 to turn the disqualification motion as provided by Uniform Superior Court Rule  over to another judge to adjudicate, or as the Judge eventually did, to recuse himself. Instead of following the law, the Glover & Davis lawyer, Taylor Drake af a fund raiser sponsored by Taylor Drake and the guardian ad litem selected by  and eventually fell apart.

Millard Farmer cannot appropriately be charged with delaying the child custody litigation. It was Court of Appeals Judge Christopher J. McFadden who created the longest delay in the litigation.

Judge McFadden after hearing oral argument in an Georgia Court of Appeals appeal of Michelle Murphy's case, with the panel assigned to that case adjudicated that the Court of Appeals had jurisdiction of the case.  After this adjudication, Judge Mc Fadden participated with section members of the State Bar of Georgia in lobbying to have a statute enacted that the Judge McFadden panel after the statute was enacted, adjudicated that the statute should be applied retroactively to the case pending before the Judge McFadden Court of Appeals panel.  The Georgia Supreme Court after an extremely large amount of time in preparing a certiorari petition, struck down the retroactive application of the statute that Judge Mc Fadden lobbied to have passed. It was only much later that Millard Farmer learned from one of the people who assisted Judge Mc Fadden in divesting jurisdiction of case pending before him that Judge McFadden did not inform the State Bar that he had a case pending before him that the sought legislative change would retroactively changed. On other grounds, jurisdiction was eventually lost in Michelle Murphy's case.

It was the deception of Judge McFadden in not informing one of the most influential member of the lobbing group and thereby informing the legislative body of his conflict that corrupts the judicial process when such conduct mandates that counsel for Michelle Muprhy must move to disqualify a judge, albiet a Court of Appeals Judge who engages in such conduct with the authority of the State Bar of Georgia. The Disqualification Motion brought against the Judge McFadden panel is **Exhibit X**

Millard Farmer

John Harold Murphy, individually and on behalf of Renee L. Haugerud, his wife and her hedge fund source of financial resources,  with the RICO case now attempt to transform the lingering aspects of the state court case into a viable federal jurisdictional celebratory scorched earth retaliation action against counsel for Michelle Murphy, as now, Nancy Michelle Murphy and her minor children are not lush targets for abuse that they once were before the cardre of John Murphy and Renee lawyers  beat them into psychological disaray.

This federal case is now only against Millard Farmer, counsel for Michelle Murphy, Deborah L. Beacham and her My Advocate Center, Inc. business.

During state court proceeding  Delia Tedder Crouch's insurer and John Harold Murphy chose to pay damages in exchange for in a mutual release from liability of Michelle Murphy and her counsel, Millard Farmer. Multiple releases were perfected with comprehensive release agreements  with funds  in part derived from and with the voluntary consent of Renee L. Haugerud, who initiated her financial participation by repaying some of the funds  that John Harold Murphy had  illegally obtained that belonged to Michelle Murphy. with her lawyer and consent of John Harold Murphy instigated a settlement agreement that again released Millard Farmer. Exhibit64

In addition to these releases, Larry King's insurance carries has paid John Harold Murphy an estimated approximate $100,000 in exchange for being dismissed from this case by the Court.

244

abusive litigation related to attempt of Millard Farmer and Larry King to include Renee L. Haugerud as a third party defendant in the modification of custody actiion.in the amount of $36914.48. A condition of Larry King being dismissed from representation of Michelle Murphy required that he remain liable for attorney fees for all events occurring   before September 3, 2014.[xx] The filing of the third party complaint occurred before September 3, 2014.

