**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

**John H. Murphy,**
    **Plaintiff**,

    vs.

                  No.    3:15-cv-92-TCB

Millard C. Farmer, Jr.
Deborah L. Beacham and
My Advocate Center, Inc.

   **Request to file Apologetic and Explanatory Response to the Court's [105]
Order**

**Relating to Millard Farmer's**

**Motion in Limine Supported with Constitutionally Challenging the Abridged,
now Spoliated, Constitutional Protections due Millard Farmer and other
Accused Parties that John Harold Murphy charges to be a part of the
actionable conduct included in his Civil RICO Complaints [ 1]; [31] and
otherwise**

**Millard Farmer, (the defendant and as counsel, or** hereafter collectively
"Millard Farmer") **apologies to the Court**

   Millard Farmer unequivocally apologies to the Court.

Millard Farmer wishes to include here **mitigating facts that were not before the Court when it issued its Order. [105]** These facts would have been presented if Millard Farmer had been provided a due process opportunity and had the electronic ability to timely transmit the information to the Court.

Millard Farmer had two choices at the time the motion in limine was due. One choice was to seek an out-of-time request for an addition to the page limits.

If that first obviously best choice if substantially granted, involved the risk of failing to have a record in this court and in the Plaintiff's corresponding induced Bar grievances that would diminish the quality of representation for numerous other persons whom are potential client of Millard Farmer, as they cannot afford legal cost when it is imposed upon them, as defendants.

Reflecting upon the necessity for the RICO accused defenses with the now stricken motion was to demonstrate to the Court the important relevance of the Plaintiff's induced judicial corruption and conduct that resulted in the defenses exercised by Millard Farmer on his behalf and for his modification of custody client's legal representation. Millard Farmer's fifty years of experience was that he and the causes of justice, humanity and decency were

2

best served by Millard Farmer's exercise of the option that he exercised. Millard Farmer now seeks to explain.

### The Unique limitations upon Millard Farmer's options

The fallacies with these limitations is that Millard Farmer misjudged the amount of time that it would take at the various transition identified stages, *ie*

Millard Farmer was not accurate as to the time it would take to move his law office from Atlanta to Decatur, Ga.

Millard Farmer did not realize that his computer would not connect to the internet without issues for three days after it was moved to the different internet service provider who over committed to the available bandwidth and reliability of service.

Millard Farmer did not realize the in-house technical support that the paralegal had been providing instantaneously to Millard Farmer.

Millard Farmer did not realize his paralegal of thirty-one years would become disabled from working with him and be restricted from fulfilling any law related tasks.

Millard Farmer did not realize the amount of telephone call issues that his paralegal had been satisfying while Millard Farmer was working uninterrupted.

Millard Farmer is a sole legal practitioner who has practiced law for over fifty (50) years. After leaving a very traditional law firm that he established,  in Newnan, Ga, Millard Farmer made the decision that his life should be devoted to representing people who could not afford to pay legal fees necessary to defend themselves against the government, or well financed persons.

Millard Farmer accepted a job representing only poor people in the most serious of cases. That work included Millard Farmer's paralegal daily assistance. She did not know how to touch type, or do legal research when she began working with Millard Farmer who did not have her skills in dealing with people in distressful situations that his paralegal was extremely skilled.

 That diversity of this lawyer's and paralegal's skill sets worked well in guiding numerous volunteer students in applying both skill sets.


 Millard Farmer's establishing a solo law practice that attempted to never reject assisting a person because they could not afford normal legal fees, or because the person was unpopular, or that the person's justifiable legal protection is unpopular.

4

Millard Farmer now primarily represents people who cannot afford other lawyers for the magnitude of the legal issue that has been imposed upon them. These are the persons most often damaged by a corrupt judicial system.

Millard Farmer has been assisted in his law practice for over thirty-one 31years with the  mostly like-thinking same paralegal.  The work load between the paralegal and Millard Farmer is quite different than that of most legal assistants.

Millard Farmer does most all of the keyboard input of information into the computer, albeit now that his paralegal is a far superior touch keyboard operator.

