## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA NEWNAN DIVISION

JOHN N. MURPHY,

     PLAINTIFF,

     vs.                                 Civil Action No.  3:15-cv-92-TCB

MILLARD C. FARMER, JR.

     DEFENDANT.

### BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL

### I. THE VERDICT IS INCONSISTENT, CANNOT BE RECONCILED AND A NEW TRIAL IS REQUIRED

The Court charged the jury on the federal and state RICO claims in about the same language. (R1-125).

The charge on the federal RICO claim appears at pages 5-6. Plaintiff was required to prove:

1) The existence of an enterprise;

2) The enterprise engaged in, or had some effect on, interstate or foreign commerce;

3) Mr. Farmer was associated with the alleged enterprise;

4) Mr. Farmer participated, either directly or indirectly, in the conduct of the affairs of the enterprise;

5) Mr. Farmer participated through a pattern of racketeering activity.

1

At pages 16-17, the Court charged on the state RICO claim.

## Count 3: Georgia RICO Claim

The Georgia RICO statute also makes it unlawful for any person to be associated with any enterprise to conduct or participate in, directly or indirectly, a pattern of racketeering activity.

An "enterprise" means any person, sole proprietorship, partnership, or legal entity, or any association or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental as well as other entities. A Georgia RICO enterprise can consist of the single individual person charged with engaging in racketeering conduct.

1) O.C.G.A. § 16-8-16: Theft by extortion;

2) O.C.G.A. § 16-10-2: Bribery;

3) O.C.G.A. § 16-10-93: Influencing witnesses;

4) O.C.G.A. § Intimidation of a Court Officer;

5) O.C.G.A. § 1952: Interstate travel in aid of racketeering;

6) O.C.G.A. § 16-5-45: Interference with custody;[1]

The Court did not charge the jury that it could only hold Mr. Farmer liable for federal or state RICO, but not both.

---

[1] Defendant has not included predicates which the jury did not find.

The jury found that defendant had not violated the federal RICO statute. That is, the jury must have found one of the elements lacking.

A good place to start is the second element of the federal RICO. If the jury found Mr. Farmer had not engaged in an enterprise engaged in, or had some effect on interstate or foreign commerce, then the finding at page 5 of the jury verdict that Mr. Farmer violated §1952, is completely inconsistent with finding that enterprise had not engaged or had some effect on interstate commerce. See e.g. United States v. Coran, 589 F. 2d 70, 72 (1st Cir. 1978); United States v. Corona 885 F. 2d 766 (11th Cir. 1989); United States v. Corrar, 512 F. Supp. 2d 1280, 1285 (N.D. Ga. 2007).

This would mean that the jury found that the defendant had engaged in or had some effect on interstate commerce.

The problem is that the other elements of the federal and state RICO statute are the same, see e.g. Stanton v. Shearson Lehman/American Exp., 622 F. Supp. 293 (N.D. Ga. 1985); Williams General Corp. v. Stone, 279 Ga. 428, 430 (2005), and the Court so charged. Compare the charge at R1-125 pages 5 and 6 with page 16.

In United States v. Boldin, 772 F. 2d 719, 728 (11th Cir. 1985), the Court noted:

> The RICO statute requires proof of at least one element
> that Section 1952 does not, section 1952 requires the

> existence of an 'enterprise' proof of which must be
> separate from the 'pattern of racketeering activity' both
> statutes appear to require.

In other words, the only way that an offense under 18 U.S.C. § 1952 does not prove an offense under RICO, is if there is no enterprise under RICO which is proven. But if no enterprise under federal RICO was proven, how could an enterprise under state RICO be proven? See Simpson v. Sanderson Farms Inc., 744 F. 3d 702 fn. 1 (11th Cir. 2014).[2]

The Court did note in its earlier decision at 176 F. Supp. 3d 1325 fn. 20, a significant difference between federal RICO and state RICO which was that state RICO did not require a showing of continuity. But compare Gaylord v. Ocwen Loan Servicing, LLC., 2013 WL 12291744 (N.D. Ga. 2013) slip at 16. No Georgia case has ever cited Judge Story's opinion in Eades. As Judge Edenfield persuasively argues in Southern Intermodal Logistics, Inc. v. D.J. Powers Co. Inc., 10 F. Supp. 2d 1337, 1359 (S.D. Ga. 1998), "The Georgia Courts…have not specifically decided whether there is any distinction between 'acts' and incidents."[3] He goes on to note citing any number of cases, "The Court does discern, however, a predominant theme: the two alleged predicate incidents must be sufficiently 'linked' to form a RICO pattern…" Id. at 1359. In other words, the distinction may

---

[2] There was no allegation by plaintiff that O.C.G.A. § 16-14-4(a) was involved. (R1-95-18).

[3] O.C.G.A. § 16-14-3(a) has been amended since his opinion.

4

be simply one of semantics. Compare <u>Pierson v. Zuber</u>, 2010 WL 11496944 (N.D. Ga. 2010) slip at 12. The Eleventh Circuit has endorsed Judge Edenfield's reading, <u>see</u> <u>McGinnes v. American Home Mortgage Servicing Inc.</u>, 817 F. 3d 1241, 1251 (11th Cir. 2016), in an opinion issued a few days before this Court's summary judgment order and after Judge Storey's <u>Eades</u> opinion. (Although ultimately, the Court did not reach the issue).