These lingering state court issues are relevant to this federal court for more reason than the abstention, jurisdiction, venue apportionment, accord and satisfaction of this court, These issues speak volumes to the scorch earth litigation vindictive attacks upon counsel for Michelle Murphy and her minor children that related to the financial business goals of Renee L. Haugerud and her hedge fund businesses. These issues were identified, but  not address in th state court,

The purchased legal representation by Larry King and Renee L. Haugerud consisted of a plan and outlined for John Harold Murphy by his divorce lawyer, now Superior Court Judge Louis Jack Kirby i.e. The plan was for John Harold Murphy to select counsel from a few lawyers appearing before Superior Court Judge Kirby on a regular basis. These suggested lawyers [Depo Kirby] These lawyers   who had the political judicial connection to select a judge for John Harold Murphy's modification of custody case who would be the exclusive trier of fact and the law, as Georgia law mandates[OCGA § 19-9-3. Discretion of judge in custody disputes]

involved in assisting Michelle Murphy in the Superior Court of Coweta County Civil Action No. 12V-413 (John Harold Murphy vs Nancy Michelle Murphy.)

John Harold Murphy's civil RICO action against Millard Farmer is a part of his long history of his intimidation tactics against Michelle Murphy that extended to intimidation attacks upon her counsel, Millard Farmer.

Once John  married Renee Haugerud she began assisting John Harold Murphy in his intimidation tactics against Michelle Murphy and her counsel, Millard Farmer. These two intimidations became more effectively detrimental to their victims once they began using the financial assets of Renee L. Haugerud and her hedge fund businesses to employ a cadre of attorneys, experts and investigators to assist in intimidating Michelle Murphy, her witnesses and her counsel.

One of the lesser intimidating tactics of Renee L. Haugerud occurred when she requested that Michelle Murphy meet with her at the St. Regis Hotel in Atlanta to discuss the modification of custody about which Taylor Drake, a Glover & Davis lawyer, had written Michelle Murphy a letter.

Renee L. Haugerud L. Haugerud informed Michelle Murphy at the St. Regis meeting as near as remembered when Michelle Murphy informed Millard Farmer of Renee L. Haugerud' following warning to her. "Don't put yourself through this; it has already been a done deal."

This communication seems unimportant to a person who was unfamiliar with the manner in which Michelle Murphy had been treated by John Harold

Murphy since he left Michelle Murphy and her two toddlers in LaGrange in preparation for divorcing Michelle Murphy.

rmed, as Millard Farmer was informed by a person from a wealthy family who brought their parents to the office of the Glover & Davis Lawyer, Taylor Drake during which visit, they heard the representation made by Taylor Drake. Millard Farmer received information from a confidential informant that gave a meaning to the "Its as done deal statement that Renee L. Haugerud used as intimidation to Michelle Murphy.

On other occasions, Millard Farmer observed the corruption of Judge Baldwin and the Glover & Davis lawyer, Taylor occurring.

The conduct of Millard Farmer and Larry King as counsel for Michelle Murphy in attempting to protect the best interest of her minor children was absolutely required, as the lives of a child who was not one of the Murphy Children was being endangered by Renee L. Haugerud and John Harold Murphy.

These communications are relevant to documenting that Renee L. Haugerud was an active participant in attempting to mediate the custody dispute.

 Michelle Murphy was not the only person that

At come time in close proximity to August 6, 2014, a minor child who visited an extended time with the Murphy Children in  On August 6, 2014, Millard Farmer visited the home of T.B., a minor child who visited for an es

247

is

[1]       's

The Georgia courts have dealt with such retaliatory litigation about litigation attempts by litigants. These attemps ,as this federal civil RICO Complaint at times have unsuccessfully attempted to   rely upon   the unconstitutionally vague " or interpreted OCGA 16-8-16 "extortion", as a criminal predicate act." The RICO Complaint of John Harold Murphy fails to even comply with the pleading standards of Fed R.C 8,  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), John Harold Murphy, while represented by counsel filed a release of Millard Farmer These apparently attempted craccusatory   infirmities that became realitities after the R are addressed in the accompaning memo of law.