 Instead of having a secretary or the paralegal to input information. Millard Farmer inputs his information key stroke by key stroke. Millard Farmer answers each of the phone calls to the law office and forwards the office phone to his cell phone when he leaves the office in the evenings, or to visit in the home  or jail cell of a client. Millard Farmer, and most frequently his paralegal, visit the homes of their clients who have substantial legal issues. These visits best allow these lawyer and paralegal to understand the limitations of these persons in accepting and following suggested courses of conduct. Most always the documents produced and received during the

5

litigation are delivered and explained to the clients in a social setting where such other things as sports and activities of the children are discussed.

Quite contrary to the reputations of Millard Farmer, the primary goal of Millard Farmer and his paralegal is to resolve disputes and not to subject clients to the trauma of litigation that emotionally disrupts the lifestyle that people should share within their community. Without hardly ever mentioning the word "settle" that most clients hate, every client visit that Millard Farmer and his paralegal have had with persons in their over thirty-one years together has involved their attempts to both accurately detect the real dispute and then envision a resolution.

Clients of Millard Farmer bring full meals to the law office of Millard Farmer where they often eat some of the food together before Millard Farmer takes the remainder of the food home to share with his wife, who knows nothing about the client's case, but knows everything about the client's food.

Millard Farmer's paralegal acts as an educational source to Millard Farmer about educational and medical limitation of clients. Many female clients prefer to communicate with Millard Farmer's paralegal about potential medical issues.

The paralegal takes the input information of Millard Farmer and corrects errors of grammar and suggested errors of facts and law. The paralegal electronically stores the documents. The incoming documents are scanned by the paralegal, electronically with hard copy filed by the paralegal. The key person at that office is the paralegal who if she does not know the location of a document, she will find it very quickly for other lawyers who are working on the case with Millard Farmer. Millard Farmer, or his paralegal will average five calls a week with other lawyers about their cases.

The law office of Millard Farmer, except for few exceptions, is open seven days a week including many holidays from around 7 a.m. until around 4:30 unless the workload or client visits require working later. The lengthy hours are required because Millard Farmer wishes for the office to feel like a family room and not a law office. Millard Farmer never, no never, bills a client by the hour, as Millard Farmer wants the client to call frequently and to ask questions without the fear of a bill. After fifty years Millard Farmer knows that it would be fair to charge a person for the services that the client is seeking. The type of law practice that Millard Farmer has only works if the people working in the practice have a simple life style, no alcohol, tobacco, or drug issues,  no children to support, have little need to attend sports events, or heaven forbid, play golf.

7

The Civil RICO case laughably fails to identify the evils of Millard Farmer such as frequently making false statements to his wife about when he will be home for a meal. Often clients laugh when they are in the office late and the phone rings and they joke with the paralegal about what will the excuse be today.

The voluminous documents that Millard Farmer filed are to tell the court with each key stroke; this is Millard Farmer; this is the conduct that the constitution protects Millard Farmer and his client in doing; and these are the reasons that the Court should be concerned about this these protections for other people's benefit.

The paralegal attends to the outgoing mail and all of the electronic filings with the Court and scheduling of the document filing dates. The paralegal is without any question the office manager from allowing the purchase of supplies to the local rules for document sizes in the various courts from the United States Supreme Court to the Municipal Courts in rural areas

For thirty-one years the law office was in a once store front converted building on 151 Nassau Street next to the Tabernacle Music venue.

In 2017, the owner of the 151 Nassau Street building notified Millard Farmer that he and other property holders in the area were approached by developers

8

wishing to buy the property. This meant that the law office after thirty one years would be required to move. This possibility of having to move created an expensive time-consuming task for the paralegal. Many people offered to assist the paralegal in accomplishing the task that primarily fell upon the paralegal and my son's wife. Millard Farmer received both financial and other assistance in preparing for the transaction. The Third Party fine by the Glover & Davis law firm only against Millard Farmer essentially eliminated the employment of a moving company to prepare for the move.