The Eleventh Circuit has held that "reversal for a new trial is required if one critical answer in a special verdict is inconsistent with each other," <u>Aquachem Co., Inc. v. Olin Corp.</u>, 699 F. 2d 516, 521 (11th Cir. 1983), <u>see</u> <u>Griffin v. Matherne</u>, 471 F. 2d 911, 916 (5th Cir. 1973); <u>Fugitt v. Jones</u>, 549 F. 2d 1001, 1005-1006 (5th Cir. 1977), since the Court can "not speculate which inconsistent finding the jury intended to be controlling." <u>Miller v. Royal Netherlands S.S. Co.</u>, 508 F. 2d 1103, 1106 (5th Cir. 1975).

Defendant wishes to be clear on this point. Had the jury not found a violation of 18 U.S.C. § 1952 in its finding of liability for Georgia RICO, he has no doubt that the verdict would not be inconsistent. The problem is that the jury determined that 18 U.S.C. § 1952 had been violated but not 18 U.S.C. § 1962 because of the lack of interstate commerce. Is that the inconsistency? Or is the inconsistency that consistent with the finding that defendant violated 18 U.S.C. §

1952 that the failure of proof related to anyone of the other four elements? This

Court can not speculate what the jury meant.

The verdict is inconsistent as a matter of law and a new trial is demanded.

## II. SINCE THE FEDERAL RICO CASE WAS UNPROVEN TO THE JURY THE STATE RICO CASE SHOULD HAVE BEEN DISMISSED

In Morast v. Lance, 631 F. Supp. 474, 482 (N.D. Ga. 1986), the Court held:

> Plaintiff's claim under Georgia's RICO statute, O.C.G.A.
> § 16–4–1 et seq., mirrors his federal RICO claim. The
> terms of section 16–14–6(c) (persons injured by reason
> of section 16–14–4 have a cause of action) and section
> 16–14–4 (prohibited activities) are similar enough to the
> federal RICO statute to apply the same analysis. For the
> reasons stated above, the motion to dismiss will be
> granted.

The Eleventh Circuit affirmed 807 F. 2d 926, 933 (11th Cir. 1987). Accord

Simpson v. Sanderson Farms, Inc., 2012 WL 4049435 (M.D. Ga. 2012) fn. 3 aff'd.

744 F. 3d 702 (11th Cir. 2015) fn. 1. See also In re Turner, 2017 WL 1214410 (S.D.

Ga. 2017) (Bank) at fn. 23; Cox v. Mayan Lagoon Estates, Ltd., 319 Ga. App. 101,

108-109 (2012). Counsel has found no state decision where plaintiff prevailed on

his state RICO claim, but not his federal RICO claim.

## III. THE PERTINANT TRIAL TESTIMONY

## A. MELISSA SAMS

The entirety of Melissa Sams' testimony did not prove one element of the

Georgia RICO case. It would have supported a verdict for abusive litigation, but

not Georgia RICO. As this Court noted in <u>Murphy v. Farmer</u>, 176 F. Supp. 3d

1325, 1347 (N.D. Ga. 2016), it "is the exclusive remedy for abusive litigation in

Georgia." <u>See</u> <u>Stone v. Myers</u>, 288 Ga. App. 8 (2007). As Judge Barnes in <u>Rogers</u>

<u>v. Dupree</u>, 340 Ga. App. 811 (2017), described <u>Stone</u>, concurring and dissenting in

part, at 847:[4]

> Whether a claim is one for abusive litigation depends on
> the substance of the claim rather than its style. <u>Meadow</u>
> <u>Springs Recovery, LLC v. Wofford</u>, 319 Ga. App. 79, 82
> (1), 734 S.E. 2d 100 (2012). For example, two
> dispossessed tenants sued the lawyer who brought the
> dispossessory action against them, among other
> defendants, claiming to be "the victims of a conspiracy to
> bolster the fortunes of a property management company
> that unjustly enriches itself by illegally dispossessing
> tenants." <u>Slone v. Myers</u>, 288 Ga. App. 8, 9, 653 S.E. 2d
> 323 (2007), overruled on other grounds, <u>Reeves v. Upson</u>
> <u>Regional Med. Center</u>, 315 Ga. App. 582, 726 S.E. 2d
> 544 (2012). The trial court properly dismissed the claim
> because the tenants failed to give the lawyer proper
> notice under the abusive litigation statute. Id. at 11 (2),
> 653 S.E. 2d 323. Although the former tenants sued "for
> torts other than abusive litigation, specifically a pattern of
> racketeering activity with predicate acts of perjury,
> forgery, and theft [, t]he wrongful acts which they allege
> ... all occurred during litigation of the dispossessory
> action," and they could not avoid the requirements of the
> statute merely by characterizing their claims arising from
> the allegedly abusive lawsuit as some other cause of
> action. <u>Id</u>. at 11 (2), 653 S.E. 2d 323.

---

[4] The majority was careful to emphasize that 51-7-81 did not apply because of pre-
litigation criminal activity.

## B. NAN FREEMAN

The same can be said of the testimony of Nan Freeman. Her testimony made two points—one was that defendant sued her (T-129) which is conduct covered by the abusive litigation, if at all, and defendant filed a formal complaint with the district attorney (T-130) and Board of Court reporting (T-150), which is a right under Art. I, Sec. 1, Para. IX; see Northeastern R.R. v. Harris, 59 Ga. 364 (1877), and the First Amendment, see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F. 3d 83, 91 (2d Cir. 2002).