The ostensible issue identified in that modification of custody and child support case was between the natural parents of two minor boys, J.M.then age XX and T.M. then age

As the litigation progressed it became apparent to counsel for Michelle Murphy that there was an undisclosed highly clandestine motivations for John Harold Murphy and his "wife" Renee L., Haugerud for the modifications of custody. It was the clandestine motivations of John Harold Murphy and Renee L. Haugerud, who is the person that the RICO complaint

 hedge fund operator, who after their marriage, individually and or through her businesses funded the lifestyle of John Harold Murphy. Haugerud litigation of that case it became apparent that there was a the dispute between John Harold Murphy and Nancy Michelle Murphy (Michelle Murphy,     and   about modifying the custody of J.M,then ageXX and T.M.then age XX, (Murphy Children) between John Harold Murphy and Nancy Michelle Murphy (Michelle Murphy) the children's natural parents,  John Harold Murphy and his "wife", Renee L. Haugerud, under the circumstances of the desire of the Murphy Children . and T.M. to continue living with their mother, Michelle Murphy exhihited far more than normal clandestine unusual importance for modifying the custody  of the children of Michelle Murphy.

Counsel for Renee L. Haugerud accused Alfred Lawrence King, Jr. the experienced domestic relations litigator of unethical conduct when he attempted to communicate with Renee L. Haugerud about resolving some of the disputes that were affecting the children.

Michelle Murphy first detected the secreted, unusual apparently, not in best interest of the children, need of John Harold Murphy and Renee L. Haugerud for Michelle Murphy's two minor children J.M and T.M.when the  Glover & Davis lawyers, who had the political affiliation with Judge A. Quillian Baldwin, Jr., were supplemented with Atlanta lawyer , who neither primarily practiced domestic relations law now who frequently practiced in the Coweta Judicial Circuit.

Haugerud's  household family was located in St. Thomas, USVI, or another similar location in another tax and regulatory exempt area outside of the continental United States. The then minor children of Michelle Murphy were assets that Renee L. Haugerud  needed to have in her household with their father, John Harold Murphy to obtain tax and regulatory benefits for her hedge fun operation. This financial need for J.M. and T.M. was the unspoken to the state court of Georgia reason  that the cadre of lawyers needed their cadre of experts, their hand selected judge a

The pending civil federal RICO action here is based upon allegation encompassed in and adjudicated, or eligible to be adjudicated during a state court proceeding during which Nancy Michelle Murphy ("Michelle Murphy") and her counsel, Millard Farmer and Alfred Lawrence King,Jr. ("Larry King") were not provided a Fourteenth Amendment Equal Protection and Due constitutional opportunity to present evidence to defend abridgment of these United States constitutional protection  Michelle of Murphy and her counsel in the trial court, or in the appellate courts.

These United States constitutional abridgments were timely sought to be protected in the state court, but consistently denied the opportunity to present., e.g. the state court judge, who was the exclusive trier of fact would never allow a state court Uniform Superior Court mandated hearing on his hand selection by opposing counsel

In addition to the child custody and child support case during which Wilmer "Buddy Parker represented John

250

Harold Murphy and his interest with funds derived directly or indirectly from the wife of John Harold Murphy, Renee L. Haugerud individually includeing,must probably, her hedge fund entities Galtere LTD, Galtere N.A., Inc. and the other businesses in which Renee L. Haugerud have a business interest, some of which are located in St. Thomas, USVI. (or collectively Renee L. Haugerud financial assets") John Harold Murphy testified at the final hearing in the custody and child support cases that he essentially had no assets, or income, and his lifelyhood was derived from Renee L. Haugerud. [ XX ] this most likely protected John Harold Murphy from being required to pay child support, of litigation cost that he created by initiated by instigating the modification of custody and child support litigation against his former wife, Nancy Michelle Murphy. The exhaustion of the assets of John Harold Murphy assets and income most predictably motivated by his desire to bring such actions as this federal Civil RICO case without allowing counsel for the defendant to recover attorney fees.