The paralegal and the wife of Millard Farmer's son assumed the complete task of arranging trucks, helpers and associated with the planned move to a different location in DeKalb County.  Most office locations in the Atlanta area were outside of the budget for an office. An office was located in Decatur. The paralegal and the daughter-in-law did the physical boxing literally tons of documents and office equipment.  This was accompanied by the paralegal loading her car nearly every day with items for the dump.

Millard Farmer was eventually informed that the that he must vacate the property. At that time Millard Farmer and his paralegal were extremely busy and not taking any cases that required a substantial amount of time. In one respect the law office of Millard Farmer was very lucky, as the University of Georgia State had recently selected a large number of closed case files that it wished to archive  in its collection.

9

Millard Farmer and one of his clients in a wrongful death civil case also agreed for the client to obtain another law firm to take that major case in which two law firms representing clients opposing Millard Farmer in the wrongful death case had refused to disqualify themselves on a panel assigned to adjudicate one of the Bar grievance accusations against Millard involving issues used in in this case

**In addition to the results created by the Court not granting Millard Farmer in limine protections, as the Court can tell by observing the RICO Complaint, Lawyers as Plaintiff's counsel use the Motion to Strike of the Court as a basis for a Bar Grievance and as support for causes of action in a Civil Complaint.**

Millard Farmer and primarily his paralegal began preparing files that could entice another law firm to take the wrongful death case that had completed the discovery stage. With an already extremely heavy workload the paralegal began working longer hours each day, as the stress of the RICO case and the accompanying Bar grievances became almost too taxing for two people and the lawyer who was attempting to respond to the work that five to ten other lawyers were producing.

**On a Sunday, when Millard Farmer was in the office alone just before the time allotted for the in limine motion and memo was due**

The brother of the paralegal, a domestic relation, rural local type of lawyer called Millard Farmer screaming to the top of his voice in such an irrational manner that

Millard Farmer could not understand much of what he was attempting to communicate. This lawyer announced that his family had met with Millard Farmer's paralegal and made a decision about her health, or some such words. The family had decided that Millard Farmer could never talk to his paralegal again about anything and that she and her husband agreed she was to immediately quit her work of thirty-one years and find some other job, or something close to those words that implied a threat.

 The one clear thing that he stated was that the paralegal was to never work another day at the law office and that if Millard Farmer called her, or even asked her anything about work that this brother would do something to Millard Farmer that he did not understand.

Millard Farmer learned from some type of communication from his paralegal that she could not deal with the stress level of the moving to a different office and responding to the RICO case. Millard Farmer knew this was a serious matter, as his paralegal never had to be asked to do extra work, she was the person who required others to perform at her level. The paralegal quit without notice or preparation except that call from her brother and could not talk to Millard Farmer. She has not been to

the office since that day, but did confirm that she was sick and could not work at any level at the office or from home.

Millard Farmer's son's wife, whose discipline is that of an educator agreed to attempt to learn how to electronically file documents with the assistance of a lawyer who stated he could help her learn on a Thursday or Friday on the day that the limine motion was to be filed. Millard Farmer was to additionally assume the other responsibilities of his paralegal. The volunteer educator had no opportunity to proof read the document that Millard Farmer was preparing.

The content of the document was deserving of the content provided in the absence of the paralegal the document could have been proof read by the educator had the lawyer who was to give the educator the security that she had properly learn to file a document on the last day that it was due.

The document was filed. The content and representations in the document are true.

It was an error to strike the Motion and Memo that violated the Fourteen Amendment Due Process Protections, Equal Protection and First Amendment Protections of Millard Farmer and other persons relying upon Millard Farmer to file the motion in limine that he committed to  file including the paralegal who was accused in the Complaint, the unknown to Millard Farmer Trustee in Bankruptcy and the other defendants.

Millard Farmer requests that the Motion to Strike be stricken, and that Millard Farmer be allowed to present evidence in support of the Motion in limine, the filing of the documents and such other an further matters as justice may require.

Due to weather conditions in DeKalb County GA and the absence of consistent internet services at the new office of Millard Farmer until September 13, 2017 this attempt was not made sooner.

This unequivocal apology is, as humble and submissive to the Court's authority as a person can beg forgiveness for something that the person knows was a judicial error that the Court for fairness to Millard Farmer and the benefit of the people in Newnan Decision of Georgia should not make.