## C. KEN GORDON

Mr. Gordon's testimony relates to the claim of bribery at T-157-158.[5] Giving plaintiff the benefit of every inference, at most, plaintiff has not proven bribery or attempted bribery. As the Court flatly said at T-158:

> I am not going to do it… He said, I am not doing it.

But the testimony at T-158-159 makes clear that however defined (and defendant discusses this at 19 et seq.) no bribe was offered.

> You don't even need to tell me what it is. I am not going to do it. And then I told him anyway…) don't think he knew what it was. I think he speculated that he knew what it was.

---

[5] Again, there is testimony of litigation barred by O.C.G.A. § 51-7-81.

(Emphasis added). Clearly Mr. Gordon did not think he was offering a bribe. There is no evidence beyond this conversation, nor is there evidence that Mr. Gordon even reported the result of his conversation to defendant.

## D. RENEE HAUGERUD

Again, most of Ms. Haugerud's testimony related to conduct that is covered by O.C.G.A. § 51-7-81. What she is testifying to use to be called malicious use of process. Such tort applied "when the plaintiff in a civil proceeding willfully misapplie[d] process of the court in order to obtain an objective such process was not intended by law to achieve." Cooper v. Public Finance Corp., 146 Ga. App. 250, 254 (1978). The tort was, of course, abolished by Yost v. Torok, 256 Ga. 92 (1986) which led in turn to O.C.G.A. § 51-7-81. (T 167-172, 174-176, 191).

Extortion is testified to twice, T 171-172 and T-192 but Ms. Haugerud's idea of extortion is exorbitant demands to settle a lawsuit, which is itself covered by O.C.G.A. § 51-7-81.

## E. DR. PATRICIA NICE

Dr. Nice testified that she was intimidated under O.C.G.A. § 16-10-93. Defendant asked her to be a witness (T-263). Not surprisingly, like any other attorney, he hoped for favorable testimony but in November of 2012, she couldn't give such testimony. (T-265). Like any other attorney, Mr. Farmer pressed her to

see if in good faith she could change her mind, id. ("He was telling me…positive things about Michelle Murphy"), but he would not tell me to lie. Id.

The pressure she referred to was based on something she had heard when she tried to hire him the year before (T-262, 266). Nevertheless, the defendant did absolutely nothing to stop her from testifying and she did so. Id. at 266. Even in the court proceedings where she testified unfavorably toward his client, defendant did not use any personal knowledge. One year later she says he released damaging information. Id. at 267. (See discussion of influencing witnesses at page 21).

F. DR. NANCY MCGARRAH

Dr. McGarrah was to be a custody evaluator until defendant filed a motion to disqualify her. (T-318). Such conduct is to be sanctioned if at all under the abusive litigation statute. She also says she withdrew because defendant was gathering information on her. (T-319, 322). If this Court goes to Westlaw, there is a page solely devoted solely to experts by type and jurisdiction. Any lawyer involved in litigation will want to know something about the expert involved in that litigation. This conduct is neither influencing a witness nor intimidating a witness. See Markowitz v. Wieland, 243 Ga. App. 151 (2000).

G. BRIAN MCLENDON

10

Mr. McLendon drove for Mr. Murphy as a chauffeur and ended up giving two affidavits in litigation. There is no evidence of record that it was coerced in anyway by Mr. Farmer. As he stated at T-339:

> Q. I was fair to you on all of the times that we met and have been all the way through life together; is that correct?
>
> A. Yes, I would have to say that.

Although he mentions the Newnan paper (T-334) and social media, he himself was never attacked in the social media. (T-334).

## H. SUSAN BROWN

Susan Brown is an attorney. (T-340). Her entire testimony is about conduct that comes under the abusive litigation statute.

## I. WILLIAM POPLIN

Mr. Poplin is a partner with Kilpatrick, Townsend & Stockton who has represented Mr. Murphy and Ms. Haugerud (T-390). He presented invoices which cover actions that are barred by O.C.G.A. § 51-7-8. It includes work in the Georgia Court of Appeals (T-391), actively relating to Nan Freeman.

## J. JOHN MURPHY

What is truly surprising is how little Mr. Murphy testified (T-378-390). Respectfully, it is because few of the predicate acts were directed against him.

His testimony consist of his ex-wife saying she'd have to pay defendant

$500,000 (T-379). Again he talks about litigation. Id. at T-379-380. He says he

spent $288,589.50:

> to defend the court orders based on the litigation filings
> of Mr. Farmer.

Id. at 381. And yet again we are back in abusive litigation territory. In point of fact,

he makes it clear, the fees paid "directly relate to handling the appeals in the Court

of Appeals" and "social media use." (T-384).

## IV. PREDICATE ACTS

As Judge Edenfield noted in D.J. Powers Co. Inc., supra at 1359:

> The Court does discern, however, a predominant theme:
> the two alleged predicate [acts] must be sufficiently
> 'linked' to form a RICO pattern, but nevertheless
> distinguishable so that they do not become 'two sides of
> the same coin.'

Citing Raines v. State, 219 Ga. App. 893, 894 (1996) and Stargate Software Int'l.

v. Rumph, 224 Ga. App. 873 (1997).

The Court at 176 F. Supp. 3d 1349 indicated its disagreement with this

argument because of "the express language of the statute. As pointed out above,

the Eleventh Circuit in McGinnis, supra, cast doubt on this Court's holding. At fn.