The abridgment of an opportunity to present these United States Constitutional abridgments together with the abridgments will be presented to this court, as John Harold Murphy directly, or indirectly with Renee L. Haugerud financial assets attempt to abridged this Constitutional protections in this Court.

 Wilmer "Buddy Parker" was also paid with with funds derived directly or indirectly from John Harold Murphy, Renee L. Haugerud individually, or Renee Haugerud hedge fund businesses to file State Bar of Georgia grievances against Millard Farmer on behalf of John Harold Murphy,, one of which was dismissed, but renewed, one on behalf of Patricia Nice M.D and insistance

251

upon another related upon an assessment of a fine against Millard Farmer related upon a brief filed in the Court of Appeals of Georgia. These State Bar grievances that are related to the broad subject matter of this litigation, the federal Civil RICO action in this court and thereby the child custody and child support litigation that John Harold Murphy and his cadre of litigation professionals apparently compensated by funds derived directly, or indirectly tieh .

In a different, but comparable context Justice

In addition to those actions against Millard Farmer related to the child custody and child support case, Renee L. Haugerud brought an action for attorney fees for the third party complaint that Millard Farmer and Larry King included in the litigation based upon their interpretation of Supreme Court of Georgia Justice Carley *Moore v. Moore* opinion (XX0. Millard Farmer borrowed the money to paid the Glover & Davis lawyer who represented Renee L. Haugerud

Millard Farmer  Court was noticed of the necessity for abstention .This early request for federal abstention is now a constitutional mandate, as it was while Millard Farmer and, Alfred Lawrence King, Jr. (Larry King), until Judge A. Quillian Baldwin on September 10, 2014 granted Larry King' motion to withdraw from the Case on September 10, 2014 "subject to any claims for claims for attorney's fees which may be made at the conclusion of this case for matters that occurred prior to the date of this order" during  attempted  for much of that state court case, Larry King diligently attempted to provide Nancy

252

Michelle Murphy (Michelle Murphy) United States constitutional statutory and Uniform Superior Court Rule  protections in the state court child custody and child support case., ., that John Murphy initiated this federal push-back retaliatory litigation while financing the filing of with three State Bar of Georgia grievances against Millard Farmer. Murphy)constitutional protections to Mancy Michelle Murphy in the state court proceedings,   protecting the

Since this federal case was filed and the state court case progressed, it is detectable that the scope of the federal case encroaches upon and is constitutionally an abridgment with the United States Constitution Tenth Amendment protections reserved to the State of Georgia

 and thereby and additionally the Fourteenth Amendment Equal protection and Due Process including but not limited to this Court's jurisdiction, the District's venue, OCGA §§51-7-85 exclusive remedy, 51-5-7, ,  OCGA§19-7-5 immunity, 51-OCGA§5.8, privilege and other protections of the Defendants including but not limited to Plaintiff's Amended complaint failure to comply with F.R.C.R.8, as interpreted in *John Ashcroft v.  Iqbal*

Wilmer "Buddy" Parker, a former Assistant United States Attorney in the Northern District of Georgia, without prior domestic relations litigation experience and Patrick Crosby, a former public relations representative for the United States District Court for the Northern Distirct of Georgia, without state court domestic relations public relations experience, were recruited on behalf of John Harold Murphy to assist this father of two minor children in the child

custody and child support litigation that action that John Harold Murphy initiated in the Superior Court of Coweta County, Georgia.

 At  the time Buddy Parker and Patrick Crosby began assisting  John Harold Murphy, and his   wife, Renee L. Haugerud, a hedge fund operator, who directly, or indirectly primarily funded the litigation were already represented by several domestic relation and litigation experienced lawyers who are supported with the support  staff accompanying their at least two large law firms with.

This cadre, of ever expanding and diversification of experienced lawyers with the assistance of their private investigators, and other experts of John Harold Murphy knew the potential the roles that Buddy Parker and Patrick Crosby could fulfill with the relatively unlimited financial resources of John Harold Murphy's wife, Renee L. Haugerud.