Millard Farmer has the utmost respect for the Rule of Law. In fact, it was Millard Farmer's utmost respect for the law that caused him to exceed the Court's limit of 25 pages that it placed upon Millard Farmer for the motion and the 25 pages for the memorandum of law. The Civil RICO case against Millard Farmer is a continuation of the illegal conduct of counsel for the Plaintiff. Litigating about litigation with an Ashcroft *v. Iqbal* not compliant Complaint that attempts to assert **extortion, as required to state a cause of action,** as the motivation for each of the constitutional rule of law protections that  the Plaintiff now attempts to have a jury of lay person adjudicate against

Millard Farmer for representing a client that required twenty (20) motions against the hand selected judge to have the removed from the case. The voluntarily recusal of each of the judges in the Coweta Judicial Circuit followed the Coweta Judicial Circuit for the first time since 1985 enforcing a Case Management Plan that prevents lawyers from hand selecting judges and judges from selecting cases. This Plan levels the playing field for the clients of Millard Farmer who do not have a lawyer that goes to clubs fund raisers with judges, or send judges campaign contributions.

It is amazing to Millard Farmer the number of persons who so detest the political aspect of the judicial process that they seek him out to tell about the conduct that is a part of the Civil RICO case. Millard Farmer did not begin the Murphy litigation to get "Taylor Drake," who is the son of a childhood friend and highly respected friend of Millard Farmer, whose grandfather was responsible for establishing one of the best public school system of its time that Millard Farmer attended.     Unsolicited informants revealing conduct about Taylor Drake and Glover & Davis came forth because this lawyer and his law firm did not live up to the Drake level, or even the level that the law required of him.

14

The motion in limine sought in its support an opportunity to obtain and present spoliated evidence.  The insinuation that the corrupt judicial conduct is some type of grandstanding is some of the bias created by the Plaintiff's counsel if the bias exists. The public relations expert for the Plaintiff's interest, Patrick Crosby, has generated the type of interest in the Civil RICO case that the Plaintiff's lawyers have brought the Civil RICO case to quell. Each of Plaitiff's experts had created cottage industry niches that have resulted in a fair dispute resolution solution that could another injury to one of the children. There were other unavoidable circumstances and justifiable fears that prevented Millard Farmer from filing for an extension of the limitation upon the number of pages.

The case was "administratively closed with exceptions." Millard Farmer understood that he would have an opportunity to file a motion in limine by the close of business on Friday September 1, 2017. This administrative closure, Millard Farmer believes was, in part the result of one of the Civil RICO predicate act defendants filing a suggestion of bankruptcy. Millard Farmer was not involved in the bankruptcy in any manner at any stage.

Millard Farmer had no communications with the Bankruptcy Attorney who filed the suggestion of bankruptcy and has reason to believe that the bankruptcy attorney is familiar with information available to Millard Farmer related to the large number of people involved in the Plaintiff's lawyers' illegal conduct. That reason justifies the Court allowing the in limine being filed as presented to the Court.

Millard Farmer and the Trustee in Bankruptcy have an interest in the in limine Motion not remaining struck. The apportion of liability laws of Georgia are relevant to the triers of fact having the full scope of information.

The striking of the motion in limine abridges the Fourteenth Amendment Due Process, Equal Protection and First Amendment Protections of Millard Farmer.

16

Millard Farmer and the Trustee in Bankruptcy have an interest that the Court not abridge in the representation of the defendants, who are legally charged with predicate acts attributed to Millard Farmer. Millard Farmer assumed that the Trustee in the Bankruptcy would have a fiduciary obligation to learn of the serious criminal conduct that the Plaintiff's lawyers were involved.

Millard Farmer did not represent Michelle Murphy in the modification of custody case after each of the judges in the Coweta Judicial Circuit recused themselves; however he obtained the transcript of the hearing that Plaintiff's RICO lawyer did participate.