8, the Eleventh Circuit cites post 2001 case law. Most important are Pollman v.

Swan, 314 Ga. App. 5 (2011), Smith v. Chemtura Corp., 297 Ga. App. 287 (2009), and Overton v. State, 295 Ga. App. 223 (2008).[6]

This Court noted that at the pleading stage, the cases cited by the King defendants:

> involved a single event or a discrete transaction. Here, the racketeering activity is held to a single purpose, but Murphy alleges a variety of separate criminal acts, ranging from extortion and intimidation of witnesses to kidnapping,[7] in furtherance of that purpose…[t]he acts alleged in the complaint constitute several separate events and transactions.

Earlier, the Court had discussed:

> Kidnapping, kidnapping for extortion, interference with child custody and wire fraud.

All of the charges were found not to have occurred by the jury except for interference with custody (which should have been barred for reasons discussed at page 18, 19).

Given that many of the charges the Court relied on (and defendant argued at R-45 page 18) and "variety of separate criminal acts," see McGinnis below, the Court should reevaluate its holding.

---

[6] Most respectfully, while this Court is not bound by other District Judges or Eleventh Circuit dicta, it is bound by Georgia Courts on Georgia law. In making this statement, defendant recognizes that the Court provided an alternative rationale for its holding which defendant discusses below.

[7] The jury herein did not find kidnapping.

In McGinnis, supra, the Court explained at 1252-1254:

> Georgia courts have held that "[a] pattern requires at least two interrelated predicate offenses," Brown v. Freedman, 222 Ga. App. 213, 474 S.E. 2d 73, 77 (1996), and such acts must be linked, but distinguishable enough to not be merely "two sides of the same coin." S. Intermodal Logistics, Inc. v. D.J. Powers Co., 10 F. Supp. 2d 1337, 1359 (quoting Raines v. State, 219 Ga. App. 893, 467 S.E. 2d 217, 218 (1996)).

> Under the traditional analysis, the facts in this case constitute a single extended transaction—and the two predicate acts asserted by McGinnis (i.e., theft by conversion in the taking of fees from the funds in the suspense account, and theft by taking in the wrongful foreclosure of the property) are most accurately viewed as "two sides of the same coin."

> Homeward increased the McGinnis's escrow payment on the loan on the 172 Hilton Street Property, and McGinnis disputed the increase; according to the procedures laid out in the security deed, McGinnis's payments were (if wrongly) deemed partial, were consistently placed in a suspense account, resulting in the continual accrual of late fees and other fees; after a lengthy dispute about the escrow payment increase, Homeward foreclosed on the property. Although Homeward's misconduct manifested itself through various acts over this timeline, it all came down to a single core thread: Homeward failed to back down from and correct a significant and evident miscalculation in its demanded escrow payment from November 2009 to March 2010. Everything that occurred regarding McGinnis's loan on the 172 Hilton Street property—and everything that happened in lockstep with the other six loans, according to the family rider provision that tied the loans together—was the logical (if wrongful) result of that same core thread of misconduct. Thus, under the

pre–2001 amendment approach, the district court correctly granted summary judgment on this claim.

Even assuming, arguendo, that the 2001 amendment to the Georgia RICO Act theoretically permits a claim to proceed involving only a single transaction, McGinnis's claim would still fail.

Under the amended language, to demonstrate a "pattern of racketeering activity," a plaintiff must show "at least two [predicate] acts of racketeering activity." § 16–14–3(4)(A). Thus, just as courts sought evidence of two or more "incidents of racketeering activity" under the older language, the newer text still calls for courts to look for evidence of at least two predicate acts—and both versions of the statute include essentially the same laundry list of predicate offenses that are encompassed by the statute, including theft. Compare O.C.G.A. § 16–14–3(9)(ix) (2000) (including "Article 1 of Chapter 8 of this Title, relating to theft"), with O.C.G.A. § 16–14–3(5)(A)(xii) (2015) (including "Theft in violation of Article 1 of Chapter 8 of this title").

Accordingly, it still falls to courts to inquire into whether a defendant has committed two or more predicate acts in order to determine if the defendant has engaged in a pattern of such acts—as opposed to an isolated act. However, even speaking in these terms, the concern still remains that "the two alleged predicate incidents must be sufficiently 'linked' to form a RICO pattern, but nevertheless sufficiently distinguishable so that they do not become 'two sides of the same coin.' " S. Intermodal Logistics, Inc., 10 F. Supp. 2d at 1359 (quoting Raines, 467 S.E. 2d at 218). Hence, while alleged predicate acts can be too dissimilar and disconnected to constitute a pattern of racketeering activity, such acts can also be too indistinguishable to give rise to such a pattern—even if a court could technically ascribe more than one criminal offense to different aspects of the conduct.

15

Under this reading, the two predicate acts asserted by McGinnis are still most appropriately viewed as "two sides of the same coin." Again, everything that occurred regarding McGinnis's loan on the 172 Hilton Street property was the logical result of that same core thread of misconduct. Thus, even under McGinnis's reading, Homeward's essential actions were not sufficiently distinguishable predicate acts to constitute a pattern of racketeering activity, and the district court correctly granted summary judgment on this claim.