Our domestic relations public policy memorialized in OCGA§19-9-3  is to balance the disparity of litigation resources in child custody and child support cases by permitting the Court to provide attorney fees and litigation expenses to counsel for the party for who is financially less capable of obtaining counsel. from  John Harold Murphy was entitled to as many lawyers and experts as he could afford.

This protection was not afforded to Michelle Murphy

John Harold Murphy was not entitled to a hand selected judge as his exclusive trier of fact. John Harold Murphy's counsel and the hand selected judge, to serve as the exclusive trier of fact in violation of the Georgia Uniform Superior

254

Court Rule 3.1, who and who refused to comply with Uniform Superior Court Rule 25.3.  hearing

The federalization of the pending litigation with the State Bar of Georgia Grievances and Civil RICO against Millard Farmer diminished Michelle Murphy pro bono counsel to near impotence in providing the timely responses to the

 The  the modification of custody and child support case that he initiated against Nancy Michelle Murphy, the defendant, who was the Georgia resident, mother of the two Minor children, J.M. and T.M.

Patrick Crosby initial task appeared to be to publish a pamphlet for distribution that he titled "Truth"**,** to establish a internet and social media presence for the content of his Truth publication and to deter other news outlets from presenting information from the prospective of Michelle Murphy.

Buddy Parker task appeared to be to initiate the pending action in this court, to author and file grievances with the State Bar of Georgia against Millard Farmer, to appear as counsel for John Harold Murphy in examining Michelle Murphy as a witness at the final custody hearing and the presenting of witnesses on behalf of John Harold Murphy at the final custody hearing.

 The State of Georgia's jurisdictional competition to adjudicate the child custody and child support case within its borders began when

Factural changes affecting the posture of this case are addressed, as a matter of law in two motions that follow.

Only Millard Farmer, Deborah Beacham  and her My Advocate Center, Inc. nowremain as defendants. The Court granted John Harold Murphy's Motion[91,92] to drop all causes of action against the defendant Alfred Lawrence. King, Jr., Larry King. (, or collectively) Larry King),  Upon information and belief the insurance carrier of Larry King paid John Harold Murphy approximately $100,000, and maybe some testimony in exchange for not having to represent Larry King at a trial.

The, now dismissed, Larry King defendant in this case was the domestic relations expert compensated witness for Millard Farmer in Michelle Murphy's malpractice, *et al*. action against Delia Tedder Crouch. That litigation was expanded to include John H. Murphy after the malpractice court included John H. Murphy as a co- defendant with Delia Tedder Crouch after the trial judge learned that John Harold Murphy sought to keep the mistaken payment of money due to Michelle Murphy and the money that John Harold Murphy obtained by secreting stock options that he held until a day or so after Michelle Murphy signed a settlement agreement in the divorce case.

All parties, including the wife of John H. Murphy, Renee L. Haugerud  were represented by counsel during that malpractice et *al*  related litigation and disputes about John Harold Murphy's secreting of his marital asset stock options disputes. All money obtained by Michelle Murphy, or Millard Farmer for representing Michelle Murphy were dispensed by the attorneys for either the malpracting lawyer Delia Crouch, or by the attorney for, Renee L. Haugerud, who paid Michelle Murphy for her claim for the secreted from the

Court, with a false affidavit stock options. [  ]  were represented by counsel at all times were settled with comprehensive, all inclusive,    settlement agreements among Michelle Murphy,et al. including her counsel and  John H. Murphy, *et al*  Millard Farmer and those associated with him were released**.**

 Following the malpractice case, Larry King, and Millard Farmer became co-counsel for Michelle Murphy in the modification of custody and child support case that John H. Murphy initiated.

Michelle Murphy's defense of the custody and child support case included a Third Party complaint against Renee L. Haugerud [31, p. 7,8 §12]  that Larry King and was also co-counsel with Millard Farmer.