Millard Farmer was familiar with the illegal tactics used to prevent the record and the public from having information about the spoliation of evidence that included such Orders by the Senior Judge who replaced Judge Baldwin as follow. In the event Defendant Michelle Murphy refuses to terminate all social media, or refuses to remove all existing postings from the Internet, a civil contempt fee of $500 will be imposed against Michelle Murphy and her attorney, Millard Farmer, jointly and until such time as the social media postings are removed or until the final conclusion of the case.

It was Millard Farmer's error in judgment that once the Court was exposed to illegal conduct of the illegally hand selected judge that the Court would consider the grammar errors and extra pages of lesser importance than the violation of the page requirements.

The respect that Millard Farmer has for the law includes the most minute rules to the broadest of constitutional protections, provided to us by the United States Supreme Court.

The respect that Millard Farmer has for the Court includes its authority and its designated jurist who breathe life into the rule of law's constitutional protections.

Judges need timely provided extensive information to separate their preconceived opinions and absence of preconceived opinions from information upon which a constitutionally based judgment can be rendered and without which an infirm rule of law constitutional protections could be rendered.

Millard Farmer did not provide the Court the information in the manner that the Court sought information before the Court issued its Order [105]1. This was an error in judgment by Millard Farmer and Millard Farmer's understanding the waiver time restraints for the filing of a motion in limine.

18

Millard Farmer's flawed judgment was that the information provided the Court implicitly justified exceeding the limitation upon the Court's number of allowed pages. In legal terms Millard Farmer could have rationalized that the Court would apply a crime fraud/whistle blower/spoliation of evidence exception to its striking of the in limine motion page limitation and grammar errors striking Order. The error of Millard Farmer's judgment was not intended as a personal or institutional affront to the Court.

Respectfully submitted,

/s/ Millard Farmer
Millard Farmer
Georgia Bar No. 255300
P.O. Box 1728
Atlanta, GA  30301-1728
(404) 688-8116
*millardfarmer@millardfarmer.com*
**Counsel for Millard Farmer**

CERTIFICATE OF COUNSEL

I certify that this motion meets all requirements of the Local Rules of the United States District Court for the Northern District of Georgia, regarding margins, line spacing and that a 14 point, Times New Roman Font was used. This 14th day of September, 2017

.    /s/Millard Farmer

19

**Request for Relief**

 Request that Millard Farmer be provided an opportunity to support this motion and that the motion to strike to be stricken and for such other and further relief as justice requires.

<u>Millard Farmer's Request to file apologetic Response</u>
<u>/s/</u>Millard Farmer


Respectfully submitted,

<u>/s/ Millard Farmer</u>

Millard Farmer

Georgia Bar No. 255300

P.O. Box 1728

Atlanta, GA  30301-1728

(404) 688-8116

*millardfarmer@millardfarmer.com*

20

Counsel for Millard Farmer

## CERTIFICATE OF COUNSEL

I certify that this motion meets all requirements of the Local Rules of the United States District Court for the Northern District of Georgia, regarding margins, line spacing and that a 14 point, Times New Roman Font was used.

This 14th day of September 2017

.

/s/Millard Farmer

Millard Farmer

## CERTIFICATE OF SERVICE

I hereby certify that counsel for all parties, are designated to receive electronic notification at the email address listed below, of the Motion in limine with Memo and attachments filing of Millard Farmer, as counsel for Millard Farmer.

Wilmer Parker
Maloy Jenkins Parker
*parker@mjplawyers.com*

21

Johannes Stuart Kingman

   jkingma@carlockcopeland.com, jfreeman@carlockcopeland.com


John Colquitt Rogers

jrogers@carlockcopeland.com,

 kbeazer@carlockcopeland.com


Millard Farmer, millardfarmer@millardfarmer.com,


Shannon D. Briley-Holmes

 shannonbrileyholmes@gmail.com

Wilmer Parker , III

 parker@mjplawyers.com,mjpassistant@gmail.com, sramirez@mjplawyers.com


3:15-cv-00092-TCB Notice has been delivered by other means to:


My Advocate Center, Inc.

c/o Deborah L. Beacham

3025 Bluffton Way

Roswell, GA 30075


     This 14th day of September, 2017.


     /s/ Millard Farmer

     Millard Farmer