Likewise, everything alleged by plaintiff were "the logical result of that same core thread of misconduct"…"even if a court could technically ascribe more than one criminal offense to different aspects of the conduct." See Robert L. Franklin Trustee of Global Liquidating Trust v. Consus Ethanol LLC, 2012 WL 3779093 (N.D. Ga. 2012) slip at 3-4 and cases cited; Foxworthy Inc. v. CMG Life Services, Inc., 2012 WL 1269127 (N.D. Ga. 2012) slip at 7.

After going through the testimony, and ignoring barred by abusive litigation, it is absolutely clear that one transaction was involved. Every single witness testified that this conduct related to a post-divorce marital dispute involving Mr. and Ms. Murphy. Indeed, the only alleged conduct, that did not relate to the child custody, related to the QDRO. In McGinnis, supra, there were seven houses involved and the Court found a single transaction or conduct "most appropriately viewed 'as two sides of the same coin.'"

16

V. PROXIMATE CAUSE

There is another requirement for a RICO case and that is proximate

cause/standing—that is injury.

In Smith v. Morris, Manning & Martin, LLP, 293 Ga. App. 153 (2008), the

Court explained at 165-166:

> "A private RICO plaintiff must show a direct
> nexus between at least one of the predicate acts listed
> under the RICO Act and the injury it purportedly
> sustained. To establish this nexus, the plaintiff must show
> that one of the predicate acts directly harmed it, not a
> third party." (Punctuation and footnote
> omitted.) Schoenbaum Ltd. Co. v. Lenox Pines, 262 Ga.
> App. at 470(8)(c), 585 S.E. 2d 643.
>
> But even if Smith and Premier can establish they
> were the intended targets of one or all of these predicate
> acts, we find that their RICO claim fails because they
> cannot establish that any of these acts resulted in their
> claimed damages. In order to survive summary judgment,
> Smith and Premier were required to show that their injury
> flowed directly from the predicate acts targeted at them,
> "not merely that [their] injury was an eventual
> consequence of the [acts] or that [they] would not have
> been injured but for the [acts]." Maddox v. Southern
> Engineering Co., 231 Ga. App. 802, 806(1), 500 S.E. 2d
> 591 (1998).

See Carpenter v. Mohawk Industries, Inc., 2010 WL 11508551 (N.D. Ga. 2010)

slip at 16 aff'd. 479 Fed. Appx. 206 (11th Cir. 2012); Rosen v. American Guarantee

& Liability Ins. Co., 503 Fed. Appx 768 (11th Cir. 2013) slip at 3. At all times,

plaintiff has acted as such requirement did not exist, see R-45 pages 4-5 and the case was tried exactly that way.

Six predicate acts were found by the jury. Defendant has explained why 18 U.S.C. § 1952 and O.C.G.A. § 16-5-45 cannot stand.

The testimony of Mr. Gordon, even if it shows attempted bribery which it does not, doesn't show injury to Mr. Murphy.

The alleged attempted extortion of Ms. Haugerud does not show injury to Mr. Murphy, particularly since Ms. Haugerud never paid any money to anyone.

Nor does the alleged intimidation of Ms. Freeman show any injury to Mr. Murphy.

The alleged influencing of Dr. Nice does not show injury to Mr. Murphy.

Dr. McGarrah's alleged intimidation does not show injury to Mr. Murphy.

The influencing of Mr. McClendon does not show injury to Mr. Murphy.

## VI. THERE WERE SIX PREDICATE ACTS FOUND BY THE JURY.[8]
### A. INTERFERENCE WITH CUSTODY, A MISDEMEANOR, CANNOT BE A PREDICATE ACT

In its order, the Court discussed whether the violation of O.C.G.A. § 16-5-45 could be a predicate act. It seems to defendant that Clark v. Security Life Ins. Co.,

---

[8] As pointed out above, one of those predicate acts, 18 U.S.C. § 1952, is completely inconsistent with the finding that 18 U.S.C. § 1961 et seq. has not been violated.

270 Ga. 165 (1998), and the rationale of <u>Byrne v. Nezhat</u>, 261 F. 3d 1075, 1113

(11th Cir. 2001), answer that question. This Court concluded:

> Taking guidance from <u>Byrne</u>, the Court concludes that it
> need not decide this issue now because even if
> interference with child custody does not constitute
> racketeering activity, Murphy has alleged other predicate
> acts that do.

As the list of predicate acts dwindle, the Court can no longer put off that decision.

<u>Clark</u> is directly on point.

### B. AS A MATTER OF LAW, PLAINTIFF DID NOT PROVE
### THE ATTEMPTED PREDICATE ACT OF ATTEMPTED BRIBERY

The evidence of bribery appears at page 56 (plaintiff's argument) and T 157-

158, 162-168, but does not show bribery because the evidence shows no "benefit,

reward, or consideration to which he or she is not entitled." What benefit was

offered to the Superior Court Judge that the Superior Court Judge was not entitled

to under O.C.G.A. § 16-10-2. Is there any law that prohibits him from taking care

of his court reporter?

More to the point, plaintiff did not prove that "anything of value" was

offered. There is a list of things which are not considered a thing of value in

O.C.G.A. § 16-10-2(a)(2), which means that the term is not as broad as it appears.

Writing in 1992, after the seminal case of <u>State v. Agan</u>, 259 Ga. 541 (1989),

the United States Magistrate in <u>United States v. Ward</u>, 808 F. Supp. 803 (S.D. Ga.

1992)[9] noted at 811:

> The reported attempted bribery cases have involved at
> least an offer of money to a state official or his
> representative[10]

---

[9] The Magistrate's opinion begins at 809. It appears that his recommendation regarding RICO was not objected to.