The Glover & Davis lawyer for John Harold Murphy's wife, Renee L. Haugerud,  an action against Millard Farmer to recover damages


( (  the modification of custody case against John Harold Murphy and in that case's Third Party  complaint against Renee was  of the alleged RICO predict act   , was caused  when John Harold Murphy filed his Motion to Drop King Defendants (dismissed his former falsely accused RICO predicate act defendant, Alfred Lawrence. King, Jr., Larry King.(, or collectively) Larry King) and the Court dismissal of this formerly falsely accused RICO predicate act defendants, Alfred Lawrence, King, Jr.and Larry King P.C. (or collectively

257

 John Harold Murphy has sought and obtained  dismissal of all causes of action that he has against   Alfred L. King, Jr.,   Larry King, P.C.Larry King (, or collectively) Larry King).

Larry King is the domestic relations expert who was co-counsel with Millard Farmer in the modification of child custody case that is the nexis of the entirety of this civil RICO case. Larry King due to the illness of his wife, was permitted to withdraw from the custody modification case conditioned upon his " remaining responsible for "  (" Millard Farmer has been required to pay XX of OCGA 9-11-15  "    that replicates the XXX sought by John Harold Murphy in this case.

Rather than pay for the defense of Larry King, his insurer, with no financial contribution by Larry, King, paid approximately $100,000 on behalf of Larry King to the interest of John Harold Murphy.as part of the consideration for the dismissal Larry King, a resident of the State of Florida, from this case. (XX)

Larry King was the only defendant with an out-of State, or out-of Northern District of Georgia, Atlanta District, resident.

The Court has pending before it the motion for the withdrawal of  counsel for My Advocate Center, Inc. Deborah L. Beacham, the only other defendant is a resident of the Northern District of Georgia, Atlanta, District.

Deborah L. Beacham informs Millard Farmer that she is proceeding, as she cannot financially afford counsel with her other obligations.

Introduction

Millard Farmer moves in limine for an Order preventing John Harold Murphy, his counsel and his witnesses from introducing, or making any comments relating to certain evidence, opinions, factual or legal assertions at trial. Specifically, Millard Farmer seeks an Order that information, evidence

 legal or factual assertions related to the following are not to be presented in any manner to the jury.

1.   The term, *Conflictineering* [31], ¶ 1, p. 2, fn 1, ¶¶7, 8, 9, *passim.*

2.   Any document or evidence referencing the term, *Conflictineering.* [1-1]

3.   The terms, *terroristic lawyering*, *Id.* p. 2, fn 1*; terroristic litigation*, *Id.* ¶ 11; *terroristic behavior and attacks*, *Id.* ¶12; *terroristic tactics*, *Id.* ¶ 16, 421; *terroristic approach*, *Id.* ¶45; *terroristic attacks*, *Id.* ¶¶58, 68, 196, 500; *terroristic abuse*, *Id.* ¶¶ 447, 459, 480

4.    References to cases in which Millard Farmer has been sanctioned or held in contempt of court, *e.g., In re Farmer,* 212 Ga. App. 372 (1994); *Stephens v. Ivey,* 212 Ga. App. 407 (1994); *Farmer v. Holton,* 146 Ga. App. 102 (1978); *Farmer v. Strickland,* 652 F.2d 428 (5th Cir. 1981) *Id.* ¶ 2; *Murphy v. Murphy,* 328 Ga. App. 767 (2014), *recons. denied* (July 31, 2014), *cert. denied* (Ga. Nov. 17, 2014); *Murphy v. Murphy,* 330 Ga. App. 169 (2014), *recons. denied* (Dec. 5, 2014), *cert. denied* (Ga. Mar. 2, 2015*), recons. denied* (Apr. 9, 2015), *Id.,* ¶ 3.

259

5. References to past litigation related to *State v. Bundy,* Case No. 78-169-
   CF (Fla. Cir. Ct., Columbia Cnty. Sept. 21, 1978). *Id.* ¶1.