[10] To be sure, under the federal bribery statute, intangibles may constitute "anything of value." <u>United States v. Townsend</u>, 630 F. 3d 1003, 1010 (11th Cir. 2011). The Court then cites to <u>United States v. Marmolejo</u>, 89 F. 3d 1185, 1191-1193 (5th Cir. 1996). That Court also cites to <u>United States v. Gerard</u>, 609 F. 2d 69 F. 2d 69, 71 (2d Cir. 1979), which cites to <u>People ex rel. Dickinson v. Van DeCarr</u>, has been limited. In <u>People v. Hyde</u>, 141 N.Y.S. 1089, 1093-1094 (N.Y. A.D. 1913) the Court distinguished <u>Van DeCarr</u>:

what is commonly known by the collective word "bribe," is something more than the personal satisfaction arising from the gratification of a wish. There must be something more flowing to the person who asks the favor —something of value to him, not necessarily of pecuniary or intrinsic value, but value in the sense of a personal advantage of some sort. The word "advantange" (sic) must be given its commonly accepted and natural meaning of something accruing to the benefit of the person receiving it.

> To repeat, a "bribe" is a gift or gratuity (not necessarily
> of pecuniary value) bestowed for the purpose of
> influencing the action or conduct of the receiver. It must
> consist of something real, substantial, and of value to the
> receiver, as distinguished from something imaginary,
> illusive, or amounting to nothing more than the
> gratification of a wish or hope on his part.

As the Court noted in <u>United States v. Davis</u>, 183 F. 3d 231, 245 (3rd Cir. 1999), "Hyde is still commonly cited." (Benefit that officer wanted person to be sent to jail or murdered). <u>Compare</u> <u>People v. Esposito</u>, 545 N.Y.S. 2d 468 (S.Ct. 1989), affirmed 554 N.Y.S. 2d 16 (N.Y. A.D. 1990), appeal denied 76 N.Y. 2d 787 (1990)

Judge Dunsmore did note correctly, that under Georgia law "an offer is itself

bribery and not just an attempt. Hence, an attempt may consist of a <u>substantial</u> step

toward offering money or other consideration to a state official…" <u>Id</u> at 811. <u>See</u>

O.C.G.A. § 16-4-1. A discussion with another person is not an attempt. <u>See</u> <u>Evans</u>

<u>v. State</u>, 216 Ga. App. 21, 23 (1995).

> ("Evan and Tinch's discussion regarding the theft of a car
> stereo and their possession of tool to aid in the
> commission of such a theft, without more, would not
> have amounted to an attempt to enter an automobile, but
> merely would have been preparatory acts not proximately
> leading to the consummation of the crime of entering an
> automobile.")

<u>Compare</u> <u>Carpenter v. State</u>, 167 Ga. App. 634 (1983)

As a matter of law, this predicate act fails.

### C. AS A MATTER OF LAW PLAINTIFF DID NOT PROVE THE PREDICATE ACT OF INFLUENCING WITNESSES

In <u>Markowitz v. Wieland</u>, 243 Ga. App. 151 (2000), the Court explained:

> (c) Influencing Witnesses. A person who does the
> following violates O.C.G.A. § 16-10-93(a):
> A person who, with intent to deter a witness from
> testifying freely, fully, and truthfully to any matter

---

(intent of public servant to benefit his employee by allegedly obtaining criminal history information would not satisfy the intent to benefit element of the crime of official misconduct. <u>See</u> <u>also</u> <u>Commonwealth v. Albert</u>, 40 N.E. 2d 21, 25 (Mass 1942) ("If the request were granted and the gift or gratuity were transferred to him, he would acquire an interest in the thing received.") <u>See</u> Kurtz, <u>Criminal Offenses and Differences in Georgia</u>, B 32 Bribery (2017) quoting 12 Am. Jur. 2d Bribery, § 7 at 753 (1964) ("It has been stated that a bribe 'need not be anything of intrinsic value. It is sufficient if the receiver gets anything of value to himself.'")

> pending in any court, ... communicates, directly or
> indirectly, to such witness any threat of injury or damage
> to the person, property, or employment of the witness....
> The Markowitzes claim that John Wieland Homes
> influenced James Griggers, a former warranty technician
> with the company, to recant his original affidavit in
> which he stated that he was instructed to minimize his
> reports of damage to homeowners and was taught to "roll
> the ball," a method of manipulating the customer until
> the expiration of the warranty period. They contend that
> Griggers was threatened with a lawsuit and changed his
> testimony as a result. But we find no authority that the
> threat of a lawsuit amounts to conduct prohibited
> by O.C.G.A. § 16-10-93. We hold that such does not
> constitute a threat of injury or damage under the statute.

Accord Brown v. State, 322 Ga. App. 446, 454 (2013).

In Pombert v. Glock, Inc., 171 F. Supp. 3d 1321 (N.D. Ga. 2016), Judge

Thrash found no violation of 16-10-93(b) because there was no evidence that

defendant's actions caused anyone to withhold testimony. Id. at 1336. So it is here

he noted:

> Under O.C.G.A. § 16-10-93(b)(1)(B)(1) it is illegal to
> threaten a witness into withholding testimony. Yet, the
> plaintiff does not allege that Renzulli's actions caused
> Manown to withhold any testimony. (Emphasis added)

In Hargett v. State, 285 Ga. 82 (2009), the Court noted that "no testimony

was elicited from Arnold at trial regarding the effect of her arrest on her testimony

that day or the truthfulness (or lack thereof) of her prior day's testimony…[T]he

record is utterly devoid of any evidence intimating a violation of O.C.G.A. § 16-

10-93(a)…In <u>Hargett</u>, the DA had arrested the witness after her initial listening for perjury—not surprisingly she had recanted her testimony.