These references are not only irrelevant to any legal cause of action, or admissible evidence presentable by John H. Murphy, but as Wilmer "Buddy" Parker attempts to use the language and information in this Court and in other forums, that are prejudicial to Millard Farmer and those accused of acting in concert with Millard Farmer and other persons to the extent that such usage is a violation of United States Constitution's Fourteenth Amendment Equal Protection, Due Process, Fifth, Sixth, and First Amendment protections and Article I,§1,¶ 1 of the Georgia Constitution, of the

Defendant Farmer, with Defendant King's Participation, Commences Malpractice Litigation Against Dee Crouch, Becomes Aware of Mr. Murphy's and His Current Wife's Net Worth, and Extorts an Excessive Payment That Yields Substantial "Attorney's Fees."

On December 15, 2008, Michelle Murphy, represented by Defendant Farmer, filed a "Complaint Seeking Relief for the Negligent, Actionable Conduct of Legal Malpractice, Breach of Expressed [sic] and Implied Contractual Duty, Breach of Fiduciary Duty and Unjust Enrichment" in the Superior Court of Coweta County against Ms. Crouch (the "Crouch Malpractice Litigation"). *Michelle Murphy v. Delia Crouch*, No. 08-V-2137 (Ga. Super. Ct., Coweta Cnty.).

In the Crouch Malpractice Litigation, Michelle Murphy (through Defendant Farmer) claimed that Ms. Crouch had mishandled the equitable distribution of a pension

between Michelle Murphy and Mr. Murphy in the divorce case resulting in an alleged shortfall of approximately $50,000 to Michelle Murphy.

To comply with the requirements of O.C.G.A. § 9-11-9.1, Michelle Murphy attached an affidavit from Defendant Larry King expressing his opinion that Ms. Crouch had provided "substandard legal representation." In Defendant King's affidavit, he acknowledges having reviewed the entire divorce case file of Mr. Murphy as well as financial information of Mr. Murphy. Defendant Farmer paid Defendant King fees for his participation in the Crouch Malpractice Litigation.

**Request for Relief**

**Millard Farmer request that this Motion in limine be granted and that the relief for federal Investigative assistance be forwarded to the FBI, the SEC and the IRS to address the federal criminal conduct or the Plaintiff, Galtere**

**Millard Farmer request a hearing on this motion and such other and further relief as justice requires.**

CERTIFICATE OF SERVICE

I hereby certify that counsel for all parties, are designated to receive electronic notification at the email address listed below, of the Motion in limine with Memo and attachments filing of Millard Farmer, as counsel for Millard Farmer.

Wilmer Parker

Maloy Jenkins Parker

parker@mjplawyers.com

Johannes Stuart Kingman

jkingma@carlockcopeland.com, jfreeman@carlockcopeland.com

John Colquitt Rogers

jrogers@carlockcopeland.com,

kbeazer@carlockcopeland.com

Millard Farmer , millardfarmer@millardfarmer.com,

Shannon D. Briley-Holmes

 shannonbrileyholmes@gmail.com

Wilmer Parker , III

 parker@mjplawyers.com,mjpassistant@gmail.com, sramirez@mjplawyers.com

3:15-cv-00092-TCB Notice has been delivered by other means to:

My Advocate Center, Inc.

c/o Deborah L. Beacham

3025 Bluffton Way

Roswell, GA 30075

  jkingma@carlockcopeland.com, jfreeman@carlockcopeland.com

John Colquitt Rogers
jrogers@carlockcopeland.com,
 kbeazer@carlockcopeland.com
Shannon D. Briley-Holmes

 shannonbrileyholmes@gmail.com
Wilmer Parker , III

 parker@mjplawyers.com, mjpassistant@gmail.com, sramirez@mjplawyers.com

3:15-cv-00092-TCB Notice has been delivered by other means to:
2

My Advocate Center, Inc.

c/o Deborah L. Beacham
3025 Bluffton Way
Roswell, GA 30075

This 31th day of August, 2017.