In particular, Mr. McLendon could not have been influenced by social media. That would mean that a generic threat on social media could be a threat to anyone with internet. Such a reading is prohibited by O.C.G.A. § 16-10-93(b)(1) because it is not "conduct toward another person."

### D. AS A MATTER OF LAW PLAINTIFF DID NOT PROVE THE PREDICATE ACT OF ATTEMPTED EXTORTION

In <u>State v. Cohen</u>, 807 S.E. 2d 861 (Ga. 2017), the Court interpreted O.C.G.A. § 16-8-16 the first predicate act alleged herein.

> The facts were that Joe Rogers received a demand letter from [an] attorney relating to the potential sexual harassment claim that he…was prepared to file on [his client's] behalf.

This all came after they secured an embarrassing videotape. The Court noted that the attorney had not made "any threat express or implied to release information to anyone outside of the potential court proceedings." And the Court forthrightly held, mere "threats to sue cannot constitute extortion."

The extortion case was to be proven by Renee Haugerud, the present wife of plaintiff, as plaintiff's counsel argued at T-55 ($500,000 demanded). As she stated at T-171:

> All of a sudden a lawsuit got filed against me.

(T-174). Larry King then appeared after sending her a letter "in connection with that overture to help try to resolve the case after they filed a lawsuit…" Id. at 175. The lawsuit lasted a while. Then Michelle Murphy came to plaintiff:

> She said there was nothing she could do, that Millard needed to be paid…the $500,000 in front of me…I can't get out of this case unless I pay Millard $500,000. You will have to pay Millard $500,000 for me.

Id. at 192. In other words, it was not defendant who made any demand for the $500,000.

Earlier, there had been a suit over a QDRO fund. Id. at 169. There was an attorney named Dee Couch, id. at T-170, who had committed malpractice.  (T-4) Defendant wanted to settle the case for $200,000. Id. at 171. That, again is not extortion or attempted extortion. It is the settlement of a case. Id. at 172.

More to the point, Ms. Haugerud was specifically asked by counsel at T-209:

> tell me what you are saying that I did. What did Millard Farmer do that you? (sic)

She responded:

> You made false statements and intimidated.

24

T-20. In other words, she was not claiming extortion at all.[11] She also noted that

she had never heard defendant demand $500,000. Id. at 215.[12]

Plaintiff did not prove the predicate act of attempted extortion. Cohen, supra.

To the extent that plaintiff means to rely on O.C.G.A. § 16-8-16(3), or an

attempt to extort under § 16-8-16(3), there is no evidence tying in any threats

whatsoever to the social media that Ms. Haugerud complains of. (T-176-177). See

Dial HD, Inc. v. Clearone Communications, Inc., 2010 WL 3732115 (S.D. Ga.

2010) slip at 15-16.

## E. AS A MATTER OF LAW PLAINTIFF DID NOT PROVE THE PREDICATE ACT OF ATTEMPTED INTIMIDATION

Plaintiff alleged in his amended complaint that defendant had "intimidated

or threatened to intimidate judges…court officials." (Paragraph 13).

The specifics are set out at pages 125-126. They included:

1) Emails;

2) Lawsuits;

3) Untrue and highly inflammatory accusations against the GAL

in motions to the court.

---

[6]Understanding that the jury found for plaintiff, it must be said that Ms. Haugerud's testimony was based on unfounded assumptions and unworthy of credence. See id. at 212 "I am not certain that you did. But it fits the narrative"…See also line 24, id. at 213 lines 19-21.

[12] Mr. King testified that she had flatly misinterpreted his comment. Vol. III, pages 43-44.

What plaintiff is talking about is at paragraph 162-165.

When the Court issued its order on summary judgment, 176 F. Supp. 1325 (N.D. Ga. 2016), it noted that the parties had taken an all or nothing approach. Id. at 1349.

However, just looking at the allegations of the amended complaint, one sees that what is alleged are motions, lawsuits and emails. The Court did recognize that the motions and lawsuits were covered by the abusive litigation statute.

What did that leave? In Meadow Springs Recovery, LLC, 319 Ga. App. 79 (2012), the law firm sent a letter to Regions Bank with a complaint and a lis pendens and the Bank elected not to close the loan.

The Court ruled that the abusive litigation statute preempted any claim plaintiff might have. Citing Reeves v. Upson Regional Medical Ctr., 315 Ga. App. 582 (2012), the Court noted acts such as perjury, forgery, and theft had "all occurred during litigation of the [underlying actions]…On that basis, this Court affirmed the trial court's dismissal of the action…" The claim based on emails also occurred during the course of litigation.

In Harrell v. State, 297 Ga. 884 (2015), the Court reversed a conviction under O.C.G.A. § 16-10-97.[13] The threats are set out at 884 including a false threat

---

[13] Neither the Court appointed psychologist or guardian ad litem were officers of the Court as the Court charged. (R-125).

26

to show that a clerk had engaged in sexual activity, a posting of the clerk's

personal cell phone and a communication:

> in an attempt to persuade him to lift the bench warrant,
> saying that if he did not do so by a certain date, [he]
> would turn [her] world upside down and that you know
> what will happen on Facebook.