/Millard Farmer                                                    /s/

Millard Farmer

3

As a result of the proceedings in and settlement of the Crouch Malpractice Litigation, Defendants Farmer and King became acutely aware of the wealth of Mr. Murphy and his wife.

Mr. Murphy Commences the Child Custody Litigation.

**Request for Relief**

Millard Farmer request that the Court grant this Motion in limine, as to the entirety of the conduct idetified in the Civil RICO Complaint that occurred when Judge Baldwin's Order were in effect., the evidence used to create the Civil RICO case abridged the Fourteenth Amendment Due Process Equal Protection, First Amendment Fifth Amendment and rule of law protections of Millard Farmer, Larry King and all persons accused in The Civil RICO case of assisting Michelle Murphy who was attempting to protect her children from Child Abuse.by John Harold Murph, Renee L. Haugerud and their persons compensated by *Galtere et al Enterprises*

**Incorporated Attachments**

Affidavit of Larry King

Memorandum of Law in support of In Limine Motion.

Dr. Patricia Nice. appearance in Court information

Third Party Complaint against Renee L. Haugerud.

4

CERTIFICATE OF COUNSEL


I certify that this motion meets all requirements of the Local Rules of the United States District Court for the Northern District of Georgia, regarding margins, line spacing and that a 14 point, Times New Roman Font was used.

This 31th day of April, 2017.

/s/Millard Farmer

Millard Farmer


CERTIFICATE OF SERVICE


I hereby certify that counsel for all parties, are designated to receive electronic notification at the email address listed below, of the filing of Millard Farmer's Answer, Responses and Counterclaim to the Amended Complaint of John H. Murphy.

Wilmer Parker

Maloy Jenkins Parker

parker@mjplawyers.com

5

Johannes Stuart Kingma

   jkingma@carlockcopeland.com, jfreeman@carlockcopeland.com

John Colquitt Rogers

jrogers@carlockcopeland.com,

 kbeazer@carlockcopeland.com

Millard Farmer    millardfarmer@millardfarmer.com,

Shannon D. Briley-Holmes

 shannonbrileyholmes@gmail.com

Wilmer Parker , III

 parker@mjplawyers.com,               mjpassistant@gmail.com,

sramirez@mjplawyers.com

6

3:15-cv-00092-TCB Notice has been delivered by other means to:


My Advocate Center, Inc.

c/o Deborah L. Beacham

3025 Bluffton Way

Roswell, GA 30075



This 31th day of August, 2017.


/s/ Millard Farmer

Millard Farmer:

7

Respectfully Submitted,
/Millard Farmer _____
Motion in Limine _____

s/Millard Farmer

    The Amended Contempt Motion used to convict the Defendants did not

include a Rule Nisi

    Respectfully submitted,

/s/ Millard Farmer
Millard Farmer
Georgia Bar No. 255300
P.O. Box 1728
Atlanta, GA  30301-1728
(404) 688-8116
*millardfarmer@millardfarmer.com*
**Counsel for Millard Farmer**

8

CERTIFICATE OF COUNSEL

I certify that this motion meets all requirements of the Local Rules of the United States District Court for the Northern District of Georgia, regarding margins, line spacing and that a 14 point, Times New Roman Font was used.

This 1st day of September 2017.

/s/Millard Farmer
Millard Farmer

CERTIFICATE OF SERVICE

I hereby certify that counsel for all parties, are designated to receive electronic notification at the email address listed below, of the filing of Millard Farmer's Answer, Responses and Counterclaim to the Amended Complaint of John H. Murphy.

I hereby certify that counsel for all parties, are designated to receive electronic notification at the email address listed below, of the Motion in limine with

Wilmer Parker
Maloy Jenkins Parker
75 Fourteenth Street, 25th Floor
Atlanta, Georgia 30309
*parker@mjplawyers.com*

This 1st day of September, 2017.

/s/ Millard Farmer
Millard Farmer