It turns out that intimidation is to be supported by the testimony of Ms.

Sams, who was intimidated by the motions defendant filed. They were intimidating

in the same way that making ones first argument to the United States Supreme

Court is intimidating.

## VII. THE COURT COMMITTED PLAIN ERROR IN NOT HAVING THE JURY APPORTION DAMAGES UNDER O.C.G.A. § 51-12-33

Neither in its charge on liability R-125 or on damages, R-131, or in any of

the verdict forms was the jury instructed of given the opportunity to apportion

damages or fault under O.C.G.A. § 51-12-33(b) and (c) which covers "injury to

person or property."[14]

Numerous people besides defendant were sued or listed as co-conspirators.

The failure under these circumstances to provide a mechanism for apportionment

---

[14] A RICO claim involves "injury to ….property. See Reaugh v. Inner Harbour
Hosp. Ltd., 214 Ga. App. 259, 264 (1994) ("Unlike the federal act, it does not limit
damages to injuries to business or property.")

of damages or fault was plain error. <u>I. A. Group Ltd. Co. v. RMNANDCO</u>, 336 Ga. App. 461 (2016).[15]

Judge Ray's decision is to be contrasted with his dissent in <u>Goldstein, Garber & Saloma, LLC. v. J.B.</u>, 335 Ga. App. 416 (2015).[16] In <u>J.B.</u>, the Court found that plain error analysis did not apply because the question posed "is conceptually difficult in this case because it requires the comparison of negligent and intentional cuts," <u>id</u>. at 425, that is the "issue is not only novel. It is also difficult." <u>Id</u>. at 427. <u>Compare</u> the dissent at 439.

The statute is unambiguous in its requirement. No doubt trial counsel, who are both highly skilled criminal attorneys, did not consider the ramifications of O.C.G.A. § 51-12-33 and did not bring it to the Court's attention. It is plain error, none the less.

## VIII. THE FAILURE TO CHARGE THAT ABUSIVE LITIGATION PREEMPTED ANY CLAIM BASED ON LITIGATION WAS PLAIN ERROR

Even without objection at trial, the failure to charge so plain that it must be considered in order to avoid injustice may result in a new trial. <u>Wirtz v. International Harvester Co.</u>, 331 F. 2d 462, 465 (5th Cir. 1964); <u>Wilson v. Maritime Overseas Corp.</u>, 150 F. 3d 1, 12 (1st Cir. 1998).

---

[15] The Court did not address whether RICO damages could be apportioned. <u>Id</u>. at fn. 6. <u>But</u> <u>see</u> fn.1.

[16] The case was reversed by the Georgia Supreme Court on other grounds, 300 Ga. 840 (2017) and the opinion vacated at 808 S.E. 2d 913 (Ga. App. 2017).

The Court was aware that the issue of abusive litigation was a central issue in the case. <u>Murphy v. Farmer</u>, 176 F. Supp. 3d 1325, 1346 et seq. (N.D. Ga. 2016). The issue was raised at page 36 of defendant's amended answer and preserved in his pretrial at R1-96-66.

Despite the fact that plaintiff never raised the claim, he tried the case as though it were a case of abusive litigation. <u>See</u> the testimony of Sams, Freeman, Gordon and Haugerud. Defendant was entitled to a charge that told the jury they could not find defendant liable for abusive litigation. From plaintiff's opening argument discussing multiple years of litigation (T-51) and terroristic lawyering (T-52) this was a theme plaintiff kept returning to; even referring to "voluminous" pleadings "stacked" her on the table." (T-65)[17]

## IX. A NEW TRIAL IS REQUIRED ON DAMAGES

As pointed out in the discussion about Mr. Poplin's testimony the jury was allowed to award damages based on improper theories. Plaintiff's Exhibit 2 does not apportion damages between plaintiff and his wife, or between work covered by the abusive litigation statute and other claims.

---

[17] Defendant is aware that at page 34, an abusive litigation charge was made by the Court. It was completely misleading because it gave the impression that abusive litigation was part of plaintiff's claim when it had not been raised as a claim, not that it was a bar to many of plaintiff's claims.

## X. CONCLUSION

Defendant is aware that this case has been a trying time for all concerned. Perhaps he should have remembered that even Clarence Darrow had co-counsel when he was tried for witness tampering after the L.A. Times bombing.

However, plaintiff brought an abusive litigation case dressed up badly in Georgia RICO clothing. He did not prove his case and defendant is entitled to a new trial because the verdict is against the great weight of evidence and because of the plain error committed. See e.g. Hall v. Norfolk S. Ry. Co., 829 F. Supp. 1571, 1578 (N.D. Ga. 1993); Barker v. Emory University, 2007 WL 9698027 (N.D. Ga. 1993 slip at 2.

Respectfully submitted,

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475
Attorney for Defendant

Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served counsel of record for the

opposing party in the foregoing matter with a copy of the foregoing by depositing

in the United States Mail copies of the same in properly addressed envelopes with

adequate postage thereon or by notification of electronic filing to:

Wilmer Parker
Malloy Jenkins Parker
75 Fourteenth Street, 25th Floor
Atlanta, Georgia 30309

Deborah L. Beacham
3025 Bluffton Way
Roswell, Ga. 30075

This 23rd day of February, 2018.

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475
Attorney for Defendant

Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)